**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br>BY HOTEL SPE-3 LLC, a Delaware Limited<br>Liability Company, 1101 WABASH<br>DEVELOPMENT MEZZ, LLC, a Delaware<br>Limited Liability Company, WABASH 11TH<br>MEZZ LLC, a Delaware Limited Liability<br>Company, PACIFIC TAI MEZZ LLC, a<br>Delaware Limited Liability Company, 1101<br>WABASH DEVELOPMENT SPE LLC, a<br>Delaware Limited Liability Company,<br>WABASH 11TH LLC, an Illinois Limited<br>Liability Company, 1101 WABASH<br>DEVELOPMENT LLC, an Illinois Limited<br>Liability Company, PACIFIC TAI, LLC, an<br>Illinois Limited Liability Company, SB YEN'S<br>MANAGEMENT GROUP, INC, an Illinois<br>Corporation,<br><br>                              **Debtors.**[1] | Chapter 11<br><br>Case No. 26-10324 (JKS)<br><br>(Joint Administration Requested) |

**EMERGENCY MOTION FOR AUTHORITY TO USE CASH COLLATERAL**
**PURSUANT TO SECTIONS 105, 361, 362, AND 363 OF THE BANKRUPTCY CODE**
**AND FEDERAL RULE OF BANKRUPTCY PROCEDURE 4001(b) AND REQUEST**
**FOR INTERIM AND FINAL HEARINGS**

The above-captioned debtors and debtors-in possession (each a "Debtor" and collectively

the "Debtors"), moves the Court for entry of an interim order in the form attached hereto as

**Exhibit A** (the "Interim Order"), pursuant to sections 105, 361, 362, 363, 506, 507(b) and 552 of

Title 11 of the United States Code. 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code"), Rules 2002,

2001, 7062, and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"),

---

[1] The Debtors in these chapter 11 cases and the last four digits of their respective identification numbers are By Hotel SPE-3 LLC (3619); 1101 Wabash Development Mezz, LLC (9294); Wabash 11th Mezz LLC (4278); Pacific Tai Mezz LLC (3717); 1101 Wabash Development SPE LLC (9201); Wabash 11th LLC (3098); 1101 Wabash Development LLC (3365); Pacific Tai, LLC (9675); and SB Yen's Management Group, Inc. (1132). The location of the Debtors' corporate headquarters and the Debtors' service address is 806 N York Rd., Hinsdale, IL 60521.

and Rules 2002-1(b), 4001-2, and 9013-1(m) of the Local Rules for the United States Bankruptcy Court for the District of Delaware (the "Local Rules"): (a) authorizing the Debtors to use cash collateral subject to the terms and conditions set forth in the Interim; (b) providing certain adequate protection to the Senior Creditors in the form and manner provided for in the Interim Order; (c) scheduling, pursuant to Bankruptcy Rule 4001(d), a final hearing to consider entry of an order granting the relief requested in this Motion on a final basis (a "Final Order," and together with the Interim Order, the "Cash Collateral Orders"); and (d) granting related relief . In support of this Motion, the Debtors respectfully state as follows:

## JURISDICTION AND VENUE

1. The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334, and the Amended Standing Order of Reference from the United States District Court for the District of Delaware, dated February 29, 2012. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2), and the Court may enter a final order consistent with Article III of the United States Constitution.

2. Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

3. The statutory predicates for the relief requested herein are sections 105, 361, 362, 363, 506, 507(b) and 552 of the Bankruptcy Code, Bankruptcy Rules 2002, 4001, 7062, and 9014 and Local Rules 2002-1(b), 4001-2, and 9013-1(m).

4. The Court has not yet appointed a Trustee or Examiner, nor has an official committee been established in this Chapter 11 Proceeding

## BACKGROUND

**A. General Background**

5. On March 8, 2026, each of the Debtors filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code. Concurrently with this Motion, the Debtors jointly filed motions  or

applications seeking certain typical "first day" orders, including an order to have these cases jointly administered.

6. The Debtors are authorized and have continued to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

7. Additional information regarding the Debtors' businesses, capital structure, and the circumstances leading to the filing of these chapter 11 cases is set forth in the *Declaration of Su-Mei Yen in Support of Debtors' First Day, Cash Collateral, and Debtor in Possession Financing Motions* (the "First Day Declaration"), and this Motion is further supported by the *Declaration of Ted Mandigo in Support of Debtors' Cash Collateral and Debtor in Possession Financing Motions* (the "Mandigo Declaration," and together with the First Day Declaration, the "Declarations").

