**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>US MAGNESIUM LLC,[1]<br><br>Debtor. | Chapter 11<br><br>Case No. 25-11696 |

**DEBTOR'S MOTION FOR INTERIM AND FINAL ORDERS (I) AUTHORIZING THE DEBTOR TO (A) OBTAIN POSTPETITION FINANCING, (B) GRANT SENIOR SECURED PRIMING LIENS AND SUPERPRIORITY ADMINISTRATIVE EXPENSE CLAIMS AND (C) UTILIZE CASH COLLATERAL; (II) GRANTING ADEQUATE PROTECTION; (III) MODIFYING THE AUTOMATIC STAY; (IV) SCHEDULING FINAL HEARING; AND (IV) GRANTING RELATED RELIEF**

The above-captioned debtor and debtor-in-possession, US Magnesium LLC (the "**Debtor**"), files this *Motion for Interim and Final Orders Authorizing Postpetition Financing* (the "**DIP Motion**") up to an aggregate principal amount of $12,500,000, pursuant to the terms set forth in the proposed Interim Order attached as Exhibit A and the Ratification and Amendment Agreement, in substantially the form attached as Exhibit B (the "**Ratification Agreement**" and together with all other Loan Documents, the "**DIP Financing**"),[2] by and between the Debtor and Wells Fargo Bank, National Association (the "**DIP Lender**") and requests that the Court schedule, pursuant to Rule 4001 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), a final hearing (the "**Final Hearing**") for the Court to consider entry of the Final Order authorizing and approving on a final basis the relief requested in this Motion. In support hereof, the Debtor relies on the *Declaration of Ron Thayer in Support of the Debtor's Chapter 11 Petition and Related Requests for Relief* (the "**First Day Declaration**") filed contemporaneously with and in support of

---

[1] The last four digits of the Debtor's federal tax identification number are 5446. The Debtor's address is 238 N 2200 W, Salt Lake City, Utah 84116.

the first day relief sought in this bankruptcy proceeding. In further support of this Motion, the Debtor respectfully represents and sets forth as follows:

## JURISDICTION AND VENUE

1. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware dated as of February 29, 2012.

2. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b).

## BACKGROUND

3. On the date hereof (the "**Petition Date**"), the Debtor filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**").

4. As of the date hereof, an official committee of unsecured creditors has not been appointed in this case. The Debtor continues to operate its business and manage its property as debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No trustee, examiner, or statutory committee has been appointed in this chapter 11 case (this "**Chapter 11 Case**").

5. Additional information regarding the circumstances leading to the commencement of this Chapter 11 Case and information regarding the Debtor's business and capital structure is set forth in the First Day Declaration.

6. As described in the First Day Declaration, the Debtor was facing a liquidity concern which prompted the request for additional financing and the filing of the Chapter 11 case.

I.       **Prepetition Secured Indebtedness**

7.      The Debtor and Wells Fargo Bank, National Association ("**Wells Fargo**") are party to that certain Loan and Security Agreement, dated June 24, 2002, as amended from time to time, currently through that certain Forbearance Agreement and Amendment No. 42 to Loan and Security Agreement dated as of February 19, 2025 (as may be further amended, supplemented, or otherwise modified from time to time, the "**Prepetition Credit Agreement**").  The obligations arising under the Prepetition Credit Agreement are secured by substantially all of the assets of the Debtor other than owned real property.  As of the Petition Date, the Debtor has approximately $42 Million, including LCs of $820K, in total funded debt obligations under the Prepetition Credit Agreement.

8.      USM, as borrower, and Renco Global Capital, Inc. ("**Renco Global**"), as lender, are party to that certain Subordinated Loan Agreement, dated as of June 26, 2023 (as may be amended, supplemented, or otherwise modified from time to time, the "**Renco Global Loan Agreement**").  The obligations arising under the Renco Global Loan Agreement are secured by a junior security interest in substantially all of the assets of the Debtor other than owned real property.  The respective rights of Wells Fargo and Renco Global as lenders to USM are governed by that certain Intercreditor and Subordination Agreement, dated as of June 26, 2023.  As of September 8, 2025, the Debtor has approximately $45,448,974.86 in total funded debt obligations under the Renco Global Loan Agreement.

