**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>US MAGNESIUM LLC,<br><br>Debtor. | Chapter 11<br><br>Case No. 25-11696-BLS<br><br>Re: Docket No. 10 |

**UTAH DIVISION OF FORESTRY, FIRE, AND STATE LANDS' OBJECTION TO DEBTOR'S MOTION FOR INTERIM AND FINAL ORDERS (I) AUTHORIZING THE DEBTOR TO (A) OBTAIN POSTPETITION FINANCING, (B) GRANT SENIOR SECURED PRIMING LIENS AND SUPERPRIORITY ADMINISTRATIVE EXPENSE CLAIMS AND (C) UTILIZE CASH COLLATERAL; (II) GRANTING ADEQUATE PROTECTION; (III) MODIFYING THE AUTOMATIC STAY; (IV) SCHEDULING FINAL HEARING; AND (IV) GRANTING RELATED RELIEF**

The Utah Division of Forestry, Fire, and State Lands ("FFSL"), by its undersigned attorneys, respectfully submits this objection to the *Debtor's Motion for Interim and Final Orders (I) Authorizing the Debtor to (A) Obtain Postpetition Financing, (B) Grant Senior Secured Priming Liens and Superpriority Administrative Expense Claims and (C) Utilize Cash Collateral; (II) Granting Adequate Protection; (III) Modifying the Automatic Stay; (IV) Scheduling Final Hearing; and (IV) Granting Related Relief* [Docket No. 10] (the "Motion") filed by US Magnesium LLC (the "Debtor") and states as follows:

**Preliminary Statement**

1. What is before the Court is a blatant DIP-to-own scheme concerning the US Magnesium Superfund Site. See Consent Decree, Civ. Case No. 2:01-cv-00040-DAK, Doc. No. 456 (C.D. UT, June 30, 2021).[1] The US Magnesium Superfund Site has

---

[1] See also U.S. EPA, Superfund Site: US MAGNESIUM TOOLE COUNTY, UT, https://cumulis.epa.gov/supercpad/cursites/csitinfo.cfm?id=0802704 (providing general information concerning the state of the US Magnesium Superfund Site).

1

the unfortunate distinction of being on the National Priorities List. Unsurprisingly, the Debtor's filings do not mention that it created, and formerly operated, on a Superfund Site.

2. The Debtor is not in compliance with its obligations under the Consent Decree, as is evidenced by the EPA notices of violation attached as Exhibit A.

3. The Debtor is also not in compliance with its monitoring and reporting requirements with the Utah Division of Water Quality.

4. The Debtor admits in its filings that it has not produced magnesium for many years. The Debtor has not been a good steward of the land on which it formerly operated, much of which is the sovereign land of the State of Utah. Among other things, there is an unpermitted toxic waste lagoon on State lands comprised of water filled with acid, chlorine, chromium, PCBs, and a variety of other toxins. This toxic waste lagoon is within a stone's throw of Great Salt Lake, which lake is also situated on the sovereign land of the State of Utah.

5. Given the plethora of environmental problems with the land which the Debtor has heavily polluted over the past many years, it is highly unlikely any potential buyer would purchase its business other than the Debtor's proposed DIP lender, which just happens to be related to the Debtor's owners.

6. This case appears headed to a rapid Bankruptcy Code § 363 sale, engineered for the Debtor's owners to take ownership of the Debtor's assets, free and clear of liens, claims and interests, while creditors are likely to receive a pittance, and environmental problems with the Debtor's former operation continue to fester.

**OBJECTIONS TO INTERIM RELIEF**

7. **The Budget does not contemplate any cash inflow.** The Debtor's budget shows no cash receipts for the period it asks to approve DIP financing but asks for $12,500,000 in post-petition financing. According to the Budget, all the Debtor's receipts are swept to the "Revolver Loan" which is not clearly defined in the Motion, or supporting declarations. FFSL is left to assume, based on Thayer's Declaration, which reference a "Lockbox" account at Wells Fargo for the collection of receivables that is swept daily by Wells Fargo and "applied to the outstanding balance of the existing Revolving Credit Facility," that the cash receipts are applied to a revolving line of credit extended by Wells Fargo. See Thayer Decl., ¶ 59.

