**EXHIBIT 2**

**(Cumulative Redline of
Proposed Interim Order)**

**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| In re: | Chapter 11 |
| ~~BY HOTEL SPE-3 LLC, a Delaware Limited Liability Company, 1101 WABASH DEVELOPMENT MEZZ, LLC, a Delaware Limited Liability Company, WABASH 11TH MEZZ LLC, a Delaware Limited Liability~~ | Case No. 26-10324 (JKS) |
| | (Joint Administration Requested) |

Formatted Table

**INTERIM ORDER (A) AUTHORIZING POSTPETITION USE OF CASH COLLATERAL, (B) GRANTING ADEQUATE PROTECTION, (C) SCHEDULING A FINAL HEARING PURSUANT TO BANKRUPTCY RULE 4001(B), AND (D) GRANTING RELATED RELIEF**

The above-captioned debtors and debtors-in-possession (collectively, the "Debtors"), having filed a motion (the "Motion")[2] for entry of an interim order (the "Interim Order") and final order (the "Final Order") pursuant to section 105, 361, 362, and 363 of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (as amended, the "Bankruptcy Code"), the Court having considered the Motion, the Declarations of Su-Mei Yen and Ted Mandigo, and the evidence submitted at the interim hearing held before the Court on March __, 2026 to consider entry of this Interim Order, it appearing that approval of the interim relief requested in the Motion is necessary to avoid immediate and irreparable harm to the Debtors pending the Final Hearing and is otherwise fair and reasonable ~~and in the best interests of the Debtors, their creditors and their estates~~ pending the Final Hearing, and essential for the continued operation of Debtors' businesses, and after due deliberation and consideration, and good and sufficient cause appearing therefor:

---

[1] The Debtors in these chapter 11 cases and the last four digits of their respective identification numbers are By Hotel SPE-3 LLC (3619); 1101 Wabash Development Mezz, LLC (9294); Wabash 11th Mezz LLC (4278); Pacific Tai Mezz LLC (3717); 1101 Wabash Development SPE LLC (9201); Wabash 11th LLC (3098); 1101 Wabash Development LLC (3365); Pacific Tai, LLC (9675); and SB Yen's Management Group, Inc. (1132). The location of the Debtors' corporate headquarters and the Debtors' service address is 806 N York Rd., Hinsdale, IL 60521.

[2] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Motion.

171371787.~~2~~4

**THE COURT HEREBY MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW:**

A.      On March 8, 2028, (the "Petition Date"), the Debtors filed petitions for relief under Chapter 11 of the United States Bankruptcy Code (the "Chapter 11 Cases"). The Debtors are in possession of their property and continue to operate and manage their businesses as debtors-in-possession pursuant to §§ 1107(a) and 1108 of the Bankruptcy Code. No request has been made for the appointment of a trustee or examiner. As of the date hereof, no official committee of unsecured creditors (together with any other statutory committee, a "Committee") has been appointed in these Chapter 11 Cases.

B.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334. The Court further finds that this proceeding is a core proceeding pursuant to 28 U.S.C. § 157(b)(2) and the Court may enter a final order hereon consistent with Article III of the U.S. Constitution. The Court further finds that venue of this proceeding is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409.

C.      The statutory bases for the relief requested herein are sections 105(a), 361, 362 and 363 of the Bankruptcy Code, and Rule 4001 of the Federal Rules of Bankruptcy Procedure (as amended, the "Bankruptcy Rules"), and Rule 4001-2 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (as amended, the "Local Rules").

D.      Notice of the Interim Hearing and the relief requested in the Motion has been given in accordance with the provisions of Local Rule 9013-1(m) to (i) the Office of the United States Trustee (ii) Acore Capital Mortgage, LP in its capacity as Administrative Agent ("Agent") under the Credit Agreement (as defined below), and (iii) the creditors holding the twenty largest

171371787.24 2

unsecured claims against the Debtors. Under the circumstances, such notice of the Interim Hearing and the relief requested in the Motion complies with all relevant provisions of the Bankruptcy Rules and Local Rules and no other or further notice need be provided.

