# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| *In re* | : Chapter 11 |
| | : |
| US MAGNESIUM LLC,[1] | : Case Number 25-11696 (BLS) |
| | : |
| Debtor. | : Hearing Date: Oct. 16, 2025 at 10 am |
| | : |
| | : Objection Deadline: Oct. 12, 2025 9 pm |
| | : |
| | : D.I.: 142 |

**THE UNITED STATES' RESPONSE TO THE MOTION OF THE
OFFICIAL COMMITTEE OF UNSECURED CREDITORS FOR
ENTRY OF AN ORDER (I) CONVERTING THE DEBTOR'S CHAPTER 11
CASE TO A CASE UNDER CHAPTER 7 OF THE BANKRUPTCY CODE**

---

[1] The last four digits of Debtor US Magnesium LLC's tax identification number is 5446. The location of the Debtor's principal place of business and the Debtor's service address is 238 N. 2200 W., Salt Lake City, Utah 84116.

1

**TABLE OF CONTENTS**

INTRODUCTION ..................................................................................................................................1

LEGAL STANDARD..........................................................................................................................3

ARGUMENT .......................................................................................................................................4

I.      This Case Does Not Meet the Bankruptcy Code's Good Faith Requirement. ...........................................................................................................4

          A.      US Magnesium Filed this Case Without a Valid Bankruptcy Purpose.................................................................................................................5

          B.      US Magnesium Seeks to Gain a Tactical Advantage in Its Obligations Under the Consent Decree...................................................................6

CONCLUSION..................................................................................................................................10

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Chemtura Corp.*,
　439 B.R. 561 (Bankr. S.D.N.Y. 2010) ................................................................................... 2

*In re LTL Mgmt., LLC*,
　64 F.4th 84 (3d Cir. 2023) ..................................................................................................... 4

*In re Pikes Peak Water Co.*,
　779 F.2d 1456 (10th Cir. 1985)............................................................................................. 2

*In re SGL Carbon Corp.*,
　200 F.3d 154 (3d Cir. 1999).................................................................................... 3, 4, 5, 7

*Tenn. Publ'g Co. v. Am. Nat'l Bank*,
　299 U.S. 18 (1936) ................................................................................................................ 5

*United Prop., Inc. v. Emporium Dep't Stores, Inc.*,
　379 F.2d 55, 64 (8th Cir. 1967 ............................................................................................. 2

*United States v. Magnesium Corp. of Am.*,
　Case No. 2:01CV0040 (D. Utah 2021) ............................................................................ 7, 9

**Statutes**

11 U.S.C. § 363................................................................................................................................ 2

11 U.S.C. § 1112..................................................................................................................... 1, 3, 4

11 U.S.C. § 1129................................................................................................................ 1, 2, 4, 5

**Other Authorities**

Immediate Measures to Increase American Mineral Production,
　Executive Order 14241, 90 Fed. Reg. 13673 (Mar. 25, 2025).................................................. 3

The United States, on behalf of the U.S. Environmental Protection Agency ("EPA") (the "United States"), files this response to the Motion of the Official Committee of Unsecured Creditors (the "Committee") for Entry of an Order Converting the Debtor's Chapter 11 Case (the "Chapter 11 Case") to a Case Under Chapter 7 of the United States Code, Dkt. No. 142 (the "Conversion Motion")[2] as follows:

**INTRODUCTION**

1. The Committee filed the Conversion Motion on October 5, 2025. At the hearing on the DIP Motion the next day, the Court asked the parties where this case is going. In response, the Committee's counsel pointed to Section 1129(a)(7) as a guidepost for this Court to evaluate whether US Magnesium's Chapter 11 Case puts creditors in a worse position than if US Magnesium had filed a Chapter 7 petition.

2. After taking time to consider the Court's question, the United States asks this Court to use two additional provisions of the Bankruptcy Code - Sections 1129(a)(3) and (11) - as guideposts for evaluating if US Magnesium's Chapter 11 Case was filed in good faith and for a valid reorganizational purpose when considering whether to convert this case to Chapter 7.

