**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>US MAGNESIUM LLC,[1]<br><br>  Debtor. | Chapter 11<br><br>Case No. 25-11696 (BLS)<br><br> RE: D.I. 41, 395 and 579 |

**ORDER (A) APPROVING THE PURCHASE AGREEMENT BETWEEN THE DEBTOR
AND THE SUCCESSFUL BIDDER, (B) AUTHORIZING THE SALE OF THE
PURCHASED ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS,
ENCUMBRANCES AND INTERESTS, AND (C) GRANTING RELATED RELIEF**

Upon the Motion (the "Sale Motion") (D.I. 41) of the above captioned debtor and debtor-in-possession (the "Debtor"), pursuant to sections 105(a), 363, 365, and 503 of title 11 of the United States Code (the "Bankruptcy Code"), Rules 2002, 6004, 6006, 9006, 9007 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure (the "Local Rules"), for entry of an order (i)(a) approving the bid procedures (the "Bid Procedures") in connection with the proposed sale of substantially all of the Debtor's assets (the "Sale"), (i)(b) approving the form and manner of notice thereof; (i)(c) scheduling an auction (the "Auction") if the Debtor receives two or more timely and acceptable Qualified Bids (as defined below) and scheduling a hearing to consider approval of the Sale (the "Sale Hearing"), (i)(d) establishing procedures for the assumption and assignment of executory contracts and unexpired leases, including notice of proposed cure amounts; and (i)(e) granting related relief; and, pursuant to Bankruptcy Code sections 105 and 363 and Bankruptcy Rules 2002 and 6004, for entry of an order (ii)(a) authorizing the Sale, after the Auction, free and clear of liens, claims, interests and encumbrances, and (ii)(b) granting related relief; and this

---

[1] The last four digits of the Debtor's federal tax identification number are 5446.  The Debtor's address is 238 N 2200 W, Salt Lake City, Utah 84116.

Bankruptcy Court having entered an order on December 19, 2025 (D.I. 395) (the "Bid Procedures Order") authorizing the Debtor to conduct, and approving the terms and conditions of, an auction (the "Auction"), if necessary, as set forth in the Bid Procedures Order to consider offers for the assets, establishing a date for the Auction, and this Court having established the date of the hearing to consider approval of the Sale (the "Sale Hearing"); and the Debtor having determined that it was in the best interests of the Debtor's estate to seek approval of the Sale of the Purchased Assets (as defined in the Asset Purchase Agreement dated as of January 26, 2026 (the "Purchase Agreement") by and between the Debtor as Seller and the Utah Division of Forestry, Fire, and State Lands (the "Successful Bidder") as Purchaser); and this Bankruptcy Court having jurisdiction to consider the Sale Motion and the relief requested therein in accordance with 28 U.S.C. §§ 157(b)(2) and 1334; and in consideration of the Motion, the relief requested therein, and the responses thereto being a core proceeding in accordance with 28 U.S.C. § 157(b); and the Sale Hearing having been held on January 27, 2026; and the appearance of all interested parties and all responses and objections to the Sale Motion having been duly noted in the record of the Sale Hearing; and upon the record of the Sale Hearing and all other pleadings and proceedings in this Bankruptcy Case, including (without limitation) the Motion and the certificate of service regarding the Motion (D.I. 52); and it appearing that the relief requested in the Motion is in the best interests of the Debtor, its estate, its creditors, and its other stakeholders and all other parties in interest; and after due deliberation and sufficient cause appearing therefore;

**IT IS HEREBY FOUND, DETERMINED AND CONCLUDED THAT:**[2]

---

[2] All findings of fact and conclusions of law announced by this Bankruptcy Court at the Sale Hearing in relation to the Sale Motion are incorporated herein to the extent not inconsistent herewith.

4938-3491-6234, v. 14

A.      **Bankruptcy Petition.** On September 10, 2025 (the "Petition Date"), the Debtor filed a voluntary petition under chapter 11 of the Bankruptcy Code.  Since the Petition Date, the Debtor has continued in possession and management of its business and properties as a debtor-in-possession pursuant to Bankruptcy Code §§ 1107(a) and 1108.

B.      **Jurisdiction and Venue.** This Bankruptcy Court has jurisdiction pursuant to 28 U.S.C. §§ 157 and 1334 over this matter and over the property of the Debtor's estate, including the Purchased Assets to be sold, transferred, or conveyed pursuant to the Purchase Agreement. This matter is a "core proceeding" pursuant to 28 U.S.C. § 157(b)(2)(A), (N), and (O).  Venue of this Bankruptcy Case and the Sale Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

C.      **Findings of Fact and Conclusions of Law.** The findings and conclusions set forth herein constitute this Bankruptcy Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014. To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

D.      **Final Order.** This Order constitutes a final and appealable order within the meaning of 28 U.S.C. § 158(a).  To any extent necessary under Bankruptcy Rule 9014 and Rule 54(b) of the Federal Rules of Civil Procedure, as made applicable by Bankruptcy Rule 7054, this Bankruptcy Court expressly finds that there is no just reason for delay in the implementation of this Order, and expressly directs entry of judgment as set forth herein. Time is of the essence in consummating the sale. There is no credible basis for concluding that a delay in the sale of the Purchased Assets would result in a higher or better offer for the Purchased Assets than the offer

4938-3491-6234, v. 14

reflected in the Purchase Agreement. In order to maximize the value of the Purchased Assets, it is essential that the sale of the Purchased Assets occur within the time constraints set forth in the Purchase Agreement. Accordingly, there is cause to lift the stays contemplated by Bankruptcy Rules 6004(h) and 6006(d).

E.      **Statutory Predicates.** The statutory bases for the relief requested in the Sale Motion and for the approvals and authorizations herein are (i) Bankruptcy Code §§ 105, 362, 363, 364, 365, and 541, (ii) Bankruptcy Rules 2002, 4001, 6004, and 9014, and (iii) Local Rule 2002-1.

F.      **Notice**. As evidenced by the certificates of service filed with this Bankruptcy Court (including, without limitation, D.I. 52), proper, timely, adequate, and sufficient notice of the Sale Motion, the Bid Procedures, the Auction, the Sale Hearing and the Purchase Agreement, the sale of the Purchased Assets free and clear of all Liens has been provided in accordance with Bankruptcy Code § 363(b), Bankruptcy Rules 2002, 6004, 9007, 9008, and 9014, the Local Rules, the procedural due process requirements of the United States Constitution, and in compliance with the Bid Procedures Order.  Such notice was good and sufficient and appropriate under the particular circumstances.  No other or further notice of the Motion, the Bid Procedures, the Auction, the Sale Hearing, the Purchase Agreement, the Sale of the Purchased Assets free and clear of all liens, claims, interests and encumbrances, or of the entry of this Order is necessary or shall be required.

G.      Notice and a reasonable opportunity to object and/or be heard regarding the Motion, the Auction, the Sale Hearing, the Purchase Agreement, the sale of the Purchased Assets free and clear of all Liens, and the entry of this Order have been provided to all interested Persons, including, without limitation (a) the Office of the United States Trustee for the District of

4

4938-3491-6234, v. 14

Delaware; (b) counsel to the Official Committee of Unsecured Creditors (the "Committee"); (c) all Persons who have asserted any Liens in or upon any of the Purchased Assets; (d) the Internal Revenue Service and all taxing authorities in each jurisdiction applicable to the Debtor; (e) the "Master Service List" established in this Case; and (f) all Governmental Authorities exercising jurisdiction with respect to regulatory matters affecting or relating to the Purchased Assets.

