UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

| | | |
|---|---|---|
| IN RE: | . | Chapter 11 |
| | . | Case No. 25-11696 (BLS) |
| US MAGNESIUM, LLC, | . | |
| | . | |
| | . | Courtroom No. 1 |
| | . | 824 North Market Street |
| | . | Wilmington, Delaware 19801 |
| Debtor. | . | |
| | . | Thursday, March 5, 2026 |
| . . . . . . . . . . . . . . . | . | 11:00 a.m. |

TRANSCRIPT OF HEARING
BEFORE THE HONORABLE BRENDAN L. SHANNON
UNITED STATES BANKRUPTCY JUDGE

For the Debtor: Michael Busenkell, Esquire
GELLERT SEITZ BUSENKELL & BROWN, LLC
1201 North Orange Street
Suite 300
Wilmington, Delaware 19801

For the Committee: Todd Meyers, Esquire
EVERSHEDS SUTHERLAND (US) LLP
999 Peachtree Street, NE
Suite 2300
Atlanta, Georgia 30309

(APPEARANCES CONTINUED)

Audio Operator: Ashley Alexander, ECRO

Transcription Company: Reliable
The Nemours Building
1007 N. Orange Street, Suite 110
Wilmington, Delaware 19801
Telephone: (302)654-8080
Email: gmatthews@reliable-co.com

Proceedings recorded by electronic sound recording, transcript produced by transcription service.

APPEARANCES (CONTINUED):

| | |
|---|---|
| For the Utah Division Of Forestry Fire and State Lands: | George Hofmann, Esquire<br>CHONE KINGHORN<br>111 East Broadway, 11th Floor<br>Salt Lake City, Utah 84111 |
| For Wells Fargo: | Adam Silverstein, Esquire<br>OTTERBOURG PC<br>230 Park Avenue<br>New York, New York 10169<br>Wilmington, Delaware 19801 |
| For Tooele County: | Kevin Levitsky, Esquire<br>COOCH & TAYLOR, P.A.<br>1000 North West Street<br>Suite 1500<br>Wilmington, Delaware 19801 |

INDEX

| MOTIONS: | | PAGE |
| --- | --- | --- |
| Agenda Item 2: | Motion of the Debtor For an Order (A) Authorizing and Approving the Private Sale of the Turbine Free and Clear of Liens, Claims, Encumbrances and Interests, With Such Interests to Attach to the Proceeds; and (B) Granting Related Relief [D.I 578; Filed February 4, 2026] | 4 |
| | Court's Ruling: | 24 |

(Proceedings commenced at 11:15 a.m.)

THE COURTROOM DEPUTY: All rise.

THE COURT: Please be seated.

Mr. Busenkell, good morning. Good to see you.

MR. BUSENKELL: Good morning, Your Honor. Michael Busenkell of Gellert Seitz Busenkell & Brown on behalf of US Magnesium.

Your Honor, we only have one matter on the agenda today. That is the debtor's request to sell a gas turbine. Your Honor, just to give the Court some background, this is one of the debtor's remaining assets. Its, as I indicated before, a gas turbine along with all the parts and accessories that go along with it that's located at the debtor's former Rowley, Utah location.

Prior to the petition date, the debtor had attempted to market the turbine. Following the petition date, with the assistance of SSG, the debtor continued to market the turbine and we have a bill of sale with Total Energy Corporation, the proposed purchaser, that we entered into on February 23rd. That is what is before Your Honor today with the note that we did file a revised bill of sale that increases the deposit and extends the closing date 30 days from the entry of the order. That revised bill of sale is at Docket Number 578.

Your Honor, by way of further background, the

debtor had originally acquired this turbine back in 2014 in anticipation of increased production needs. Those increased production needs never materialized and so the turbine was never used. And this turbine has sat idle for many years and, obviously, given the sale of the debtor's business is no longer needed.

Your Honor, the debtor would submit that given the marketing both prepetition and post-petition that the purchase price now offered by Total Energy is the best and highest price that could be achieved for the turbine under the circumstances. We also believe that the sale of the turbine is in the best interest of the debtor, its creditors, and its stakeholders.

