# **EXHIBIT A**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>US MAGNESIUM LLC,[1]<br><br>    Debtor. | Chapter 11<br><br>Case No. 25-11696 (BLS) |

**ORDER (A) APPROVING THE PRIVATE SALE OF CERTAIN OF
DEBTOR'S ASSETS FREE AND CLEAR OF LIENS, CLAIMS AND
ENCUMBRANCES, WITH SUCH INTERESTS TO ATTACH TO
THE PROCEEDS, AND (B) GRANTING RELATED RELIEF**

Upon *Debtor's Motion for Entry of an Order (A) Approving the Private Sale of Certain of Debtor's Assets Free and Clear of Liens, Claims and Encumbrances, With Such Interests to Attach to the Proceeds, and (B) Granting Related Relief* [D.I. XXX] (the "Motion")[2] filed by the above-captioned debtor and debtor in possession (the "Debtor") for entry of an order (this "Order") approving the private sale (the "Sale") of certain of the Debtor's assets, as set forth in greater detail in the Motion (the "Purchased Assets") free and clear of liens, claims, and encumbrances, with such interests to attach to the proceeds (the "Sale Proceeds"), all as further described in the Motion; and upon consideration of the record of this Chapter 11 Case; and this Court having found that (i) this Court has jurisdiction over the Debtor, its estate, property of its estate and to consider the Motion and the relief requested therein under 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated February 29, 2012, (ii) this Court may enter a final order consistent with Article III of the United States Constitution, (iii) this matter is a core proceeding under 28 U.S.C § 157(b)(2)(A), (iv) venue of this Motion in this District is proper under 28 U.S.C. §§ 1408 and 1409, and (v) no

---

[1] The last four digits of the Debtor's federal tax identification number are 5446.  The Debtor's address is 238 N 2200 W, Salt Lake City, Utah 84116

[2] Capitalized terms used but not defined herein shall have the respective meanings ascribed to them in the Motion.

further or other notice of the Motion is required under the circumstances; and this Court having reviewed the Motion; and having determined that the legal and factual bases set forth in the Motion and the record of this Chapter 11 Case establishes just cause for the relief granted in this Order; and this Court having found and determined that the relief sought in the Motion is in the best interests of the Debtor's estate, creditors and other parties in interest; and after due deliberation and sufficient cause appearing therefor,

**IT IS HEREBY FOUND AND DETERMINED AND ORDERED THAT:**

1.    The relief requested in the Motion is GRANTED as set forth herein.

2.    The Purchase Contract, attached hereto as **Exhibit 1**, and all of its terms and conditions are hereby approved.  The failure to specifically include any particular provisions of the Purchase Contract in this Order shall not diminish or impair the effectiveness of such provisions, it being the intent of this Court that the Purchase Contract be authorized and approved in its entirety.

3.    Pursuant to Bankruptcy Code sections 105(a) and 363, the Debtor is authorized to consummate the transaction provided for in the Purchase Contract (the "Closing"), including the payment of certain costs as discussed below, effective upon entry of this Order and the satisfaction of the conditions set forth herein.

4.    The Debtor is authorized to execute and deliver, and empowered to perform under, consummate and implement, the Purchase Contract and all additional instruments and documents that may be reasonably necessary or desirable to implement the Purchase Contract in accordance with its terms, and to take all further actions as may be necessary for the purposes of assigning, transferring, granting, conveying and conferring to the Buyer of the Purchased Assets, or as may

be necessary or appropriate to the performance of the obligations as contemplated by the Purchase Contract.

