**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| US MAGNESIUM LLC, | Case No. 25-11696 (BLS) |
| Debtor.[1] | |
| FORGEN, LLC, | |
| Plaintiff, | |
| v. | Adv. Proc. No._____ |
| US MAGNESIUM LLC, TOOELE COUNTY, and UTAH DIVISION OF FORESTRY, FIRE, AND STATE LANDS | |
| Defendants. | |

**COMPLAINT FOR DECLARATORY JUDGMENT**

Plaintiff, Forgen, LLC ("Forgen"), files this complaint for Declaratory Judgment (this "Complaint") against defendants, the above-captioned debtor (the "Debtor"), Tooele County ("Tooele County"), and the Utah Division of Forestry, Fire, and State Lands ("FFSL"), and alleges, upon knowledge, information, and belief, as follows:

**NATURE OF ACTION**

1.     As shown in Proof of Claim No. 60, Forgen holds a prepetition, perfected, and first-priority construction lien under Utah law on certain of the Debtor's real property and fixtures for pollution mitigation work Forgen performed at the Debtor's facility located at 12819 N. Rowley Rd., Skull Valley, UT 84029 (the "Subject Property").  Forgen brings this action to determine the amount, priority, and validity of its Construction Lien (as defined below), including that it is senior

---

[1]     The last four digits of the Debtor's federal tax identification number are 5446. The Debtor's address is 238 N 2200 W, Salt Lake City, Utah 84116.

in priority to the liens asserted by Tooele County.  A determination of the priority of liens on the Subject Property is necessary because the Debtor sold the Subject Property (the "Sale") to FFSL subject to the Construction Lien "provided, however, that [FFSL] expressly reserve[d] the right to challenge the amount, validity, or priority" of the Construction Lien. *See* Dkt. 583 ¶ 44. Additionally, the Sale excludes certain fixtures at the Subject Property that are subject to the Construction Lien (the "Fixtures").  Forgen understands that the Debtor and FFSL have engaged in discussions regarding access to, and the liquidation of, these remaining assets. But these parties have not included Forgen in these discussions and have ignored Forgen's status as a senior lienholder, despite acknowledging the priority of Forgen's Construction Lien and Forgen's demand for payment of the amounts secured by the lien.  As a result, Forgen is forced to bring this action to protect its rights as the holder of the Construction Lien. On information and belief, Tooele County also asserts a competing security interest in the Subject Property and Fixtures.

**JURISDICTION AND VENUE**

2.      On September 10, 2025, (the "Petition Date"), the Debtor commenced the above-captioned case (the "Chapter 11 Case") by filing a voluntary petition for relief under chapter 11 of Title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq*. (the "Bankruptcy Code") in this Court.

3.      This Court has jurisdiction over the claims raised in this adversary proceeding pursuant to 28 U.S.C. §§ 157 and 1334.  This adversary proceeding is a "core proceeding" within the meaning of 28 U.S.C. § 157(b)(2).

4.      Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

5.      This adversary proceeding is commenced under the provisions of 28 U.S.C. §§ 2201 and 2202 and pursuant to Rule 7001(b) and (i) of the Federal Rules of

1565.001 - #25002720v1

Bankruptcy Procedure (the "Bankruptcy Rules"), which allows for an adversary proceeding seeking declaratory relief to be commenced "to determine the validity, priority, or extent of a lien or other interest in property," and section 105(a) of the Bankruptcy Code.  As forth below, an actual legal controversy exists between the Parties regarding their respective priorities or rights to the Real Property and appurtenant fixtures.

6.  Pursuant to Rule 7008-1 of the *Local Rules of the United States Bankruptcy Court for the District of Delaware* (the "Local Rules"), Forgen consents to the entry of a final order by the Court in connection with this adversary proceeding to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

**PARTIES**

7.  Plaintiff Forgen is a Delaware limited liability company registered in good standing to do business in the State of Utah, with its principal place of business in Centennial, Colorado.

