**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | ) )  Chapter 11 |
| US MAGNESIUM LLC,[1] | )  )  Case No. 25- 11696 (BLS) |
| Debtor. | )  )  ) |

**OBJECTION OF WELLS FARGO BANK, NATIONAL ASSOCIATION TO**
**CONFIRMATION OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS'**
**SECOND AMENDED COMBINED DISCLOSURE STATEMENT AND**
**PLAN OF LIQUIDATION OF US MAGNESIUM LLC**

Wells Fargo Bank, National Association ("Wells Fargo") submits this objection in opposition to the confirmation of the Official Committee of Unsecured Creditors' (the "Committee") Second Amended Combined Disclosure Statement and Plan of Liquidation of US Magnesium LLC Under Chapter 11 of the Bankruptcy Code [D.I. 860] (the "Plan"), inclusive of certain terms and conditions of the proposed Liquidating Trust Agreement (the "Liquidating Trust Agreement") to be entered into between US Magnesium LLC ("Debtor") and MS Restructuring Advisory Services LLC, as the proposed liquidating trustee (the "Liquidating Trustee").[2]

**PRELIMINARY STATEMENT**

1.      The Plan does not meet the criteria for confirmation under the Bankruptcy Code. The Plan (a) intentionally misclassifies the Class 3 claims of Wells Fargo in an attempt to obtain an impaired accepting class; (b) fails to recognize the priority liens and claims of Wells Fargo and

---

[1] The last four digits of the Debtor's federal tax identification number are 5446. The Debtor's address is 238 N 2200 W, Salt Lake City, Utah 84116.

[2] All capitalized terms used herein and not defined herein shall have the meanings specified in the Plan or the Liquidating Trust Agreement.

10005717.4

improperly divests Wells Fargo of the right to control the liquidation of the Debtor's joint-venture equity interests in Skull Valley Water Group LLC (the "Skull Valley Joint Venture"); (c) allows the Liquidating Trust to control the Debtor's books and records in derogation of Wells Fargo's undisputed pre-petition and post-petition priority lien in and to such books and records; (d) without any basis whatsoever taxes Wells Fargo with the costs and expenses of the proposed Wind-Down Officer when this Wind-Down Officer's duties under the Plan relate solely to the estate administrative responsibilities that vest in the Liquidating Trust, and do not involve or relate to the rights of Wells Fargo under the Plan; and (e) fails to provide Wells Fargo with a release, which is more than commercially reasonable, in exchange for Wells Fargo making the final payment to the estate of the liquidation proceeds due the estate under the terms of the Cooperation Agreement (as defined below).

## BACKGROUND

2.      Wells Fargo is the Debtor's secured lender having provided pre-petition and post-petition financing and the use of certain cash collateral to the Debtor.

3.      Under the terms of *Order (i) Authorizing the Debtor to Obtain Post-Petition Financing, (ii) Authorizing the Lender to Make DIP Liquidation Advances to Liquidate the Lender's Pre-Petition Collateral; (iii) Modifying the Automatic Stay; and (iv) Granting Related Relief* [D.I. 751], Wells Fargo is currently financing the liquidation of the Debtor's assets at the Rowley, Utah premises previously owned by the Debtor and presently owned by the State of Utah Division of Forestry, Fire and State Lands ("FFSL") and has been granted access to these premises pursuant to the terms of an Amended Access Agreement by and between FFSL, Wells Fargo and the Debtor.

**The Wells Fargo Pre-Petition Senior Secured Loans**

4.      Prior to the Petition Date, Wells Fargo, as lender, made loans and advances and provided other financial accommodations pursuant to the Loan and Security Agreement dated June 24, 2002 (the "Loan and Security Agreement," and together with all amendments, supplements and related documents, the "Senior Secured Loan Documents").