**B. Capital Structure of the Debtors**

    *i.      Senior Obligations*

8. Debtors Wabash 11th LLC, 1101 Wabash Development LLC, and Pacific Tai, LLC are parties to that certain Loan Agreement dated August 30, 2019 (as amended, supplemented, and modified, the "Credit Agreement"), with lender Delpha CRE Funding LLC (and other lenders from time to time) (collectively, the "Senior Lenders") and Acore Capital Mortgage, LP as administrative agent ("Agent," and together with the Senior Lenders, the "Senior Creditors"). The Senior Loan Agreement evidences a loan in the original principal amount of $146,737,500.00 (the "Senior Obligations") with a variable interest rate ranging from 2.25% plus LIBOR on amounts "evidenced by Note A" as described in the Senior Loan Agreement, and 6.375% plus LIBOR on amounts "evidenced by Note B" as described in the Senior Loan Agreement.

The Senior Obligations are secured by a mortgage also dated August 30, 2019 (the "Senior Mortgage," and together with the Credit Agreement, the "Loan Documents") on two properties: (1) 1101 South Wabash Avenue, Chicago, Illinois 60605 (the "Hilton Property"); and (2) 1100 South Michigan Avenue, Chicago, Illinois 60605 (the "Best Western Property").

9. As of the Petition Date, the Debtors were liable under the Loan Documents in an aggregate principal amount of not less than $146,737,500.00, plus additional potential pre-petition interest, fees, expenses, and other amounts arising in respect of such obligations immediately prior to the Petition Date. As of the Petition Date, the Debtors were in default of the Credit Agreement and/or other Loan Documents.

### ii.    Unsecured Claims and Obligations

#### a.  Mezzanine Obligations

10. Debtors Wabash 11th LLC, 1101 Wabash Development LLC, and Pacific Tai, LLC are parties to that certain Mezzanine Loan Agreement dated August 30, 2019 with the Senior Creditors (as amended, modified, and supplemented, the "Mezzanine Loan Agreement") in the original principal amount of $3,762,500.00.  The Mezzanine Loan Agreement is not secured by the Senior Mortgage, and bears an interest rate of 6.375% plus LIBOR.

11. As of the Petition Date, the Debtors were liable under the Mezzanine Loan Agreement in an aggregate principal amount of not less than $3,762,500.00, plus additional potential pre-petition interest, fees, expenses, and other amounts arising in respect of such obligations immediately prior to the Petition Date. As of the Petition Date, the Debtors were in default of the Mezzanine Loan Agreement.

12. As of the Petition Date, the Debtors had five bank accounts in total, including (i) three operating accounts, comprised of one operating account with Huntington National Bank (Acct.

No. ending 2220), and two operating accounts with International Bank of Chicago (Acct. Nos. ending 2828 and 2801) (collectively, the "Operating Accounts" and individually an "Operating Account"), and (ii) two lockbox accounts with Key Bank (Acct. Nos. ending 7999 and 8539) (account ending in 8539 is a CMA lockbox) (collectively, the "Lockbox Accounts," and together with the Operating Accounts, the "Bank Accounts").  Agent may have a security interest in one or more of the Bank Accounts.  Prior to the Petition Date, Agent may have been able to offset the amounts in one or more of the Bank Accounts.

13. In the ordinary course of operating their business, the Debtors utilize goods and services from dozens of trade vendors, including food vendors, laundry vendors, and others. Many of these vendors will have a prepetition claim against the Debtors due to the commencement of these chapter 11 cases. The Debtor will also have obligations to the franchisors for the Hilton Property and the Best Western Property.

**RELIEF REQUESTED**

14. By this Motion, the Debtors request that the Court enter the Cash Collateral Orders: (a) authorizing the Debtors to use Cash Collateral, subject to the term and conditions set forth therein; (b) granting certain adequate protection to the Senior Creditors in the form and manner provided for in the Interim Order; (c) scheduling the Final Hearing within approximately thirty days of the commencement of these chapter 11 cases to consider approval of this Motion on a final basis; and (d) granting related relief.