9.      In addition to the foregoing, on August 28, 2025, The Renco Group, Inc., as lender, and USM, as borrower, entered into that certain Subordinated Loan Agreement (as may be amended, supplemented, or otherwise modified from time to time, the "**Subordinated Loan Agreement**").  Pursuant to the Subordinated Loan Agreement, The Renco Group, Inc. provided

bridge funding to the Debtor in the amount of $2,500,000 to ensure the Debtor's liquidity would be sufficient to allow it to prepare for and file this Chapter 11 Case. The obligations arising under the Subordinated Loan Agreement are secured by a junior lien in substantially all of the Debtor's assets.

## II. The Debtor's Efforts to Obtain DIP Financing

10. In connection with the planning for this chapter 11 case, the Debtor reviewed projected cash flows and made a determination of how much capital would be required to effectuate its chapter 11 strategy. In so doing, the Debtor created a budget for its liquidity needs. (the "**DIP Budget**").

11. The Debtor then requested financing proposals from both existing lenders and potential new lenders and reviewed its options for obtaining additional financing whether via traditional financial institution lenders and alternative lenders. Recognizing that no parties would be willing to provide financing in the form of unsecured credit repayable as an administrative expense under section 503(b) of the Bankruptcy Code, nor under the terms of sections 364(a) or 364(b) of the Bankruptcy Code, the Debtor discussed with their pre-petition lenders the prospect of a new loan on a post-petition basis.

12. The Debtor therefore seeks authorization from the Court to enter into the Ratification Agreement in order to obtain the DIP Financing on an interim basis and final basis.

## III. A Concise Statement of Material Terms of the Proposed DIP Financing, Interim Order, and the Ratification Agreement

13. The Debtor engaged in good faith, arm's-length negotiations with the DIP Lender, leading to the terms and conditions contained in the Ratification Agreement.

14. The below chart contains a summary of the material terms and conditions governing the Debtors' proposed DIP Financing and use of Cash Collateral pursuant to, and in accordance with, Bankruptcy Rule 40001(b) and Local Rule 4001-2:

| Local Rule Requirement | Description of Provision |
|---|---|
| **Parties to the Ratification Agreement**<br><br>Bankruptcy Rule 4001(c)(1)(B) | **Borrower:** US Magnesium LLC<br>**DIP Lender:** Wells Fargo Bank, National Association<br>*See* the Ratification Agreement attached hereto as Exhibit B, p. 1. |
| **Term and Purpose**<br><br>Bankruptcy Rule 4001(b)(1)(B)(iii), 4001(c)(1)(B); Local Rule 4001-2(a)(i) | The Debtor has an immediate need to obtain postpetition financing pursuant to the DIP Financing and to obtain use of Cash Collateral (subject to the Budget) in order to, among other things, (a) stabilize the Debtor's business operations, (b) fund the Debtor's working capital needs, (c) pay administrative costs in full, (d) preserve value during the course of this Chapter 11 Case, and (e) conduct a postpetition sale process for its assets and attempt to identify a bid or bids that yields the highest and best value to the Debtor's estate. |
| **Borrowing Limits**<br><br>Bankruptcy Rule 4001 (c)(1)(B); Local Rule 4001-2(a)(i)(E) | The DIP Financing consists of the following:<br>$10,000,000 of new money DIP Term Loans; and<br>$10,000,000 of converted Pre-Petition Obligations to Post-Petition Obligations, in an amount equal to any and all sums advanced by the DIP Lender to the Debtor under the DIP Term Loan.<br>*See* the Ratification Agreement, Sec. 7 |
| **Conditions of Borrowing**<br><br>Bankruptcy Rule 4001(c)(1)(B); Local Rule 4001-2(a)(i)(E) | The Proposed Orders and the Ratification Agreement include standard and customary conditions of borrowing, the satisfaction of which is a condition precedent to the obligations of the DIP Lender to provide the DIP Financing.<br>*See* Ratification Agreement, Sec. 9 |
| **Interest Rates**<br><br>Bankruptcy Rule 4001(c)(1)(B) | The interest rate on the DIP Financing shall be the Base Margin Rate (7.5%) plus 1.0% |
| **Default Interest**<br><br>Local Rule 4001-2(a)(ii) | Upon the occurrence and during the continuation of an Event of Default, upon written notice by the DIP Lender to Borrower (except that such notice shall not be required for any payment default hereunder or under the Ratification Agreement), then |