8. **Material discrepancies among the evidence presented to the Court.** After the first week, the Budget presented by the debtor projects approximately $25,000 a week from collections on "Mag Chloride", but Thayer's declaration states that "[the Debtor] is not producing magnesium and has not done so in 3 years." Thayer Decl., ¶ 35. The Court should not be inclined to entertain such inconsistencies.

9. **The Budget fails to account for any royalties to FFSL.** FFSL maintains that the Debtor and FFSL did not enter into an appropriate royalty agreement, and thus the Debtor is not properly authorized under Utah law to sell Lithium. But setting that aside, even as the Debtor tells it the Budget does not comply with the royalty obligations that Thayer testifies that the Debtor owes FFSL for each ton of lithium sold. See Thayer Decl., ¶ 43.  Attached as Exhibit B are cancellations of the Lithium MOU.

10. **The Court should not approve any 506(c) waiver**.  Under the present circumstances, where by the Debtor's own statements most of its assets are subject to

3

over $112 million in existing secured claims, it is most definitely conceivable that the only means to realize value from the Debtor's assets will require an independent trustee to sell those assets and potentially expend substantial amounts to preserve, protect, and sell assets subject to existing secured claims.  It would be entirely inappropriate for the estate to surrender all rights under Section 506(c) on day one of the case.

11. **This case is blatant DIP-to-own charade.**  The direction and benefit of this case is obvious from the outset.  The Debtor will seek approval to grant senior liens in favor of its owner, then conduct a "robust" marketing process.  The list of parties eager to purchase Superfund sites and take subject to the Debtor's obligations under the Consent Decree is not long.  The Debtor's owner through its stalking horse bid will be the only interested party, and will acquire the Debtor's assets free and clear of liens, claims, and interests, leaving behind only a pittance for creditors.  The Court should understand this at the outset; this is not a reorganization case in any legitimate sense of that word.  The Court should deny the Motion in its entirety.

12. **The Court should not approve a "roll up" of prepetition debt**.  The Debtor proposes that $10 Million of prepetition obligations be rolled up into post-petition obligations while not providing any further value to other creditors or the estate as a whole. Again, the budget reflects no cash flow, there is no clear benefit to the roll up other than funneling estate funds into the hands of the lender. The roll up in this case is not to incentivize debtor-in-possession financing but to lift one creditor above all others. All while the whole goal of the case is slight of hand such that a related entity will acquire the Debtor's assets without liabilities. See Thayer Decl., ¶ 50.

4920-9649-2904, v. 3

13. **The Court should not approve any liens on Chapter 5 causes of action.** Especially under the present circumstances, where the Debtor admits that it has engaged in financial transactions with its parent that are in the millions of dollars, until those transactions are made transparent and scrutinized, there is a substantial risk that the Court would be permitting the DIP lender to take a lien on causes of action against the DIP lender.

14. **The Court should not approve any liens on previously unencumbered assets, including and especially any interests in Skull Valley.** What value remains in the Debtor's business should not be given on day one of the case to the Debtor's owner. This is true especially for the Debtor's interests in the Skull Valley entity mentioned in the DIP financing documents, which, upon information and belief, holds very substantial and valuable water rights that might be to this point unencumbered.

**CONCLUSION**

FFSL only learned about this bankruptcy case at approximately 11:00 am eastern time today. Under significant time pressure it has done its best to put in writing its most pressing concerns about the Motion to avoid, to the greatest extent possible, surprise to the Court. Because of that, FFSL reserves all rights to present additional objections to the Motion, both on an interim and on a final basis.

The Court should be aware that this is no ordinary Chapter 11 reorganization case. The Debtor has gone through this charade previously, when it filed Chapter 11 bankruptcy 24 years ago in the Southern District of New York, and used this same playbook: file bankruptcy as far away as possible from its Utah operations (or now, former operations), cleanse the company's assets through a Bankruptcy Code § 363 sale to its owner, and thus escape payment of its debts. FFSL reserves all additional rights available to it, including seeking relief from stay to enforce its police and regulatory powers to remedy environmental harms caused by the Debtor, and to seek the conversion of this case to a Chapter 7 liquidation, the dismissal of the case, or the appointment of a Chapter 11 trustee.

Dated:    September 11, 2025
Salt Lake City, Utah

DEREK E. BROWN
UTAH ATTORNEY GENERAL

*/s/Michael E. Begley*
Michael E. Begley
Trevor C. Lang

*Attorney for Utah Division of Forestry, Fire and State Lands*

6

4920-9649-2904, v. 3