E.      As of the Petition Date, Debtors Wabash 11th LLC, 1101 Wabash Development LLC, and Pacific Tai, LLC were parties to that certain Loan Agreement dated August 30, 2019 (as amended, modified, restated, or supplemented, the "Credit Agreement" and together with all other documents, instruments, and agreements delivered in connection with the Credit Agreement, as amended modified, restated, or supplemented, collectively, the "Loan Documents") by and among Borrower, Agent, and the Lenders (as defined in the Credit Agreement, collectively, the "Senior Lenders" and together with Agent, collectively, the "Senior Creditors").  Amounts due under the Loan Documents, if any, shall be referred to as the "Obligations".  The Obligations are purportedly secured by liens (the "Pre-Petition Liens") on assets of the Debtors as set forth in the Loan Documents (the "Collateral") pursuant to a mortgage dated August 30, 2019.

F.      As of the Petition Date, the Debtors had five bank accounts in total, including (i) three operating accounts, comprised of one operating account with Huntington National Bank (Acct. No. ending 2220), and two operating accounts with International Bank of Chicago (Acct. Nos. ending 2828 and 2801) (collectively, the "Operating Accounts" and individually an "Operating Account"), and (ii) two lockbox accounts with Key Bank (Acct. Nos. ending 7999 and 8539) (account ending in 8539 is a CMA lockbox) (collectively, the "Lockbox Accounts," and together with the Operating Accounts, the "Bank Accounts").  Agent may have a security interest in one or more of the Bank Accounts.  Prior to the Petition Date, Agent may have been able to offset the amounts in one or more of the Bank Accounts.

171371787.24 3

G.      The Debtors have a pressing need for the immediate use of Cash Collateral (as defined below) to continue operating as a going concern (including funding their day-to-day operations which includes payroll, vendors, and the costs of these Chapter 11 Cases), minimize disruption, rebut any skepticism regarding the Debtors' ability to operate as a going-concern and stabilize business operations in response to these Chapter 11 Cases. In the absence of the immediate use of the Cash Collateral, serious and irreparable harm to the Debtors and their respective estates will occur and impair the Debtors' efforts to reorganize.

H.      The Debtors reasonably and in good faith believe that the use of the Cash Collateral (together with the DIP Facility, as defined and described in the Debtors' *Emergency Motion for Entry of Interim and Final Orders Under Bankruptcy Code Section 364(C)(3) Authorizing the Debtors to Obtain Junior Secured Postpetition Financing and Request for Interim and Final Hearings* [Doc. 7]) is sufficient to fund all projected, legitimate, and allowable expenses of this chapter 11 case from the Petition Date through the period to which the Budget (as defined below) pertains;

I.      Pursuant to the Loan Documents, the Senior Creditors may be entitled to adequate protection of their interests in the Collateral and the proceeds thereof.

J.      Based on the record presented to the Court by the Debtors at the Interim Hearing, the terms of the use of Cash Collateral as set forth herein are fair and reasonable, reflect the Debtors' exercise of their prudent business judgment consistent with their fiduciary duties, and are supported by reasonably equivalent value and fair consideration.

K.      The Debtors have requested immediate entry of this Interim Order pursuant to Bankruptcy Rules 4001(b)(2) and 4001(d). The permission granted herein to use the Cash Collateral is necessary to avoid immediate and irreparable harm to the Debtors. This Court

171371787.24 4

concludes that entry of this Interim Order is in the best interest of the Debtors' estates and their creditors.

**IT IS THEREFORE ORDERED THAT:**

1.      The Motion is hereby GRANTED to the extent set forth in this Interim Order. Any objections to the Motion with respect to entry of this Interim Order to the extent not withdrawn, waived or otherwise resolved, and all reservation of rights included therein, are hereby denied and overruled.