3. Evaluating the Conversion Motion using Sections 1129(a)(3) and (11) shows that this petition was not filed in good faith and lacks a valid reorganization purpose, and therefore cause exists to convert this case to Chapter 7 pursuant to Section 1112(b)(1). *See* 11 U.S.C. § 1112(b)(1).

4. Section 1129(a)(3) requires the debtor to propose in good faith a plan that is not forbidden by law. 11 U.S.C. § 1129(a)(3). The Bankruptcy Code does not define good faith, but

---

[2] Capitalized terms used but not otherwise defined herein shall have the respective meanings ascribed to such term in the Conversion Motion.

to satisfy Section 1129(a)(3), a debtor must propose a plan that has a legitimate and honest bankruptcy purpose. *See, e.g., In re Chemtura Corp.*, 439 B.R. 561, 608 (Bankr. S.D.N.Y. 2010) (Section 1129(a)(3) is "generally interpreted to mean that there exists a reasonable likelihood that the plan will achieve a result consistent with the objectives and purposes of the Bankruptcy Code. A plan is proposed in good faith only if it has a legitimate and honest purpose to reorganize the debtor.").

5. Section 1129(a)(11) requires the Court to determine that "[c]onfirmation of the plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the debtor or any successor to the debtor under the plan, unless such liquidation or reorganization is proposed in the plan." 11 U.S.C. § 1129(a)(11). Commonly referred to as the "feasibility" standard, it requires that a bankruptcy court "scrutinize the plan carefully to determine whether it offers a reasonable prospect of success and is workable." *In re Pikes Peak Water Co.*, 779 F.2d 1456, 1460 (10th Cir. 1985) (quoting *United Props., Inc. v. Emporium Dep't Stores, Inc.*, 379 F.2d 55, 64 (8th Cir. 1967).

6. Here, US Magnesium's Chapter 11 Case is premised on a sale process that is not likely to succeed. And, in fact, it appears US Magnesium is short-circuiting the plan process to avoid satisfying Section 1129. Instead, US Magnesium is using Section 363 to sell its assets to a newly created Renco Group, Inc. ("Renco"), subsidiary, which appears to be undercapitalized. Section 363 should not be used to prevent the Court, creditors, or parties in interest from questioning the good faith and feasibility of the proposed sale, particularly given the failure of two similarly situated Renco subsidiaries.

7. The United States seeks to advance two interests in this Chapter 11 Case. First, the United States seeks to ensure that US Magnesium or any successor fulfills its obligations

2

under the Consent Decree and applicable environmental laws, which protect human health and the environment and further the cleanup of significant pollution caused by US Magnesium's Utah facility. At the same time, the United States seeks to promote domestic mineral production to advance the nation's economic and national security interests. *See, e.g.*, Immediate Measures to Increase American Mineral Production, Executive Order 14241, 90 Fed. Reg. 13673 (Mar. 25, 2025). Thus, the Department of Justice and EPA are engaged in ongoing discussions with Renco to determine how best to address the United States' interests in this Chapter 11 Case. The United States files this Response to assist the Court in resolving the Conversion Motion.

8. When ruling on the Conversion Motion, the United States asks the Court to consider whether LiMag Holdings, LLC ("LiMag") is adequately capitalized, has a viable business model, and whether it is likely to end up filing its own bankruptcy soon if the proposed sale is consummated. Unless US Magnesium and LiMag can carry that burden and establish a valid reorganizational purpose, this Chapter 11 Case must be viewed as a thinly veiled attempt to misuse the bankruptcy process to avoid environmental compliance obligations. And the Court should convert this case now.[3]

## LEGAL STANDARD

9. This Court has broad discretion when ruling on the Conversion Motion. *In re SGL Carbon Corp.*, 200 F.3d 154, 160 (3d Cir. 1999).