H.      **Title in the Purchased Assets.**  The Purchased Assets are property of the Debtor's estate and title thereto is vested in the Debtor's estate within the meaning of Bankruptcy Code § 541(a).  The Debtor is the sole and lawful owner of the Purchased Assets.

I.      **Business Justification.**  The Debtor has demonstrated a sufficient basis and the existence of reasonable and appropriate circumstances requiring them to enter into the Purchase Agreement, sell the Purchased Assets, under Bankruptcy Code § 363, and such actions are appropriate exercises of the Debtor's business judgment, are consistent in all respects with the Debtor's fiduciary duties, and are in the best interests of the Debtor, its estate, its creditors, and its other stakeholders.  Such circumstances include, but are not limited to, the fact that (i) the Purchase Agreement presents the best opportunity to realize the value of the Purchased Assets, (ii) the Purchase Agreement constitutes the highest and best offer for the Purchased Assets, and (iii) unless the sale of the Purchased Assets is concluded expeditiously as provided for in the Motion and the Purchase Agreement, the stakeholders' recoveries will likely be diminished.

J.      The terms and conditions of the Purchase Agreement, including the total consideration to be realized by the Debtor pursuant to the Purchase Agreement, are fair and reasonable, and are in the best interests of the Debtor's estate.

K.      **Opportunity to Bid.**  The Bid Procedures were non-collusive, substantively and procedurally fair to all parties, and were the result of arm's length negotiations between the Debtor

4938-3491-6234, v. 14

and the Successful Bidder.  The Debtor and its professionals have complied, in good faith, in all respects with the Bid Procedures Order and the Bid Procedures.  As demonstrated by the entire record in this Case, including, without limitation, (i) the testimony and other evidence proffered or adduced at the Sale Hearing and the hearings held in this Bankruptcy Court to consider entry of the Bid Procedures Order and (ii) the representations of counsel made on the record at the Sale Hearing, through marketing efforts and a competitive sale process conducted in accordance with the Bid Procedures Order, the Debtor (a) afforded interested potential purchasers a full, fair, and reasonable opportunity to qualify as bidders and submit their highest or otherwise best offer to purchase all of the Debtor's assets, (b) provided potential purchasers, upon request, sufficient information to enable them to make an informed judgment on whether to bid on the Debtor's assets, and (c) considered in good faith any bids submitted on or before the deadline to submit bids as set forth in the Bid Procedures.

L.    **Highest or Otherwise Best Offer.**  The Bid Procedures obtained the highest value for the Purchased Assets for the Debtor and its estate that was reasonably obtainable under the circumstances of this Bankruptcy Case.  As of the conclusion of the Auction on January 23, 2026, no higher or otherwise better offers for the Purchased Assets were received by the Debtor, and the Debtor determined, exercising its reasonable discretion and in accordance with the Bid Procedures, in consultation with the Committee, that the Successful Bidder was the best Qualified Bid for the Purchased Assets.  This determination constitutes a valid and sound exercise of the Debtor's business judgment.  The Debtor, the Successful Bidder and their respective representatives have complied in all respects with the Bid Procedures and the Bid Procedures Order.

M.    The offer of the Successful Bidder, upon the terms and conditions set forth in the Purchase Agreement:  (i) is the highest and best offer received by the Debtor under the

circumstances; (ii) is fair and reasonable; (iii) is in the best interests of the Debtor's creditors, stakeholders, and estate; and (iv) constitutes the highest and best value being offered for the Purchased Assets outside the ordinary course of the Debtor's business.  In reaching this determination, the Bankruptcy Court has taken into account the consideration to be realized directly by the Debtor.

N.      **<u>Good Faith Purchaser.</u>**  The Successful Bidder is a purchaser in "good faith," as that term is used in the Bankruptcy Code and the decisions thereunder, and is entitled to the protections of Bankruptcy Code § 363(m) with respect to all of the Purchased Assets.  The Purchase Agreement was negotiated and entered into in good faith, based upon arm's length bargaining, and without collusion or fraud of any kind.  The Successful Bidder did not collude with others in violation of Bankruptcy Code § 363(n).  Neither the Debtor nor the Successful Bidder have engaged in any conduct that would prevent the application of Bankruptcy Code § 363(m) or cause the application of, or implicate, Bankruptcy Code § 363(n) to the Purchase Agreement and transfer of the Purchased Assets to the Successful Bidder.  The Successful Bidder is purchasing the Purchased Assets in good faith, is a good faith purchaser within the meaning of Bankruptcy Code § 363(m), and is, therefore, together with the Debtor, entitled to the protection of Bankruptcy Code § 363(m).  Additionally, the Successful Bidder otherwise has proceeded in good faith in all respects in connection with this proceeding in that:  (i) the Successful Bidder recognized that the Debtor was free to deal with any other party interested in acquiring the Purchased Assets, (ii) the Successful Bidder complied with the Bid Procedures, (iii) all consideration to be paid by the Successful Bidder and other agreements or arrangements entered into by the Successful Bidder in connection with the sale have been disclosed, (iv) the Successful Bidder has not violated Bankruptcy Code § 363(n) by any action or inaction, and (v) the

negotiation and execution of the Purchase Agreement and any other agreements or instruments related thereto was in good faith.  The Successful Bidder is not, and was not immediately prior to or after the Closing Date,[3] an "affiliate" or "insider" of the Debtor as defined in Bankruptcy Code § 101, and no common identity of incorporation, director, or stockholder existed between the Successful Bidder, on the one hand, and the Debtor, on the other hand, immediately prior to or after the Closing Date.

O.      **<u>Injunction</u>.**  An injunction against creditors of the Debtor and third parties pursuing liens, claims, interests and encumbrances is necessary to induce the Successful Bidder to close the sale; the issuance of such an injunction is therefore necessary to avoid irreparable injury to the Debtor's estate and will benefit all creditors of the Debtor.  Subject to Paragraph 23 herein, all persons having interests of any kind or nature whatsoever against or in the Purchased Assets are and shall be forever barred, estopped and permanently enjoined from pursuing or asserting such interests against the Successful Bidder, any of its assets, property, successors or assigns, or the Purchased Assets.

P.      **<u>Corporate Power and Authority</u>.**  The Debtor has full corporate and other power and authority to execute the Purchase Agreement (and all other documents contemplated thereby), and the sale of the Purchased Assets has been duly and validly authorized by all necessary corporate and other actions on the part of the Debtor.  No consents or approvals, other than as may be expressly provided for in the Purchase Agreement, are required by the Debtor to consummate the sale.

---

[3] Capitalized terms used in this Order and not otherwise defined have the meanings ascribed to them in the Purchase Agreement.

4938-3491-6234, v. 14

Q.      The Debtor has advanced sound business reasons for seeking to enter into the Purchase Agreement and to sell and/or assume and sell and assign the Purchased Assets, as more fully set forth in the Motion and as demonstrated at the Sale Hearing, and it is a reasonable exercise of the Debtor's business judgment to sell the Purchased Assets.  Notwithstanding any requirement for approval or consent by any Person, the transfer of the Purchased Assets to the Successful Bidder is a legal, valid, and effective transfer of the Purchased Assets.