Your Honor, we did receive three responses to the proposed sale. We received both informal comments and a reservation of rights from the creditors committee. We also received two objections, one from Tooele County and one from Wells Fargo, both asserting a priority lien in the turbine. I think it's important to note that neither the County nor Wells asserts that sale of the turbine isn't in the best interest of the estate.

THE COURT: Yeah, I think this -- to the extent we have a dispute, its about what is happening with proceeds.

MR. BUSENKELL: That is correct, Your Honor.

THE COURT: There doesn't seem to be any issue

with the wisdom of the sale, how we go there or the bonafides of the proposed purchaser.

MR. BUSENKELL: That is correct, Your Honor. And I would add, you know, from the debtor's perspective, just to -- I am sure Your Honor recalls, but an important aspect, important component of the consideration that we received from FFSL, the State of Utah, in connection with the sale was the assumption of the Tooele --

THE COURT: Tooele County.

MR. BUSENKELL: -- County tax obligations. That is spelled out in the APA and in various locations. And the sale order that Your Honor entered also provides that the County's lien remain on the Rowley premises after entry of the sale order.

So, you know, we believe that the County can enforce its rights through an action against FFSL or the State of Utah or foreclosure on the Rowley property but that the Tooele County taxes were, in fact, assumed by the County and they shouldn't be asserting a lien on the turbine at this juncture.

That being said, Your Honor, we would at least ask Your Honor to enter the order approving the sale today unless Your Honor has any questions for me.

THE COURT: I don't think so other than wanting a sale to occur and move forward here, the debtor -- I mean,

the dispute is between Wells Fargo and Tooele County over what happens from proceeds from the sale. You want a sale approved and you want it to close.

MR. BUSENKELL: We would like the sale approved, get to closing as soon as possible. Obviously, the Court has to resolve that dispute between the County and Wells Fargo. We, again, think that Tooele County, you know, those tax obligations were assumed by the state but we would like to get to a closing. We have a lot of equipment that is still on the Rowley property.

THE COURT: I've heard.

MR. BUSENKELL: Yes, as Your Honor is well aware. The sooner that we can start removing some of the stuff the better. So, yeah, we would like the sale approved.

THE COURT: Okay. I understand.

Let me hear from Tooele County and then I'll hear from Wells Fargo in response.

Good morning, counsel.

MR. LEVITSKY: Good morning, Your Honor. Kevin Levitsky, Cooch & Taylor, on behalf of Tooele County.

Tooele County supports the sale of the turbine free and clear of the liens to the extent that the County's liens attach to the proceeds of the sale. The debtor filed its motion contemplating precisely that liens attached to the proceeds in the same priority and there was no language in

the order directing the proceeds be distributed to Wells. Tooele County is fine with the proposed order submitted with the motion and the revised order submitted thereafter.

Wells filed its limited objection seeking to add language requiring the net sale of the proceeds of the turbine to Wells Fargo, closing recognition of its first priority lien status. That is what Tooele County objects to. Wells is seeking, by its limited objection, determination as the priority lien at the expense of Tooele County. It is procedurally inappropriate and also does not need to be decided today.

THE COURT: Well, it's hardly unusual for a secured creditor to consent to the sale of its collateral and say but I want the proceeds paid over to me. We can debate that but I think that is the question that is squarely in front of me. And I think what I have heard from the committee is you can sit on that proposition for a little while, just get the money and we'll figure it out.

You're a secured creditor, let's stipulate to that for the moment. I realize that that is contested by Wells Fargo with respect to the specific terms of the scope of the securities but let's assume for a moment that you are. The collateral is being sold. Isn't this an issue of adequate protection?

You are a secured creditor, you're entitled to

adequate protection of your interest. And your point would be adequately protecting by just leaving the money there. How do I deal with the argument that Tooele County is adequately protected because a sovereign state has assumed obligations to it?

MR. LEVITSKY: Yes, Your Honor. So, with the past due taxes that are owed, either that or the turbine is where we would like to be adequately protected but as to the State of Utah, the County -- the State of Utah has sovereign immunity to be sued against from the County.

THE COURT: But this isn't a question of -- I mean, I don't want to get far down this stream but this isn't a question of immunity, this is a question of contract. The State or FFSL -- and, again, if I've gotten this wrong, I will hear from FFSL if they wish to be heard but as part of the sale the State assumed those obligations.