5. Pursuant to Bankruptcy Code section 363(f), the sale of the Purchased Assets is, without need for any action by any party, free and clear of all liens, claims, encumbrances and interests, with such liens, claims, encumbrances, and interests attaching to the Sale Proceeds, net of costs and other expenses directly incurred to close such sale, including royalties owed to the State of Utah (determined pursuant to U.A.C. R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 et seq., and not to exceed 5%) (the "Royalties") and the payment of any applicable taxes, including, without limitation, taxes owed pursuant to Utah Code Ann. § 59-5-202 (the "Taxes") with the same validity, extent and priority as had attached to such Purchased Assets immediately prior to such sale. The holder of any valid lien, claim, encumbrance, or interest on such Purchased Assets shall, as of the effective date of such Sale, be deemed to have waived and released such lien, claim, encumbrance, or interest on the Purchased Assets, without regard to whether such holder has executed or filed any applicable release, and such lien, claim, encumbrance, or interest shall automatically, and with no further action by any party, attach to the Sale Proceeds. All persons or entities holding liens, claims, encumbrances or interests of any kind or nature whatsoever in, to or against the Purchased Assets or the operation of the Purchased Assets are hereby and forever barred, estopped, and permanently enjoined from asserting against the Buyer or any of its successors, assigns or property (including, without limitation, the Purchased Assets) any lien, claim, encumbrance or interest existing, accrued or arising prior to the closing.

6. This Order shall be good and sufficient evidence of the transfer of title in the Purchased Assets to the Buyer, and the Sale consummated pursuant to this Order and the Purchase Contract shall be binding upon and shall govern the acts of all persons and entities who may be

required by operation of law, the duties of their office or contract to accept, file, register or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to any of the Purchased Assets sold pursuant to this Order, including, without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, administrative agencies, governmental departments, secretaries of state and federal, state and local officials, and each of such persons and entities is hereby directed to accept this Order as good and sufficient evidence of such transfer of title and shall rely upon this Order in consummating the Sale contemplated hereby.  A certified copy of this Order may be: (a) filed with the appropriate clerk or similar official, (b) recorded with the applicable recorder of deeds or similar official, and/or (c) filed or recorded with any other governmental agency to evidence the cancellation of any and all liens, claims, encumbrances and interests with respect to the Purchased Assets.

7.      This Order and the Purchase Contract shall be binding and enforceable in all respects upon (a) the Debtor and all successors and assigns of the Debtor, (b) all creditors or interest holders, in each case, whether known or unknown, of the Debtor, (c) the Buyer and its successors and permitted assigns, and (d) any trustee that may be appointed in the Debtor's chapter 11 case (or, upon conversion to a case under chapter 7 of the Bankruptcy Code, any trustee appointed in such chapter 7 case).

8.      The Purchase Contract and each of the transactions contemplated therein were negotiated, proposed, and entered into by the Debtor and Buyer, in good faith, without collusion, and from arm's length bargaining positions.  Buyer is a "good faith" purchaser within the meaning of section 363(m) of the Bankruptcy Code and, as such, is entitled to all the protections afforded thereby.

9.      No bulk sales law, bulk transfer law, or similar law of any state or other jurisdiction shall apply in any way to the Sale.  The Debtor and Buyer waive, and hereby shall be deemed to have waived, any requirement of compliance with, and any claims related to noncompliance with, the provisions of any bulk sales, bulk transfer, or similar law of any jurisdiction that may be applicable.

10.      Notwithstanding the provisions of Bankruptcy Rule 6004(h) or any applicable provisions of the Local Rules, this Order shall be effective and enforceable immediately upon entry, and the fourteen (14)-day stay provided in Bankruptcy Rule 6004(h) is hereby expressly waived and shall not apply.  Time is of the essence in closing the Sale and the Debtor and Buyer intend to close the Sale as soon as practicable.

11.      This Court retains jurisdiction with respect to all matters arising from or related to the implementation, interpretation and enforcement of this Order and the Purchase Contract.