8.  Defendant Debtor is a Delaware limited liability company registered to do business in the State of Utah, with its principal place of business in Salt Lake City, Utah, and is the debtor in possession in the Chapter 11 Case.

9.  Defendant Tooele County is the municipal government and taxing authority for Tooele County, Utah.

10.  Defendant FFSL is a division of the State of Utah which has consented to this Court's jurisdiction pursuant to the Order approving the Sale. *See* Dkt. 583 ¶ 37.

1565.001 - #25002720v1

**FACTUAL ALLEGATIONS**

**A.      The Contract, Consent Decree, and Requirement to Build the Wall**

11.     On May 16, 2023, Forgen and the Debtor entered into a Construction Contract (the "Contract"), pursuant to which Forgen furnished all supervision, labor, tools, supplies, equipment, services, materials and other incidentals and performed all the work to timely and competently build an underground pollution mitigation wall at the Debtor's lithium mine in Rowley, Utah (the "Project").  A copy of the Contract is attached as Exhibit A to Forgen's Proof of Claim No. 60, filed April 1, 2026 ("POC 60").  A true and correct copy of POC 60 is attached hereto as Exhibit A. The real property encompassing the Project is in Tooele County, State of Utah, and is commonly known as 12819 N. Rowley Rd., Skull Valley UT 84029 (the "Real Property").

12.     The work on the Project is an express requirement under the Consent Decree entered by the United States District Court for the District of Utah on June 30, 2021 (the "Consent Decree") in the case styled *United States of America v. Magnesium Corporation of America, et al.*, Case No. 2:01CV0040.  *See* Consent Decree, attached as Exhibit 2 to POC 60, at ¶ 28 ("[Debtor] shall perform all actions necessary to retrofit the Current Waste Pond and to eliminate uncontrolled releases of hazardous substances in compliance with the requirements of the Ground Water Discharge Permit and the CERCLA SOW. . . .").

13.     Likewise, the building of the barrier wall is an express requirement under the Consent Decree.  For example, during the Chapter 11 Case, the United States Environmental Protection Agency confirmed the Debtor's obligation to build the barrier wall remains. *See, e.g.*, *Declaration of Annette Maxwell* [D.I. 190] (the "Maxwell Declaration") at ¶ 26 ("The Consent Decree's CERCLA obligations require US Magnesium to construct an extensive barrier wall and berm . . . ."); Maxwell Declaration at ¶ 33 ("As required by Section VII and Appendix 12 of the

4

Consent Decree, US Magnesium is required to perform all actions necessary to retrofit the Current Waste Pond and eliminate uncontrolled releases of hazardous substances by implementing Appendix 12 (construction of a barrier wall).").

**B.      Debtor's Defaults Under the Contract**

14.      On or about June 26, 2023, the Debtor sent Purchase Order No. 574670-0000-000 to Forgen outlining the work Forgen was to complete for the Project (the "Purchase Order"), with a total Purchase Order cost of $11,908,144.00. A copy of the Purchase Order is attached as Exhibit 3 to the POC. Under the Purchase Order, "monthly progress payments were to be paid Net 45 days and on a percent performed basis with a maximum of 5% held as retention."  Billed amounts not paid within 45 days accrue interest at prime rate plus 1.5% per annum, which at all relevant times equaled 10%.

15.      On or about June 6, 2023, Forgen began performing under the Contract at the Project.

16.      On September 5, 2023, Forgen filed a Preliminary Notice with the State Construction Registry, as Entry No. 1053945 (the "Preliminary Notice"), in accordance with Utah Code § 38-1a-501. A copy of the Preliminary Notice is attached as Exhibit 4 to POC 60. Pursuant to Utah law, the Preliminary Notice more particularly described the Subject Property by the following Tax Parcel IDs: 04-019-0-0010, 04-022-0-0010, 04-019-0-0005, 04-021-0-0001, 04-019-0-0002, 04-021-0-0004, 04-019-0-0009, 04-019-0-0001, and 04-021-0-0002.