5.      The claims arising under the Senior Secured Loan Documents are secured by substantially all of the assets of the Debtor (other than real property), but are separated into two distinct claims: (1) secured claims arising under the revolving loan and letter of credit facilities as set forth in filed proof of claim number 99 (the "Revolver Claim"); and (2) the Prepetition Term Loan C Facility claim as set forth in filed proof of claim number 91 (the "Term Loan C Claim"), which claim is nominally held by Wells Fargo, but is 100% participated to The Renco Group, Inc. ("Renco").[3]

6.      As explained more fully in the *Motion of Wells Fargo for Entry of an Order Determining Classification and Allowance of Claims for Voting Purposes Pursuant to Bankruptcy Rule 3018* [D.I. 912] (the "Rule 3018 Motion"), the Senior Secured Loan Documents set forth the distinct nature and classification of the Revolver Claim and Term Loan C Claim.  For example, Section 5.3 of the Loan and Security Agreement provides, *inter alia*, that: (a) the grant of the security interests in Pre-Petition Collateral securing the Revolver Claim obligations and the Term Loan C obligations "constitute *two (2) separate and distinct* grants of security interests and liens;

---

[3] Wells Fargo has timely filed two proofs of claim: (a) the Revolver Claim, assigned proof of claim # 99 in the sum of $42,196,536 reflecting the pre-petition obligation owed to Wells Fargo pursuant to its revolving line of credit, which line of credit is secured by a first priority lien on the Debtor's personal property and fixtures, and (b) the Term Loan C Claim, assigned proof of claim # 91 in the sum of $27,175,019.08 reflecting a subordinated pre-petition loan to the Debtor secured by the same liens granted under the revolving line of credit liens and which indebtedness is due and owed to Renco Group who at the time of the filing of the Debtor's Chapter 11 petition had purchased a 100% participation in Term Loan C.

and (b) the Revolver Claim and Term Loan C Claim "*are fundamentally different from each other and must be separately classified in any plan of reorganization proposed or adopted in an insolvency or liquidation proceeding.  See* Rule 3018 Motion, ¶¶ 6-9 and 33-37 (emphasis added).

**The Challenge Action**

7.      On December 29, 2025, the Committee filed its *Motion for Leave, Standing and Authority to Commence, Prosecute and Settle Certain Claims and Causes of Action on Behalf of the Debtor's Estate* (the "Standing Motion") [D.I. 422 and 433], pursuant to which the Committee sought standing to bring certain estate causes of action against Renco and Wells Fargo.

8.      Neither the Standing Motion nor the proposed challenge complaint filed with the Standing Motion (*see* D.I. 433, Exhibit B) sought standing to challenge Wells Fargo's interests with respect to the Skull Valley Joint Venture, and the time for the Unsecured Creditors Committee to challenge Wells Fargo's interests has lapsed.

9.      On January 29, 2026, the Court entered an Order granting the Standing Motion [D.I. 553] (the 'Standing Order").  The Standing Order provided that the "Committee shall be, and is hereby granted standing on behalf of the Debtor's estate to commence and prosecute to conclusion the Proposed Claims *set forth in the Proposed Complaint . . . .*").  Standing Order, ¶ 2 (emphasis added).

10.     Thereafter, also on January 29, 2026, the Committee filed its Complaint (the "Challenge Complaint"), commencing Adversary Proceeding 25-50012 (BLS) captioned *Official Committee of Unsecured Creditors of US Magnesium, LLC v. Wells Fargo Bank, National Association, The Renco Group, Inc., and Renco Global Capital, LLC* (the "Challenge Action").  The original Challenge Complaint sought primarily to challenge the rights of Wells Fargo in and to the Ace Claim (as defined in Section 3.3 of the Plan) and to recharacterize Term Loan C (for

which Wells Fargo is the nominal holder, but for which Renco purchased and holds a 100% last-out participation) from debt to equity.  The Committee filed an Amended Complaint [Adv. D.I. 3] on April 17, 2026 in order to implement the resolution of disputes related to the Ace Claim.