15. Specifically, the Debtors seek authorization to use Cash Collateral to meet the ordinary cash needs of the Debtors, and for such other purposes as may be approved in writing by secured creditors, for the payment of:

   a. Reasonable and necessary operating expenses incurred in the ordinary course of business;

b.  Maintenance and preservation of the property of the estate;

c.  Payroll and related tax obligations;

d.  Property taxes and insurance premiums; and

e.  Payment of expenses associate with this Chapter 11 case, including professional expenses incurred in the administration of the bankruptcy case.

## THE DEBTORS' IMMEDIATE NEED TO USE CASH COLLATERAL

16. As set forth in the Declarations, the Debtors require immediate access to Cash Collateral to ensure they are able to continue the operation of their businesses, as the Cash Collateral (and DIP Financing, sought through separate motion) are the Debtors' sole sources of funding for their operations and the costs of administering the chapter 11 process. Absent authority to immediately use Cash Collateral, the Debtors, their creditors, and the estates would suffer irreparable harm because the Debtors would immediately cease operations, which, in turn, would cause and immediate and pronounced deterioration in the value of the Debtors' businesses. Thus, the Debtors' access to Cash Collateral is necessary to preserve and maximize value for the benefit of all the Debtors' stakeholders.

17. As further set forth herein and in the Interim Order, the Interim Order provides adequate protection to the Senior Creditors in the form of, among other things, replacement liens to protect the Senior Creditors against any diminution in value arising from the Debtors' use of Cash Collateral or the imposition of the automatic stay pursuant to section 362 of the Bankruptcy Code. In addition, the Interim Order provides the Senior Creditors with adequate protection in the form of monthly interest payments to Agent in the amount of $153,272.28.

18. The Debtors propose to make disbursements pursuant to a budget annexed to the Interim Order as Exhibit 1 thereto, subject to certain permitted variances provided for in the Interim Order.

6

19. Access to existing Cash Collateral on an interim basis will provide the Debtors with the liquidity necessary to ensure that the Debtors have sufficient working capital and liquidity to operate their businesses, and thus preserve and maintain the value of the Debtors' estates. Without such access to liquidity, the Debtors' ability to navigate through the chapter 11 process will be jeopardized, to the detriment of the Senior Creditors and all of the Debtors' other stakeholders. As a result, the Debtors have an immediate need to use Cash Collateral to ensure sufficient liquidity throughout the pendency of these chapter 11 cases.

**CONCISE STATEMENT OF THE MATERIAL TERMS OF THE INTERIM ORDER**

20. The following chart (the "Summary of Material Terms Chart") contains a summary of the material terms of the Interim Order, in accordance with Bankruptcy Rule 4001(b)(1) and Local Rule 4001-2(a)(ii).[2]

| Material Terms | Summary of Material Terms | Paragraphs of Interim Order |
|---|---|---|
| **Entities with an interest in Cash Collateral**<br><br>*Bankruptcy Rule 4001(b)(1)(B)(i)* | Acore Captial Mortgage, LP in its capacity as Administrative Agent, and the Senior Creditors, pursuant to the Loan Documents. | ¶D |
| **Purpose for Use of Cash Collateral**<br><br>*Bankruptcy Rule 4001(b)(1)(B)(ii)*<br><br>*Local Rule 4001-2(a)(i)* | The Debtors seek to use Cash Collateral to pay the expenses set forth in the cash collateral budget attached as Exhibit A to the Interim Order. | ¶3 |
| **Budget** | The expenses set forth in the Budget represent those post-petition expenses that must be paid in | ¶3 |

---

[2] The Summary of Material Terms Chart and any other description of the Interim Order provided in this Motion is qualified in its entirety by the actual terms of the Interim Order. The actual terms of the Interim Order control in the event of any inconsistency between this Motion (including the Summary of Material Terms Chart) and the Interim Order.