5

| | |
|---|---|
| | (i) all Loans and all other Obligations (except for undrawn Letters of Credit) shall bear interest at a per annum rate equal to two (2) percentage points above the per annum rate otherwise applicable thereto, and (ii) the Letter of Credit Fees payable under Section 3.3(c) hereof shall be increased to two (2) percentage points above the per annum rate otherwise applicable thereto. |
| **Use of Proceeds**<br><br>Bankruptcy Rule 4001(b)(l)(B)(ii) | The proceeds of the DIP Financing shall be used in accordance with and subject to the Interim Order and the DIP Budget (subject to the Carve-Out and the variances permitted under Sec. 5.3(c) of the Ratification Agreement)<br><br>*See* the Ratification Agreement, Sec. 5.2 |
| **Adequate Protection/Entities with Interests in Cash Collateral**<br><br>Bankruptcy Rules 4001(b)(l)(B), 4001(c)(1)(B)(ii); Local Rule 4001-2(a)(i)(K) & (P) | The following secured parties have an interest in Cash Collateral: the DIP Lender (with Renco holding a subordinate interest via the Renco Global Loan Agreement).<br><br>The adequate protection provided to the DIP Lender for Pre-Petition Obligations shall be in accordance with the Proposed Interim Order, including the granting of replacement liens and Superpriority claims, as well as cash payments of interest and fees owed by the Debtor in connection with Prepetition Obligations.<br><br>*See* Proposed Interim Order, ¶16. |
| **Fees**<br><br>Bankruptcy Rule 4001(c)(1)(B); Local Rule 4001-2(a)(i)(K) & (P) | Upon entry of the Proposed Interim Order, the DIP Lender is entitled to certain fees pursuant to the Ratification Agreement, including an exit fee in the amount of $200,000 (the "DIP Exit Fee"), which is payable upon the consummation of the Sales Transaction or the sale of all or substantially all of the assets of Debtor.<br><br>*See* Ratification Agreement, Sec. 6. |
| **Budget**<br><br>Bankruptcy Rule 4001(c)(1)(B); Local Rule 4001-2(a)(iii) | The use of cash and proceeds from the DIP Financing is subjected to the Initial DIP Budget, a copy of which is attached to the Proposed Interim Order as **Exhibit B**, or any subsequent Approved Budget.<br><br>*See* Ratification Agreement, Sec. 5.2 |
| **Liens and Priorities**<br><br>Bankruptcy Rule 4001©(1)(B)(i) | The liens contemplated by the Proposed Interim Order in paragraphs (7), D.ii(3), and 8 and the Ratification Agreement shall follow the priorities set forth in paragraph 9 to the Proposed Interim Order, including that: |