2.      Unless otherwise ordered by the Court or an extension is otherwise agreed to in writing by Debtors and the Senior Creditors and subject to the Carve-Out (as defined below) for wind-down expenses after the occurrence of a Termination Event (as defined below), Debtors are authorized to use Cash Collateral as set forth in this Interim Order commencing from the Petition Date through and including (but not beyond) the earliest to occur of (i) the date on which a Termination Event shall occur, (ii) anyMay 5, 2026, if a final order modifying Debtors' authority toauthorizing use Cash Collateralof cash collateral has not been entered, and (iii) the close of business on May 5, 2026date that is thirty (30) days following confirmation of a chapter 11 plan; *provided* that such use of Cash Collateral shall be in accordance with the Budget.

3.      The Debtors are granted limited use of Cash Collateral as follows:

   a.  All Cash Collateral (as defined in section 363 of the Bankruptcy Code) that the Debtors had on hand as of the Petition Date or have received since the Petition Date, including all products and proceeds of (i) all Collateral and (ii) all funds in all bank accounts, all of which constitute Cash Collateral, is deposited or shall be deposited into the Operating Accounts maintained at Huntington Bank. The property described in the preceding

171371787.24 5

sub-paragraphs (i) and (ii) and all proceeds thereof shall hereafter be referred to collectively as "Cash Collateral." All Cash Collateral that Debtors receive subsequent to the entry of this Interim Order shall also be swept daily into an Operating Account. No money shall be withdrawn by Debtors from the Operating Accounts except as expressly provided hereinafter in this Interim Order.

b. Absent the prior express consent of Agent, the use of any Cash Collateral shall be restricted to payment, from the Operating Accounts, in the ordinary course of business, only of the expenses specified in the budget attached hereto as Exhibit 1  (as the same may be amended or modified from time with the consent of the Secured Creditors, the "Budget"; all references herein to the "Budget" shall mean as the same is subject to the Permitted Variances (as defined below)); *provided*, *however*, absent Agent's prior written approval, Debtors are permitted during each ~~weekly~~monthly period covered by the Budget ~~(i) to exceed any category in the Budget by up to ten percent (10%) and (ii)~~ to exceed total outstanding disbursements as set forth in the Budget by up to ~~ten~~twenty percent (~~10~~20%) ("Permitted Variances").

c. The Debtors have represented that the Budget represents only post-petition expenses that must be paid in the ordinary course or to avoid immediate and irreparable harm.

d. Under no circumstances shall Debtors:

171371787.~~2~~4 6

       i.     Use any Cash Collateral for any purpose other than those authorized by this Interim Order and as outlined in the Budget without the written consent of Agent; or

      ii.    Use Cash Collateral to the extent that expenses listed in the Budget are not actually incurred.

4.     As adequate protection for the respective interests of the Senior Creditors, for, and solely to the extent of, any diminution in the value of the Collateral resulting from (i) the Debtors' use of Cash Collateral, (ii) the use, sale, or lease of the Collateral (other than Cash Collateral) pursuant to section 363(c) of the Bankruptcy Code, and (iii) the imposition of the automatic stay pursuant to section 362(a) of the Bankruptcy Code, Agent is hereby granted, on behalf of itself and for the benefit of the Senior Lenders, a continuing replacement security interest in, and lien (collectively, the "Replacement Liens"), which Replacement Liens shall have the same priority, validity, force, extent, and effect as the liens that they replace, effective as of the Petition Date without the necessity of Agent taking any further action, upon the right, title and interest in the following property of the Debtor:

     a.   All pre-petition Collateral of Senior Creditors, including all proceeds, profits, rents, and products thereof; and

     b.   Property acquired by the Debtors after the Petition Date, which is of the same nature, kind, and character as the pre-petition Collateral, and all proceeds, profits, rents, and products thereof.