10. Section 1112 requires this Court to convert to Chapter 7 or dismiss this case if cause is found. 11 U.S.C. § 1112(b)(1). Section 1112(b)(4) includes a non-exhaustive list of grounds that constitute "cause." A bankruptcy court can also rely on a lack of good faith as cause

---

[3] The United States incorporates the background section from its Objection to the DIP Motion.

3

when ruling on a motion to dismiss or convert a case. *In re LTL Mgmt., LLC*, 64 F.4th 84, 100 (3d Cir. 2023).

11. Good faith can be demonstrated if: (1) the debtor is in financial distress; (2) the petition serves a valid bankruptcy purpose; and (3) the petition was not filed to "obtain a tactical litigation advantage." *In re LTL Mgmt.*, 64 F.4th at 100-01 (citations omitted).

12. This Court should look to the Bankruptcy Code's equitable nature and the purpose underlying a Chapter 11 petition when deciding whether a debtor has filed in good faith – including, for example, if US Magnesium could satisfy the requirements of Section 1129 if this proposed sale was part of a Chapter 11 plan. *Id. citing SLG Carbon*, 200 F.3d at 161-62, ("A debtor who attempts to garner shelter under the Bankruptcy Code…must act in conformity with the Code's underlying principles.").

13. Once cause is established, the burden shifts to the Debtor or the other parties opposing the Conversion Motion to show that unusual circumstances exist and creditors and parties in interest are better off if the case is not converted. 11 U.S.C. § 1112(b)(2).

**ARGUMENT**

**I.    This Case Does Not Meet the Bankruptcy Code's Good Faith Requirement.**

14. The United States does not dispute that US Magnesium is in financial distress. Yet, that is not where the good faith analysis ends. Here, US Magnesium's petition does not serve a valid bankruptcy purpose. The compressed and unrealistic milestones, the proposed sale to an insider, and the conditions in the Stalking Horse Asset Purchase Agreement are all evidence of US Magnesium's motivation to use this Chapter 11 Case to gain leverage in a non-bankruptcy case.

4

### A.    US Magnesium Filed this Case Without a Valid Bankruptcy Purpose.

15.    Put simply, the record shows that this petition does not serve a valid bankruptcy purpose. This case and the proposed sale preserve no value for creditors and parties in interest. There is no hope for the Debtor's rehabilitation. And filing a Chapter 11 petition without a valid reorganizational purpose is evidence of bad faith. *See, e.g., SLG Carbon*, 200 F.3d at 165. The Court "is not bound to clog its docket with visionary or impracticable schemes for resuscitation." *Tenn. Publ'g Co. v. Am. Nat'l Bank*, 299 U.S. 18, 22 (1936).

16.    Good faith does not turn on a debtor's subjective intent. Instead, the Court can consider distinct equitable limitations on a Chapter 11 filing when determining if a petition is filed in "good faith." *SGL Carbon*, 200 F.3d at 165.

17.    Much like a debtor trying to prove the feasibility of a plan under Section 1129(a)(11), equity demands that US Magnesium prove a valid reorganizational purpose for this Chapter 11 Case. Reasonable assurance of LiMag's success should come in the form of evidence, such as: (a) LiMag's prospective earnings or earning power, including a viable business plan; (b) the soundness and adequacy of LiMag's capital structure and working capital for a post-sale business that will be immediately saddled with tens of millions of dollars of assumed secured debt and environmental compliance obligations under the Consent Decree; (c) Renco's ability and willingness to fund required capital expenditures; and (d) economic projections, including associated costs, for the production and sale of salts, lithium, and magnesium.

18.    That is especially true because US Magnesium's operations are cash flow negative and have been for years. *See* Mayo Dep., 41:25-43:18 (confirming that US Magnesium's current business operations are cash flow negative and have been for more than a year); *see also* Thayer Dep., 53:21-54:2 (identifying the last profitable year for US Magnesium

5

as either 2015 or 2016). Moreover, it will take tens of millions of dollars to restart magnesium operations (Thayer Dep. 27:19-28:2)("It's approximately $40 million to rebuild and restart magnesium") or develop and implement profitable lithium operations (Thayer Dep. 25:20-25)("[d]epending on the selection of technology chosen, between 30 million and 100 million of capital would be needed to efficiently produce lithium carbonate."). Creditors and parties in interest must not be forced to accept a sale - that provides no value to the estate - to a new company that is primed to fail in the same way as two other Renco subsidiaries that operated this same facility.