R.      **Free and Clear.**  The Purchased Assets shall be sold free and clear of any and all liens, claims (as used in this Order, the term "claims" shall have the definition set forth in the Bankruptcy Code), liabilities, encumbrances and interests of any kind or nature whatsoever including, without limitation, all liens, mechanics' liens, materialmen's liens, consensual liens, non-consensual liens, statutory liens, hypothecations, encumbrances, security interests, fixture filings, mortgages, security deeds, deeds of trust, debts, levies, indentures, pledges, restrictions (whether on voting, sale, transfer, disposition or otherwise), of any kind or nature (including (i) any conditional sale or other title retention agreement and any lease having substantially the same effect as any of the foregoing, (ii) any assignment or deposit arrangement in the nature of a security devise, and (iii) any claim based on any theory that the Successful Bidder is a successor, successor-in-interest, continuation or a substantial continuation of the Debtor or the Debtor's business), reclamation claims, obligations, liabilities, demands, and guaranties, whether any of the foregoing are known or unknown, choate or inchoate, filed or unfiled, scheduled or unscheduled, noticed or unnoticed, recorded or unrecorded, secured or unsecured, perfected or unperfected, allowed or disallowed, contingent or non-contingent, liquidated or unliquidated, matured or unmatured, material or non-material, disputed or undisputed, whether arising prior to or subsequent to the commencement of this Bankruptcy Case, and whether imposed by agreement, understanding, Law,

9

equity or otherwise, including claims otherwise arising under doctrines of successor liability, successor-in-interest liability, continuation liability or substantial continuation liability including, without limitation, that the Successful Bidder is in any way a successor, successor-in-interest, continuation or substantial continuation of the Debtor or its business (collectively, the "Liens"). The Successful Bidder would not have entered into the Purchase Agreement, and would not have agreed to purchase and acquire the Purchased Assets, if the sale of the Purchased Assets was not free and clear of any and all Liens, or if the Successful Bidder would, or in the future could, be liable for any such Liens.

S.      Not selling the Purchased Assets free and clear of all Liens would adversely impact the Debtor's estate, and the sale of the Purchased Assets other than one free and clear of all Liens would be of substantially less value to the Debtor's estate.

T.      **Satisfaction of § 363(f) Standards.**  The Debtor may sell the Purchased Assets free and clear of all Liens of any kind or nature whatsoever because, in each case, one or more of the standards set forth in Bankruptcy Code § 363(f) has been satisfied: (a) applicable non-bankruptcy law permits the sale of such property free and clear of such interest (section 363(f)(1)); (b) the entity holding the alleged lien, claim, interest, or encumbrance consents (section 363(f)(2)); (c) such interest is a lien, and the price at which such property is to be sold is greater than the aggregate value of all liens on such property (section 363(f)(3)); (d) such lien, claim, interest, or encumbrance is subject to a *bona fide* dispute (section 363(f)(4)); or (e) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such lien, claim, interest, or encumbrance (section 363(f)(5)).  Those holders of Liens in or with respect to the Purchased Assets who did not object, or who withdrew their objections, to the sale of the Purchased Assets and the Sale Motion are deemed to have consented pursuant to Bankruptcy Code §

10

363(f)(2).  All objections to the Motion have been overruled or resolved.  Those holders of Liens in or with respect to the Purchased Assets who did object fall within one or more of the other subsections of Bankruptcy Code § 363(f).

U.      **Transfer of Purchased Assets.**  The transfer of the Purchased Assets to the Successful Bidder will be a legal, valid, and effective transfer of the Purchased Assets and shall vest the Successful Bidder with all right, title, and interest of the Debtor to the Purchased Assets free and clear of any and all Liens.  Except as specifically provided in the Purchase Agreement or this Order, the Successful Bidder shall not assume or become liable for any Liens.

V.      **No Successor Liability**.  The sale of the Purchased Assets to the Successful Bidder does not amount to or constitute a consolidation, merger, or *de facto* merger of the Successful Bidder and the Debtor or the Debtor's estate, there is not substantial continuity between the Successful Bidder and the Debtor or the Debtor's estate, there is no continuity of enterprise between the Successful Bidder and the Debtor or the Debtor's estate, the Successful Bidder is not a continuation or substantial continuation of the Debtor or its estate, and the Successful Bidder is not a successor or successor-in-interest to the Debtor or its estate.  The Successful Bidder would not have acquired the Purchased Assets but for the foregoing protections against potential claims based upon "successor liability" or similar theories.

W.      **No Fraudulent Transfer.**  The sale is not for the purpose of hindering, delaying or defrauding creditors under the Bankruptcy Code or under the Laws of the United States, any state, territory, possession, or the District of Columbia.  Neither the Debtor nor the Successful Bidder has entered into the Purchase Agreement or is consummating the sale with any fraudulent or otherwise improper purpose.

4938-3491-6234, v. 14

X.      **Fair Consideration.**  The total consideration provided by the Successful Bidder for the Purchased Assets was the highest and best offer received by the Debtor, that constitutes (a) a reasonably equivalent value under the Bankruptcy Code and the Uniform Fraudulent Transfer Act, (b) fair consideration under the Uniform Fraudulent Conveyance Act, and (c) reasonably equivalent value, fair consideration, and fair value under any other applicable Laws of the United States, any state, territory or possession, or the District of Columbia, for the Assets.

Y.      **Compliance with Bankruptcy Code.**  The consummation of the sale is legal, valid, and properly authorized under all applicable provisions of the Bankruptcy Code, including without limitation Bankruptcy Code §§ 105(a), 363(b), 363(f), and 363(m), and all of the applicable requirements of such sections have been or will be complied with in respect of the sale as of the Closing Date.

Z.      **Sub Rosa Plan.**  The sale and assignment of the Purchased Assets outside of a plan of reorganization pursuant to the Purchase Agreement neither impermissibly restructures the rights of the Debtor's creditors nor impermissibly dictates the terms of a liquidating plan or plan of reorganization for the Debtor.  The sale does not constitute a *sub rosa* chapter 11 plan.

**NOW, THEREFORE, BASED UPON ALL OF THE FOREGOING, IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:**

1.      **Relief Granted.**  Subject to the terms and conditions contained herein and compliance with Bankruptcy Code § 363(d)(1), the relief requested in the Motion is granted in its entirety, and the Purchase Agreement and the provisions thereof relating to the Purchased Assets are approved in their entirety.

2.      **Objections Overruled.**  All objections, responses, reservations of rights, and requests for continuance concerning the Motion are resolved in accordance with the terms of this

4938-3491-6234, v. 14

Order and as set forth in the record of the Sale Hearing.  To the extent any such objection, response, reservation of rights, or request for continuance was not otherwise withdrawn, waived, or settled, it is hereby overruled and denied on the merits.

3.      **Notice.**  Notice of the matters before this Bankruptcy Court, including the Motion, the Bid Procedures, the Auction, the Sale Hearing, the Purchase Agreement, and the sale of the Purchased Assets free and clear of all Liens, was reasonable, fair and equitable under the circumstances and complied in all respects with Bankruptcy Code § 102(1), Bankruptcy Rules 2002, 6004, 9007, and 9008, and Local Rule 2002-1.