So, those are obligations that have been -- and that sale has closed, so I think what I heard from Mr. Busenkell is those are obligations that the obligation to pay those taxes rests with the state at this point. It remains collateralized, again subject to the argument about whether or not the liens do properly extend to this turbine, but what you're entitled to is to have your property -- is to have your interest adequately protected if you're a secured creditor.

Again, what I think I have heard from Wells Fargo is your interests are adequately protected because in the first instance you have the benefit of the State paying and then I think, if I read their papers correctly, Wells Fargo also observes that the debtor is currently -- you know, currently has cash on hand.

So, how do I deal with the argument that Wells Fargo is making? Again, this Tooele County has certainly been here from the beginning vigilantly protecting its interest as has Wells Fargo. And so, what I have is a request from Wells Fargo for payment of proceeds of what is indisputably their collateral, whether its yours as well and who is senior that is a separate discussion in front of me right now.

I think I would like to know why your interests aren't addressed even if I were to allow the sale proceeds. There is no issue with confirming -- with approving the sale. The sale will get approved, the sale will close, money will come in. If it goes to Wells Fargo then, obviously, your point would be that is proceeds of our collateral, right?

MR. LEVITSKY: Yes, Your Honor. Yes, exactly. Tooele County feels the right that, just like Wells Fargo, why should we forego getting paid sooner then later and then as to the equipment and machinery disputes that are tangential to this dispute, it seems like a slippery slope

where now the turbine, who knows its condition on the premises. We've seen the declaration and Exhibit A attached with it which authenticated. Who knows what is under there or what it is.

So, Tooele County's position is that if we don't have an interest here its not adequately protected which I know it is but we would have to go after Wells Fargo and then after every piece of equipment this could be a dispute that we're coming back in and this wasn't used. The equipment wasn't used because the mine wasn't successful. That is why we're here in bankruptcy court.

THE COURT: Sure.

MR. LEVITSKY: If it was successful then nobody would be here and everything would be okay. So, there is property that is a lien by the County, machinery and equipment, and we don't feel adequately protected now as to this going to Wells Fargo and then as to the equipment even though we do have a lien.

THE COURT: Very good. Thank you, Mr. Levitsky.

MR. LEVITSKY: Thank you, Your Honor.

THE COURT: Can I hear from Wells Fargo.

Mr. Silverstein, good morning. Good to see you again.

MR. SILVERSTEIN: Good morning. Good to be here. Adam Silverstein of Otterbourg for Wells Fargo.

Let me start by making clear that Wells Fargo supports the sale with two caveats. One is access but I'm going to go to the second which is what the Court is addressing, the proceeds first. And the Court clearly understands the issues. I want to just give a little bit of reminder and context.

There was a process, a sale process that the Court is aware of and the Court, I hope, remembers that Wells Fargo was ultimately vigorously opposed to the result of it. The stalking horse bidder was outbid and the result was not the going concern sale that the debtor had indicated it was pursuing and that Wells Fargo had agreed to finance but it was a sale to FFSL to stop the debtor from being a going concern. And part of the package that FFSL offered was assuming all of the debtors County tax liabilities to Tooele; approximately $8 million of liabilities that are no longer the debtors. They are now FFSL's liabilities that they agreed to take on. That was part of the deal.

Now, Toole County -- we dispute they have a lien but Tooele County is asserting that because the State of Utah -- and this is their words from their limited objection at Paragraph 27, "To date, the State of Utah has made no commitments to pay or seek authorization to pay the taxes."

So, because the State of Utah, which received the Rowley premises, the Rowley improvements, the Rowley

fixtures, basically the mining operations that they have now taken out of commission, and they assumed all of the taxes on those pieces of property now Tooele County is looking to the debtor, which shed these liabilities, as a guarantor of the State of Utah's non-payment of taxes. That wasn't the deal. That wasn't why the State of Utah won the bid by basically saying we'll assume the liabilities but the debtor is ultimately going to have to pay them anyway because we're not agreeing to step up and pay them.