# **EXHIBIT 1**

# GLENCORE Ltd.

**Purchase Contract No.  096-26-50763-P**

Your reference No.:

Date: 6 March 2026

| **BUYER** | **SELLER** |
|---|---|
| GLENCORE LTD. | US MAGNESIUM LLC |
| 330 Madison Avenue | 238 North 2200 West |
| New York, NY 10017 | Salt Lake City, UT 84116 |
| USA. | USA. |

GLENCORE LTD. ["Buyer"] confirms having purchased from US Magnesium LLC ["Seller"] the Material described below on the following terms and conditions:

| | |
|---|---|
| **MATERIAL:** | Lithium Carbonate ("Product"). |
| **QUANTITY:** | Approximately 37 (thirty-seven) metric tons. |
| **QUALITY/BRAND:** | Lithium Carbonate produced at Seller's Rowley facility. |
| | The Material is contaminated with resin beads; otherwise it shall conform to Seller's specifications as set out in Appendix I. |
| **PACKING:** | 500 (five hundred) kg bags on pallets. |
| **INCOTERM** | FCA Grantsville, UT, USA. |
| **SHIPMENT:** | In pallets, ready for prompt shipment. Exact shipment schedule to be mutually agreed. |
| **PRICE:** | The price shall be a fixed price of USD 5,000.00 (five thousand) per metric ton. |
| **PAYMENT TERMS:** | All payments shall be made in USD. |

<u>Final Payment:</u>
100 % (one hundred percent) of the final invoice value shall be paid net cash, in immediately available funds, by telegraphic transfer into Seller's nominated bank account within 3 (three) working days after delivery date and against Seller's presentation of the following documents:

Page **1** of **8**

# GLENCORE Ltd.

**Purchase Contract No.  096-26-50763-P**

Your reference No.:

    a)    Seller's Commercial Invoice.
    b)    3/3 Bill of Lading.
    c)    Seller's Weight Certificate.
    d)    Seller's Certificate of Analysis.

**BANKRUPTCY APPROVAL:**

The parties agree this Purchase Contract and all obligations of Seller and Buyer with respect hereto is subject to the approval of the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") and the issuance of an order approving the sale of the Purchased Assets (the "Sale Order"). This Bill of Sale and the legal relations between the Parties arising hereunder shall be governed by and interpreted in accordance with the laws of the State of New York without regard to conflicts of laws principles thereof which would result in the application of the laws of any other jurisdiction; all disputes shall be subject to the jurisdiction of the Bankruptcy Court.

**OTHER TERMS:**

All other terms and conditions as per Terms and Conditions attached hereto.

Acknowledged:

**US MAGNESIUM LLC.**

By: _____

Name:  RON  THAYER
Title:  PRESIDENT
Date:  3/9/26

**GLENCORE LTD.**

By: _Eitan Schwartz_____

Name: Eitan Schwartz
Title: Authorized Signatory
Date:  3/9/26

**GLENCORE LTD. CONTACT INFORMATION:**

**Traffic/Invoices:**    Max.Uretta@glencore-us.com
**Contracts**    ZNCUContracts.NewYork@glencore-us.com

Page **2** of 8

# GLENCORE Ltd.

**Purchase Contract No. 096-26-50763-P**

Your reference No.:

## Appendix I:

(MATERIAL SPECIFICATIONS)

| Specification (wt% max) | Technical Grade | Battery Grade |
|---|---|---|
| Lithium (% min) | 99.0 | 99.5 |
| Moisture | 0.3 | 0.25 |
| Calcium | 0.016 | 0.016 |
| Magnesium | 0.010 | 0.007 |
| Sodium | 0.08 | 0.025 |
| Potassium | 0.004 | 0.003 |
| Sulfate | 0.05 | 0.05 |
| Chlorine | 0.020 | 0.015 |
| Iron | 0.003 | 0.001 |
| Copper | | 0.0005 |
| Silicon | | 0.005 |
| Acid Insolubles | 0.025 | 0.017 |

Page **3** of **8**

# GLENCORE Ltd.

**Purchase Contract No. 096-26-50763-P**

Your reference No.:

## TERMS AND CONDITIONS OF PURCHASE

1.      **Controlling Terms and Conditions**

These Terms and Conditions of Purchase ("Terms") and the Purchase Contract (the "Purchase Contract") to which these Terms are stated to apply, and the Order of the United States Bankruptcy Court for the District of Delaware in respect hereof (together, this "Contract") constitutes the entire agreement between Seller and Buyer and supersede any prior or contemporaneous oral or written understandings, agreements, negotiations, representations or communications of any nature between them in relation to the subject matter of this Contract.  Buyer objects to and shall not be bound by any terms or conditions on Seller's invoices, quotations, acknowledgements or other forms which are different from or in addition to the terms and conditions set forth in this Contract. Any additional or different terms or conditions proposed by Seller are hereby expressly rejected. No terms, conditions, description, price, quantity or delivery schedule shall be changed, and no agreement or understanding in addition to or different from the terms and conditions stated in this Contract shall be binding upon Buyer without written acceptance by Buyer's authorized representative. Any shipment, delivery, confirmatory action or other tender of performance by Seller shall be deemed to constitute assent to the terms and conditions of this Contract.

2.      **Reserved**

3.      **Title and Risk of Loss**

Title to and ownership of the Product shall pass to Buyer at such time as the Product is delivered in accordance with this Contract or upon payment for such Product by Buyer, whichever is earlier.  Risk of loss shall pass to Buyer in accordance with INCOTERMS® 2020, as amended or revised from time to time, and the applicable delivery terms set forth in the Purchase Contract.

4.      **Packaging**

Buyer shall not be responsible for any charge for packaging, boxing, storage or cartage.

5.      **Specifications**

Buyer shall have the right to inspect either at Seller's plant or, as promptly as reasonably practicable, upon receipt, at its election, any and all Material and to reject and obtain a refund from the Seller for Material which does not conform to Buyer's specifications. All costs incurred and damages sustained by Buyer as a result of rejections made under the provisions hereof shall be paid by Seller and Buyer may return such Material at Seller's expense. All Material shall remain subject to Buyer's inspection notwithstanding Buyer's provisional payment for the Material.

6.      **Delivery**

Time is of the essence in the Seller's performance of this Contract.  If any shipment or delivery is made which is not in all respects in accordance with this Contract (including time of shipment or delivery) Buyer reserves the right to reject such delivery, and if Buyer so elects, Buyer may treat this Contract as repudiated by Seller and cancel any outstanding deliveries hereunder without prejudice to Buyer's rights to claim damages or to enforce any other remedy provided by law. In the event of such a breach by Seller, all incidental expenses incurred by Buyer as a result of such a breach by Seller (including in respect of the inspection, receipt, packaging, transportation, care and custody of rejected Material) shall be paid by Seller.

7.      **Taxes**

Unless otherwise provided herein, prices shown on this Contract are deemed to include all taxes, fees, duties and charges not expressly imposed by law on Buyer.

8.      **Insurance**

Seller shall not insure the Material for Buyer's account unless the terms of this Contract expressly so require.

9.      Reserved.

10.     Reserved

11.     Reserved

12.     **Force Majeure**

Neither party shall be liable for delay or failure to perform hereunder caused directly by or resulting from any cause beyond the control of such party, without such party's fault or negligence and that by its nature could not have been foreseen by such party, or if it could have been foreseen, was unavoidable (which events may include natural disasters, embargoes, riots, wars or acts of terrorism) (each a "Force Majeure Event"). A party's financial inability to perform, changes in cost or availability of materials, components or services, market conditions or supplier actions or contract disputes will not excuse performance

Page **4** of **8**

# GLENCORE Ltd.

by a party under this Section 12. If either party is unable to perform, or is delayed in performing, any obligation under this Contract due to a Force Majeure Event, it shall promptly declare a force majeure and give written notice to the other party. The party giving notice shall within three (3) days of such notice furnish the other party with written particulars of the relevant Force Majeure Event and supporting evidence that its performance is or may be prevented or delayed due to such Force Majeure Event and that such Force Majeure Event is not due to its fault or negligence. Such particulars shall include an estimate of the probable time for and the extent to which the affected party will or may be delayed in or prevented from performing its obligations under this Contract. The party giving notice shall use all diligent efforts to end the Force Majeure Event, ensure that the effects of any Force Majeure Event are minimized and resume full performance under this Agreement as soon as possible.