**C.      Debtor's Failure to Pay for Work Performed**

17.      Despite Forgen's compliance with its obligations, the Debtor failed to pay all amounts due and owing to Forgen under the Contract, including the following five invoices, each of which accrues interest at the contract rate of 10% per annum.

a. On August 4, 2023, Forgen invoiced the Debtor $990,442.84 under the Contract for the work completed in the previous month at the Project.

b. On September 12, 2023, Forgen invoiced the Debtor $1,223,288.09 under the Contract for the work completed in the previous month at the Project.

c. On October 19, 2023, Forgen invoiced the Debtor $1,678,549.04 under the Contract for the work completed in the previous month at the Project.

d. On November 8, 2023, Forgen invoiced the Debtor $1,727,483.82 under the Contract for the work completed in the previous month at the Project.

e. On November 16, 2023, Forgen invoiced the Debtor $133,000.00 under the Contract for the work completed in the previous month at the Project.

18. The Debtor failed to pay these amounts. Due to the Debtor's ongoing failure to pay the above invoices, on or about April 4, 2024 Forgen initiated its suspension right in the Contract.

**D.     The Construction Lien**

19. On or about April 4, 2024, Forgen issued a ten-day Notice to Cure to the Debtor (the "Notice to Cure"). On April 29, 2024, Forgen sent a Notice of Suspension (the "Notice of Suspension") under the terms of the Contract for the Debtor's failure to cure its default. See POC 60 at Ex. 29.

20. On May 2, 2024, Forgen recorded a Notice of Construction Lien with the Tooele County Recorder, Entry No. 602527 (the "Construction Lien") in accordance with Utah Code § 38-1a-502. A copy of the Construction Lien is attached as Exhibit 6 to POC 60. On May 9, 2024, Forgen sent a Notice of Construction Lien and Demand for Payment to the Debtor due to its continued breach of the Contract ("Demand for Payment"), demanding that the Debtor pay all past

6

due amounts by May 17, 2024. *See* POC 60 at Ex. 7. The Debtor failed to pay any of the invoices Forgen sent in compliance with the terms of the Contract and for the work completed at the Project.

21.     On October 4, 2024, Forgen timely filed its Complaint (the "Utah Complaint") asserting claims for breach of contract, breach of covenant of good faith and fair dealing, and lien foreclosure. *See* POC 60 at Ex. 8.    On October 21, 2024, Forgen recorded against the Subject Property its Notice of Pendency of Action (the "Lis Pendens"), a copy of which is attached as Exhibit 9 to POC 60.

22.     In accordance with Utah Code § 38-1a-101, *et seq*., upon filing the Utah Complaint and recording the Lis Pendens, Forgen met all statutory requirements to perfect and foreclose on the Construction Lien.

23.     Over the course of seven months, the Debtor failed to respond to the Notice of Cure, the Notice of Suspension, or the Demand for Payment, and instead, on November 15, 2024, filed an Answer to Complaint in which it made certain admissions, allowed documents to speak for themselves, and otherwise set forth rote denials and affirmative defenses.

**E.     The Chapter 11 Case**

24.     On September 10, 2025, (the "Petition Date"), the Debtor commenced the Chapter 11 Case by filing a voluntary petition for relief under chapter 11 of Title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq*. (the "Bankruptcy Code") in this Court.

25.     On the Petition Date, the Debtor filed the *Debtor's Motion for Interim and Final Orders (I) Authorizing the Debtor to (A) Obtain Postpetition Financing, (B) Grant Senior Secured Priming Liens and Superpriority Administrative Expense Claims and (C) Utilize Cash Collatteral; (II) Granting Adequate Protection; (III) Modifying the Automatic Stay; (IV) scheduling Final Hearing; and (IV)* (sic) *Granting Related Relief* [D.I. 10] (the "DIP Motion"). Through the DIP

Motion, the Debtor sought to obtain post-petition debtor-in-possession financing from Wells Fargo Bank.