11.    Contrary to the proposed challenge complaint attached to the Standing Motion and scope of approved standing granted by the Court, both the original and amended Challenge Complaints actually filed with the Court seek to challenge Wells Fargo's interests in the Skull Valley Joint Venture.  In sum, the Committee slipped the Skull Valley challenge into their filed Challenge Complaint without seeking or obtaining standing or the Court's authority to do so.

12.    Subject only to the Court's determination of the claims asserted in the Committee's Challenge Complaint (as defined and described below), the Debtor, the Unsecured Creditors Committee and other parties-in-interest, including FFSL, have fully recognized the first priority liens of Wells Fargo in and to all of the personal property and fixtures of the Debtor.

### The Cooperation Agreement

13.    Under the terms of the Cooperation Agreement, dated as of March 30, 2026, among the Debtor, the Committee, Wells Fargo, Renco and Renco Global Capital, LLC (the "Cooperation Agreement"), which was approved by the *Order Granting Motion Approving Settlement Agreements with the Official Committee of Unsecured Creditors, Wells Fargo, Renco Global Capital, LLC and Renco Group, Inc. pursuant to Federal Rules of Bankruptcy Procedure 9019 and Granting Related Relief* [D.I. 753], and subject only to an event of default under the Cooperation Agreement, the settlement resolving the Ace Claim (the "Ace Settlement") was entered into by and among the Committee, Wells Fargo and the Debtor.

14.    As a result of the Cooperation Agreement, on April 17, 2026 the Committee filed an Amended Complaint in the Challenge Action removing the challenges related to the Ace Claim.

5

However, as noted above, the amended Challenge Complaint continues to assert the barred challenges related to Wells Fargo's security interest in the Skull Valley Joint Venture.

### OBJECTIONS TO CONFIRMATION OF THE PLAN

15. Confirmation of the Plan should be denied for the following reasons:

**A.** **The Plan Fails to Properly Classify Claims per 11 U.S.C. § 1122(a) and 11 U.S.C. § 1123(a)(4) and Therefore Fails to Satisfy Sections 1129(a)(1) and (a)(2).**

16. The Plan improperly classifies both the Revolver Claim and the Term Loan C Claim as Class 3 Senior Secured Claims. This classification violates Section 1122(a) and Section 1123(a)(4) and therefore does not comply with Sections 1129(a)(1) and 1129(a)(2) of the Bankruptcy Code.

17. Section 1122 provides that "a plan may place a claim or an interest in a particular class only if such claim or interest is substantially similar to the other claims or interest of such class." *See* 11 U.S.C. § 1122. Claims are substantially similar where they are similar in legal nature, character, or effect. *See In re Dow Corning Corp.*, 244 B.R. 634 (Bankr. E.D. Mich. 1999), *aff'd*, 255 B.R. 445 (E.D. Mich. 2000), *aff'd and remanded*, 280 F.3d 648 (6th Cir. 2002). Section 1123(a)(4) of the Bankruptcy Code requires that a plan "provide the same treatment for each claim or interest of a particular class, unless the holder of a particular claim or interest agrees to a less favorable treatment of such particular claim or interest." 11 U.S.C. § 1123(a)(4).

18. Pursuant to Section 1129(a)(1), the Court shall only confirm the Plan if "the plan complies with all applicable provisions of this title." *See* 11 U.S.C. § 1129(a)(1). Pursuant to Section 1129(a)(2), the Court shall only confirm the Plan if "the proponent of the plan complies with the applicable provisions of this title." *See* 11 U.S.C. § 1129(a)(2). Accordingly, a Plan that violates Section 1122 and/or Section 1123(a)(4) is not confirmable under Section 1129.

6

19.    As provided for in greater detail in its Rule 3018 Motion, Wells Fargo objects to the classification of the Term Loan C Claim in Class 3 for voting purposes. The Revolver Claim in the sum of $42,196,536 represents the amount owed to Wells Fargo under its revolving line of credit. This claim is secured by a priority lien on all the assets of the Debtor inclusive of the Ace Settlement (as defined in Section 3.5 of the Plan). In addition to its Revolving Claim, Wells Fargo is also the nominal holder of the Term Loan C Claim but has no economic interest in Term Loan C as Renco Group holds a 100% economic interest as the Term Loan C Participant. Term Loan C is secured by a subordinate lien to all other collateral that secures the Revolver Claim; however, as explained in the Rule 3018 Motion, the Term Loan C Claim is either fully unsecured or substantially undersecured.