| | | |
|---|---|---|
| *Bankruptcy Rule 4001(b)(1)(B)(ii)* | the ordinary course or to avoid immediate and irreparable harm. | |
| **Declaration of Use of Cash Collateral / Termination Events / Relief from Stay**<br><br>*Bankruptcy Rule 4001(b)(1)(B)(iii)*<br><br>*Local Rule 4001-2(a)(ii)* | <u>Termination Date.</u> Debtors' ability to use Cash Collateral under the Interim Order shall terminate on the earlier of: (i) May 5, 2026 at 5:00 p.m. Eastern; (ii) the occurrence of a Termination Event; and (iii) entry of a final or additional interim order regarding cash collateral.<br><br><u>Termination Events.</u> Each of the following shall constitute a "<u>Termination Event</u>" under the Interim Order: (a) failure of Debtors to abide by the terms, covenants, and conditions of the Interim Order or the Budget (subject to any permitted variances); (b) the use of Cash Collateral for any purpose not authorized by the Interim Order; (c) failure of Debtors to timely pay fees of the U.S. Trustee; (d) appointment of a Chapter 11 trustee or the appointment of an examiner with expanded powers; (e) termination of Debtors' franchise agreements with Hilton or Best Western; (f) Conversion of the Chapter 11 cases to cases under Chapter 7 of the Bankruptcy Code; (g) the Chapter 11 Cases are dismissed; or (h) the entry of an order of this or any other Court (other than the Final Order) reversing, staying, vacating or otherwise modifying in any material respect the terms of the Interim Order.<br><br><u>Relief from the Automatic Stay.</u> The automatic stay provisions of section 362 of the Bankruptcy Code are hereby modified to permit the Debtors to implement and perform the terms of the Interim Order. | ¶¶ 11, 15, 17 |
| **Proposed Adequate Protection**<br><br>*Bankruptcy Rule 4001(b)(1)(B)(iv)*<br><br>*Local Rule 4001-2(a)(i)(B)* | <u>Replacement Liens.</u> As adequate protection for the respective interests of the Senior Creditors, for , and solely to the extent of, any diminution in the value of the Collateral resulting from (i) the Debtors' use of Cash Collateral, (ii) the use, sale, or lease of the Collateral (other than Cash Collateral) pursuant to section 363(c) of the Bankruptcy Code, and (iii) the imposition of the automatic stay pursuant to section 362(a) of the Bankruptcy Code, the Agent is hereby granted, on behalf of itself and for the benefit of the Senior Lenders, a continuing replacement security interest in, and lien, effective as of the Petition Date without the necessity of Agent taking any further action, upon the right, title and interest in the following property of the Debtor: (a) all pre-petition collateral of Senior Creditors, including all proceeds, profits, rents, and products thereof; and (b) property acquired by the Debtors after the Petition Date, which is of the same nature, kind, and character as | ¶¶ 4, 5, and 6 |

8

|  | the pre-petition Collateral, and all proceeds, profits, rents, and products thereof (collectively, the "Replacement Liens"), which Replacement Liens shall have the same priority, validity, force, extent, and effect as the liens they replace.<br><br>Adequate Protection Payments. The Debtors shall make monthly interest payments of $153,272.28 to Agent, for the benefit of the Senior Lenders. |  |
| --- | --- | --- |
| **Carve-out**<br><br>*Local Rule 4001-2(a)(i)(F)* | As used in the Interim Order, the "Carve-Out" means (a) allowed professional fees and disbursements of Debtors' professionals incurred on or prior receipt by Debtors of written notice of the occurrence of a Termination Event (i) by the professionals retained, pursuant to Bankruptcy Code sections 327 or 1103(a) and (ii) by professionals retained, pursuant to Bankruptcy Code sections 327 or 1103(a), by the Committee, if any, in an amount not to exceed the aggregate amount of $50,000, (b) allowed professional fees and disbursement incurred following receipt by Debtors of a notice of the occurrence of a Termination Event by the professionals retained, pursuant to Bankruptcy Code sections 327 or 1103(a), by the Debtors and the Committee not to exceed the aggregate amount of $250,000, and (c) quarterly fees required to be paid pursuant to 28 U.S.C. § 1930(a)(6) and any fees payable to the Clerk of the Bankruptcy Court. | ¶ 10 |
| **Cross-Collateralization**<br><br>*Local Rule 4001-2(a)(i)(A)* | None, other than Replacement Liens as adequate protection. |  |
| **Findings re Validity / Perfection / Amount**<br><br>*Local Rule 4001-2(a)(i)(B)* | None. |  |
| **Challenge Period**<br><br>*Local Rule 4001-2(a)(i)(B)* | There are no stipulations or findings in the Interim Order, so there is no need for a challenge period. |  |
| **506(c) Waiver**<br><br>*Local Rule 4001-2(a)(i)(C)* | None. |  |