6

|  | |
|---|---|
|  | Effective immediately upon the entry of this Interim Order, the Lender is hereby granted as collateral security for all the Obligations, first-priority postpetition security interests and liens (which shall immediately be valid, binding, permanent, continuing, enforceable and non-avoidable) on all of the, real, personal and mixed property, whether now owned or hereafter acquired of the Debtor, including, without limitation, any cash, any investments of such cash, deposit accounts, inventory, equipment, goods, general intangibles, accounts receivable, commercial tort claims, causes of action, insurance policies, other rights to payment, contracts, properties, plants, equipment, general intangibles, documents, instruments, interest in leaseholds, real property, patents, copyrights, trademarks, trade names, other intellectual property, equity interests, the proceeds of all of the foregoing, and all other Collateral, including the Salt Lake City Property, the Commercial Tort Claim Collateral related to the Commercial Tort Claim, the equity interests of the Skull Valley Joint Venture, and, subject to entry of the Final Order, the proceeds of the Debtor's claims and causes of action arising under sections 502(d), 544-549, 550 and 553 of the Bankruptcy Code (the "Avoidance Actions") whether received through judgment, avoidance or otherwise (collectively, the "Liens"). Subject to the Carve Out (as defined below), pursuant to section 364(c)(2) of the Bankruptcy Code, the Lender is hereby granted a first priority perfected security interest in and lien on all Collateral not otherwise subject to any valid, unavoidable, perfected liens and security interests.<br><br>Upon entry of the Proposed Interim Order, all Post-Petition Obligations, including for avoidance of doubt any and all Pre-Petition Obligations converted into Post-Petition Obligations, shall constitute an allowed superpriority administrative expense claim.<br><br>*See* Proposed Interim Order, ¶(7), D.ii.(3), 8 and 9 |
| **Carve-Out**<br><br>Bankruptcy Rule 4001(c)(1)(B); Local Rule 4001-2(a)(i)(F) | The Proposed Interim Order provides a carve-out for (i) until the issuance of a Carve Out Trigger Notice (which the Lender may only issue upon an Event of Default), the allowed and reasonable fees and expenses of the Professionals in the amounts set forth in the Budget, paid on a monthly basis; and (ii) following delivery of a Carve Out Trigger Notice, an aggregate amount not to exceed $450,000.<br><br>*See* Proposed Interim Order, ¶17 |

| | |
|---|---|
| **Postpetition Liens on Unencumbered Assets**<br><br>Local Rule 4001-2(a)(i)(G) | The Proposed Interim Order provides for valid, binding, continuing, enforceable, non-avoidable, automatically and fully perfected first priority liens on and security interests in all Collateral, including the Salt Lake City Property, the Commercial Tort Claim Collateral related to the Commercial Tort Claim, the equity interests of the Skull Valley Joint Venture and property that is not otherwise subject to any valid, enforceable, and unavoidable lien and security interest.<br><br>*See* Proposed Interim Order, ¶8. |
| **Milestones**<br><br>Local Rule 4001-2(a)(i)(H) | The Ratification Agreement includes certain milestones concerning this Chapter 11 case that, if not met, will result in an Event of Default.<br><br>*See* Ratification Agreement, Sec. 5.4. |
| **Payment of Fees**<br><br>Local Rule 4001-2(a)(i)(K) | The Proposed Interim Order provides that the reasonable and documented fees and expenses of the DIP Lender will be paid as set forth in the Ratification Agreement, and subject to the objection of the Debtor and the U.S. Trustee.<br><br>*See* Proposed Interim Order, ¶12. |
| **Limitations on Use of Funds to Investigate the Liens and Claims of the Prepetition Secured Parties**<br><br>Local Rule 4001-2(a)(L) | The Proposed Interim Order includes a limitation on the use of the proceeds of the DIP Financing and Cash Collateral with respect to claims against the DIP Lender but is subject to a $15,000 investigation budget.<br><br>*See* Proposed Interim Order, ¶17. |
| **Events of Default**<br><br>Bankruptcy Rule 4001(c)(1)(B); Local Rule 4001-2(a)(i)(M) | The Ratification Agreement contains events of default that are usual and customary for debtor-in-possession financing.<br><br>*See* Ratification Agreement, Sec. 7.15<br><br>Failure of Tranche B DIP Term Loan Participant to fund the purchase price of any Tranche B Term Loan Participation<br><br>*See* Ratification Agreement, Sec. 7.1 |
| **Roll Up**<br><br>Local Rule 4001-2(a)(i)(O) | The Proposed Interim Order provides for the conversion of up to $10,000,000 of Pre-Petition Obligations to Post-Petition Obligations in an amount equal to any and all sums advanced by the DIP Lender to the Debtor under the DIP Term Loan.<br><br>*See* Proposed Interim Order, (2). |