5.     The Replacement Liens provided herein shall be deemed automatically valid and perfected with such priority as provided in this Interim Order, without any further notice or act by any party that may otherwise be required under any other law. Notwithstanding the foregoing, the

171371787.24 7

Debtors shall, upon request of Agent, execute and deliver such documents as may be reasonably requested by Agent to create and perfect the security interests and liens described herein under applicable non-bankruptcy law and Agent shall be authorized to file and record such documents and take such other actions as may be necessary to perfect such security interests and liens under all such laws and to correctly describe the collateral subject thereto.

6.      As additional adequate protection, the Debtors shall make monthly interest payments (each, a "Monthly Interest Adequate Protection Payment") to Agent, for the benefit of the Senior Lenders of $153,272.28. This provision shall control over any inconsistent terms of the Budget. Each Monthly Interest Adequate Protection Payment shall be delivered to Agent on the first day of each month following entry of this Interim Order until the occurrence of a Termination Event (as defined herein below).

7.      Senior Creditors shall have the full protection of section 363(m) of the Bankruptcy Code with respect to the debts, obligations, liens, and security interests created or authorized by this Interim Order in the event that this Interim Order or any other authority contained or created herein is vacated, reversed, or modified on appeal or otherwise by any court.

8.      Nothing contained in this Interim Order shall be deemed a finding with respect to the sufficiency of the adequate protection (as that term is defined in section 361 of the Bankruptcy Code) of the interests of Senior Creditors or prejudice the right of Senior Creditors to request adequate protection in addition to that provided under the terms of this Interim Order.

9.      The Debtor shall timely file all required reports and make all required payments due to the U.S. Trustee during the pendency of the Chapter 11 Cases.

10.      Any provision of this Interim Order to the contrary notwithstanding, the Cash Collateral may be used for payment of the following (the "Carve-Out"): (a) allowed professional

fees and disbursements of Debtors' professionals incurred on or prior to receipt by Debtors of written notice of the occurrence of a Termination Event (i) by the professionals retained, pursuant to Bankruptcy Code sections 327 or 1103(a) and (ii) by professionals retained, pursuant to Bankruptcy Code sections 327 or 1103(a), by the Committee, if any, in an amount not to exceed the aggregate amount of $50,000, (b) allowed professional fees and disbursement incurred following receipt by Debtors of a notice of the occurrence of a Termination Event by the professionals retained, pursuant to Bankruptcy Code sections 327 or 1103(a), by the Debtors and the Committee not to exceed the aggregate amount of $250,000, and (c) quarterly fees required to be paid pursuant to 28 U.S.C. § 1930(a)(6) and any fees payable to the Clerk of the Bankruptcy Court. Notwithstanding anything herein to the contrary, no Cash Collateral or any portion of the Carve-Out may be used to assert any claims or causes of action against the Senior Creditors or object to or contest in any manner, or raise any defenses to, the validity, perfection, priority, extent, or enforceability of the Obligations, the Pre-Petition Liens, or the Replacement Liens granted herein; provided, however, that up to $25,000 may be used by the Committee, if any, to investigate any such claims or causes of action.

11.    Each of the following shall constitute a "Termination Event" under this Interim Order:

　　　　　　a.   The Final Order is not entered on or before May 5, 2026.

　　　　　　a.b.Failure of Debtors to abide by the terms, covenants, and conditions of this Interim Order or the Budget;

　　　　　　b.c.The use of Cash Collateral for any purpose not authorized by this Interim Order;

　　　　　　c.   Failure of Debtors to timely pay fees of the U.S. Trustee;

171371787.24 9

d. Appointment of a Chapter 11 trustee or the appointment of an examiner with expanded powers;

e. Termination of Debtors' franchise agreements with Hilton or Best Western;

f. Conversion of the Chapter 11 cases to cases under Chapter 7 of the Bankruptcy Code;

g. The Chapter 11 Cases are dismissed; or

h. The entry of an order of this or any other Court (other than the Final Order) reversing, staying, vacating or otherwise modifying in any material respect the terms of this Interim Order.