19. Without evidence demonstrating LiMag has a reasonable assurance of operating as a going concern, the Court should not allow this Chapter 11 Case to go forward and potentially eliminate the chance of any recovery to unsecured creditors by granting superpriority liens and rolling up ten million dollars in pre-petition debt for Wells Fargo.

20. To avoid unnecessary repetition, the United States incorporates by reference the Committee's persuasive argument made in the Conversion Motion on the point that US Magnesium does not have a reasonable likelihood of rehabilitation in Chapter 11. *See* Conversion Motion, Dkt. No. 142 at p. 19-21. For the reasons outlined above and in the Conversion Motion, the second prong of the test for good faith tilts heavily towards a finding that US Magnesium's petition does not serve a valid bankruptcy purpose.

   **B. US Magnesium Seeks to Gain a Tactical Advantage in Its Obligations Under the Consent Decree**

21. Likewise, the third prong of the good faith test favors conversion because US Magnesium seeks to gain a tactical advantage in litigation. While this is usually a fact intensive inquiry, US Magnesium and Renco have been unapologetic and open about the desire to gain a tactical advantage by using this case to seek concessions related to its non-compliance with the

requirements of a Consent Decree governing US Magnesium's environmental obligations entered by the United States District Court for the District of Utah, *United States v. Magnesium Corp. of Am.*, Case No. 2:01CV0040, Dkt. No. 456 (D. Utah 2021).

22. Requiring a showing of good faith deters bankruptcy filings that "seek to achieve objectives outside the legitimate scope of the bankruptcy laws." *SGL Carbon*, 200 F.3d at 165.

23. As explained in the United States' Opposition to the DIP Motion, nothing in the Bankruptcy Code is intended to prevent US Magnesium from meeting its obligations under environmental law to protect human health and the environment. The Bankruptcy Code does not exempt US Magnesium from performance under the Consent Decree. Yet, that has not stopped US Magnesium and Renco from trying to use this case as leverage to seek the amendment of the Consent Decree.

24. Annette Maxwell's Declaration details past and present examples of non-compliance at US Magnesium's facility. Maxwell Decl. at ¶¶ 13-18 (past non-compliance), and ¶¶ 32-37 (present non-compliance). And, even if US Magnesium disputes some of the details, Forgen, LLC's objection (Dkt. No. 120) confirms that US Magnesium stopped work to retrofit the waste ponds at the US Magnesium Superfund Site, which is a Consent Decree requirement. *See also* Thayer Dep., 70:5-17.

25. Additionally, Article VI, Section 6.4 of the Asset Purchase Agreement requires, as a condition precedent to closing the sale, that US Magnesium and LiMag to reach an agreement with the United States that includes modifying the work requirements in the Consent Decree so that:

> (i) no work related to process modifications or corrective action under RCRA needs to be undertaken unless and until such work is agreed to by Purchaser and magnesium production is to be restarted at the Facility; (ii) agreement on a reasonable schedule for the

completion of the waste pond; and (iii) a framework for releasing funds in the EPA Special Accounts to Purchaser for use in undertaking any work for which such EPA Special Accounts may be applied, and (iv) agreement by the United States that the facility as operated for the production of magnesium and/or lithium with the modifications set forth in the Consent Decree shall be in compliance with RCRA and no further process modifications will be required.

26. Finally, on October 7, 2025, US Magnesium invoked dispute resolution under the Administrative Settlement Agreement and Order on Consent for Remedial Investigation/Feasibility Study (Docket No. CERCLA 08-2011-0013) (referred to in the Consent Decree as the "CERCLA RI/FS AOC") (*See e.g.*, Dkt. No. 123-1 at ¶56). The Consent Decree requires US Magnesium to finish the work required under the CERCLA RI/FS AOC. *Id.* As the name of the CERCLA RI/FS AOC implies, US Magnesium agreed to complete a remedial investigation report and feasibility study under the terms of the administrative order. US Magnesium has now initiated the dispute resolution process regarding those obligations while simultaneously attempting to change its obligations under the Consent Decree in this bankruptcy proceeding.