4.      **Prior Findings of Fact and Conclusions of Law.**  This Bankruptcy Court's findings of fact and conclusions of law in the Bid Procedures Order, including the record of the hearings to approve the Bid Procedures Order, are incorporated herein by reference.

5.      **Approval.**  The sale of the Purchased Assets, and the terms and conditions of the Purchase Agreement (including all schedules and exhibits affixed thereto), are hereby authorized and approved in all respects.  The Purchase Agreement (and all ancillary documents related thereto) is hereby approved and authorized in all respects and shall be deemed in full force and effect, and the Debtor and Successful Bidder are hereby authorized, empowered and directed to fully perform under, consummate, and implement the terms of the Purchase Agreement and to execute, deliver and perform under, any and all additional instruments and documents that may be reasonably necessary or desirable to implement and effectuate the terms of the Purchase Agreement and this Order, including, without limitation, bills of sale, certificates, deeds, assignments, stock powers, transfers of membership interests and other instruments of transfer, and to take all further actions as may reasonably be requested by the Debtor or Successful Bidder for the purpose of assigning, transferring, granting, conveying, and conferring to the Successful

13

Bidder or reducing to possession any or all of the Purchased Assets, as may be necessary or appropriate to the performance of the Debtor's obligations as contemplated by the Purchase Agreement, without any further corporate action or orders of this Bankruptcy Court.

6.      **Fair Consideration.**   The sale of the Purchased Assets and the consideration provided by the Successful Bidder under the Purchase Agreement are fair and reasonable and shall be deemed for all purposes to constitute a transfer for reasonably equivalent value and fair consideration under the Bankruptcy Code.

7.      **Good Faith Purchaser.**  The Successful Bidder is hereby granted and is entitled to all of the protections provided to a good faith purchaser under Bankruptcy Code § 363(m), Pursuant to Bankruptcy Code § 363(m), if any or all of the provisions of this Order are hereafter reversed, modified, or vacated by a subsequent order of this Bankruptcy Court or any other court, such reversal, modification, or vacatur shall not affect the validity and enforceability of any sale, transfer, or assignment under the Purchase Agreement or obligation or right granted pursuant to the terms of this Order (unless stayed pending appeal prior to the Closing Date), and notwithstanding any reversal, modification, or vacatur, any sale, transfer, or assignment shall be governed in all respects by the original provisions of this Order and the Purchase Agreement, as the case may be.

8.      **Bankruptcy Code § 363(n).**   The sale approved by this Order is not subject to avoidance or any recovery or damages pursuant to Bankruptcy Code § 363(n) or any other section of the Bankruptcy Code.

9.      **Authorization.**  The Debtor shall be, and hereby is, authorized and directed to fully assume, perform under, consummate, and implement the terms of the Purchase Agreement together with any and all additional instruments and documents that may be necessary or desirable

14

in connection with implementing and effectuating the terms of the Purchase Agreement, this Order, and/or the sale of the Purchased Assets including, without limitation, bills of sale, certificates, deeds, assignments, and other instruments of transfer, and to take all further actions as may reasonably be requested by the Successful Bidder for the purpose of assigning, transferring, granting, conveying, and conferring to the Successful Bidder, or reducing to possession, any or all of the Purchased Assets, as may be necessary or appropriate to the performance of the Debtor's obligations as contemplated by the Purchase Agreement, without any further corporate or other action or orders of this Bankruptcy Court.

10.     The Debtor and each other Person having duties or responsibilities under the Purchase Agreement, any agreements or instruments related thereto or this Order, and their respective directors, officers, employees, members, managers, partners, agents, representatives, and attorneys, are authorized, subject to the terms and conditions contained in the Purchase Agreement and this Order, to carry out all of the provisions of the Purchase Agreement and any related agreements or instruments; to issue, execute, deliver, file, and record, as appropriate, the documents evidencing and consummating the Purchase Agreement and any related agreements or instruments; to take any and all actions contemplated by the Purchase Agreement, any related agreements or instruments, or this Order; and to issue, execute, deliver, file, and record, as appropriate, such other contracts, instruments, releases, termination statements, indentures, mortgages, quitclaim deeds, deeds, bills of sale, assignments, leases, or other agreements or documents and to perform such other acts and execute and deliver such other documents, as are consistent with, and necessary, desirable or appropriate to implement, effectuate, and consummate, the Purchase Agreement, any related agreements or instruments and this Order, all without further application to, or order of, this Bankruptcy Court or further action by their respective directors,

officers, employees, members, managers, partners, agents, representatives, and attorneys, and with like effect as if such actions had been taken by unanimous action of the respective directors, officers, employees, members, managers, partners, agents, representatives, and attorneys of such entities.  The secretary or any assistant secretary of the Debtor (or any comparable officer) shall be, and hereby is, authorized to certify or attest to any of the foregoing actions (but no such certification or attestation shall be required to make any such action valid, binding, and enforceable).  The Debtor is further authorized and empowered to cause to be filed with the secretary of state of any state or other applicable officials of any applicable Governmental Authority any and all certificates, agreements, or amendments necessary or appropriate to effectuate this Order, and all such other actions, filings, or recordings as may be required under appropriate provisions of the applicable Laws of all applicable Governmental Authorities or as any of the officers of the Debtor may determine are necessary, desirable or appropriate.  The execution of any such document or the taking of any such action shall be, and hereby is, deemed conclusive evidence of the authority of such person to so act.  Without limiting the generality of the foregoing, this Order shall constitute all approvals and consents, if any, required by the corporate Laws of the State of Delaware and all other applicable business, corporation, non-profit, limited liability partnership, trust, and other Laws of the applicable Governmental Authorities with respect to the implementation and consummation of the Agreement, any related agreements or instruments and this Order.

11.    **Valid Transfer.**  Effective as of the Closing, and subject to applicable state Law: the sale of the Purchased Assets by the Debtor to the Successful Bidder shall constitute a legal, valid, and effective transfer of the Purchased Assets notwithstanding any requirement for approval or consent by any Person and shall vest the Successful Bidder with good, valid and marketable

4938-3491-6234, v. 14

title in and to the Purchased Assets, free and clear of any and all Liens of any kind or nature whatsoever (other than the Assumed Liabilities) pursuant to Bankruptcy Code § 363(f).

12.     All of the Debtor's interests in the Purchased Assets to be acquired by the Successful Bidder under the Purchase Agreement shall be, as of the Closing Date and upon the occurrence of the Closing, transferred to and vested in the Successful Bidder.  Upon the occurrence of the Closing, this Order shall be considered and shall constitute for any and all purposes a full and complete general assignment, conveyance, and transfer of the Purchased Assets acquired by the Successful Bidder under the Purchase Agreement and/or a bill of sale, deed, or assignment transferring good and marketable, indefeasible title and interest in the Purchased Assets to the Successful Bidder.