So, regardless of whether Tooele County has a lien or not this is FFSL's problem, that is the deal that was made. That is the deal that the Court approved over Wells Fargo's objection and we believe that holding the debtor and Wells Fargo as guarantor of the winning bidders assumption of liabilities is unsupported by law. It's completely anathema to what the deal was that the Court approved. And we think that the Court should approve these proceeds to go to Wells Fargo.

We don't think there is a lien to begin with. So, we don't think there is really a lien dispute. This turbine, I think its undisputed, never got used, it never made it out of the box. And to say that it was equipment used --

THE COURT: In mining.

MR. SILVERSTEIN: -- in mining, which it wasn't, you -- those are the words for assessment "used in mining."

Its undisputed this was not used in mining. So, it was not a piece of property that was assessable. And moreover, to read the words given in plain English "related mining machinery," which is the property that the lien attaches to, you would have to leave out the word "relating" and "mining" altogether and just go to the word "machinery" in order to have this lien attached to that piece of equipment because it wasn't used in mining. It wasn't in any way really related to the operations of the business whatsoever. It was intended to be used but it never was used.

So, Your Honor, we ask the Court to approve the sale and to have the proceeds go to Wells Fargo. I believe I did not hear any disagreement from Tooele County that they are adequately protected. They have the State of Utah, which the last I checked is a solvent state. Its their parent home state that agreed to take on this responsibility. They have the Rowley premises, which the State of Utah paid $30 million for in addition to assuming the liabilities. So, they are adequately protected and I didn't hear any dispute as to that.

So, for the reasons set forth in our papers, for the reasons I just mentioned, we believe the sale should be approved and the proceeds should be paid to Wells Fargo.

There is one other matter which is access. In order for the sale to be consummated there needs to be access

for the buyer, Total Energy. There also needs to be access by the seller, the debtor. And we were pleased to learn yesterday that Total Energy and FFSL have entered into an access agreement that gives Total Energy access to the premises. We also were pleased to see that under the terms of the bill of sale and the access agreement, Total Energy gave notice to the State that they wish to come onto the premises on March 11th through the 13th to inspect and collect the turbine.

At the same time, we were disappointed, extremely ,to learn that Total Energy requested that the debtors representatives be present to ensure that there was full delivery of all of the component parts of the turbine at that time on March 11th through the 13th. And I am just going to quote the response that my partner, Mr. Helfat, was copied on from Mr. Hofmann in response to the request that the debtor's representatives be present. Mr. Hofmann wrote to Steve Feinstein:

"Steve, we are working on an access agreement with the debtor and hope we will have that in place by March 11th; however, that is not in place today. I sent a revised draft to the debtor yesterday. So, we cannot provide assurance that the debtor and its employees will have access as you have requested."

Now, Your Honor, it cannot be that FFSL can hold

up the consummation of this sale and have -- and hold up proceeds coming into the estate because the debtor can't come onto the property to oversee the delivery of the turbine to the buyer without having some sort of global access agreement that covers all manner of things beyond just this limited delivery. And that is especially the case because when Mr. Hofmann sent the markup a couple of days ago, which was sometime in the making, but when he sent it one of the first things that Mr. Helfat did was reach out to Mr. Hofmann by email and say thank you for sending this markup, we need the business people to get on the phone together to talk through the remaining issues to get this over the finish line. And 24 hours later, at the end of the day yesterday, Mr. Hofmann responded that Wells Fargo should not expect any representative of the State of Utah to be available this week and gave no representation as to when they would be available.

So, Your Honor, it can't be that this sale can't be consummated because there needs to be a global access agreement that has been discussed, as Your Honor. That has been discussed for seven weeks we have been going back and forth. And this is emblematic of the problems that the debtor and Wells Fargo have been having.

And we have a situation here where we have a seller in hand and we are struggling to get this over the

finish line. The debtor still needs to market and have buyers come onto the premises, look at all the other items that are there, and dispose of them. There is a timing issue here because rock salt, for example, is a seasonal item. Buyers of rock salt will pay more to get it in February and March then they will in April, May and June. And this process has just dragged on and on.