If Seller should be unable, due to a Force Majeure Event, to meet all of its delivery commitments for the Material ordered hereunder, Seller shall not discriminate against Buyer or in favor of any other customer in making deliveries of such Material. If any delivery hereunder is prevented or delayed due to such a cause for more than thirty (30) consecutive calendar days, the non-affected party shall have the option to cancel this Contract in its entirety or with respect to such delivery (at the non-affected party's option) by written notice to the other party. The rights granted to Seller with respect to excused delays under this Section 12 are intended to limit Seller's rights under theories of *force majeure*, commercial impracticability, impracticability or impossibility of performance, or failure of presupposed conditions or otherwise, including any rights arising under Sections 2-615 or 2-616 of the Uniform Commercial Code.

13.     **Confidentiality**.

All non-public, confidential and proprietary information of Buyer, including, but not limited to, specifications, samples, documents, data, business operations, pricing, discounts or rebates, disclosed by Buyer to Seller, whether disclosed orally or disclosed or accessed in written, electronic or other form or media, and whether or not marked, designated or otherwise identified as "confidential" in connection with this Contract is confidential, solely for the use of performing this Contract and may not be disclosed or copied unless authorized in advance by Buyer. Upon Buyer's request, Seller shall promptly return all documents and other materials received from Buyer. Without limiting or precluding any other relief available to Buyer under applicable law, Buyer shall be entitled to injunctive relief for any violation of this Section. This Section does not apply to information that is: (i) in the public domain; (ii) known to Seller at the time of disclosure; or (iii) rightfully obtained by Seller on a non-confidential basis from a third party.

14.     **Compliance with Applicable Laws**

The Seller warrants, represents and undertakes to Buyer that, in connection with the subject matter of this Contract, it, its affiliates and its or their directors, officers, employees, agents, representatives and any other person acting on its or their behalf: (a) have complied with, and will comply with, all applicable laws, rules and regulations including, without limitation, sanctions, anti-bribery and corruption, anti-money laundering and tax laws; and (b) have not authorized, offered, promised, paid or otherwise given, and will not authorize, offer, promise, pay or otherwise give, whether directly or indirectly, any financial or other advantage to or for the use or benefit of any government official or any private individual (i) for the purpose of inducing or rewarding that person's improper performance of their relevant function, or (ii) that would be a breach of any applicable law. The Seller shall comply with the Glencore Supplier Code of Conduct available at https://www.glencore.com/suppliers, as amended from time to time (the "Glencore Supplier Code"), the terms of which are incorporated into this Contract.

Seller may report any concerns relating to conduct of Buyer in connection with the subject matter of this Contract that breaches Buyer's Code of Conduct or underlying policies to its contact at Buyer or through Buyer's corporate Raising Concerns Programme, details of which are available at https://glencore.raisingconcerns.org/.

15.     **Default**

If Seller breaches any of its obligations or warranties under this Contract, Buyer may, in addition to any other remedies available under this Contract or applicable law, terminate this Contract in whole or in part, upon notice to Seller, without incurring any liability to Seller and without need for any further Order of the Bankruptcy Court.

16.     Reserved

17.     **Sanctions**. The Seller represents warrants and undertakes to Buyer as of the date of this Contract and throughout its duration that:

(a)     neither it nor any of its subsidiaries (collectively, the "Company") or directors, senior executives or officers, or to the knowledge of the Company, any person on whose behalf the Company is acting in connection with the subject matter of the Contract is an individual or entity ("Person") that is, or is 50% (fifty percent) or more owned or controlled by, a Person (or

330 Madison Avenue • New York, NY 10017 • U.S.A.
Telephone (646) 949-2500 • Fax (646) 365-8300

# GLENCORE Ltd.

**Purchase Contract No.  096-26-50763-P**

Your reference No.:

Persons) that is the subject of any economic or financial sanctions or trade embargoes administered or enforced by the U.S. Department of the Treasury's Office of Foreign Assets Control ("OFAC"), the U.S. Departments of State or Commerce, the United Nations Security Council ("UNSC"), the European Union ("EU"), Switzerland or any other applicable sanctions authority (collectively, "Sanctions") or based, organized or resident in a country or territory that is the subject of comprehensive (i.e. country-wide or territory-wide) Sanctions (including, as of the date of signature of this Contract, Crimea, Cuba, Donetsk, Iran, Luhansk, North Korea and Syria) (a "Sanctioned Country") (collectively, a "Sanctioned Person");

(b)        no Sanctioned Person has any beneficial or other property interest in the Contract nor will have any participation in or derive any other financial or economic benefit from the Contract; and

(c)        it will not use, or make available, the Material or funds (as applicable) provided by Buyer in terms of the Contract (i) to fund or facilitate any activities or business of, with or related to any Sanctioned Country or Sanctioned Person, or (ii) in any manner that would result in a violation of Sanctions, or (iii) for any activities or business that could result in the designation of Glencore as a Sanctioned Person ("Sanctionable Activity").

(d)        the Material has not originated or come from or through any Sanctioned Country and shall procure that the Material will not in future come from or through any Sanctioned Country.

Seller will not be in breach of this clause in respect of a Sanctioned Person where the relevant Sanctions are exclusively sectoral sanctions, meaning any Sanctions that do not freeze or block the assets and/or economic resources of a person or comprehensively freeze or block making available funds or economic resources to such person, but merely restrict the ability of certain individuals or entities to access financing or export or import equipment, goods, technology or services, including, for the, avoidance of doubt, the Sanctions imposed under the Sectoral Sanctions Identification List maintained by OFAC ("Sectoral Sanctions") and where the relevant activity or business is permitted by those Sectoral Sanctions.

If the Seller becomes a Sanctioned Person or if Buyer is of the reasonable opinion that the  Seller has breached or will breach this Section, Buyer may (without incurring any liability of any nature  whatsoever) terminate or suspend all or any part of the Contract with immediate effect by notice to the Seller or take any other action it deems necessary in order for Buyer to comply with applicable Sanctions or avoid Sanctionable Activity  The Seller shall be liable for any and all costs, liabilities and expenses whatsoever incurred by Buyer due to Buyer exercising its rights under this Section. Any exercise by Buyer of its right under this Section shall be without prejudice to any other rights or remedies of Buyer under the Contract.

In addition, Buyer shall not be obliged to perform any obligation required by this Contract if to do so would, or could, result in a violation of, or be inconsistent with, any Sanctions, or expose Buyer to other Sanctions risks, including, without limitation, the risk of being designated as a Sanctioned Person.

18.        **Vessel Nomination Sanctions (for CIF, CFR, CPT, DAP, DPU or DDP Purchases by Bulk Carrier)**.  If the Purchase Contract provides for delivery to be made on CIF, CFR, CPT, DAP, DPU or DDP delivery terms via bulk carrier, then the following terms shall apply:

(a)        Seller warrants, represents and undertakes that it will not nominate any vessel in the performance of its obligations under this Contract: (i) which is subject to Sanctions or is registered in a Sanctioned Country or is owned or controlled or managed or chartered by, or has a Master who is, a Sanctioned Person (as defined in Section 17 above titled "Sanctions"); (ii) which, due to Sanctions, may compromise Buyer's finance, insurance or other arrangements relating to this Contract and/or the voyage and/or prevent Buyer from involving United States and/or European Union and/or Swiss persons in transactions relating to this Contract and/or the voyage; or (iii) that has operated, is operating, or will operate, under the term of this Contract in a manner designed to preclude, disguise or otherwise impede the detection of its identity or location, including but not limited to by deactivating its Automatic Identification System ("AIS") or manipulating AIS data, other than where operating in such manner is due to a demonstrable malfunctioning or other similar demonstrable external event beyond the control of the owners and/or operators and/or Master of the vessel.