26.   On September 12, 2025, the Court entered the *Interim Order (I) Authorizing the Debtor to (A) Obtain Postpetition Financing, and (B) Grant Senior Secured Priming Liens and Superpriority Administrative Expense Claims; (II) Authorizing the Use of Cash Collateral; (III) Granting Adequate Protection; (IV) Modifying the Automatic Stay; (V) Scheduling Final Hearing; and (VI Granting Related Relief* [D.I. 32].

27.   On October 29, 2025, the Court entered the *Second Interim Order (I) Authorizing the Debtor to (A) Obtain Postpetition Financing, and (B) Grant Senior Secured Priming Liens and Superpriority Administrative Expense Claims; (II) Authorizing the Use of Cash Collateral; (III) Granting Adequate Protection; (IV) Modifying the Automatic Stay; (V) Scheduling Final Hearing; and (VI Granting Related Relief* [D.I. 240] (the "Second Interim DIP Order").  Paragraph 38 of the Second Interim DIP Order made it clear that Wells Fargo's liens under the DIP Order were subordinate to Forgen's liens:[2]

> **Forgen**. The Liens provided for in this Order shall not prime any enforceable statutory liens held by Forgen existing prior to the Petition Date securing real property and fixtures in Tooele County.

28.   On November 26, 2025, the Court entered the *Third Interim Order (I) Authorizing the Debtor to (A) Obtain Postpetition Financing, and (B) Grant Senior Secured Priming Liens and Superpriority Administrative Expense Claims; (II) Authorizing the Use of Cash Collateral; (III) Granting Adequate Protection; (IV) Modifying the Automatic Stay; (V) Scheduling Final Hearing;*

---

[2]   Although subject to the caveat of Forgen having "enforceable statutory liens," Forgen has provided evidence of the liens that is not subject to reasonable dispute.

1565.001 - #25002720v1

*and (VI Granting Related Relief* [D.I. 325] (the "Third Interim DIP Order").  The Third Interim

DIP Order contained the same language as the Second Interim DIP Order as to Forgen's liens.

29.    On December 29, 2025, the Court entered the *Fourth Interim Order (I) Authorizing*

*the Debtor to (A) Obtain Postpetition Financing, and (B) Grant Senior Secured Priming Liens and*

*Superpriority Administrative Expense Claims; (II) Authorizing the Use of Cash Collateral; (III)*

*Granting Adequate Protection; (IV) Modifying the Automatic Stay; (V) Scheduling Final Hearing;*

*and (VI Granting Related Relief* [D.I. 416] (the "DIP Order").  In keeping with the language in the

Second Interim DIP Order and Third Interim DIP Order, Forgen's liens were protected by the

inclusion of the same provision in paragraph 37 of the DIP Order:

> **Forgen**. The Liens provided for in this Order shall not prime any
> enforceable statutory liens held by Forgen existing prior to the Petition Date
> securing real property and fixtures in Tooele County.

## F.    Auction and Sale Process

30.    On January 21, 2026, the Debtor commenced an auction for substantially all of the

Debtor's assets in accordance with that certain *Notice of Auction* [D.I. 493] filed on January 19,

2026 (the "Auction").  Following intermittent adjournments, the Auction concluded on January

23, 2026.

31.    On January 23, 2026, the Debtor filed the *Notice of Successful Bidder*, and

identified FFSL as the Successful Bidder (as defined therein), and LiMag Holdings, LLC

("LiMag") as the Next-Highest Bidder.