20.    Accordingly, the Revolver Claim and Term Loan C Claim are not "substantially similar" and the Committee's attempt to classify each of them in Class 3 violates Section 1122. Indeed, the Debtor acknowledged this at the inception of the loan, and agreed in the Loan and Security Agreement that the Revolver Claim obligations and the Term Loan C Claim obligations "constitute *two (2) separate and distinct* grants of security interests and liens" and "*are fundamentally different from each other and must be separately classified in any plan of reorganization proposed or adopted in an insolvency or liquidation proceeding*." *See* Rule 3018 Motion, ¶¶ 6-9 and 33-37 (emphasis added) (citing Section 5.3 of the Loan and Security Agreement and other Senior Secured Loan Documents).

21.    Furthermore, Section 1123(a)(4) of the Bankruptcy Code requires that a plan "provide the same treatment for each claim or interest of a particular class." The Plan violates this requirement by placing the Revolver Claim and Term Loan C Claim in the same class, despite the different treatment of those claims under the Plan. For example, Section 10.3 of the Plan provides

7

that the Revolver Claim is allowed, while the Term Loan C Claim is disputed.  In addition, distributions on account of such claims, which are governed by Plan and Senior Secured Loan Documents, will be fundamentally different given that the Term Loan C Claim is a "last out" participation and therefore only entitled to a distribution once the Revolver Claim is indefeasibly paid in full.

22.    In order to comply with Sections 1122 and 1123(a)(4), and satisfy Section 1129, the Term Loan C Claim should properly be classified in Class 7 with all other unsecured claims. This classification of the Term Loan C Claim in the same class as the Revolver Claim was done solely in an attempt by the Committee to achieve an impaired accepting class, and accordingly the Term Loan C Claim should properly be reclassified in Class 7.

**B.     The Plan Must be Modified in Recognition of the Rights and Interests of Wells Fargo.**

23.    To the extent that the Court determines that the Plan is confirmable notwithstanding the classification objections raised above, the Plan should nevertheless be modified in order to implement changes that recognize the substantial rights and interests of Wells Fargo.  Accordingly, Wells Fargo requests that the Court order the Committee to implement the following changes to the Plan as a condition to confirmation.

(a)    Releases.  The Plan fails to grant a release to Wells Fargo upon payment in full of its obligations to the Debtor's estate.  Pursuant to the Cooperation Agreement and subject only to an event of default under the Cooperation Agreement, Wells Fargo is obligated to pay to the estate certain net or gross proceeds of the liquidation recovery achieved by Wells Fargo from the sale of the assets located at the Debtor's former premises.  In exchange for this payment, Wells Fargo is entitled under any standard of commercial reasonableness to be released from any and all continuing

obligations to the Debtor's estate assuming the amount paid complies with the Cooperation Agreement.  No such release provision exists under the Plan or the Liquidating Trust Agreement.  Without a release, Wells Fargo will have no assurance of finality that a release provides and will only serve to frustrate the estate from receiving timely payment of its share of the liquidation proceeds to the detriment of the estate.

(b)    Books and Records.  (Paragraphs 11.5 of the Liquidating Trust Agreement and 12.12 of the Plan).  It is uncontroverted that Wells Fargo has a priority lien in and to the books and records of the Debtor pursuant to the pre-petition and post-petition liens granted to Wells Fargo.  Wells Fargo requires day to day access to these books and records to conduct the liquidation of the Debtor's assets.  Nevertheless, the Plan, without any legal authority, turns this right on its head and provides that these books and records will be the property of the Liquidating Trust and that Wells Fargo, along with the Collateral Liquidation Manager and Post-Effective Date Debtor, will be at the sufferance of the Liquidating Trustee to gain access to these records and to copy same, and additionally will be expected *to pay for this access*. The Plan should not adjudicate the property rights of the Debtor and provide the Liquidating Trustee with this authority when Wells Fargo has a priority claim in and to these records.  Rather Wells Fargo should retain custody of the books and records and the Liquidating Trustee can be allowed access on reasonable terms.