9

| | | |
|---|---|---|
| **552(b) Waiver**<br><br>*Local Rule 4001-2(a)(i)(H)* | None. | |
| **Releases**<br><br>*Local Rule 4001-2(a)(ii)* | None. | |
| **Provisions Deeming Prepetition Debt to be Post Petition Debt**<br><br>*Local Rule 4001-2(a)(i)(E)* | None. | |
| **Non-Consensual Priming**<br><br>*Local Rule 4001-2(a)(i)(B)* | None. | |

## HIGHLIGHTED PROVISIONS PURSUANT TO LOCAL RULE 4001-2(a)(i)

21. Local Rule 4001-2(a)(i) requires a debtor to: (a) recite whether the proposed form of the cash collateral order contains certain provisions of the type enumerated therein; (b) identify the location of such provisions in the proposed cash collateral order; and (c) justify the inclusion of such provisions in the proposed cash collateral order. *See* Del. Bankr. L.R. 4001-2(a)(i). As further set out in the provisions discussed above in the Summary of Material Terms Chart, the Debtors hereby disclose the below provisions (collectively, the "Highlighted Provisions") in accordance with Local Rule 4001-2(a)(i):

> a. **Provisions that grant cross collateralization (Local Rule 4001-2(a)(i)(A)).** There are no provisions that grant cross-collateralization protection, other than the Replacement Liens.

> b. **Provisions or findings of fact that bind the estate or other parties in interest with respect to the validity, perfection, or amount of the secured creditor's**

10

**prepetition lien (Local Rule 4001-2(a)(i)(B)).** The Interim Order does not contain binding findings of fact or related provisions.

c. **506(c) rights (Local Rule 4001-2(a)(i)(C)).** The Interim Order does not include a 506(c) waiver.

d. **Provisions that immediately grant the prepetition secured creditor liens on the Debtors' claims and causes of action arising under 11 U.S.C. §§ 544, 545, 548, and 549 (Local Rule 4001-2(a)(i)(D)).** The Interim Order does not grant the Senior Creditors liens on the Debtors' claims and causes of action arising under 11 U.S.C. §§ 544, 545, 548, and 549.

e. **Provisions deeming prepetition debt to be postpetition debt (Local Rule 4001-2(a)(i)(E).** The Interim Order does not deem prepetition secured debt to the postpetition debt.

f. **Carve-Out (Local Rule 4001-2(a)(i)(F)).** The Interim Order Contains no provisions for disparate treatment for any professionals retained by any Committee with respect to the Carve-Out, provided that only up to $25,000 of Cash Collateral will be made available to any Committee for investigation costs. *See* Interim Order ¶ 10. The Debtors believe that the treatment of Professionals is fair and reasonable given the expected activities of the Debtors and any Committee during these chapter 11 cases.

g. **Non-consensual priming (Local Rule 4001-2(a)(i)(G)).** The Interim Order does not provide for non-consensual priming of any secured lien.

h. **552(b)(1) rights (Local Rule 4001-2(a)(i)(H)).** The Interim Order does not include any provision affecting 552(b)(1) rights.

i. **Termination (Local Rule 4001-2(a)(ii)).** Paragraph 11 of the Interim Order identifies a number of termination events.

j. **Releases (Local Rule 4001-2(a)(ii)).** The Interim Order does not contain releases.

## BASIS FOR RELIEF

I. **The Debtors' Request to Use Cash Collateral and Proposed Adequate Protection are Appropriate**

22. The Debtors' use of property of their estates, including Cash Collateral, in governed by section 363 of the Bankruptcy Code. Pursuant to section 363(c)(2) of the Bankruptcy Code, a debtor may use cash collateral as long as "(A) each entity that has an interest in such collateral

11

consents; or (B) the court, after notice and a hearing, authorizes such use, sale, or lease in accordance with the provisions of this section." 11 U.S.C. § 363(c)(2).