| | |
|---|---|
| **Validity of Prepetition Liens; Challenge Period**<br><br>Local Rule 4001-2(a)(i)(Q) | The Proposed Interim Order contains stipulations and releases concerning the validity of the loans, liens and obligations under the Pre-Petition Loan Agreement (the "Stipulations").<br><br>The Proposed Interim Order provides for a 45-day challenge period from the entry of the Proposed Interim Order for any party in interest to initiate an adversary proceeding.<br><br>*See* Proposed Interim Order ¶32. |
| **Liens on Avoidance Actions**<br><br>Bankruptcy Rule 4001(c)(1)(B)(xi); Local Rule 4001-2(a)(i)(U) | The Proposed Interim Order provides that the Liens will attach to Avoidance Actions and their proceeds.<br><br>*See* Proposed Interim Order ¶8 |
| **Sections 506(c) and 552(b) and Marshalling Waivers**<br><br>Bankruptcy Rule 4001(c)(1)(B); Local Rule 4001-2(a)(i)(V), (W), (X) | Subject to the entry of the Final Order, the Debtor seeks waiver of (a) their right to surcharge the Collateral pursuant to section 506(c) of the Bankruptcy Code, (b) the "equities of the case" exception under section 552(b) of the Bankruptcy Code as to the Collateral, and (c) the equitable doctrine of "marshalling" and other similar doctrines with respect to the Collateral as to the DIP Lender.<br><br>*See* Proposed Interim Order, D.(ii)5, ¶¶ 14, 29, 30. |
| **Waiver / Modification of the Automatic Stay**<br><br>Bankruptcy Rule 4001(c)(1)(B)(iv) | Pursuant to the Proposed Interim Order, the automatic stay provisions of section 362 of the Bankruptcy Code are modified to the extent necessary to implement and effectuate the terms of the Proposed Interim Order.<br><br>*See* Proposed Interim Order, ¶ |

## BASIS FOR RELIEF

14. The statutory predicates for the relief requested herein are sections 105, 361, 362, 363 and 364 of the Bankruptcy Code, Bankruptcy Rules 2002, 4001 and 9014 and Local Rule 4001-2.

15. The Debtor also requests the use of cash collateral in accordance with 11 U.S.C. § 363 in accordance with the Budget for its ordinary business operations.

16. Absent the relief requested herein, the Debtor's ability to conduct business in the ordinary course would be jeopardized. The Debtor may face interrupted operations which would be an immediate reduction in value of the property of the estate.

### I. Approval Under Section 364(c) of the Bankruptcy Code

17. The Debtor proposes to obtain the DIP Financing by providing to the DIP Lender security interests and liens as set forth above pursuant to section 364(c) of the Bankruptcy Code.

18. The statutory requirement for obtaining postpetition credit under section 364(c) is a finding, made after notice and hearing, that the debtor is "unable to obtain unsecured credit allowable under section 503(b)(1) of [the Bankruptcy Code]." 11 U.S.C. § 364(c). Section 364(c) financing is appropriate when the trustee or debtor in possession is unable to obtain unsecured credit allowable as an ordinary administrative claim. See In re L.A. Dodgers LLC, 457 B.R. 308, 312 (Bankr. D. Del. 2011) (denying motion for authorization to enter into postpetition credit facility where debtors could not prove that they were unable to obtain unsecured credit allowable as an administrative expense); In re Crouse Grp., Inc., 71 B.R. 544, 549 (Bankr. E.D. Pa. 1987) (secured credit under section 364(c)(2) of the Bankruptcy Code is authorized, after notice and hearing, upon showing that unsecured credit cannot be obtained).

19. Courts have articulated a three-part test to determine whether a debtor is entitled to financing under section 364(c) of the Bankruptcy Code. Specifically, courts look to whether:

   a. the debtor is unable to obtain unsecured credit under section 364(b), i.e., by allowing a lender only an administrative claim;

   b. the credit transaction is necessary to preserve the assets of the estate; and

   c. the terms of the transaction are fair, reasonable and adequate, given the circumstances of the Debtor and the proposed lender.