12. Upon Debtors' receipt of notice of the occurrence of a Termination Event, Debtors are prohibited from using the Cash Collateral until further order of this Court other than as set forth in this Interim Order.

13. Where required, notice shall be provided to Debtors' counsel via email, facsimile, U.S. Mail or overnight delivery service as follows, and shall be effective when deposited or transmitted:

Lewis Brisbois Bisgaard & Smith LLP
500 Delaware Avenue Suite 700
Wilmington, DE 19801
Attention:     Rafael Zahralddin
               Minyao Wang
Email:         rafael.zahralddin@lewisbrisbois.com
               minyao.wang@lewisbrisbois.com

14. If any or all of the provisions of this Interim Order are modified, vacated, or stayed by subsequent order of this or any other Court, such stay, modification, or vacation shall not affect the validity and enforceability of any security interest or lien granted or authorized by this Interim Order prior to such stay, modification, or vacation. The reversal or modification on appeal of any

171371787.24 10

or all of the provisions of this Interim Order shall not affect the validity or enforceability of any security interest or lien granted or authorized by this Interim Order.

15. Any post-petition payments made by Debtors to Agent shall be applied to the indebtedness in accordance with the Loan Documents, subject to reapplication or redirection of such funds in a manner directed by the Court in accordance with the Bankruptcy Code. The automatic stay of section 362 of the Bankruptcy Code is hereby lifted to allow Agent to effectuate the terms of this paragraph.

16. Nothing contained in this Interim Order shall be deemed to terminate, modify, or release any obligations of any non-debtor with respect to its obligations under any of the Loan Documents.

17. Debtors' ability to use Cash Collateral under this Order shall terminate on the earlier of: (i) May 5, 2026, at 5:00 p.m. eastern, (ii) the occurrence of a Termination Event, and (iii) entry of a final or additional interim order regarding Cash Collateral.

18.17. Notwithstanding Bankruptcy Rule 4001(a)(1), this Interim Order is not stayed and shall be effective upon the date of its entry on the docket.

19.18. The automatic stay of section 362 of the Bankruptcy Code is hereby modified to permit the performance of each and every right and obligation set forth in this Interim Order.

20.19. Debtors are authorized, and hereby ordered, to pay quarterly fees to the United States Trustee.

21.20. This Interim Order shall constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052 and shall take effect immediately, notwithstanding anything to the contrary proscribed by applicable law.

171371787.24 11

22.21.  The Court has and will retain jurisdiction to enforce this Interim Order according to its terms.

23.22.  The Final Hearing will be held on [INSERT DATE OF FINAL HEARING], 2026 at [TIME OF FINAL HEARING]. The Debtors shall, on or before March 13, 2026, mail copies of a notice of the entry of this Interim Order, together with a copy of this Interim Order and a copy of the Motion, to the parties having been given notice of the Interim Hearing, to any party that has filed prior to such date a request for notices with this Court and to counsel for the Committee (if any) and any other statutory committee of unsecured creditors appointed pursuant to Bankruptcy Code section 1102. The notice of entry of this Interim Order shall state that any party in interest objecting to the entry of the Final Order authorizing the use of Cash Collateral shall file written objections with the United States Bankruptcy Court Clerk for the District of Delaware no later than 4:00 p.m. (ET) on March 27, 2026, and objections shall be served so that the same are received on or before such date to: (a) LEWIS BRISBOIS BISGAARD & SMITH LLP, Attn: Rafael Zahlarddin and Minyao Wang, 500 Delaware Avenue,  Suite 700, Wilmington, DE 19801, proposed counsel for the Debtors; (b) counsel to the Agent; (c) THE OFFICE OF THE UNITED STATES TRUSTEE, Attn: Joseph McMahon, 844 King Street, Suite 2207, Lockbox 35, Wilmington, Delaware 19801; and (d) counsel for the Committee, if any.

Dated: _____, 2026
       Wilmington, Delaware

                               _____
                               UNITED STATES BANKRUPTCY JUDGE

171371787.24 12

171371787.24 13