27. The aim of a remedial investigation is three-fold. It is used to: (1) collect data; (2) characterize site conditions by determining the nature of the waste and assessing the risk to human health and the environment posed by that waste; and (3) evaluate the potential performance and cost of possible clean-up alternatives. The feasibility study uses the information from the remedial investigation to develop, screen, and detail possible clean-up alternatives. In short, the remedial investigation and feasibility study are critical parts of the CERCLA process for determining the appropriateness of clean-up options and selection of the remedy for a contaminated site like the US Magnesium Superfund Site.

28. To summarize, it appears that in order to complete the proposed sale US Magnesium must obtain the United States' approval to: (1) "release" funds EPA recovered in *In re: Magnesium Corp.*; (2) agree not to require adequate financial assurance of LiMag's future performance; (3) materially modify RCRA compliance provisions in the Consent Decree; (4) delay construction schedules for the Consent Decree's CERCLA response project intended to halt releases of hazardous substances from waste ponds to groundwater; and (5) resolve the newly initiated dispute resolution process by accepting a previously rejected report required by the CERCLA RI/FS AOC.

29. On the one hand, US Magnesium argues that this case and a sale to LiMag is critical to this facility returning to its role as a domestic producer and supplier of lithium carbonate and magnesium. *See*, Thayer Decl., Dkt. No. 4 at ¶13. Yet, on the other hand, Renco and its subsidiaries – US Magnesium and LiMag - want to avoid compliance with the environmental work requirements in the Consent Decree. *See* Dkt. No. 41-2 at Article VI, Section 6.4.

30. Testifying that LiMag intends to restart magnesium production while seeking material modifications to the Consent Decree demonstrates that US Magnesium is attempting to use this case to inappropriately achieve objectives that US Magnesium could not otherwise attain under non-bankruptcy law.

31. Despite all this, the United States has made members of the Department of Justice and EPA available for multiple discussions on whether these hurdles can be overcome. These discussions continue. However, due to the deadlines in this Chapter 11 Case, the United States files this Response to the Conversion Motion.

## CONCLUSION

For the reasons stated above and in the Conversion Motion, the United States asks that this Court grant the Conversion Motion and convert this Chapter 11 Case to Chapter 7 absent a showing that LiMag has, among other things, a viable business plan and that US Magnesium filed this case for a valid reorganizational purpose.

Respectfully submitted,

FOR THE UNITED STATES OF AMERICA:

ADAM R.F. GUSTAFSON
Acting Assistant Attorney General
Environment and Natural Resources Division
U.S. Department of Justice

*/s/Matthew Indrisano*
Matthew Indrisano
Jeanne T. Cohn
Senior Counsel
Environmental Enforcement Section
P.O. Box 7611
Washington, D.C. 20044-7611
(202) 353-5969 - Indrisano
(202) 598-0131 - Cohn
matthew.indrisano@usdoj.gov
jeanne.cohn@usdoj.gov

## CERTIFICATE OF SERVICE

       I hereby certify that on October 12, 2025, I filed the foregoing with the Clerk of the Court using the ECF system, which will send notification of such filing to all interested parties of record, and I sent the foregoing to the individuals listed below by email:

Michael G. Busenkell
Margaret M. Manning
Michael Van Gorder
Gellert Seitz Busenkell & Brown, LLC
1201 N. Orange Street, 3rd Floor
Wilmington, DE 19801
mbusenkell@gsbblaw.com
mmanning@gsbblaw.com
mvangorder@gsbblaw.com
(Counsel for the Debtor)

Justin R. Alberto
Michael E. Fitzpatrick
500 Delaware Avenue, Suite 600
Wilmington, DE 19801
jalberto@coleschotz.com
mfitzpatrick@coleschotz.com
(Proposed Counsel for Committee)