13.     **Free and Clear.**  At the Closing, and subject to applicable state law, the Debtor shall be, and hereby is, authorized, empowered, and directed, pursuant to Bankruptcy Code §§ 105, 363(b), and 363(f), to sell the Purchased Assets to the Successful Bidder.  Except as otherwise provided in paragraphs 43 and 44 hereof, (i) the sale of the Purchased Assets shall vest the Successful Bidder with all right, title and interest of the Debtor to the Purchased Assets free and clear of any and all Liens, with all such divested Liens to attach only to the proceeds of the sale with the same priority, validity, force, and effect, if any, as they now have in or against the Purchased Assets, subject to all claims and defenses the Debtor may possess with respect thereto; (ii) following the Closing Date, no holder of any Liens in the Purchased Assets  shall interfere with the Successful Bidder's use and enjoyment of the Purchased Assets based on or related to such Liens, or any actions that the Debtor may take in this Bankruptcy Case; and (iii) all Persons having Liens of any kind or nature whatsoever against or in the Debtor or the Purchased Assets are forever barred, estopped and permanently enjoined from pursuing or asserting any such Liens (other than

17

the Assumed Liabilities) against the Successful Bidder, any of the Successful Bidder's assets, property, successors or assigns, or the Purchased Assets. The Successful Bidder shall have no Liability for any Excluded Liability (both as defined in the Purchase Agreement) or responsibility for any Liability or other obligation of the Debtor arising under or related to the Purchased Assets other than as expressly set forth in the Purchase Agreement.

14.    The provisions of this Order authorizing the sale of the Purchased Assets free and clear of Liens shall be self-executing, and neither the Debtor nor the Successful Bidder shall be required to execute or file releases, termination statements, assignments, consents, or other instruments in order to effectuate, consummate, and implement the provisions of this Order. However, the Debtor and the Successful Bidder, and each of their respective officers, employees, and agents, are hereby authorized to take all actions and to execute and deliver any and all documents and instruments that either the Debtor or the Successful Bidder deem necessary, desirable or appropriate to implement and effectuate the terms of the sale of the Purchased Assets and this Order.

15.    **Authorization to Creditors.**  On or before the Closing Date, the Debtor's creditors are authorized and directed to execute such documents and take all other actions as may be necessary to release any Liens of any kind against the Purchased Assets, as such Liens may have been recorded or may otherwise exist, and deliver such executed documents to the Debtor's counsel to be held in escrow. If any Person that has filed financing statements, mortgages or other documents, instruments or agreements evidencing any Liens in or against the Purchased Assets shall not have delivered to the Debtor's counsel prior to the Closing after request therefor, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, or releases of all such Liens that the Person has with respect to the Purchased Assets,

18

4938-3491-6234, v. 14

the Debtor and the Debtor's officers are hereby authorized and directed to execute and file such statements, instruments, releases, and other documents on behalf of the Person with respect to such Purchased Assets at Closing, and the Successful Bidder and the Successful Bidder's officers are hereby authorized to execute and file such statements, instruments, releases, and other documents on behalf of the Person with respect to such Purchased Assets after the Closing.  In addition, after Closing, the Successful Bidder and the Debtor are authorized to file a copy of this Order in the appropriate real estate records, the secretary of state records and any other filing location selected by the Successful Bidder or the Debtor and, once filed, this Order shall constitute conclusive evidence of the release of all Liens from the Purchased Assets.

16.     On the Closing Date, each of the Debtor's creditors is authorized and directed to execute such documents and take all other actions as may be necessary to release their respective Liens against the Purchased Assets, if any, as may have been recorded or may otherwise exist.

17.     **No Successor Liability.**  Except as expressly provided in the Purchase Agreement, the Successful Bidder is not assuming nor shall it or any affiliate of the Successful Bidder be in any way liable or responsible, as a successor, successor-in-interest, continuation, substantial continuation, or otherwise, for any claims, debts, or obligations of the Debtor in any way whatsoever relating to or arising from the Debtor's ownership or use of the Purchased Assets, or any claims or liabilities calculable by reference to the Debtor or its operations or the Purchased Assets, which liabilities, claims, debts, and obligations are hereby extinguished insofar as they may give rise to liability, successor, successor-in-interest, continuation, substantial continuation, or otherwise, against the Successful Bidder or any affiliate of the Successful Bidder.

18.     The Successful Bidder is not a "successor," "successor-in-interest," "continuation," or "substantial continuation" to or of the Debtor or its estate by reason of any theory of Law or

4938-3491-6234, v. 14

equity, and the Successful Bidder shall not assume, nor be deemed to assume, or in any way be responsible for any liability, claim or obligation of any of the Debtor and/or its estate including, but not limited to, any bulk sales Law, successor liability, successor-in-interest liability, substantial continuation liability, or similar liability except to the extent provided in the Purchase Agreement. Neither the purchase of the Purchased Assets by the Successful Bidder, nor the fact that the Successful Bidder is using any of the Purchased Assets previously operated by the Debtor, will cause the Successful Bidder or any of its affiliates to be deemed a successor, successor-in-interest, continuation, or substantial continuation in any respect to the Debtor's business within the meaning of any foreign, federal, state or local revenue, pension, ERISA, COBRA Coverage, FMLA, WARN, Tax, labor, employment, environmental, or other Law, rule or regulation (including, without limitation, filing requirements under any such Laws, rules or regulations), or under any products liability Law or doctrine with respect to the Debtor's liability under such Law, rule or regulation or doctrine, except to the extent expressly provided in the Purchase Agreement.

19. **Direction to Surrender Possession or Control.**  All persons or entities, presently or on or after the Closing Date, in possession or control of some or all of the Purchased Assets are directed to surrender possession or control of the Purchased Assets to the Successful Bidder, as applicable, on the Closing Date or at such time thereafter as the Successful Bidder may request. Nothing herein shall prejudice the rights of the Successful Bidder to seek turnover from any and all Persons presently in possession, or on or after the Closing Date in possession, of some or all of the Purchased Assets.

20. **Licenses and Permits.**  To the extent provided in the Purchase Agreement and available under applicable law, the Successful Bidder shall be authorized, as of the Closing Date, to operate under any governmental authorization, any other license, permit, registration, and any

20

other governmental approval of the Debtor with respect to the Purchased Assets, and all such licenses, permits, registrations, and governmental authorizations, and any other approvals are deemed to have been, and hereby are, directed to be transferred to the Successful Bidder as of the Closing Date.  To the extent any license or permit necessary for the operation of the business of the Debtor is determined not to be an executory contract assumable and assignable under Bankruptcy Code § 365, the Successful Bidder shall apply for and obtain any necessary license or permit promptly after the Closing Date and the Debtor is hereby authorized and directed to cooperate with the Successful Bidder in connection with any such application as the Successful Bidder deems reasonably necessary or desirable, subject to the Purchase Agreement.

21.     **Authorization to Government Authorities.**  Each and every federal, state, and local governmental agency or department (including each Governmental Authority) is hereby directed to accept any and all documents and instruments necessary and appropriate to consummate the sale of Purchased Assets contemplated by the Purchase Agreement and this Order. This Order and the Purchase Agreement shall govern the acts of all such federal, state, and local governmental agencies and departments, including any filing agents, filing officers, title agents, recording agencies, secretaries of state, and all other persons and entities who may be required by operation of Law, the duties of their office, or contract, to accept, file, register, or otherwise record or release any documents or instruments, or who may be required to report or insure any title in or to the Purchased Assets, and each such entity is hereby directed to accept this Order for recordation as conclusive evidence of the free, clear, and unencumbered transfer of title to the Purchased Assets conveyed to Successful Bidder pursuant to the Purchase Agreement.  Notwithstanding anything herein to the contrary, Bankruptcy Code § 1146(a) does not apply to the transaction authorized herein.