So, Your Honor, we know we're coming back on the 18th. We know we're going to be dealing with access. We would ask the Court to set aside a sufficient amount of time. We will put on as many witnesses as we need to get this concluded but for purposes of getting this turbine sale consummated, we ask that the order provide that the State will make the premises available for a debtor's representative or representatives for the purpose of ensuring delivery of the turbine.

Thank you very much.

THE COURT: Thank you, Mr. Silverstein.

Can I hear from the committee. Mr. Meyers, good morning. Good to see you.

MR. MEYERS: Good morning, Your Honor. Todd Meyers, Eversheds Sutherland, on behalf of the creditors committee.

First, Your Honor, thank you for allowing me to appear by video.

Your Honor, we -- the committee, perhaps for the first time in this case, supports Wells Fargo's position. We do support -- first off, we support the sale of the turbine. We gave comments to the agreement to the order, all of it incorporated. So, we are satisfied with that.

We may have misheard you earlier say that the committee wants the money to sit. You may have meant the County or maybe not but in any event, that is not what we want. We would like to see the money paid over to Wells Fargo in reduction of their debt because we know that eventually Utah will pay Tooele County based on their obligations over the APA.

So, the sooner we can have secured debts paid off the better. At a minimum though we would want the money escrowed rather than paid over to Tooele County because that would harm the estate given that we have already got an obligor who is on the hook for that.

We filed -- the only reason we filed a response was it was really in response to what Wells Fargo filed. I don't know if Your Honor had a chance to read it.

THE COURT: I did. I saw it this morning.

MR. MEYERS: Okay. It was simply, you know, Wells Fargo's primary argument, I think, is that they are first in priority. They are -- their ultimate argument is that Tooele County is adequately protected for a number of reasons,

including that Utah is on the hook for the debt. One of the arguments for adequate protection they raised we just took issue with, which is that Wells Fargo stated that the lien -- the Tooele County lien attached to the sale proceeds and we disagree with that.

The real estate was not sold free and clear of the Tooele County liens. It was specifically not sold free and clear of that and the sale order makes clear that only divested liens attached to the proceeds. And Tooele County's lien was not a divested lien. So, that was something that we felt we just needed to correct the record on.

Beyond that, as I stated, we would support approval of the motion and sale, the payment of the proceeds to Wells Fargo. And if Your Honor is not yet comfortable with that then the proceeds be escrowed but not paid over to Tooele County even if Your Honor were to determine that they had a first lien because ultimately, we believe that claim will be satisfied by Utah and then those proceeds could be released to Wells Fargo.

We don't really take a position on the access issue other then we're very involved and in discussions. We tried to be in discussion with the debtor and Wells Fargo and Utah regarding access. We're generally not at the table. This is the first I've heard of what Mr. Silverstein stated about the debtor having access.

So, we will do everything we can to be in the loop on what is going on with access and providing comments when we see drafts of the agreement. Ultimately, we hope to work that out. We are in discussions with the debtor and Wells Fargo regarding the situation which we could support access. But in any event, we don't have a position on the particular issue today with respect to access.

THE COURT: Thank you, Mr. Meyers.

MR. MEYERS: Thank you, Your Honor.

THE COURT: Can I hear from FFSL. Is Mr. Hofmann on the line? Mr. Hofmann, good morning. Good to see you.

MR. HOFMANN: Good to see you.

Can you hear me all right, Your Honor?

THE COURT: I sure can. Thank you.

MR. HOFMANN: So, obviously, my client has taken no position with respect to the sale of the turbine. The access issue I think is ripe for hearing by the Court on March 18th. Before we just heard Wells Fargo's comments. I didn't understand that to mean any part of the relief that was requested to be heard this morning by the Court.

We -- my client does have an access agreement with Total Energy and the fact that my client was pretty readily able to negotiate a contract with Total Energy that provides for insurance and indemnification and is commercially reasonable, and the --

THE COURT: You know, can I just ask -- again, I know that we're going to be on this on the 18th and I'm not inserting myself into the discussion but I mean what I think I heard is -- and, again, I don't want to get down this path but if -- you objected to a motion to shorten and I sustained that objection on the theory that there needed to be a meaningful opportunity and stuff wasn't going to disappear. We're talking about large heavy things that aren't melting. I get it.