(b)        Seller warrants, represents and undertakes that it is aware of the U.S. Guidance to Address Illicit Shipping and Sanctions Evasion Practices and that it maintains policies and procedures to adequately address such practices and mitigate the related risks.

(c)        Buyer will have the right to reject any nomination which (i) is made by Seller in breach of clause (a) above, or (ii) otherwise involves a vessel that is the subject of any Sanctions (including, but not limited to, vessels that are the subject of Sanctions due to ownership or country of registration, or that appear on any Sanctions list or that have a Master who is a Sanctioned Person), or (iii) if accepted, would or could, in Buyer's reasonable opinion, result in a violation of Sanctions or the designation of Buyer as a Sanctioned Person, by serving a rejection notice on Seller detailing the grounds for the rejection. Service of such notice shall not constitute a breach of this Contract and Buyer shall not be liable to Seller for any losses, claims, costs, expenses, damages or liabilities arising in connection with any such rejection. If Buyer serves a rejection notice, Seller

Page **6** of **8**

# GLENCORE Ltd.

**Purchase Contract No. 096-26-50763-P**

Your reference No.:

shall nominate an alternative vessel within two (2) working days after Buyer's rejection but without prejudice to the other terms and conditions of this Contract, which shall remain unaffected (including but not limited to the terms and conditions in relation to the delivery period).

(d)    Buyer shall be entitled, in its sole discretion and without prejudice to any of its other rights or remedies under this Contract, to exercise any and all of its rights and remedies under clause (e) below in the following circumstances: (i) Seller fails to nominate an alternative vessel that complies in all respects with clause (a) above within two (2) working days after receiving a rejection notice from Buyer under clause (c) above and/or Buyer accepting the nomination of the alternative vessel nominated by Seller would or could, in Buyer's reasonable opinion, result in a violation of Sanctions or result in the designation of Buyer as a Sanctioned Person; or (ii) Buyer accepts a nomination in circumstances where: (X) Seller failed to disclose information in connection with the nominated vessel prior to it being accepted which, had that information been disclosed, would have entitled Buyer to reject the nomination under clause (c) above; or (Y) after accepting the nominated vessel, the accepted vessel becomes a vessel which Buyer would have been entitled to reject under clause (c) above at the time of nomination; or (Z) after accepting the nominated vessel, the accepted vessel enters or transits through a Sanctioned Country.

(e)    Upon the occurrence of the circumstances described in clause (d)(i) or clause (d)(ii) above, Buyer may (without incurring any liability of any nature whatsoever) terminate or suspend all or any part of this Contract with immediate effect by notice to Seller or take any other action it deems necessary in order for Buyer to comply with applicable Sanctions or avoid Sanctionable Activity, as defined under Section 17 above titled "Sanctions". Further and in any event, Buyer may rely on all of its rights and remedies under Section 17 above titled "Sanctions".

(f)    To the full extent permitted by applicable law, Seller shall indemnify Buyer against any and all costs, expenses, losses and liabilities it incurs as a result of: (i) Seller breaching any provision of this clause; and/or (ii) Buyer exercising its rights under any provision of this Section 18.

19.    **Vessel Nomination Sanctions (for CIF, CFR, CPT, DAP, DPU or DDP Purchases by Container).** If the Purchase Contract provides for delivery to be made on CIF, CFR, CPT, DAP, DPU or DDP delivery terms via container, then the following terms shall apply:

(a)    Seller warrants and represents that it will not nominate any vessel in the performance of its obligations under this Contract that is, or will become during the performance of this Contract, in violation of Sanctions, or which would put Buyer in breach, or under designation risk, of Sanctions.