32.    Pursuant to its Successful Bid, and as set forth in paragraph 44 of the *Order (A)*

*Approving the Purchase Agreement Between the Debtor and the Successful Bidder, (B)*

*Authorizing the Sale of the Purchased Assets Free and Clear of All Liens, Claims, Encumbrances,*

*and Interests, and (C) Granting Related Relief* [D.I. 583] (the "Sale Order"), FFSL will purchase

the real property at the Subject Property and has agreed to purchase it subject to Forgen's Construction Lien:

> **Mechanics' and Construction Liens of Forgen, LLC.** Notwithstanding anything to the contrary in this Order, nothing in this Order affects, releases, or extinguishes any valid mechanics' liens or construction liens of Forgen, LLC on the Purchased Assets, and any and all such liens shall remain after entry of this Order; provided, however that Purchaser expressly reserves the right to challenge the amount, validity, or priority of any such mechanics' or construction liens.

FFSL's bid excluded certain assets, including machinery and fixtures (the "Excluded Assets") owned by the Debtor and located at the Subject Property.

33.     The Fixtures constitute part of the Excluded Assets and are subject to Forgen's Construction Lien.

34.     Forgen appeared at a hearing on January 29, 2026, where FFSL and the Debtor stated that they were involved in negotiations regarding access to the Subject Property to liquidate the Excluded Assets, but neither sought to involve Forgen in these negotiations. During the hearing, Forgen noted its senior lien on the record and reserved its rights.

35.     Following the January 29, 2026, hearing, the Debtor and FFSL ignored Forgen's requests to be involved in discussions regarding the disposition of the Excluded Assets.

36.     On February 1, 2026, the Court held a continued hearing on the sale of the Subject Property to FFSL.  At this hearing, counsel to the Debtor and FFSL represented to the Court that negotiations were ongoing with respect to, among other things, a form of agreement for the Debtors to gain access to the Subject Property to liquidate the Excluded Assets.

37.     Following the February 1, 2026, hearing, the Debtor and FFSL continued to ignore Forgen's requests to be involved in discussions regarding the disposition of the Excluded Assets.

1565.001 - #25002720v1

38.     At the February 1, 2026, hearing, it was stated on the record for the first time that the value of the Excluded Assets at the Subject Property could be up to $80,000,000.

39.     On February 4, 2026, the Debtor filed the *Declaration of Ron Thayer in Support of the Debtor's Continued Access to the Real Property* [D.I. 573] (the "Thayer Declaration") discussing the measures that would need to be taken to liquidate certain Excluded Assets.

**G.     Tooele County**

40.     Through its filings in this Chapter 11 Case, Tooele County asserts a prepetition perfected first-priority tax lien pursuant to Utah Code Ann. § 59-2-210 on the real property located at the Subject Property (the "Tax Liens").

41.     The Tax Liens are based on delinquent taxes owed by the Debtor for 2020, 2021, 2022, and 2024, which Tooele County asserts are as follows:

    2020: $1,469,073.91
    2021: $1,872,842.53
    2022: $1,262,874.10
    2024: $2,285,717.34

42.     Tooele County has represented in its filings that it and the Debtor entered into a Notice of Interest Agreement on June 17, 2025, that acknowledged the amount of the delinquent taxes.  Tooele County further asserts in its filings that the appeal periods for the delinquent taxes underlying the Tax Liens have expired.

**H.     Forgen's POC No. 60:**

43.     On April 1, 2026, Forgen filed POC 60, asserting a claim as of the Petition Date in the amount of $7,135,920.04, of which at least $3,764,100.97 is secured by the Real Property and appurtenant fixtures. *See* POC 60.

44.     No one has objected to POC 60, but FFSL has ignored and refused to acknowledge the amount, validity, and priority of Forgen's Construction Lien.

11

1565.001 - #25002720v1

45.     Forgen has not collected any amount on account of POC 60.

## CAUSES OF ACTION

### COUNT I:
**(Against the Debtor, FFSL and Tooele County)**
**(Declaratory Judgment Regarding the Amount, Validity, and Priority of Forgen's Construction Lien on the Real Property)**

46.     Forgen repeats and realleges the allegations set forth in all other paragraphs of this Complaint as if fully set forth in this first cause of action.