(c)    Wind Down Officer.  (Paragraphs 3.1(l) and 5.2 of the Liquidating Trust Agreement).  The Plan mandates the creation of a Wind-Down Officer and provides that Wells Fargo will pay half of the cost of this Wind-Down Officer.  The tasks

assigned under the Plan make it clear that the duties of the Wind-Down Officer are all ministerial corporate responsibilities and do not relate to the liquidation of Wells Fargo's collateral. Wells Fargo is already paying all of the fees and expenses of the Collateral Liquidation Manager under the Plan. There is no basis under the Plan or the Bankruptcy Code for Wells Fargo to now pay for half of the Wind-Down Officer's fees and expenses. This requirement is just an overreach by the Committee to cut costs for its constituency, to the detriment of Wells Fargo.

(d)    Skull Valley Joint Venture. Wells Fargo has a "blanket lien" on the assets of the Debtor which includes a lien on the Debtor's rights in its Skull Valley Joint Venture. Nevertheless, the Plan and Liquidating Trust Agreement provide that the Liquidating Trustee will control the disposition of this asset. *See* Plan, §§ 3.103 (defining Liquidating Trust Assets to include the "Debtor's interests in Skull Valley"). There is no basis for the Liquidating Trustee to take control of the disposition of this asset, and effectively seize Wells Fargo's collateral. The proposed challenge complaint filed with the Standing Motion on December 29, 2025 (*see* D.I. 433, Exhibit B) included proposed counts challenging Wells Fargo's rights in and to the Ace Claim (Counts I, III, IV and V) and commercial tort claims (Counts II and IV), and a count for recharacterization of Term Loan C from debt to equity (Count VII). The proposed Complaint filed with the Standing Motion did not include any proposed challenge to the rights of Wells Fargo in the Skull Valley Joint Venture. As the Committee did not request standing to bring that challenge, the Court's Order could not have granted standing beyond the scope of what was requested in the Standing Motion. Indeed, the Standing Order expressly grants

10

standing to bring claims "set forth in the Proposed Complaint" and nothing else. The fact that the Committee slipped a Skull Valley challenge into its filed Challenge Complaint does not somehow expand the scope of the Standing Order. Accordingly, the Plan should be revised to make clear that Skull Valley Joint Venture interests are not Liquidating Trust Assets, but rather will remain with the Post-Effective Date Debtor and controlled by the Collateral Liquidation Manager.

WHEREFORE, Wells Fargo respectfully requests that the Court deny confirmation, or refuse to approve the Plan absent the modifications requested herein, and grant such other and further relief as is just and proper in this case. Wells Fargo expressly reserves the right to amend or supplement this Objection, to file additional objections and to introduce evidence support this Objection and any other objections at any hearing on the Plan.

Dated: June 5, 2026

Respectfully submitted,

**BURR & FORMAN LLP**

*/s/ J. Cory Falgowski*
J. Cory Falgowski (No. 4546)
222 Delaware Avenue, Suite 1030
Wilmington, DE 19801
Telephone: (302) 830-2312
Email: jfalgowski@burr.com

- AND –

**OTTERBOURG P.C.**
Jonathan N. Helfat (admitted *pro hac vice*)
Adam C. Silverstein (admitted *pro hac vice*)
230 Park Avenue
New York, NY 10169
Telephone:     (212) 661-9100
Facsimile:     (212) 682-6104
Email:          jhelfat@otterbourg.com
                   asilverstein@ottterbourg.com

*Attorneys for Wells Fargo Bank, N.A.*

11