23. Section 363(c) of the Bankruptcy Code provides for adequate protection of interests in property when a debtor uses cash collateral. Further, section 362(d)(1) of the Bankruptcy Code provides for adequate protection of interests in property due to the imposition of the automatic stay. *See In re Cont'l Airlines*, 91 F.3d 553, 556 (3d Cir. 1996). While section 361 of the Bankruptcy provides examples of forms of adequate protection, such as granting replacement liens and administrative claims, courts decide what constitutes sufficient adequate protection on a case-by-case basis. *Resolution Trust Corp. v. Swedeland Dev. Grp., Resolution Trust Corp. v. Swedeland Dev. Grp.*,  16 F.3d 552, 564 (3d Cir. 1994) ("[A] determination of whether there is adequate protection is made on a case by case basis."); *In re Satcon Tech. Corp.*, No. 12-12869, 2012 WL 6091160, at *6 (Bankr. D. Del. Dec. 7, 2012); *In re N.J. Affordable Homes Corp.*, No. 05-60442, 2006 WL 2128624 at *14 (Bankr. D.N.J. June 29, 2006); *In re Columbia Gas Sys., Inc.*, Nos. 91-803, 91-804, 1992 WL 79323, at *2 (Bankr. D. Del. Feb. 18, 1992); *see also In re Dynaco Corp.*, 162 B.R. 389, 394 (Bankr. D.N.H. 1993)(citing 2 Collier on Bankruptcy ¶ 361.01 [1] at 361-66 (15th ed. 1993) (explaining that adequate protection can take many forms and "must be determined based upon equitable considerations arising from the particular facts of each proceeding").

> The concept of adequate protection is designed to shield a secured creditor from diminution in the value of its interest in collateral during the period of a debtor's use. *See In re Carbone Cos.*, 395 B.R. 631, 635 (Bankr. N.D. Ohio 2008) ("The test is whether the secured party's interest is protected from diminution or decrease as a result of the proposed use of cash collateral."); *see also In re Cont'l Airlines, Inc.*, 154 B.R. 176, 180-81 (Bankr. D. Del. 1993) (holding that adequate protection for use of collateral under section 363 of the Bankruptcy Code is limited to use-based decline in value.)

**I.   The Proposed Adequate Protection for the Senior Creditors is Sufficient.**

24. As set forth above in the Summary of Material Terms Chart, the Debtors propose to provide the Senior Creditors with several forms of adequate protection (collectively, as described above and set forth more fully in the Interim Order, the "Adequate Protection").

25. The Debtors respectfully submit that, in light of the circumstances of these chapter 11 cases, the Adequate Protection is appropriate and sufficient to protect the Senior Creditors from any diminution in value to the Collateral during the interim period. In particular, the Cash Collateral will be used to sustain the Debtors' business operations, allowing for the maximization of the Debtors' estates. If the Cash Collateral is not available for this purpose, the Debtors will be unable to, among other things, fund payroll obligations, procure goods and services from vendors, or otherwise maintain their business operations, thereby dissipating value to the detriment of the Senior Creditors and all other stakeholders. The use of the Cash Collateral will therefore protect the security interests of the Senior Creditors by preserving the value of their collateral. *See In re Constable Plaza Assocs, L.P.*, 125 B.R. 98, 105 (Bankr. S.D.N.Y. 1991) (observing that debtor's use of rents to maintain and operate property "will serve to preserve or enhance the value of the building which, in turn, will protect the collateral covered by [the secured lender's] motgage"); *In re 495 Cent. Park Ave. Corp.*, 136 B.R. 626, 631 (Bankr. S.D.N.Y. 1992) (evaluating "whether the value of the debtor's property will increase as a result of the" use of collateral in determining sufficiency of adequate protection); *In re Salem Plaza Assocs.*, 135 B.R. 753, 758 (Bankr. S.D.N.Y. 1992) (holding that a debtor's use of cash collateral to pay operating expenses, thereby "preserv[ing] the base that generates the income stream," provided adequate protection to the secured creditor).

26. In light of the foregoing, the Debtors submit that the Adequate Protection to be provided for the benefit of the Senior Creditors is appropriate. Thus, the Adequate Protection is not only

necessary to protect the Senior Creditors against any diminution in value, but is also fair and appropriate, on an interim basis, under the circumstances of these chapter 11 cases to ensure that the Debtors are able to continue using the Cash Collateral in the near term, for the benefit of all parties in interest and their estates.

## II.      Failure to Obtain Immediate Interim Use of Cash Collateral Would Cause Immediate and Irreparable Harm to the Debtors and their Estates

27. Bankruptcy Rule 4001(b) provides that a final hearing on a motion to use cash collateral pursuant to section 363 of the Bankruptcy Code may not be commenced earlier than fourteen days after the service of such motion. The Court, however, is authorized to conduct a preliminary expedited hearing on the Motion and authorize the Debtors' proposed use of Cash Collateral to the extent necessary to avoid immediate and irreparable harm to a debtor's estate. *See* Fed. R. Bankr. P. 4001(b)(2).