L.A. Dodgers, 457 B.R. at 312; see In re Ames Dep't Stores, 115 B.R. 34, 37-39 (Bankr. S.D.N.Y. 1990); Aqua Assocs., 123 B.R. 192, 195-96 (Bankr. E.D. Pa. 1991). As is fully set forth below the Debtor has satisfied each of these conditions.

**II.     The Debtor Does Not Have an Alternative to the DIP Financing**

20.    As set forth above, and as the Debtor will show at the Interim Hearing, financing of the type and in the amount needed in this case was not obtainable on an unsecured basis. There were no potential sources of postpetition financing for the Debtor, available on an expedited basis and on reasonable terms.

21.    In these circumstances, "[t]he statute imposes no duty to seek credit from every possible lender before concluding that such credit is unavailable." Bray v. Shenandoah Fed. Sav. & Loan Ass'n (In re Snowshoe Co.), 789 F.2d 1085, 1088 (4th Cir. 1986); see In re Phoenix Steel Corp., 39 B.R. 218, 222 (D. Del. 1984) (concluding the debtor satisfied its burden to show an inability to obtain credit on other terms through time and effort); see also Ames Dep't Stores, 115 B.R. at 37.

21.    A debtor need only demonstrate "by a good faith effort that credit was not available without" the protections afforded to potential lenders by sections 364(c) and 364(d) of the Bankruptcy Code. Snowshoe, 789 F.2d at 1088; see In re Antico Mfg. Co., 31 B.R. 103, 105 (Bankr. E.D.N.Y. 1983). Moreover, where there are few lenders likely to be able and willing to extend the necessary credit to a debtor, "it would be unrealistic and unnecessary to require [the debtor] to conduct . . . an exhaustive search for financing." In re Sky Valley, Inc., 100 B.R. 107, 113 (Bankr. N.D. Ga. 1988), aff'd, 99 B.R. 117 (N.D. Ga. 1989). Thus, the evidence introduced at the Interim Hearing to consider the relief requested in the Interim Order will satisfy the requirement of section 364(c) of the Bankruptcy Code that alternative credit was not available on

an unsecured basis allowable as an administrative claim under section 503(b)(1) of the Bankruptcy Code.

### III. The DIP Financing is Necessary to Preserve the Assets of the Debtor's Estate

22. The Debtor needs immediate access to financing. Access to substantial credit is necessary to meet the day-to-day costs associated with operating the Debtor's business and preserving value pending completion of the proposed sale process. Access to sufficient cash is therefore critical to the Debtor. A loss of confidence among suppliers, customers, employees and other interested parties in the Debtor's ability to access credit at this crucial time would have a material adverse impact on the Debtor's operations and its overall value.

23. For these reasons, immediate access to the funds available under the Ratification Agreement is critical to the Debtor. The ongoing smooth operations of the business demands that the Debtor not be delayed in receiving the beneficial effects of the DIP Financing; any substantial delay could have the same impact as denial of this Motion.

### IV. The Terms of the Ratification Agreement are Fair, Reasonable, and Appropriate

24. The DIP Financing reflects the exercise of the Debtor's sound and prudent business judgment. As described above, the Debtor was not able to obtain alternative financing on an unsecured basis, nor was it able to obtain any financing on terms as favorable as the terms negotiated with the DIP Lender. Thus, this financing is important to the company and the terms are reasonable in light of the necessity of the additional funding. In the Debtor's business judgment, the DIP Financing is the best option available for the Debtor to obtain much-needed liquidity in the circumstances of this chapter 11 case.

25. The Ratification Agreement provides that the security interests and administrative expense claims granted to the DIP Lender are subject to the Carve Out. In <u>Ames Dep't Stores</u>, 115 B.R. at 40, the bankruptcy court found that such "carve outs" are not only reasonable, but are

necessary to ensure that official committees and Debtor's estate will be assured of the assistance of counsel. Further, ensuring payment of US Trustee quarterly fees also demands this necessity.