Todd C. Meyers
Danielle Barav-Johnson
Sameer M. Alifarag
Eversheds Sutherland (US) LLP
999 Peachtree Street, NE
Atlanta, GA 30309
toddmeyers@eversheds-sutherland.com
dahnibarav-johnson@eversheds-sutherland.com
sameeralifarag@eversheds-sutherland.com
(Proposed Counsel for Committee)

Jane M. Leamy
Office of United States Trustee
844 King Street, Suite 2207
Wilmington, DE 19801
jane.m.leamy@usdoj.gov
(U.S. Trustee)

Daniel K. Hogan
Michael E. Begley
Garvan F. McDaniel
Trevor C. Lang
Hogan McDaniel
Utah Attorney General Office
1311 Delaware Avenue
1594 West North Temple, #300
Wilmington, DE 19806
Salt Lake City, UT 84116
dkhogan@dkhogan.com
mbegley@agutah.gov
gmcdaniel@dkhogan.com
tclang@agutah.gov
(Counsel for Utah Division Forestry, Fire and State Lands)

George Hofmann
Cohne Kinghom, P.C.
111 East Broadway, 11th Floor
Salt Lake City, UT
ghofmann@ck.law
(Counsel for Utah Division Forestry, Fire and State Lands)

McGuireWoods LLP
Attn: Mark E. Freedlander
Frank J. Guadagnino
Tower Two Sixty 260 Forbes Ave, Ste 1800
Pittsburgh PA 15222
mfreedlander@mcguirewoods.com;
fguadagnino@mcguirewoods.com
(Counsel to The Renco Group, Inc.)

Curtis S. Miller
Casey B. Sawyer
Morris Nichols Arshrt & Tunnell LLP 1201
Market Street, 16th Floor
Wilmington, Delaware 19801
cmiller@morrisnichols.com
csawyer@morrisnichols.com
(Counsel to Forgen, LLC)

Engels J. Tejeda
Holland & Hart LLP
222 S. Main Street, Suite 2200
Salt Lake City, Utah 84111
ejtejeda@hollandhart.com
(Counsel to Forgen, LLC)

Matthew J. Ochs
Holland & Hart LLP
555 17th Street, Suite 3200
Denver, CO 80202
mjochs@hollandhart.com
(Counsel to Forgen, LLC)

J. Cory Falgowski (No. 4546)
Burr & Forman LLP
222 Delaware Avenue, Suite 1030
Wilmington, DE 19801
Email: jfalgowski@burr.com

Jonathan N. Helfat
Adam C. Silverstein
Matthew Breen
Otterbourg P.C.
230 Park Avenue
New York, NY 10169
Email: jhelfat@otterbourg.com
asilverstein@otterbourg.com
mbreen@otterbourg.com
*Attorneys for Wells Fargo Bank, N.A.*

Saul Ewing LLP
Attn: Mark Minuti
Paige N. Topper
1201 North Market St, Ste 2300
Wilmington, DE 19801
mark.minuti@saul.com
paige.topper@saul.com
(Counsel to The Renco Group, Inc.)

Mark Pfeiffer
50 S. 16th Street, Suite 3200
Philadelphia, PA 19102
mark.pfeiffer@bipc.com
(Counsel for Allegheny Technologies Inc.)

Kody M. Sparks
500 Delaware Avenue, Suite 720
Wilmington, Delaware 19801
kody.sparks@bipc.com
(Counsel for Allegheny Technologies Inc.)

Timothy P. Palmer
Tyler S. Dischinger
Union Trust Building
501 Grant Street, Suite 200
Pittsburgh, PA 15219-4413
timothy.palmer@bipc.com
tyler.dischinger@bipc.com
(Counsel to ATI Titanium LLC)

<u>/s/Matthew Indrisano</u>
Matthew Indrisano
Senior Counsel
U.S. Department of Justice
Environment and Natural Resources Division
Environmental Enforcement Section

13