22. To the maximum extent permitted by Bankruptcy Code § 525, no Governmental Authority may revoke or suspend any license or permit relating to the operation of the Purchased Assets sold, transferred, or conveyed to the Successful Bidder on account of the filing or pendency of this Bankruptcy Case.

23. **Injunction.** All persons and entities, including, but not limited to, the Debtor, employees, former employees, all debt security holders, equity holders, administrative agencies, governmental units (as defined in Bankruptcy Code § 101(27)), tax and regulatory authorities, secretaries of state, federal, state, and local officials, lenders, contract parties, bidders, lessors, and other parties in possession of any of the Purchased Assets at any time, trade creditors and all other creditors, holding any Liens, claims, of any kind or nature whatsoever against or in the Debtor or in the Debtor's interests in the Purchased Assets (whether known or unknown as of the Closing Date, now existing or hereafter arising, legal or equitable, matured or unmatured, contingent or noncontingent, liquidated or unliquidated, whether imposed by agreement, understanding, law, equity, or otherwise), arising under or out of, in connection with, or in any way relating to, the Debtor, the Purchased Assets, the operation of the Debtor's business on or prior to the Closing Date, the sale, or the transfer of the Purchased Assets to the Successful Bidder shall be and hereby are forever barred, estopped and permanently enjoined from asserting, prosecuting, commencing, continuing, or otherwise pursuing in any manner any action, claim or other proceeding of any kind, directly or indirectly, against the Successful Bidder or any of its affiliates, predecessors, successors, or assigns or any of their respective current and former members, managers, officers, directors, managed funds, investment advisors, attorneys, employees, partners, principals, affiliates, shareholders (or equivalent), financial advisors and representatives (each of the foregoing in its individual capacity), their property or the Purchased Assets. In connection with

the foregoing, actions that are barred hereby include, without limitation, the: (i) commencement or continuation of any action or other proceeding; (ii) enforcement, attachment, collection, or recovery of any judgment, award, decree or order; (iii) creation, perfection, or enforcement of any Lien, claim, interest, or encumbrance; (iv) assertion of any right of setoff, not asserted prepetition, or subrogation of any kind, (v) commencement or continuation of any action that does not comply with, or is inconsistent with, the provisions of this Order, any actions contemplated or taken in respect hereof, or the Purchase Agreement, and (vi) revocation, termination or failure or refusal to renew any governmental authorization or other license, permit, registration, or governmental authorization or approval to operate any of the Purchased Assets or conduct the businesses associated with such Purchased Assets. Following the Closing Date, no holder of a Lien on, in or against the Purchased Assets shall interfere with the Successful Bidder's title to or use and enjoyment of the Purchased Assets based on or related to such Lien, or any actions that the Debtor may take in the Debtor's Case. Notwithstanding the foregoing, nothing in this Paragraph 23 shall, or shall be deemed to, enjoin or prohibit the Debtor, and or/its bankruptcy estate, or the Committee, from taking any action to enforce the Debtor's rights under the Purchase Agreement.

24.    **No Liability for Worker's Compensation.** Without limiting the generality of the foregoing, the Successful Bidder shall not assume or be obligated to pay, perform or otherwise discharge any workers' compensation debts, obligations, and liabilities of the Debtor arising pursuant to state Law or otherwise. This Order is intended to be all inclusive and shall encompass, but not be limited to, workers' compensation claims or suits of any type, whether now known or unknown, whenever incurred or filed, which have occurred or which arise from work-related injuries, diseases, death, exposures, intentional torts, acts of discrimination, or other incidents, acts, or injuries prior to the Closing Date, including, but not limited to, any and all workers'

23

compensation claims filed or to be filed, or reopening of those claims, by or on behalf of any of the Debtor's current or former employees, persons on laid-off, inactive or retired status, or their respective dependents, heirs or assigns, as well as any and all premiums, assessments, or other obligations of any nature whatsoever of the Debtor relating in any way to workers' compensation liability.

25.     Subject to the terms of the Purchase Agreement, the Agreement and any related agreements and/or instruments may be waived, modified, amended, or supplemented by agreement of the Debtor and the Successful Bidder, without further action or order of this Bankruptcy Court; provided, that any such waiver, modification, amendment, or supplement is not materially adverse to the Debtor.

26.     **Failure to Include Provisions.**  To the extent not inconsistent with this Order, and subject to applicable state Law and this Bankruptcy Court's jurisdiction, the failure to specifically include any particular provisions of the Purchase Agreement or any related agreements or instruments in this Order shall not diminish or impair the effectiveness of such provisions, it being the intent of this Bankruptcy Court, the Debtor, and the Successful Bidder that, subject to applicable state Law, the sale of the Purchased Assets is authorized and approved in accordance with this Order.

27.     Nothing in this Order or the Purchase Agreement releases, nullifies, precludes, or enjoins the enforcement of any police or regulatory liability to a governmental unit, including, without limitation, the Environmental Protection Agency, that any entity would be subject to as the post-sale owner or operator of property after the date of entry of this Order.  With the exceptions of the Mineral Lease and the Lithium MOU (both as defined in the Purchase Agreement), the rights to which are expressly transferred to the Successful Bidder under the Purchase Agreement, nothing

24

in this Order or the Purchase Agreement authorizes the transfer or assignment of any governmental (a) license, (b) permit, (c) registration, (d) authorization or (e) approval, or the discontinuation of any obligation thereunder, without compliance with all applicable legal requirements and approvals under police or regulatory law.  Nothing in this Order divests any tribunal of any jurisdiction it may have under police or regulatory law to interpret this Order or to adjudicate any defense asserted under this Order.  For the avoidance of doubt, nothing in this Order or the Purchase Agreement releases, nullifies, precludes, or enjoins the enforcement of any police or regulatory power by the Utah Department of Environmental Quality ("DEQ") against the post-sale owner and/or operator of property after the date of entry of this Order.  In addition, nothing in this Order or the Purchase Agreement releases, nullifies, precludes, or enjoins DEQ's enforcement of liability against the post-sale owner and/or operator of property after the date of entry of this Order. This includes but is not limited to regulatory matters and actions by DEQ's Division of Waste Management and Radiation Control ("WMRC"), Division of Environmental Response and Remediation ("DERR"), Division of Air Quality ("DAQ"), Division of Water Quality ("DWQ"), and Division of Drinking Water ("DDW") arising from the Consent Decree and/or independent of the Consent Decree. In addition, nothing in this Order or the Purchase Agreement releases, nullifies, precludes, or enjoins the DEQ or Purchaser, as agencies of the State of Utah, from seeking cost recovery under CERCLA, or any other applicable environmental laws, against any potentially responsible parties, including a post-sale owner and/or operator, Debtor's owners, Debtor's parent companies, and affiliates, directors, officers, and managers.  Moreover, the Successful Bidder assumes liability under the Utah Petroleum Storage Tank Act, Utah Code 19-6-401 et seq. for the investigation and remediation of the petroleum storage tank release at Facility 8000206, Release

ID OLE and nothing in this Order or the Purchase Agreement precludes or enjoins the DEQ from pursuing the purchaser for said liability.

28.     **No Bulk Sales; No Brokers.**  No bulk sale Law or any similar Law of any state or other jurisdiction shall apply in any way to the sale of Purchased Assets contemplated by the Purchase Agreement.  No brokers were involved in consummating the sale or the other such transactions, and no brokers' commissions are due to any person or entity in connection with the sale or the other such transactions.  The Successful Bidder is not and will not become obligated to pay any fee or commission or like payment to any broker, finder, or financial advisor as a result of the consummation of the sale or the other transactions based upon any arrangement made by or on behalf of the Debtor.