Arguably, with a purchaser ready to pick up the turbine for many millions of dollars that is a little bit more urgent but what I've consistently heard from Wells Fargo is a concern that given their status as a financial institution, they're not in a position to provide an indemnity which I make no comment, the parties can debate that. I certainly have dealt with that consideration before. I guess I'm wondering what is the difference between that and a bond.

I will share with you that it is -- I would assume that we need company people on the property in order to implement the sale of this turbine, which I think from prior proceedings requires a hundred-ton crane. And you have expressed concerns about exactly how that would happen.

So, again, the wisdom of having strangers to the property without guidance from people that are familiar with

it, and your clients aren't, I'm struggling with that. And I will tell you that I do get the urgency of closing a sale to a secured creditor -- closing a sale of collateral of a secured creditor, as you heard from Mr. Meyers. So, what do I do with that?

MR. HOFMANN: So, Your Honor, Total Energy readily agreed to indemnify the State of Utah which is commercially reasonable. If you're going to bring a hundred-ton crane onto someone else's property you should, in my view, fully expect to indemnify that person from any damage that you cause with that hundred-ton crane. Total Energy readily agreed to that.

The debtor will not, Your Honor. And so, if the debtor's employees come onto my client's property and harm it, they should be responsible for that damage. You break it, you buy it. And insurance coverage can somewhat plug that gap but insurance coverage, Your Honor, very much depends on contractual indemnity obligations that to this point the debtor has refused to give.

Now, with regard to Wells Fargo, I agree with you, they are a large financial institution. I would be totally shocked if every single lease of office space that Wells Fargo has, they are liable to indemnify the landlord if they damage the premises. That is just the way it works, Your Honor. Why should my client be responsible for harm that someone else causes to the property. Again, Total Energy had

no problem agreeing with that. There is another entity called Hill Brothers that is a former contractor of the debtor that readily agreed to that.

We will be proposing that to other people but if someone comes on my client's land and harms it they should be responsible for that harm. And the debtor is not willing to bear that responsibility and that's not fair.

THE COURT: Okay. Mr. Levitsky, I will give you the last word.

MR. LEVITSKY: Thank you, Your Honor. For the record, Kevin Levitsky of Cooch & Taylor on behalf of Tooele County.

As to adequate protection, the State is not committed to paying the taxes. Further, we never waived our lien on personal property. It is not -- and distribution proceeds, we believe, is premature and was not part of the motion. It is our understanding that if this sale is free and clear of the turbine the lien is divested and we would have a right to, at least, fight for it later.

So, handing over the proceeds to Wells Fargo seems premature as well and we're not opposed to the funds being held in escrow and having our day later on.

THE COURT: Very good.

MR. LEVITSKY: Thank you, Your Honor.

THE COURT: Thank you.

All right, here's what we're going to do: as noted, the sale itself is unapproved and the Court will approve the sale. I will also authorize the disbursement of the proceeds of the sale to Wells Fargo consistent with their asserted request and their rights acknowledged as the secured creditor with the turbine as their collateral.

And I view this as, I think was noted from the colloquy with several different counsel, an adequate protection issue. Here, the Court has already approved a sale that has closed that has a sovereign state or agents of -- arms of a sovereign state has committed to pay the taxes. This was not a minor consideration or side issue. This was front and center from when the assets were proposed to be subject to bidding procedures. Tooele County has vigorously stood up and asserted and protected its interests and it is doing so today. I think it is doing so appropriately.

The request, to me, is a close call because, again, there is a dispute over the lien rights. There is no dispute that Wells Fargo has lien rights in the turbine. There is, at least between Wells Fargo and Tooele County, a dispute about whether or the extent to which Tooele County has lien rights. I don't need to resolve that today because to the extent that Tooele County, indeed, has those rights in the turbine and in other assets I am satisfied that those claims and interests are adequately protected under

Bankruptcy Code Section 361 and 363 for purposes of satisfies the concerns and issues expressed by Tooele County and sufficient to permit the Court to authorize the sale itself as well as the disbursement of proceeds, again, to an acknowledged secured creditor. I ascribe significance to the position of the unsecured creditors committee that has agreed with Wells Fargo in this respect.