(b)    Buyer will have the right to reject any nomination which (i) violates any Sanctions, (ii) would or could, in Buyer's reasonable opinion, put Buyer in breach, or under designation risk, of any Sanctions, or (iii) otherwise involves a vessel that is the subject of any Sanctions (including, but not limited to, vessels that are the subject of Sanctions due to ownership or country of registration, or that appear on any Sanctions list), by serving a rejection notice on Seller detailing the grounds for the rejection. Service of such notice shall not constitute a breach of this Contract and Buyer shall not be liable to Seller for any losses, claims, costs, expenses, damages or liabilities arising in connection with any such rejection. If Buyer rejects a nomination on these grounds it shall be entitled, at its sole discretion, to (i) require Seller to promptly nominate a suitable substitute vessel; or (ii) terminate this Contract.

(c)    To the full extent permitted by applicable law, Seller shall indemnify Buyer against any and all costs, expenses, losses and liabilities it incurs as a result of Seller nominating a vessel in breach of this Section 19.

20.    **Conflict Minerals**

Seller represents, warrants, covenants and certifies that none of the Material furnished under this Contract shall contain any conflict mineral (as defined in the Securities Exchange Act of 1934 and its implementing regulations, as amended from time to time) originating in the Democratic Republic of the Congo or any adjoining country unless Seller has notified Buyer in advance in writing of such fact and Buyer has specifically agreed in writing that Seller may furnish such Material. Seller further agrees to provide Buyer promptly with such information regarding the source and chain of custody of all conflict minerals that

330 Madison Avenue • New York, NY 10017 • U.S.A.
Telephone (646) 949-2500 • Fax (646) 365-8300

# GLENCORE Ltd.

**Purchase Contract No. 096-26-50763-P**

Your reference No.:

may be contained in the Material furnished hereunder as Buyer may request from time to time and certify in writing as to the accuracy and completeness of such information.

**21.    General**

    (a)    Assignment. The Seller may not transfer, assign, pledge, delegate or otherwise dispose of this Contract, or any interest, right or obligation hereunder (whether voluntarily, by operation of law or otherwise), without the express written consent of Buyer.

    (b)    Successors and Assigns. This Agreement is binding on and inures to the benefit of the parties hereto and their respective permitted successors and assigns.

    (c)    Severability. If any provision of this Contract, whether a paragraph, sentence or a portion thereof, is determined by a court of competent jurisdiction to be null and void or unenforceable, such provision shall be deemed to be severed, and the remaining provisions of this Contract shall remain in full force and effect.

    (d)    No Waiver of Rights. Waiver by Buyer of the operation of any provision of this Contract or of any breach by the Seller, shall not constitute a continuing waiver, and Seller shall at all times retain the right to insist upon the operation of all provisions hereof and to enforce its rights with respect to any subsequent breach.

    (e)    Governing Law and Jurisdiction; Waiver of Jury Trial. The United Nations Convention on Contracts for the International Sale of Goods ("CISG") shall not govern or apply to this Contract, and the parties hereby exclude the application of the CISG. The losing party in any dispute shall pay the reasonable attorney's fees and expenses of the prevailing party in any action or proceeding arising out of or relating to this Contract..

    (f)    Amendments. This Contract may not be modified or amended except by a written instrument executed by the parties.

    (g)    Remedies Cumulative. Except as otherwise provided herein, remedies set forth in this Contract are in addition to any and all remedies provided by the Uniform Commercial Code and applicable law.

    (h)    Survival. Provisions of this Contract which by their nature should apply beyond their terms will remain in force after any termination or expiration of this Contract, including, but not limited to Sections 2 (Warranties), 6 (Delivery), 10 (Set Off), 13 (Confidentiality), 17 (Sanctions), 18 (Vessel Nominations Sanctions for CIF, CFR, CPT, DAP, DPU or DDP Purchases by Bulk Carrier), 19 (Vessel Nominations Sanctions for CIF, CFR, CPT, DAP, DPU or DDP Purchases by Container) and this Section 21 (General) of these Terms.

330 Madison Avenue • New York, NY 10017 • U.S.A.
Telephone (646) 949-2500 • Fax (646) 365-8300