47.     An actual, justiciable controversy of sufficient immediacy to warrant declaratory relief under the Declaratory Judgment Act, 28 U.S.C. § 2201, exists by and among Forgen, FFSL, Tooele County and the Debtor regarding the validity, amount and priority of Forgen's Construction Lien over all of the other Parties' interests or liens in the Real Property.

48.     The validity, amount, and priority of Forgen's Construction Lien on the Real Property affects the deficiency amount that the Debtor owes to Forgen and Forgen's rights with respect to any plan.

49.     FFSL acquired the Debtor's interest in the Real Property from the Debtor, but the sale was subject to Forgen's Construction Lien to the extent of its "amount, validity, [and] priority" and FFSL has not stipulated to any of these conditions.

50.     On information and belief, Tooele County claims a competing lien on all of the Real Property.

51.     Absent a declaration regarding the amount, validity and priority of Forgen's Construction Lien on the Real Property, FFSL and Tooele will continue to assert they have a higher interest in the Real Property than Forgen and prevent Forgen from collecting on the same to the detriment of the Debtor's estate.

52.     Under Utah Code § 38a-1-503(2), "a construction lien has priority over: (i) any lien,

1565.001 - #25002720v1

mortgage, or other encumbrance that attaches after the first preliminary notice filing; and (ii) any lien, mortgage, or other encumbrance of which the claimant had no notice and which was unrecorded at the time of the first preliminary notice filing."

53.     Forgen filed a Preliminary Notice with the State Construction Registry, as Entry No. 1053945, on September 5, 2023.

54.     Forgen recorded a Notice of Construction Lien with the Tooele County Recorder, Entry No. 602527, on May 2, 2024.

55.     Forgen filed its Complaint on October 4, 2024, and recorded the Lis Pendens against the Subject Property on October 21, 2024.

56.     After the filing of the Complaint and the recordation of the Lis Pendens, Forgen had a perfected Construction Lien as of at least September 10, 2023.[3]

57.     Forgen respectfully requests a judgment of this Court against the Defendants that Forgen holds a validly perfected, first-priority Construction Lien on the Real Property, the amount of which shall be shown at trial but in any event exceed $3,764,100.97, and should include interest at the Contract rate, attorneys' fees, and cost of collection under Utah Code Ann. §§ 38-1a-707 and 38-1a-309.

---

[3]     Under Utah Code § 38-1a-503(1), "[a] construction lien relates back to, and takes effect as of, the time of the first preliminary notice filing," however, pursuant to Utah Code § 38-1a-504, all construction liens on a project "are on equal footing with one another." Accordingly, to the extent a different contractor recorded a preliminary notice prior to September 5, 2023, Forgen's Construction Lien will date back to the earliest date of any such preliminary notice.

1565.001 - #25002720v1

**COUNT II:**
**(Against the Debtor and Tooele County)**
**(Declaratory Judgment that the Construction Lien has**
**Priority over Fixtures)**

58.    Forgen repeats and realleges the allegations set forth in all other paragraphs of this Complaint as if fully set forth in this first cause of action.

59.    An actual, justiciable controversy of sufficient immediacy to warrant declaratory relief under the Declaratory Judgment Act, 28 U.S.C. § 2201, exists by and among Forgen, Tooele County, and the Debtor, regarding the priority of Forgen's Construction Lien on fixtures that are part of the Subject Property.

60.    Absent a declaration regarding the priority of Forgen's Construction Lien on the fixtures, Tooele County will continue to assert in these proceedings a senior lien in certain Excluded Assets, precluding Forgen's ability to liquidate its claim.