28. The Debtors have an immediate postpetition need to use Cash Collateral. The Debtors cannot maintain the value of their estates during the pendency of these chapter 11 cases without access to cash. The Debtors will use cash to, among other things, continue operating their business and satisfy other working capital needs during these chapter 11 cases. The Debtors believe that all or substantially all of their available cash constitutes the cash collateral of the Senior Creditors, as that term is used by section 363(c) of the Bankruptcy Code. The Debtors will therefore be unable to proceed with operating their businesses without the ability to use Cash Collateral, and will suffer immediate and irreparable harm to the detriment of all creditors and other parties in interest. In short, the Debtors' ability to finance their business operations, and the availability of sufficient working capital and liquidity to the Debtors through the use of Cash Collateral is vital to the preservation and maintenance of the value of the Debtors' estates and the successful prosecution of these chapter 11 cases.

14

29. The Debtors therefore, seek immediate authority to use Cash Collateral on an interim basis, as set forth in this Motion and in the Interim Order, to prevent immediate and irreparable harm to their estates pending the Final Hearing pursuant to Bankruptcy Rule 4001(b). Accordingly, the Debtors respectfully submit that they have satisfied the requirements of Bankruptcy Rule 4001 to support an expedited preliminary hearing and immediate Cash Collateral availability on an interim basis.

### III.　　Modification of the Automatic Stay is Appropriate

30. The Interim Order contemplates a modification of the automatic stay, to the extent applicable, as necessary to, among other things, permit the Debtors to: (a) grant the security interests and liens described above, and to perform such acts as may be requested to assure the perfection and priority of such security interests and liens; and (b) authorize the Debtors to make certain payments in accordance with the terms of the Interim Order. Stay modification provisions of this kind are ordinary and standard terms of postpetition use by debtors-in-possession of prepetition collateral, and, in the Debtors' business judgment, are reasonable under the present circumstances. Accordingly, the Debtors respectfully request that the Court authorize the modification of the automatic stay in accordance with the terms set forth in the Cash Collateral Orders.

### REQUEST FOR FINAL HEARING

31. Pursuant to Bankruptcy Rules 4001(b)(2) and 4001(c)(2), the Debtors request that the Court set a date for the Final Hearing within 30 days of the Petition Date, and fix the date and time prior to the Final Hearing for parties to file objections to the relief requested by this Motion.

15

**NOTICE**

32. Notice of this Motion has been provided to: (i) the Office of the United States Trustee for the District of Delaware; (ii) the Office of the United States Attorney for the District of Delaware; (iii) the Internal Revenue Service; (iv) the Debtors' twenty largest unsecured creditors, excluding insiders; (v) counsel for Agent and the Senior Creditors; and (vi) all parties that have requested notice in these chapter 11 cases pursuant to Bankruptcy Rule 2002. Notice of this Motion and any order entered hereon will be served in accordance with Local Rule 9013-1(m). In light of the nature of the relief requested herein, the Debtors submit that no other or further notice is necessary.

**CONCLUSION**

WHEREFORE, the Debtors request that the Court: (a) enter the Cash Collateral Orders (i) authorizing the Debtors to use Cash Collateral on an interim and final basis subject to the terms and conditions set forth therein, (ii) granting adequate protection to the extent set forth in the Cash Collateral Orders, (iii) scheduling the Final Hearing within approximately thirty days of the commencement of these chapter 11 cases to consider approval of this Motion on a final basis, and (iv) granting related relief; and (b) grant the Debtors such other and further relief as is just and proper.

Dated: March 8, 2026
        Wilmington, Delaware

[*Remainder of Page Intentionally Left Blank.*]

LEWIS BRISBOIS
BISGAARD & SMITH LLP

By:*/s/ Rafael X. Zahralddin-Aravena*
    Rafael X. Zahralddin-Aravena(No. 004166)
    Minyao Wang (*pro hac vice* pending)

    500 Delaware Avenue, Suite 700
    Wilmington, Delaware 19801
    302.985.6000
    Rafael.Zahralddin@lewisbrisbois.com
    Minyao.Wang@lewisbrisbois.com

    *Proposed Attorneys for the Debtors and the*
    *Debtors in Posession*

17