26. The terms and conditions of the Ratification Agreement are fair and reasonable and were negotiated by the parties in good faith and at arm's-length. The interest rate under the Ratification Agreement is within the range of market rates and fair and reasonable in light of the credit profile of the Debtor, the nature and extent of the DIP Collateral, and the business risks associated with lending to the Debtor in this chapter 11 case. Because the Ratification Agreement has been negotiated in good faith and at arm's-length and no consideration is being provided to any party for obligations arising under the Ratification Agreement, other than as disclosed therein, the Debtor requests that the Ratification Agreement be accorded the benefits of section 364(e) of the Bankruptcy Code.

V.    **Application of the Business Judgment Standard**

27. As described above, after appropriate investigation and analysis, and given the exigencies of the circumstances, the Debtor's management has concluded that alternative credit of the type and in the amount required by the Debtor is not available on an unsecured basis. Bankruptcy courts routinely defer to a debtor's business judgment on most business decisions, including the decision to borrow money, unless such decision fails the arbitrary and capricious standard. See Trans World Airlines, Inc. v. Travelers Int'l AG (In re Trans World Airlines, Inc.), 163 B.R. 964, 974 (Bankr. D. Del. 1994) (noting that approval of interim loan, receivables facility, and asset-based facility "reflect[ed] sound and prudent business judgment . . . [was] reasonable under the circumstances and in the best interest of [the debtor] and its creditors"); In re After Six, Inc., 154 B.R. 876, 882 (Bankr. E.D. Pa. 1993) (debtor "is entitled to some free reign in fulfilling its perceived mission of . . . keeping an ongoing business afloat"). Indeed, "[m]ore exacting

scrutiny [of the debtor's business decisions] would slow the administration of the Debtor's estate and increase its cost, interfere with the Bankruptcy Code's provision for private control of administration of the estate and threaten the court's ability to control a case impartially." Richmond Leasing Co. v. Capital Bank, N.A., 762 F.2d 1303, 1311 (5th Cir. 1985).

28. In general, a bankruptcy court defers to a debtor's business judgment regarding the need for and the proposed use of funds, unless such decision is arbitrary and capricious. In re Curlew Valley Assocs., 14 B.R. 506, 511-13 (Bankr. D. Utah 1981); see After Six, 154 B.R. at 882-83. Courts generally will not second guess a debtor's business decisions when those decisions involve "a business judgment made in good faith, upon a reasonable basis, and within the scope of [its] authority under the [Bankruptcy] Code." Curlew Valley Assocs., 14 B.R. at 513-14 (footnote omitted).

29. The Debtor has exercised sound business judgment in determining that the DIP Financing is not only appropriate, it is necessary. Furthermore, the Debtor has satisfied the legal prerequisites to borrow under the Ratification Agreement. The terms of the Ratification Agreement are fair and reasonable and are in the best interests of the Debtor's estate. Accordingly, the Debtor should be granted authority to enter into the Ratification Agreement, and borrow funds on the secured basis described above, establish that it should be granted the authority to pursuant to section 364(c) of the Bankruptcy Code, and to take the other actions contemplated by the Ratification Agreement and as requested herein.

30. Without the liquidity provided by the Ratification Agreement, the Debtor may be unable to pay suppliers, employees, and other constituencies that are essential to the operation of the business in the ordinary course. The Debtor's management has exercised its best business judgment in negotiating the Ratification Agreement that is presently before the Court.

## VI. Request for Modification of Automatic Stay

31. Section 362 of the Bankruptcy Code provides for an automatic stay upon the filing of a bankruptcy petition. The proposed Ratification Agreement contemplates a modification of the automatic stay (to the extent applicable), to permit the exercise of all rights and remedies provided for in the Ratification Agreement upon the occurrence and during the continuation of any Event of Default, provided that prior to the exercise of any enforcement remedies against the DIP Collateral, the DIP Lender shall be required to give five (5) days' notice to the Debtor, any official unsecured creditors' committee's counsel, and the U.S. Trustee as provided for in section 3 of the proposed Interim Order. Provisions of this kind allowing for a modification of the automatic stay are typically features of postpetition debtor in possession financing facilities and, in the Debtor's business judgment, are reasonable under the present circumstances.