29.     **No Amendment of Agreement.**  Nothing in this Order shall alter or amend the Purchase Agreement and the obligations of the Debtor and the Successful Bidder thereunder, except as expressly provided herein.

30.     **Binding Effect.**  This Order and the Purchase Agreement shall be binding upon and govern the acts of all Persons including, without limitation, the Debtor, the Debtor's estate, the Successful Bidder, and each of their respective directors, officers, employees, agents, successors, and permitted assigns, including, without limitation, any Chapter 11 trustee hereinafter appointed for the Debtor's estate, any trustee appointed in a Chapter 7 case if this Bankruptcy Case is converted from Chapter 11, any Chapter 11 plan agent or trustee, liquidating agent or trustee, or any other agent or trustee charged with administering any assets of the Debtor or its estate, all creditors of the Debtor (whether known or unknown), any official committee of unsecured creditors and its professionals, holders of Liens in or with respect to the Purchased Assets.

4938-3491-6234, v. 14

31.     Nothing in any Order of this Bankruptcy Court or contained in any plan of reorganization or liquidation confirmed in this Bankruptcy Case, or in any subsequent or converted cases of the Debtor under chapter 7 or chapter 11 of the Bankruptcy Code, shall conflict with or derogate from the provisions of the Purchase Agreement or the terms of this Order.

32.     **Waiver of Stays.**  The stays imposed by Bankruptcy Rules 6004(h), 6006(d), and 7062 are hereby waived, and this Order shall be effective and enforceable immediately upon entry and its provisions shall be self-executing.  In the absence of any Person obtaining a stay pending appeal, the Debtor and the Successful Bidder are free to close under the Purchase Agreement at any time, subject to the terms of the Purchase Agreement.  In the absence of any Person obtaining a stay pending appeal, if the Debtor and the Successful Bidder close under the Purchase Agreement, the Successful Bidder shall be deemed to be acting in "good faith" and shall be entitled to the protections of Bankruptcy Code § 363(m) as to all aspects of this Order or any authorization contained herein is reversed or modified on appeal.

33.     The automatic stay provisions of Bankruptcy Code § 362 are vacated and modified to the extent necessary to implement the terms and conditions of the Purchase Agreement and the provisions of this Order, and the stay imposed by Bankruptcy Rule 4001(a)(3) is hereby waived with respect thereto.

34.     **No Sub Rosa Plan.**  The sale of the Purchased Assets to the Successful Bidder outside of a plan of reorganization pursuant to the Purchase Agreement neither impermissibly restructures the rights of the Debtor's creditors nor impermissibly dictates the terms of a liquidating plan or plan of reorganization.  The Purchase Agreement does not constitute a *sub rosa* Chapter 11 plan.

4938-3491-6234, v. 14

35.    **Subsequent Plan Provisions.**  Nothing contained in any chapter 11 plan confirmed in the Debtor's case or any order confirming any such plan or any other order in the Debtor's case (including any order entered after any conversion of this case into a case under chapter 7 of the Bankruptcy Code) shall alter, conflict with, or derogate from, the provisions of the Purchase Agreement or this Order and, to the extent of any such conflict, the terms of this Order and the Purchase Agreement shall control.

36.    **Further Assurances.**  From time to time, as and when requested by the other, the Debtor and the Successful Bidder, as the case may be, shall execute and deliver, or cause to be executed and delivered, all such documents and instruments and shall take, or cause to be taken, all such further or other actions as such other party may reasonably deem necessary or desirable to consummate the sale, including, such actions as may be necessary to vest, perfect or confirm, or record or otherwise, in the Successful Bidder its right, title and interest in and to the Purchased Assets, subject to the provisions of the Purchase Agreement.

37.    **Retention of Jurisdiction.**  This Bankruptcy Court shall retain jurisdiction to enforce the terms and provisions of this Order, the Bid Procedures Order, and the Purchase Agreement (including, without limitation, all documents and instruments executed in connection with the Closing) in all respects and to decide any disputes concerning this Order, the Purchase Agreement, or the rights and duties of the parties hereunder or thereunder or any issues relating to the Purchase Agreement and this Order including, but not limited to: (i) the interpretation of the terms, conditions and provisions hereof and thereof; (ii) the status, nature and extent of the Purchased Assets; (iii) the terms and conditions relating to commercially reasonable access by the Debtor or its designee to the Purchased Assets, and the terms and conditions pursuant to which the Debtor may conduct sale(s) of its assets on the real property purchased by the Successful Bidder

4938-3491-6234, v. 14

(provided, however, that nothing in this paragraph shall require the Purchaser to provide access to real property to any party, unless the Purchaser receives fair compensation on commercially reasonable terms and conditions for access to real property); (iv) the rights and priority, if any, of the Successful bidder and the Debtor in and to the real and personal property existing on the purchased real property; (v) the priority of liens as to any property, machinery or fixtures not sold to Purchaser, which is not being determined pursuant to this Order, and (vi) all other issues and disputes arising in connection with the relief authorized herein, inclusive of those concerning the transfer of the Purchased Assets free and clear of any and all Liens (except Assumed Liabilities).

38.     **Report of Sale**.  As soon as practicable after the Closing, the Debtor shall file a report of sale in accordance with Bankruptcy Rule 6004(f)(1).

39.     **Governing Terms**.  Unless otherwise provided herein, to the extent this Order is inconsistent with the Bid Procedures Order or any other prior order or pleading in this Bankruptcy Case, or the terms of the Purchase Agreement (including all ancillary documents executed in connection with such agreements), this Order shall govern.

40.     **Skull Valley Joint Venture Excluded from Sale**.  For the avoidance of doubt, the Purchase Agreement expressly excludes the Skull Valley Joint Venture and Debtor's membership interests in Skull Valley.  Nothing contained in this Order or the Purchase Agreement shall divest easements, rights of way, and other similar real property rights, title, and interests owned by Skull Valley or ATI Titanium, LLC as of the Petition Date (or their respective potential future successors and assigns); provided that the Purchaser reserves any and all rights, if any, to challenge or dispute any such easements, rights of way, or similar real property rights, title, and interests.

41.     **Union Pacific**.  Notwithstanding anything to the contrary in the Purchase Agreement, or this Order, nothing in this Order shall affect or prejudice any rights, claims,

29

interests, arguments and/or defenses, if any, concerning any real estate, easement, right of way or other interest in real property held, owned by, or granted to Union Pacific Railroad Company on, over, across or under any of the Purchased Assets, including any railroad trackage and related facilities owned by Union Pacific Railroad Company and located on the real property subject to any such easement, right of way or other interest of Union Pacific Railroad Company, (collectively, the "Union Pacific Rights") and, for the avoidance of doubt, Purchaser acknowledges and agrees that Purchaser is purchasing the Purchased Assets subject to all of the Union Pacific Rights, provided, however, Purchaser reserves any and all rights, if any, to challenge or dispute the Union Pacific Rights.  Nothing in this paragraph of the Order affects, enlarges, or reduces the Union Pacific Rights as they existed against the Debtor as of the Petition Date.