That brings us then to the motion itself and, as I said, I am going to grant the motion. There is not a substantive opposition, as we noted at the outset, to the request. This is a private sale. It was not subject, I believe, to an auction process but it was marketed by both the debtor as well as, I believe, Mr. Victor. I am satisfied that the record developed by the debtor before the Court now certainly demonstrates that this sale was conducted at arm's length by sophisticated parties.

Again, I take comfort from the fact that the sale is supported by stakeholders including the creditors committee, Tooele County, and Wells Fargo that, again, the sale represents an appropriate step forward in these cases. Case law teaches in the Third Circuit that a debtor looking to sell property under Section 363 needs to demonstrate that it is an exercise of the debtor's reasonable business judgment and that it is also proceeding in good faith. I am satisfied the debtor has carried its burden as to both

prongs.

As to reasonable business judgment, again, given the posture of the debtor's operations it has, as all parties agree, no need or use for this turbine. It is a valuable asset and they have got a significant purchase offer for it.

Likewise, the record before me demonstrates that Total Energy is a good faith purchaser within the meaning of Bankruptcy Code Section 363(m) and is entitled to all of the protections attendant thereto. So, I will approve a sale.

As to the final point raised by Wells Fargo and the subject of the colloquy between Mr. Hoffman and me, I note that the Court has left issues of access to the 18th and the Court will set aside sufficient and appropriate time in order to afford that. I want to be clear though that I view the turbine as being somewhat different and if we have an issue with allowing debtor personnel onto the property then the Court would entertain some sort of emergency proceeding.

I understand the indemnity issue. I understand whether it can be solved by a bond, or by insurance, or by other tools but this is a dumb fight, at least, as it relates to the turbine and I would expect that the parties will either navigate a narrow way through in order to get through to the turbine sale or the Court will entertain a request to determine and set the mechanics by which access will be afforded. That is a prerogative that the Court expressly

reserved to itself and one that I would be prepared to exercise in the context of the turbine sale.

I am not trying to do a bait and switch on Mr. Hofmann or FFSL. Access is not an issue for today but what is an issue for me I'm not in the business of ordering nullities or sending people on a fool's errand. The sale of this turbine has been discussed for months. The desire to liquidate this asset, bring in the money, pay off, pay down, take this step has been on everybody's radar including the Court's for many months.

So, I want to be clear, I am approving and authorizing this. I am overruling a substantive and considerable objection to the mechanics of the sale and the proceeds in order to facilitate and allow that process to move forward. And I intend that it will.

So, again, I'm not stepping on a dialog that I deliberately permitted to extend because, otherwise, this would be the hearing on the access issues but, again, I thought that there was merit to FFSL's observation that what we were talking about was the sale of large assets that are going to take lots of truck loads and time and things like that. And we ought to be able to work through it.

Also, I believe in FFSL's objection. There was a comment that the State of Utah legislature might be in session or something else that, again, impose significant

burdens. So, I extended the time for that and I did so willingly and I believe appropriately but I am approving and authorizing a sale. I don't know whether or not the mechanics of the sale will be able to move forward on the 11th or 12th but access should not be the deciding consideration of whether or not this sale closes. Again, it seems to me not surprising that the purchaser is going to want people that have some idea of what is on this property on the property to assist them in this exercise.

So, with that admonition, I would look for that order to be uploaded. The Court would waive any stay under Rule 6004 and authorize the debtor to move promptly to closing. If issues remain with respect to the narrow question of access in order to facilitate this sale, then you can get me on the phone and I would not need motion practice in connection with that. I understand the bid and the ask and I have had lots of discussions about this issue; all of which I would like to leave open to the 18th but if I need to address this question again it is the Court's intention and expectation to approve a sale and to have that sale close and to do so effectively.

Are there any questions?

(No verbal response)

THE COURT: All right. Mr. Busenkell, I will look for your order to be uploaded and with that we are adjourned.

Thank you, counsel.

(Proceedings concluded at 11:55 a.m.)

CERTIFICATION

I certify that the foregoing is a correct transcript from the electronic sound recording of the proceedings in the above-entitled matter to the best of my knowledge and ability.

/s/ William J. Garling March 16, 2026

William J. Garling, CET-543

Certified Court Transcriptionist

For Reliable