61.    In Utah, "[a] preconstruction or construction lien attaches to all franchises, privileges, appurtenances, machinery, and fixtures pertaining to or used in connection with the improvement" under Utah Code §§ 38-1a-302 and 38-1a-501(1)(b), (c)(i)-(ii), five days after the Preliminary Notice is filed.

62.    Under Utah Code § 38a-1-503(2), "a construction lien has priority over: (i) any lien, mortgage, or other encumbrance that attaches after the first preliminary notice filing; and (ii) any lien, mortgage, or other encumbrance of which the claimant had no notice and which was unrecorded at the time of the first preliminary notice filing."

63.    Under Utah Code § 59-2-210(2), every tax on mines, mining claims, and mining property "is a lien upon the mine or mining claim and related mining machinery and improvements. The lien attaches on January 1."

14

1565.001 - #25002720v1

64.     Tooele County has not stated with particularity which of the Debtor's assets, including real property and the Excluded Assets, are a "mine or mining claim and related mining machinery and improvements" ("Mining Assets") under Utah law.

65.     Tooele County asserts that the Debtor did not pay mining related taxes in 2020, 2021, 2022, and 2024, such that the Tax Liens applied to any of the Debtor's Mining Assets on January 1 of the respective year.

66.     Forgen filed a Preliminary Notice with the State Construction Registry, as Entry No. 1053945, on September 5, 2023.

67.     Forgen recorded a Notice of Construction Lien with the Tooele County Recorder, Entry No. 602527, on May 2, 2024.

68.     Forgen filed its Complaint on October 4, 2024, and recorded the Lis Pendens against the Subject Property on October 21, 2024.

69.     After the filing of the Complaint and the recordation of the Lis Pendens, Forgen had a perfected Construction Lien as of at least September 10, 2023.[4]

70.     Forgen's Construction Lien is senior in priority to Tooele County's Tax Liens with respect to any real property and/or Excluded Assets that are not Mining Assets.

71.     Forgen's Construction Lien is senior in priority to Tooele County's 2024 Tax Lien in all respects.

---

[4]     Under Utah Code § 38-1a-503(1), "[a] construction lien relates back to, and takes effect as of, the time of the first preliminary notice filing," however, pursuant to Utah Code § 38-1a-504, all construction liens on a project "are on equal footing with one another." Accordingly, to the extent a different contractor recorded a preliminary notice prior to September 5, 2023, Forgen's Construction Lien will date back to the earliest date of any such preliminary notice.

1565.001 - #25002720v1

72.    The amount subject to Forgen's Construction Lien shall be shown at trial, but is not less than $3,764,100.97million plus interest at the Contract rate, attorneys' fees, and cost of collection under Utah Code Ann. §§ 38-1a-707 and 38-1a-309.

## REQUESTED RELIEF

WHEREFORE, Forgen respectfully requests that the Court enter judgment in Forgen's favor and against each Defendant (i) determining that the Construction Lien is a validly perfected, first-priority lien over the applicable assets located at the Subject Property, and (ii) granting Forgen such other and further relief as the Court deems just and proper.

Dated: June 4, 2026

**LANDIS RATH & COBB LLP**

*/s/ Matthew B. McGuire*
Matthew B. McGuire (No. 4366)
919 Market Street, Suite 1800
Wilmington, Delaware 19801
Telephone: (302) 467-4400
Facsimile: (302) 467-4450
E-mail:  mcguire@lrclaw.com

-and-

Engels J. Tejeda (*pro hac vice* pending)
**HOLLAND & HART LLP**
222 S. Main Street, Suite 2200
Salt Lake City, Utah 84111
Telephone: (801) 799-5800
Email:  ejtejeda@hollandhart.com

-and-

Matthew J. Ochs (*pro hac vice* pending)
**HOLLAND & HART LLP**
555 17th Street, Suite 3200
Denver, CO 80202
Telephone: (303) 295-8000
Email:  mjochs@hollandhart.com

*Counsel to Forgen, LLC*

1565.001 - #25002720v1