## VII. Request for Immediate Interim Relief

32. Bankruptcy Rules 4001(b) and 4001(c) provide that a final hearing on a motion to obtain credit may not be commenced earlier than 14 days after the service of such motion. Upon request, however, this Court is empowered to conduct a preliminary expedited hearing on the motion, and to authorize the obtaining and use of credit to the extent necessary to avoid immediate and irreparable harm to a debtor's estate pending a final hearing. In examining requests for interim relief under this rule, courts apply the same business judgment standard applicable to other business decisions. See, e.g., In re Simasko Prod. Co., 47 B.R. 444, 449 (Bankr. D. Colo. 1985). After the 14-day period, the request for financing is not limited to those amounts necessary to prevent destruction of the debtor's business. A debtor is entitled to borrow those amounts that it believes prudent in the operation of its business. See id. at 449; Ames Dep't Stores, 115 B.R. at 36.

33. Pending the Final Hearing, the Debtor requires immediate use of a portion of funds provided for in the Ratification Agreement for, among other things, the Debtor's working capital needs. It is essential that the Debtor immediately has the ability to pay for postpetition expenses, as well as the prepetition expenses approved in the various first-day orders pending before this Court, to minimize the damage occasioned by their constrained liquidity.

34. Absent immediate use of a portion of the DIP Financing, the Debtor may become unable to pay ongoing operational expenses and will not be able to continue to make payments to key constituencies, such as employees, that will be integral to the ordinary operation of the Debtor's businesses. Consequently, if interim relief is not obtained, the Debtor's assets will be jeopardized immediately and irreparably harmed, to the detriment of the Debtor's estates, its creditors, and other parties in interest.

35. As noted above, the Debtor is unable to obtain unsecured credit allowable as an administrative expense under section 503(b)(1) of the Bankruptcy Code in an amount sufficient to effectuate the sale of its operations. Without the DIP Financing, the Debtor's objective of reorganizing these companies may fail. The terms and conditions of the Ratification Agreement are fair and reasonable, and were negotiated by well-represented parties in good faith and at arm's-length. In these circumstances and, importantly, in light of the risk of possible material irreparable harm to the Debtor's operations, the Debtor respectfully submits the granting of the relief requested by this Motion is warranted.

## NOTICE

36. Notice of this Motion will be provided to: (a) the U.S. Trustee; (b) the 20 largest unsecured creditors of the Debtor; (c) Wells Fargo Bank, National Association; (d) any other entity asserting recorded liens against any of the Debtor's assets, and their counsel, if known; (e) the

Internal Revenue Service and (f) any party filing a notice pursuant to Bankruptcy Rule 2002; and in compliance with Bankruptcy Rules 4001(b) and (c) and the Local Rules. The Debtor respectfully submits that, in light of the nature of the relief requested, no other or further notice need be given.

WHEREFORE, the Debtor respectfully requests that this Court enter the Interim Order, substantially in the form attached hereto as <u>Exhibit A</u>, granting the relief requested in this Motion on an interim basis and such other and further relief as may be just and proper.

| | |
|---|---|
| Dated: September 10, 2025 | GELLERT SEITZ BUSENKELL & BROWN, LLC |
| | |
| | <u>/s/ Michael Busenkell</u> |
| | Michael Busenkell (DE 3933) |
| | Margaret M. Manning (DE 4183) |
| | Michael Van Gorder (DE 6214) |
| | 1201 North Orange Street, Suite 300 |
| | Wilmington, Delaware 19801 |
| | Telephone: (302) 425-5800 |
| | Facsimile: (302) 425-5814 |
| | Email: mbusenkell@gsbblaw.com |
| |        mmanning@gsbblaw.com |
| |        mvangorder@gsbblaw.com |
| | |
| | *Proposed Counsel to the Debtor and Debtor-in-Possession* |