42.      **EPA Superfund Liens and Special Accounts.**  The United States on behalf of the Environmental Protection Agency (the "EPA") asserts that liens were recorded on November 5, 2024 and on November 20, 2024 by the EPA pursuant to section 107(l) of the Comprehensive Environmental Response, Compensation, and Liability Act of 1980 (CERCLA, as amended), 42 U.S.C. § 9607(l) (the "EPA Superfund Liens").  The Purchased Assets shall be transferred to the Purchaser free and clear of the EPA Superfund Liens. The EPA Superfund Liens, consistent with paragraph 13 of this Order, shall attach to no more than $2 million of the proceeds of the Sale. The Debtor shall hold in escrow $2 million from the proceeds of the Sale until the earlier of: (1) the entry of an order fixing the amount of EPA's allowed secured claim (the "EPA Allowed Secured Claim") and directing the Debtor or Debtor's estate to disburse from such escrow the unpaid amount of the EPA Allowed Secured Claim (not to exceed $2 million), in which case the Debtor or Debtor's estate shall pay to EPA such unpaid amount within sixty (60) days of entry of such order; (2) EPA authorizes in writing the Debtor or Debtor's estate to release any  proceeds thereof

4938-3491-6234, v. 14

held in escrow; or (3) EPA does not file a secured claim by the governmental bar date for filing proofs of claim set by this Court. In the event that: (1) any amount held in escrow is not used to satisfy the EPA Allowed Secured Claim; or (2) EPA does not file a secured proof of claim by the governmental bar date, then any remaining amounts held in escrow shall be released therefrom and disbursed in accordance with the Bankruptcy Code or the Debtor's Chapter 11 plan. Purchaser, the Debtor, its estate, and the Committee (or their successors) reserve all rights to dispute EPA's secured proof of claim. The Purchaser acknowledges and agrees that to the extent the EPA Allowed Secured Claim (which in no event shall exceed $2 million) exceeds $900,000, any such excess amounts constitute obligations for compliance with environmental laws and as such are assumed by the Purchaser under Section 2.3(h) of the Purchase Agreement.  For the avoidance of doubt, the Debtor's interest, if any, pursuant to paragraphs 38 to 43 of the Consent Decree with respect to "EPA Special Accounts" is not among the Purchased Assets.  For purposes hereof, "EPA Special Accounts" shall have the same definition as contained in the Consent Decree

43.     **Tooele County Tax Claim**.  Nothing in this Order affects, releases, or extinguishes the liens for real property taxes owed by the Debtor with respect to the Purchased Assets (including the Post-petition County Taxes and the Prepetition County Taxes as defined in the Purchase Agreement, and also including taxes for years 2026 and future years), and any and all such liens shall remain after entry of this Order; provided, however that Purchaser expressly reserves the right to challenge the amount, validity, or priority of any property tax liens of Tooele County (and any such dispute will be resolved by applicable non-bankruptcy law by a tribunal within the State of Utah having appropriate jurisdiction).  Any dispute between Tooele County and the Debtor regarding the rights, priority, and extent of any liens or claims asserted by Tooele County against any of the Debtor's remaining estate assets shall be subject to the exclusive jurisdiction of the

4938-3491-6234, v. 14

Bankruptcy Court, including the County's right to seek appropriate relief with respect to its lien rights in the remaining assets.

44. **Mechanics' and Construction Liens of Forgen, LLC.** Notwithstanding anything to the contrary in this Order, nothing in this Order affects, releases, or extinguishes any valid mechanics' liens or construction liens of Forgen, LLC on the Purchased Assets, and any and all such liens shall remain after entry of this Order; provided, however that Purchaser expressly reserves the right to challenge the amount, validity, or priority of any such mechanics' or construction liens.

45. **CAT Financial Equipment Excluded from Sale**. For the avoidance of doubt, the Purchase Agreement expressly excludes the Debtor's equipment, including but not limited to equipment that has been financed by Caterpillar Financial Services Corporation. Nothing contained in this Order or the Purchase Agreement shall impair the liens of or rights of Caterpillar Financial Services Corporation to realize on its collateral owned by the Debtor.

46. **Volvo Financial Equipment Excluded from Sale**. For the avoidance of doubt, the Purchase Agreement expressly excludes the Debtor's equipment, including but not limited to one 2022 Volvo EC350EL, SN: 314320, w/ 72 inch Bucket together with all parts, accessories, attachments, substitutions, repairs, improvements, and replacements thereto, that has been financed by Volvo Financial Services, a division of VFS US LLC. Nothing contained in this Order or the Purchase Agreement shall impair the liens of or rights of Volvo Financial Services, a division of VFS US LLC to realize on its collateral owned by the Debtor.

47. **Starr Indemnity Excluded.** For the avoidance of doubt, the Debtor and the Purchaser acknowledge that the insurance policies issued by Starr Indemnity & Liability Company

4938-3491-6234, v. 14

and Star Surplus Lines Insurance Company are not among the Purchased Assets and are not assigned to the Purchaser.

48.    **Cargill's Equipment and Rights.**    Notwithstanding anything to the contrary contained herein, nothing in this Order shall affect or impair Cargill, Incorporated's ownership rights in property or contract rights, if any; provided, however that Purchaser expressly reserves the right to challenge or dispute any rights which may be asserted by Cargill, Incorporated.

49.    **Repayment of DIP Loan.**    Notwithstanding anything to the contrary contained in the Purchase Agreement or this Order, (a) the Debtor shall pay to Wells Fargo Bank, National Association ("Lender"), from the cash proceeds of the Sale, all of the Post-Petition Obligations in respect of the DIP Term Loans (including accrued post-petition interest and attorney's fees to which the Lender is entitled, and cash collateral to secure the post-petition Letter of Credit) due to Lender pursuant to the Interim Orders approving debtor-in-possession financing issued by the Court in favor of Lender (the "Interim DIP Orders") in an amount to be set forth in a pay proceeds letter by the Debtor (the "Post-Petition Payoff Amount"), subject to review by the Committee and Lender, and (b) all of the security interests and claims with respect to all Pre-Petition Obligations due to Lender in respect of its Pre-Petition Collateral (including, subject to sections 552(a) and (b) of the Bankruptcy Code, any proceeds thereof whether arising before or after the Petition Date) pursuant to the Pre-Petition Loan Documents (as well as any replacement liens on the Pre-Petition Collateral granted pursuant to the Interim DIP Orders) are hereby retained (subject to applicable Challenge rights); provided, that, Lender agrees to release (i) any and all security interests in and liens against the Post-Petition Collateral (but not for the avoidance of doubt, subject to sections 552(a) and (b) of the Bankruptcy Code, any assets of Debtor arising after the Petition Date that constitute proceeds of Pre-Petition Collateral), (ii) the DIP Superpriority Claim, and (iii) any

33

administrative expense claims arising in connection with the DIP Term Loans or the Interim DIP Orders. Capitalized terms used in this paragraph and not defined in this Order shall have the meanings given in the Interim DIP Orders or, if not defined therein, the Ratification and Amendment Agreement.

50.     **Headings.**  The headings in this Order are for purposes of reference only and shall not limit or otherwise affect the meaning of this Order.

[END OF ORDER]

Dated: February 5th, 2026
Wilmington, Delaware

**BRENDAN L. SHANNON**
**UNITED STATES BANKRUPTCY JUDGE**

34

4938-3491-6234, v. 14