**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| US MAGNESIUM LLC, | ) | Case No. 25-11696 (BLS) |
| | ) | |
| Debtor.[1] | ) | |
| | ) | |

**DECLARATION OF ADAM M. ROSEN OF US MAGNESIUM LLC,**
**IN SUPPORT OF FINAL APPROVAL AND CONFIRMATION OF THE**
**OFFICIAL COMMITTEE OF UNSECURED CREDITORS' SECOND AMENDED**
**COMBINED DISCLOSURE STATEMENT AND PLAN OF LIQUIDATION OF**
**US MAGNESIUM LLC UNDER CHAPTER 11 OF THE BANKRUPTCY CODE**

I, Adam M. Rosen, hereby declare under penalty of perjury:

1.     I am a Partner with Province, LLC ("Province"), financial advisor to the Official Committee of Unsecured Creditors (the "Committee" or the "Plan Proponent") in the chapter 11 case (the "Chapter 11 Case") of the above-captioned debtor and debtor in possession (the "Debtor"), which has an office at 445 Park Ave. Ste. 3D, New York, New York 10022. I submit this declaration ("Declaration") in support of final approval, and confirmation of the *Official Committee of Unsecured Creditors' Second Amended Combined Disclosure Statement and Plan of Liquidation of US Magnesium LLC Under Chapter 11 of the Bankruptcy Code* (as may be supplemented, amended, or modified, the "Combined Disclosure Statement and Plan"), filed contemporaneously herewith.[2]   I submit this Declaration as evidence that the Combined Disclosure Statement and Plan satisfies the requirements of sections 1125, 1126, and 1129 of title 11 of the United States Code (the "Bankruptcy Code").

---

[1] The last four digits of the Debtor's federal tax identification number are 5446. The Debtor's service address for the purpose of this chapter 11 case is: 238 N. 2200 W. Salt Lake City, UT 84116.

[2] Capitalized terms used but not defined herein are defined in the Combined Disclosure Statement and Plan, or Confirmation Brief (as defined below), as applicable.

2.      I am generally familiar with the terms and provisions of the Combined Disclosure Statement and Plan, the Plan Supplement [Docket No. 908], the various exhibits, schedules, and ancillary documents related thereto, the documents submitted in support of the Combined Disclosure Statement and Plan, and the requirements for final approval and confirmation of the Combined Disclosure Statement and Plan under section 1129 of the Bankruptcy Code.

3.      Except as otherwise noted, all facts set forth in the Declaration are based on my personal knowledge, my discussions with members of the Debtor's senior management and its outside advisors, my review of relevant documents, and/or my opinion based on my experience and knowledge of the Debtor's operations and its financial condition, and discussions with the Committee's other professionals.  In making this Declaration, I have relied in part on information and materials prepared by the Debtor's management team and outside advisors (including Focus Management Group USA Inc. and SB360 Capital Partners, LLC).  If I were called to testify as a witness in this matter, I could and would testify competently to the facts set forth herein.

## I.      QUALIFICATIONS AND ROLE IN THIS CHAPTER 11 CASE

4.      I am a Partner at Province and have over 20 years of restructuring experience. Province performs financial advisory services and has extensive experience and knowledge of the Debtor's industry and business.  Province serves as the Committee's financial advisor in the Chapter 11 Case.

5.      Prior to my time at Province, I was a Managing Director at B. Riley Securities, Inc. from 2016 to 2023.   Prior to joining B. Riley Securities, Inc., I was a Director at PricewaterhouseCoopers LLP from 2009 to 2016.  During the course of my career, I have advised debtors, creditors and acquirors in financial restructurings, distressed mergers and acquisitions and raised capital for troubled companies.  I received my M.B.A. from Fordham University and B.S. from Union College.

54695310.12

6.      Contemporaneously herewith, I understand that the Committee also filed a modified version of the Combined Disclosure Statement and Plan, an amended version of the Plan Supplement, as well as (a) the *Declaration of Selwyn Perry With Respect to the Tabulation of Votes on the Official Committee of Unsecured Creditors' Second Amended Combined Disclosure Statement and Plan of US Magnesium LLC under Chapter 11 of the Bankruptcy Code* (the "Voting Report"); (b) *Declaration of Shaun Martin, Independent Manager of US Magnesium LLC, In Support of Final Approval and Confirmation of the Official Committee of Unsecured Creditors' Second Amended Combined Disclosure Statement and Plan of Liquidation of US Magnesium Under Chapter 11 of the Bankruptcy Code* (the "Martin Declaration"); (c) *The Official Committee of Unsecured Creditors' (I) Memorandum of Law in Support of Final Approval and Confirmation of the Second Amended Combined Disclosure Statement and Plan of Liquidation of US Magnesium LLC* (the "Confirmation Brief"); and *(d) The Official Committee of Unsecured Creditors' Omnibus Reply to Objections to the Combined Disclosure Statement and Plan* (the "Reply") in each case, in support of the Combined Disclosure Statement and Plan.

7.      After reviewing the Voting Report, I understand that Class 3 (Senior Secured Claims), Class 4 (Subordinated Secured Claims), Class 5 (Deficiency Claims), and Class 6 (Insider Unsecured Claims) have voted to reject the Combined Disclosure Statement and Plan.  Moreover, I understand that Class 8 (Interests) is an Impaired Class that is deemed to have rejected the Combined Disclosure Statement and Plan.

8.      Based on my role as financial advisor to the Committee, my work in this Chapter 11 Case and my understanding of the Combined Disclosure Statement and Plan, I believe that the Combined Disclosure Statement and Plan satisfies all applicable provisions of the Bankruptcy Code, has been proposed by the Committee in good faith, maximizes value for the

3

54695310.12

Debtor's estate, and is in the best interests of the Debtor's creditors and all parties in interest. Therefore, I believe that the Combined Disclosure Statement and Plan should be approved on a final basis and confirmed.

## II.    BACKGROUND

9.      To the best of my knowledge, with the assistance of Stretto, Inc. (the "Voting and Noticing Agent"), the Committee has complied with the Solicitation Procedures approved by the Solicitation Procedures Order, as well as applicable provisions of the Bankruptcy Code, Bankruptcy Rules, and Local Rules, as evidenced by the applicable affidavits of service filed by the Voting and Noticing Agent [Docket No. 892].  I understand that the Committee caused the Voting and Noticing Agent to serve the Solicitation Package, the Combined Hearing Notice, and/or the Notice of Non-Voting Status and the other related notices as set forth in the Solicitation Procedures Order.

10.      The Combined Disclosure Statement and Plan is the product of extensive efforts by the Committee and arm's-length, good faith negotiations between the Committee, the Debtor, Wells Fargo, the EPA, PBGC, Forgen, ATI Titanium, the U.S. Trustee, and other parties-in-interest, which I believe would permit this Chapter 11 Case to reach a value-maximizing conclusion.

11.      I understand that the Committee received certain formal objections and informal comments to the Combined Disclosure Statement and Plan and/or the Confirmation Order.  I understand that the Committee worked diligently with various parties in interest to consensually resolve the majority of the objections, informal comments, and/or requests, which are described in more detail in the Confirmation Brief, but that certain objections, including from Wells Fargo and Renco, are not yet resolved.  I understand that the Committee intends to continue to attempt to resolve all outstanding objections.  However, to the extent that the Committee cannot resolve any

4

objection, I believe that any such objections should be overruled and the Combined Disclosure Statement and Plan should be confirmed as I believe the Combined Disclosure Statement and Plan satisfies the applicable requirements for confirmation and is in the best interest of the Debtor's estate and all parties-in-interest.

**III.   THE COMBINED DISCLOSURE STATEMENT AND PLAN SATISFIES THE APPLICABLE REQUIREMENTS OF THE BANKRUPTCY CODE FOR FINAL APPROVAL**

12.   I believe, based on my knowledge and the advice of the Debtor's and the Committee's advisors, that the Combined Disclosure Statement and Plan and the solicitation thereof complies with all applicable provisions of the Bankruptcy Code, as required by sections 1125 and 1126 of the Bankruptcy Code.

**A.   The Combined Disclosure Statement and Plan Contains Adequate Information.**

13.   Prior to solicitation, the Plan Proponent provided the opportunity to review and comment on the Combined Disclosure Statement and Plan to various parties, including the Debtor, the U.S. Trustee, the EPA, Forgen, PBGC, and Wells Fargo. Accordingly, I believe that the Combined Disclosure Statement and Plan contains adequate information within the meaning of section 1125(a) of the Bankruptcy Code, in satisfaction of section 1126(b)(2) of the Bankruptcy Code.

**B.   The Solicitation Procedures Complied with the Bankruptcy Code, the Bankruptcy Rules, and the Solicitation Procedures Order**

14.   I believe that the Solicitation Procedures complied with the Bankruptcy Code, the Bankruptcy Rules, and the Solicitation Procedures Order for the following reasons.

15.   *First*, I understand that the forms of ballots used in this Chapter 11 Case complied with the Bankruptcy Rules and are consistent with Official Form No. 314. Further, I understand that the form of ballots used were conditionally approved by the Bankruptcy Court pursuant to the

54695310.12

Solicitation Procedures Order and to my knowledge no party has objected to the sufficiency of the ballots. I understand that pursuant to the Solicitation Procedures, the Committee only transmitted ballots to Holders of Claims in the Voting Classes. I understand that unless the court determines otherwise, Bankruptcy Rule 3017(d) requires the sending of the plan, a ballot, and certain related documents to parties entitled to vote on the plan, and that the Solicitation Procedures Order permitted the Committee to cause only the Non-Voting Notice Package to be transmitted to parties not entitled to vote on the Combined Disclosure Statement. Based on the foregoing, I believe that the Committee satisfied the requirements of Bankruptcy Rules 3017(d) and 3018(c) with respect to the solicitation of the Combined Disclosure Statement and Plan.

16. *Second*, the Combined Disclosure Statement and Plan and each of the ballots clearly identify May 7, 2026, at 4:00 p.m. (prevailing Eastern Time) (the "Voting Record Date") as the date for determining which holders of claims or interests were entitled to vote to accept or reject the Combined Disclosure Statement and Plan. The Bankruptcy Court approved the Voting Record Date in the Solicitation Procedures Order, and to my knowledge, no party in interest has objected to the Voting Record Date. Accordingly, I believe that the Committee complied with the Solicitation Procedures Order as it relates to the Voting Record Date.

17. *Third*, I understand that the Solicitation Package was transmitted to all parties holding Claims in the Voting Classes. I am advised that the Solicitation Package was transmitted to holders of Claims in the Voting Classes on or before May 13, 2026, in accordance with the Solicitation Procedures Order. The solicitation period lasted through the Voting Deadline, June 5, 2026 at 4:00 p.m. prevailing Eastern Time, and I believe this was adequate under the facts and circumstances of this Chapter 11 Case. To my knowledge no party has objected to the length of

the solicitation period. Accordingly, I believe that the Committee complied with the Solicitation Procedures Order with respect to the solicitation of the Combined Disclosure Statement and Plan.

18.  **Fourth**, I understand that the Voting and Noticing Agent reviewed all ballots received through the Voting Deadline, in accordance with the Solicitation Procedures described in and attached to the Solicitation Procedures Order as Exhibit 1. I understand that the Committee used standard tabulation procedures in tabulating votes, and I believe that such tabulation procedures were appropriate.  After reviewing the Voting Report, filed contemporaneously herewith, I understand that certain Voting Classes voted to accept the Combined Disclosure Statement and Plan pursuant to the requirements set forth in section 1126(c) of the Bankruptcy Code.

19.  **Fifth**, I understand that Bankruptcy Rule 3017(d) requires transmission of a court-approved disclosure statement to, *inter alia*, classes of creditors and equity security holders unless the court orders otherwise. I further understand that pursuant to the Solicitation Procedures Order, the Committee was not required to mail a copy of the Combined Disclosure Statement and Plan to Holders of Claims that are Unimpaired under, and conclusively presumed to accept, or are Impaired under, and conclusively presumed to reject, the Combined Disclosure Statement and Plan. I understand that instead, the Committee transmitted the Non-Voting Notice Package to all non-voting parties as required under the Solicitation Procedures Order. The Combined Hearing Notice and the Notice of Non-Voting Status each directed the holders where they could obtain a copy of the Combined Disclosure Statement and Plan free of charge.

20.  **Sixth**, I understand Section 1125(e) of the Bankruptcy Code acts to protect plan proponents from liability who solicit a plan in good faith. As set forth in the Solicitation Motion and the Combined Disclosure Statement and Plan, and as demonstrated by the Plan Proponent's

54695310.12

compliance with the Solicitation Procedures Order, I believe the Plan Proponent at all times engaged in good-faith and took appropriate actions in connection with the solicitation of the Combined Disclosure Statement and Plan.

21.    Accordingly, I believe that the solicitation of the Combined Disclosure Statement and Plan and the tabulation of votes thereon complied with the Bankruptcy Code and the Solicitation Procedures Order and was in good faith.

## IV.    THE COMBINED DISCLOSURE STATEMENT AND PLAN SATISFIES THE REQUIREMENTS FOR CONFIRMATION

22.    I am aware that to confirm a chapter 11 plan, a plan proponent must demonstrate that a plan satisfies the requirements of section 1129 of the Bankruptcy Code.  Based on my understanding of the Combined Disclosure Statement and Plan, the events that have occurred throughout this Chapter 11 Case, and my discussions with the Debtor's and the Committee's professionals, advisors, and management team, I believe that the Combined Disclosure Statement and Plan satisfies the confirmation requirements of sections 1129(a) and (b) of the Bankruptcy Code and should be confirmed.  I have set forth the reasons for such belief below, except where such compliance is apparent on the face of the Combined Disclosure Statement and Plan, the Plan Supplement, and the related documents or where it will be the subject of evidence introduced at the Combined Hearing.

### A.    The Combined Disclosure Statement and Plan Complies with the Applicable Provisions of the Bankruptcy Code as Required by Section 1129(a)(1) of the Bankruptcy Code.

23.    I understand that section 1129(a)(1) of the Bankruptcy Code requires the Combined Disclosure Statement and Plan to comply with the applicable provisions of the Bankruptcy Code, which in turn generally requires compliance with sections 1122 and 1123 of the Bankruptcy Code.

54695310.12

As detailed herein, I have been made aware of information that leads me to conclude that the Combined Disclosure Statement and Plan satisfies this requirement.

### i.    Classification of Claims and Interests (§ 1122).

24.    I understand that section 1122 of the Bankruptcy Code requires that claims or interests may be placed in a particular class in a chapter 11 plan only if such claims are substantially similar to the other claims or interests in such class.  I also understand that there is no requirement for all substantially similar claims to be placed into the same class, and that instead a plan proponent is afforded discretion with how to classify claims in its chapter 11 plan.

25.    I am familiar with the Combined Disclosure Statement and Plan's classification of Claims and Interests, and after discussions with the Committee and the Committee's other advisors, I believe that the Combined Disclosure Statement and Plan's classification of Claims and Interests satisfies the requirements set forth in section 1122 of the Bankruptcy Code, because (a) each Class only comprises substantially similar Claims or Interests, as applicable; and (b) each instance of separate classification of Claims and Interests under the Combined Disclosure Statement and Plan is based on valid legal, factual, and/or business reason.

26.    Section 2.1 of the Combined Disclosure Statement and Plan separately classifies Claims against and Interests in the Debtor as follows:

| Class | Designation | Treatment | Entitled to Vote |
|---|---|---|---|
| 1 | Priority Non-Tax Claims | Unimpaired | No (presumed to accept) |
| 2 | Other Secured Claims | Unimpaired | No (presumed to accept) |
| 3 | Senior Secured Claims | Impaired | Yes |
| 4 | Subordinated Secured Claims | Impaired | Yes |
| 5 | Deficiency Claims | Impaired | Yes |
| 6 | Insider Unsecured Claims | Impaired | Yes |
| 7 | General Unsecured Claims | Impaired | Yes |
| 8 | Interests | Impaired | No (presumed to reject) |

9

27.     It is my understanding that the classification scheme reasonably relates to the different legal or factual nature of Claims or Interests, and as such, dissimilar Claims and Interests are not classified together under the Combined Disclosure Statement and Plan.  Generally speaking, the classification scheme follows the Debtor's capital structure—thereby taking into account the relative priority among Claims and Interests, including the relative priority between and among Secured and Unsecured Claims, and with Claims against and Interests in the Debtor classified separately.  In my opinion, the classification structure was not done to gerrymander an affirmative vote on the Combined Disclosure Statement and Plan.

### a.     Classification of Secured Claims

28.     I understand that Secured Claims against the Debtor were classified into three (3) separate Classes based on their separate legal statuses, including the contractual subordination of the Subordinated Secured Claims to the Senior Secured Claims pursuant to the applicable Intercreditor Agreements.  I also understand that all of the Senior Secured Claims are or may be secured, and as such classifying certain Senior Secured Claims as General Unsecured Claims would be impermissible under the Bankruptcy Code.

29.     I understand that Wells Fargo also argues that the Term Loan C Claim should be reclassified because it is either undersecured *or* unsecured.  Less than four months ago, Wells Fargo took the position that the Term Loan C Claim is instead significantly oversecured[3] relying on evidence states that the Debtor holds approximately $**86 million** of Prepetition Collateral at the

---

[3] *See* Wells Fargo's Ltr to Court, Feb. 17, 2026 [Docket No. 618] ("Not only would [access to the Rowley Property] result in a significant paydown or payoff of Wells Fargo's secured claims, but the parties also believe that the Debtor's liquidation efforts may unlock millions of dollars in asset value for the estate *far and above what is owed to Wells Fargo*.  That is demonstrated from, among other things, the Thayer Declaration (D.I. 573) proffered to the Court in advance of the February 4, 2026 hearing.") (emphasis added).  Implicit in this acknowledgement, is that there is sufficient Prepetition Collateral to pay off *all* of the Debtor's Senior Secured Claims and then some.

Rowley Property.[4] Upon information and belief, the Revolver Claim currently has approximately $21.2 million outstanding.  The Term Loan C Claim currently has approximately $27.2 million outstanding.  Based on the Debtor's valuation of the Prepetition Collateral, it is not clear whether the Senior Secured Claims (including the Term Loan C Claim) are undersecured.

### b.   *Classification of Unsecured Claims*

30.   Unsecured Claims against the Debtor were classified into three (3) separate Classes based on the different nature and characteristics of the Unsecured Claims against the Debtor.  ***First***, Deficiency Claims arising from purported Holders of Secured Claims against the Debtor were classified separately from other Unsecured Claims in recognition of the contingent and wholly unliquidated nature and different legal status of such Claims and that such claims relate to funded debt.

31.   ***Second***, Insider Unsecured Claims—the majority of which are (or, as I understand it, will be) the subject of potential recharacterization or equitable subordination claims—are separately classified from other Unsecured Claims.  I understand that Renco has objected to the separate classification of Insider Unsecured Claims and Deficiency Claims, accusing the Plan Proponent of structuring the Combined Disclosure Statement and Plan's classification structure solely to gerrymander their Claims for voting purposes.  I believe that to be inaccurate.

32.   I believe the Insider Unsecured Claims are properly classified separately from the General Unsecured Claims for several reasons.  ***First***, given the Committee Challenge, and the potential liability therefrom, I believe that Renco is voting based on their non-creditor interests,

---

[4] *See* Thayer Declaration [Docket No. 573], Ex. A (stating that the Prepetition Collateral located at the Rowley Property has an estimated liquidation value of over $86 million).  This is in addition to the potential value of the Ace Claims, which, if successful, could provide up to $30.8 million (out of $56 million, pursuant to the Ace Settlement) to the Prepetition Secured Lenders—which, by itself, upon information and belief would render the Term Loan C Claim not fully unsecured.

54695310.12

and to prevent or delay the prosecution of any potential claims and causes of action against them, which I understand to be a legitimate basis for separate classification of creditors' claims apart from claims of other general unsecured creditors. *Second*, I also understand that certain courts have permitted insiders who have lent money to distressed debtors to be classified separately from general unsecured creditors, based on their insider knowledge of the debtor's financial condition compared to non-insider general unsecured creditors.

33.    In summary, I believe that each Claim or Interest in each particular Class is substantially similar to every other Claim or Interest in that Class, in accordance with the requirements of section 1122(a) of the Bankruptcy Code and that Claims or Interests were not separately classified solely to obtain an impaired accepting class.

34.    Therefore, it is my understanding that the Combined Disclosure Statement and Plan fully complies with section 1122 of the Bankruptcy Code.

### ii.    Mandatory Requirements of a Plan (§ 1123(a)).

35.    I understand section 1123(a) of the Bankruptcy Code sets forth seven requirements with which every plan under chapter 11 of the Bankruptcy Code must comply.[5] Based on my review of the Combined Disclosure Statement and Plan, and the information provided to me by counsel, I believe the Combined Disclosure Statement and Plan complies with section 1123(a) of the Bankruptcy Code, as detailed below.

#### a.    *Section 1123(a)(1)–(3).*

36.    Sections 2.1, 9.1, and 10 of the Combined Disclosure Statement and Plan: (**1**) designate all Claims and Interests that I understand require classification under section 1123(a)(1) of the Bankruptcy Code; (**2**) specify that Classes 1 (Priority Non-Tax Claims) and 2

---

[5] It is my understanding that because the Debtor is not an individual, section 1123(a)(8) of the Bankruptcy Code is inapplicable.

12

54695310.12

(Other Secured Claims) are Unimpaired; and (**3**) specify the treatment of the Impaired Classes, which I understand to include Class 3 (Senior Secured Claims), Class 4 (Subordinated Secured Claims), Class 5 (Deficiency Claims), Class 6 (Insider Unsecured Claims), Class 7 (General Unsecured Claims), and Class 8 (Interests).

### b.      *Section 1123(a)(4).*

37.      I understand that the Combined Disclosure Statement and Plan provides the same treatment for each Claim or Interest in a particular Class unless the Holder of such Claim or Interest agrees to less favorable treatment.

### c.      *Section 1123(a)(5).*

38.      I believe that Section 14 of the Combined Disclosure Statement and Plan provides adequate means for implementation.  The Combined Disclosure Statement and Plan provides for, among other things:

- payment in full of all Allowed Administrative Claims, Professional Fee Claims, U.S. Trustee Fees, Priority Tax Claims, Priority Non-Tax Claims, Other Secured Claims, and Other Priority Claims;

- vesting of certain assets in the Liquidating Trust, for the Liquidating Trust to liquidate and administer for the benefit of the Liquidating Trust Beneficiaries following the Effective Date;

- vesting of certain encumbered assets in the Post-Effective Date Debtor to liquidate for the benefit of the Debtor's Prepetition Secured Lenders and the Liquidating Trust Beneficiaries following the Effective Date; and

- distribution of Liquidating Trust Interests to Holders of Allowed Deficiency Claims, Insider Unsecured Claims, and General Unsecured Claims.

### d.      *Section 1123(a)(6).*

39.      I understand that section 1123(a)(6) of the Bankruptcy Code is not applicable in this Chapter 11 Case because the Combined Disclosure Statement and Plan does not contemplate the issuance of equity securities.

54695310.12

*e.*      *Section 1123(a)(7).*

40.      On the Effective Date, the Debtor's managers and officers will be discharged from their duties and deemed to have resigned. The authority to act on behalf of the Post-Effective Date Debtor will vest in the Collateral Liquidation Manager.  I understand that the forthcoming Plan Supplement identifies META Advisors LLC as the Wind-Down Officer.  I believe that the selection of the Collateral Liquidation Manager and Wind-Down Officer is consistent with the interests of creditors and equity holders, and public policy.  Indeed, I understand that the Wind-Down Officer was selected by the Plan Proponent in consultation with the Debtor and Wells Fargo, and I understand such appointment is acceptable to other key stakeholders.  Moreover, I understand that the Plan Supplement identifies MS Restructuring Advisory Services LLC as the Liquidating Trustee.  I understand that the Committee selected the Liquidating Trustee, and I understand that such appointment is acceptable to the Debtor and other key stakeholders.

### iii.  The Discretionary Provisions of a Plan (§ 1123(b)).

41.      I have been advised that section 1123(b) of the Bankruptcy Code sets forth permissive provisions that may be incorporated into a chapter 11 plan.  As detailed below, I believe the Combined Disclosure Statement and Plan is consistent with section 1123(b) of the Bankruptcy Code.

*a.*      *Section 1123(b)(1).*

42.      As I understand is permitted by section 1123(b)(1) of the Bankruptcy Code, section 2.1, 9.1 and 10 of the Combined Disclosure Statement and Plan provide that each Class is either Impaired or Unimpaired, as the case may be.

*b.*      *Section 1123(b)(2).*

43.      As I understand section 1123(b)(2) of the Bankruptcy Code, a chapter 11 plan must provide for the assumption, rejection, or assignment of any executory contract or unexpired lease

54695310.12

of the debtor. Section 13.1 of the Combined Disclosure Statement and Plan provides that each Executory Contract and Unexpired Lease shall be deemed automatically rejected pursuant to sections 365 and 1123 of the Bankruptcy Code, unless such Executory Contract or Unexpired Lease: (a) was previously assumed or rejected by order of the Bankruptcy Court, (b) is specifically described in the Combined Disclosure Statement and Plan as to be assumed in connection with Confirmation thereof, is specifically scheduled to be assumed or assumed and assigned pursuant to the Combined Disclosure Statement and Plan or the Plan Supplement, or otherwise is specifically described in the Combined Disclosure Statement and Plan to not be rejected, or (c) is the subject of a pending motion to assume or reject, pursuant to section 365 of the Bankruptcy Code. I understand that section 365(a) of the Bankruptcy Code provides that a trustee, "subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor" and that the "business judgment" standard applies to the determination of whether the assumption or rejection of an executory contract or unexpired lease should be approved. I believe that any remaining agreements of the Debtor that will be rejected under the Combined Disclosure Statement and Plan no longer benefit or provide any value to the Debtor or its estate. Absent rejection, I believe that such Executory Contracts and Unexpired Leases would cause the Post-Effective Date Debtor to incur unnecessary expenses. The rejection of these contracts will relieve the Post-Effective Date Debtor of unnecessary obligations and, thus, represents a sound exercise of business judgment and is in the best interests of the Debtor's creditors, its Estate, and other parties in interest.

### c.  Section 1123(b)(3).

44.    As I understand section 1123(b)(3) of the Bankruptcy Code, a chapter 11 plan may provide for the settlement or adjustment of any claim or interest belonging to the debtor. The Combined Disclosure Statement and Plan was negotiated in good faith at arm's-length and

15

54695310.12

incorporates the resolution for all Claims against and Interests in the Debtor.  In addition, the Combined Disclosure Statement and Plan provides for the releases of certain potential Claims and Causes of Action held by the Debtor in the Debtor/Estate Release Provision contained in section 16.2 of the Combined Disclosure Statement and Plan.

### d.    Section 1123(b)(4).

45.    As I understand section 1123(b)(4) of the Bankruptcy Code, a chapter 11 plan may provide for the sale of all or substantially all assets of a debtor.  The Combined Disclosure Statement and Plan provides for the liquidation of certain assets of the Debtor by the Collateral Liquidation Manager or the Liquidating Trustee, as applicable, and the distribution of the proceeds received therefrom in accordance with the terms and conditions of the Combined Disclosure Statement and Plan and other agreements in this Chapter 11 Case.

### e.    Section 1123(b)(5).

46.    As I understand section 1123(b)(5) of the Bankruptcy Code, a chapter 11 plan may modify or leave unaffected the rights of holders of secured or unsecured claims.  Here, the Combined Disclosure Statement and Plan modifies the rights of Holders of Claims or Interests in the Impaired Classes as provided in the Combined Disclosure Statement and Plan and leaves unaffected the rights of Holders of Claims in the Unimpaired Classes.

### f.    Section 1123(b)(6).

47.    It is my understanding that section 1123(b)(6) of the Bankruptcy Code provides that a chapter 11 plan may include any other appropriate provision not inconsistent with the applicable provisions of the Bankruptcy Code.  I am unaware of any provision in the Combined Disclosure Statement and Plan that is inconsistent with a provision of the Bankruptcy Code. Moreover, as discussed in greater detail below, section 16 of the Combined Disclosure Statement and Plan provides for certain releases, exculpations and injunctions.  These provisions are integral

54695310.12

components of the Combined Disclosure Statement and Plan and were negotiated at arm's-length between the Plan Proponent, the Debtor, and other key stakeholders. I believe such provisions are fair and equitable, given for valuable consideration, and in the best interests of the Debtor and its estate. I believe that the Exculpated Parties have participated in the Debtor's Chapter 11 Case in good faith and that the Exculpation Provision is necessary to protect the Exculpated Parties from collateral attacks related to any good faith acts or omissions related to the Debtor's Chapter 11 Case. Moreover, I understand that no party has objected to such provisions.

### iv. Satisfaction of Cure Amounts (§ 1123(d)).

48. I understand that section 1123(d) of the Bankruptcy Code requires that cure amounts be determined in accordance with the underlying agreement and non-bankruptcy law. The Combined Disclosure Statement and Plan provides for the satisfaction of cure costs under each executory contract and unexpired lease to be assumed, if any, on the Effective Date (or as soon as reasonably practicable thereafter), or on other terms as the parties to such Executory Contracts or Unexpired Leases may agree.

### B. The Proponent of the Plan Complies with the Applicable Provisions of the Bankruptcy Code (§ 1129(a)(2)).

49. It is my understanding that the Plan Proponent has satisfied section 1129(a)(2) of the Bankruptcy Code, which requires the plan proponent to comply with the applicable provisions of the Bankruptcy Code.

50. As set forth above, I have been advised that the Plan Proponent has complied with this provision, which requires compliance with sections 1125 and 1126 of the Bankruptcy Code, as well as Bankruptcy Rules 3017 and 3018, by distributing the Combined Disclosure Statement and Plan and soliciting acceptances thereof through the Voting and Noticing Agent in accordance with the Solicitation Procedures Order.

54695310.12

51.     Moreover, based on my review of the Combined Disclosure Statement and Plan, the docket in this Chapter 11 Case, my discussions with the Debtor's and the Committee's advisors, as well as my review of the Voting Report filed contemporaneously herewith, it is my understanding that the Plan Proponent has complied with the Solicitation Procedures set forth in the Solicitation Procedures Order, the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules in connection with soliciting the Combined Disclosure Statement and Plan.  Accordingly, I believe that the Plan Proponent satisfied the requirements of section 1129(a)(2) of the Bankruptcy Code.

**C.     The Combined Disclosure Statement and Plan was Proposed in Good Faith (§1129(a)(3)).**

52.     I understand section 1129(a)(3) of the Bankruptcy Code to require a plan to be proposed in good faith and not by any means forbidden by law.  I believe that the Plan Proponent has done exactly that.  The Committee's good faith and honest purpose in proposing and pursuing the Combined Disclosure Statement and Plan has always been to bring this Chapter 11 Case to a value-maximizing conclusion, provide meaningful recoveries to creditors, and make distributions as quickly as possible under the circumstances.  Good faith is further evidenced by the acceptance of the Combined Disclosure Statement and Plan by the overwhelming majority of voting creditors, including 94.5% of the voting creditors (with claims totaling $87,744,784) in Class 7 (General Unsecured Claims).

53.     I believe that the Combined Disclosure Statement and Plan is fundamentally fair to all stakeholders and has been proposed with the legitimate purpose of preserving maximum value for distribution to the Debtor's creditors as expeditiously as possible.  Moreover, the Combined Disclosure Statement and Plan is the product of arm's-length negotiations among the Committee,

18

54695310.12

the Debtor, Wells Fargo, the EPA, PBGC, Forgen, ATI Titanium, FFSL, and other parties in interest.

### D. The Combined Disclosure Statement and Plan Provides that the Payment of Professional Fees are Subject to Bankruptcy Court Approval (§ 1129(a)(4)).

54.    I understand section 1129(a)(4) of the Bankruptcy Code to require any payment made pursuant to a plan for professional services or for costs and expenses in connection with a chapter 11 case to have been approved by the court as reasonable.  Based on my review of the Combined Disclosure Statement and Plan and my discussions with the Debtor's and the Committee's advisors, it is my understanding that all payments made or to be made on behalf of the Debtor for services or for costs or expenses in connection with this Chapter 11 Case, including all Professional Fee Claims, have been approved by, or remain subject to approval of, the Bankruptcy Court as reasonable.  Therefore, I believe that the Combined Disclosure Statement and Plan complies with section 1129(a)(4) of the Bankruptcy Code.

### E. The Combined Disclosure Statement and Plan Discloses the Identities of the Directors or the Debtor's Successors (§ 1129(a)(5)).

55.    It is my understanding that pursuant to section 1129(a)(5) of the Bankruptcy Code, a plan proponent must disclose the identity of any individual proposed to serve, after confirmation of the plan, as a director or successor of the debtor under the plan.  A forthcoming Plan Supplement will identify the Wind-Down Officer, who will serve as the managing member of the Post-Effective Date Debtor.  The Wind-Down Officer was acceptable to the Debtor and the Holder of the Senior Secured Claims.  Further, the Plan Supplement also identified the Liquidating Trustee who will serve as the Estate's representative with respect to the Liquidating Trust Assets, and who shall be permitted to take any action necessary to wind down and dissolve the Debtor.  The Liquidating Trustee was acceptable to the Debtor and the Holder of the Senior Secured Claims.  In

54695310.12

turn, section 14.2 of the Combined Disclosure Statement and Plan provides that on the Effective Date, the Debtor's managers and officers shall be discharged from their duties and deemed to have resigned in their capacities as such.

56.    It is my understanding that section 1129(a)(5)(B) of the Bankruptcy Code further requires a plan proponent to disclose the "identity of any insider that will be employed or retained by the reorganized debtor, and the nature of any compensation for such insider."[6] The Plan Supplement discloses that the Collateral Liquidation Manager intends to continue to utilize the services of former officers Paula Chu and Ron Thayer as non-officer employees in connection with its liquidation efforts.

57.    Therefore, it is my understanding, in consultation with the Debtor's and the Committee's advisors, that the Combined Disclosure Statement and Plan satisfies the requirements of section 1129(a)(5) of the Bankruptcy Code.

F.    **The Combined Disclosure Statement and Plan Does Not Require Government Regulatory Approval of Rate Change (§ 1129(a)(6)).**

58.    I understand section 1129(a)(6) of the Bankruptcy Code to only be applicable if any rate changes are provided for in a chapter 11 plan.  I am advised that the Combined Disclosure Statement and Plan does not provide for any rate changes by the Debtor, and therefore, section 1129(a)(6) of the Bankruptcy Code is inapplicable.

G.    **The Combined Disclosure Statement and Plan is in the Best Interest of Creditors (§1129(a)(7)).**

59.    I understand that pursuant to section 1129(a)(7) of the Bankruptcy Code, with respect to each Impaired Class of Claims and Interests, each Holder of such Claim or Interest must either (a) accept the Combined Disclosure Statement and Plan or (b) receive or retain under the

---

[6] 11 U.S.C. § 1129(a)(5)(B).

20

54695310.12

Combined Disclosure Statement and Plan on account of such Claim or Interest property of a value, as of the Effective Date, that is not less than the amount that such Holder would receive or retain if the Debtor were liquidated under chapter 7 of the Bankruptcy Code. I understand that there are six Impaired Classes under the Combined Disclosure Statement and Plan of which five were entitled to vote and Class 8 was not entitled to vote and instead was deemed to reject the Combined Disclosure Statement and Plan.

60.    Relying on information from the Debtor's advisors and my own personal knowledge and experience, Province assisted the Committee with its preparation of the Liquidation Analysis to determine the respective value of distributions (if any) that holders of Claims or Interests may receive on account of such Claims or Interests if the Debtor was to be liquidated under chapter 7 of the Bankruptcy Code. I personally oversaw the preparation of the Liquidation Analysis and worked closely with a team of Province professionals in its development. I am familiar with the methods used and the conclusions reached in the preparation of the Liquidation Analysis. The estimates regarding the Debtor's assets and liabilities that are incorporated into the Liquidation Analysis are based upon budget and reports provided by the Debtor, my familiarity with the financial performance during the liquidation period and prior experience in chapter 11 proceedings.

61.    It is my belief that the Liquidation Analysis represents the best estimate of the cash proceeds, net of liquidation-related costs, that would be available for distribution to the holders of Claims or Interests if the Debtor was to be liquidated under chapter 7 of the Bankruptcy Code. However, in creating the Liquidation Analysis, my team and I did not take into account, among other things, the possibility of (a) additional access to the Rowley Property for a period beyond the term of the Amended Access Agreement dated June 1, 2026 (the "Access Agreement"), (b)

21

54695310.12

recoveries on account of the Ace Claims, or (c) recoveries on account of claims and causes of action against the Debtor's insiders, each of which could provide significantly more proceeds to go into the Debtor's Estate.  These possibilities are wholly outside of the Debtor's immediate control, and accordingly, the Liquidation Analysis did not account for such additional recoveries.

62.     I believe, based on the assumptions and additional information set forth in the Liquidation Analysis, that a chapter 7 liquidation of the Debtor would result in substantial diminution in the value to be realized by holders Claims or Interests in this Chapter 11 Case and that all Impaired Classes will do as well or significantly better under the Combined Disclosure Statement and Plan than they would under a Chapter 7 liquidation. I base this assumption, in part, on the reduction in expected recoveries from the Rowley property due to a liquidation prioritizing expediency (as is the case in chapter 7), increase in expenses owed to the chapter 7 trustee, and the cessation of DIP financing due to its terms.

### i.   Renco's Objection to Best Interest of Creditor Test

63.     Moreover, my understanding is that Renco claims in its objection to confirmation that a chapter 7 liquidation would provide more value to unsecured creditors than the Combined Disclosure Statement and Plan, which was structured in collaboration with the Debtor and Wells Fargo to provide for the ongoing and uninterrupted liquidation of the Estate Assets located on the Rowley Property.  Specifically, Renco states:  (i) "a chapter 7 trustee's fees would almost certainly be lower" than the Liquidating Trust's professional fees, leaving a greater share of liquidation proceeds for distribution to unsecured creditors; and (ii) there is "no reason to conclude that a chapter 7 trustee would obtain such significantly lower recoveries than the [P]ost-[E]ffective

22

[D]ate Debtor would achieve"—appearing to argue the recoveries would be the *same* (but not higher) in chapter 7.[7]

### a.    *Costs of Chapter 7 Will be Higher*

64.    However, based on my experience, a chapter 7 trustee would retain professional services firms (law firm, financial advisor, tax advisor) to assist in the monetization of any remaining assets.    The estimated cost associated with a chapter 7 trustee retaining such professionals is $2.0 million - $3.0 million.  Section 326 of the Bankruptcy Code provides that a chapter 7 trustee will receive 3% of "***all monies disbursed*** or turned over in the case by the trustee to parties in interest, . . . including holders of secured claims."[8]  That includes a 3% charge on (i) the unencumbered cash proceeds from the sale to FFSL currently held by the Estate, which are in excess of approximately $17 million and (ii) any liquidation proceeds of the Prepetition Collateral located on the Rowley Property, which I believe could total tens of millions of dollars.

65.    In contrast, the Liquidating Trustee's compensation includes a lower percentage of the liquidation proceeds[9] and, most importantly, would *not* include any portion of those two most significant asset categories, the FFSL sale proceeds and liquidation proceeds from the Rowley Property Assets due to the Prepetition Secured Lenders. Though the Liquidating Trustee also receives a flat rate monthly payment in compensation for its services, the total expected amount is still significantly less than anticipated costs to a chapter 7 trustee.

---

[7] Renco Objection ¶¶ 27, 24.

[8] 11 U.S.C. § 326(a) (providing for a 3% fee for total amounts exceeding $1 million, which would be applicable here).

[9] The Liquidating Trustee will only receive 2.0% of the proceeds from the recovery and distribution of Liquidating Trust Assets for the first $10 million recovered and distributed (which would not include Cash in the Estate as of the Effective Date or the proceeds of the liquidation of Prepetition Collateral distributed to the Prepetition Secured Lenders), and then 1.0% thereafter.

54695310.12

66.     Moreover, because I understand that the conversion to chapter 7 would immediately terminate Wells Fargo's funding of DIP Liquidation Advances, creditors would bear the cost of the many expenses that the Committee fought to have Wells Fargo assume to proceed with the liquidation of the Prepetition Collateral, including the costs and expenses of Focus Management (the Collateral Liquidation Manager) and SB360 (which manages the liquidation of the Debtor's machinery and equipment (M&E)); the $200,000 per month License Fee payable to FFSL; the insurance policies required to obtain access; and the salaries of certain Debtor employees who, at the request of Wells Fargo, will remain onboard to facilitate the liquidation.  If the Estate must bear these costs directly in chapter 7, creditors would receive far less value.

### b.     Recoveries in Chapter 7 will be Lower

67.     Renco also implies that there is no difference in recovery prospects under the Combined Disclosure Statement and Plan and a chapter 7 process because "the M&E and Inventory will need to be liquidated as expeditiously as possible given that [FFSL] now owns the underlying real estate."[10] Even if Renco were correct that the recovery prospects in a chapter 7 liquidation were identical herein, it ignores "the attendant costs and delay of conversion" that creditors would have to endure prior to receiving a distribution.

68.     Specifically, I believe that the transition to a chapter 7 trustee would pull resources away from the liquidation and reduce the volume of Assets that can be liquidated during the critical (and limited) window of access to the Rowley Property.  This is based on a few different factors. *First*, the liquidation process would immediately cease to be funded by DIP Liquidation Advances upon conversion. Therefore, I believe Renco's assumption that the chapter 7 trustee would engage

---

[10] Renco Objection ¶ 24.

all of the same professionals as are currently engaged is flawed.[11] There is no guarantee a chapter 7 trustee would have the funding to do so, would be inclined to do so, or that those professionals would choose to remain involved in a chapter 7 process. For example—SB360—which manages the liquidation of the M&E on which Renco has focused, has no obligation under its retention order or Agreement governing its employment to remain engaged for a chapter 7 trustee.  Nor are the Debtor's employees obligated to remain onboard in chapter 7. I believe that the Estate would lose significant time—which equates to significant liquidation value—if a chapter 7 trustee must ramp up new professionals and forgo the expertise and institutional knowledge of the Debtor's employees, SB360, Focus Management, or others.  I believe that the Combined Disclosure Statement and Plan creates no such issues—instead, it ensures an uninterrupted liquidation process that maximizes Estate value in this critical access window for the Rowley Property.

69.     *Second*, I believe that the chapter 11 liquidation process is also more likely to provide a longer runway to liquidate the Prepetition Collateral located on the Rowley Property, and that longer runway could create substantially greater liquidation value. Any potential incremental value that may be realized from an extended liquidation period is ***not*** reflected in the Liquidation Analysis since discussions amongst stakeholders regarding the liquidation process and related access issues remain ongoing. Thus, the outcome cannot reasonably be projected or estimated at this time. However, from discussions with the Debtor and its advisors and the Debtor's own court filings, I understand that tens of millions of dollars could be realized by extending the liquidation timeline for certain assets on the Rowley Property.  I also believe that the Combined Disclosure Statement and Plan will allow the current stakeholders to build on the rapport and

---

[11] Moreover, the Committee, the EPA, the Wind-Down Officer, and the Liquidating Trustee have negotiated specific protections and conditions with respect to access to the Rowley Property, including certain limitations on liability, of which the chapter 7 trustee will not have the benefit. *See* Combined Disclosure Statement and Plan, § 16.4.

25

negotiations developed during the Chapter 11 Case to create more opportunities to unlock value throughout the collateral liquidation process.  Further, in my experience, a chapter 11 liquidation is generally better able to provide the "flexibility and control" needed to facilitate such outcomes.

70.     Based on my involvement in the preparation of the Liquidation Analysis and my experience as a restructuring advisor, I believe that the methodology used to prepare the Liquidation Analysis is appropriate and the assumptions and conclusions set forth therein are fair and reasonable under the circumstances. Furthermore, I believe that upon the Effective Date, the Combined Disclosure Statement and Plan will provide all holders of Claims or Interests with a recovery (if any) that is not less than what such holders would receive pursuant to a liquidation of the Debtor under chapter 7 of the Bankruptcy Code.

71.      Accordingly, I believe that the Combined Disclosure Statement and Plan satisfies the requirements of section 1129(a)(7) of the Bankruptcy Code.

**H.     The Combined Disclosure Statement and Plan is Confirmable Notwithstanding a Rejecting Class (§ 1129(a)(8)).**

72.     I understand that section 1129(a)(8) of the Bankruptcy Code requires each class has either voted to accept a chapter 11 plan or is not impaired by a plan.  Based on discussions with the Debtor's and the Committee's advisors, however, it is my understanding that the Combined Disclosure Statement and Plan is confirmable notwithstanding the rejection by Classes 3, 4, 5, 6, and 8 because it satisfies sections 1129(a)(10) and is able to "cram down" the rejecting Classes in accordance with section 1129(b) of the Bankruptcy Code.

**I.     The Combined Disclosure Statement and Plan Provides for Payment of Statutorily Mandated Claims (§ 1129(a)(9)).**

73.     I understand section 1129(a)(9) of the Bankruptcy Code to require that in order to confirm a chapter 11 plan all administrative and priority claims must be paid in full, unless the holder of such claims consents to different treatment.  I understand that the Combined Disclosure

26

Statement and Plan provides for, among other things, payment in full of all Allowed Administrative Claims, Professional Fee Claims, Priority Tax Claims, Priority Non-Tax Claims, Other Secured Claims, and U.S. Trustee Fees.  Thus, I believe that the Combined Disclosure Statement and Plan satisfies section 1129(a)(9) of the Bankruptcy Code.

**J.    At least One Class of Impaired Claims Has Accepted the Combined Disclosure Statement and Plan, Excluding the Acceptances of Insiders (§1129(a)(10)).**

74.    As set forth in the Voting Report, filed contemporaneously herewith, Class 7 (General Unsecured Claims) is Impaired and has voted to accept the Combined Disclosure Statement and Plan, without counting the acceptances of Insiders.  Thus, I believe that the Combined Disclosure Statement and Plan satisfies section 1129(a)(10) of the Bankruptcy Code.

**K.    The Combined Disclosure Statement and Plan is "Feasible" (§ 1129(a)(11)).**

75.    I understand section 1129(a)(11) of the Bankruptcy Code to require a chapter 11 plan to be "feasible," and not followed by a subsequent liquidation or further reorganization. For liquidation plans, I understand that to mean that the trustee must be able to meet its obligations under the chapter 11 plan of liquidation.

76.    The Combined Disclosure Statement and Plan is a plan of liquidation.  The Combined Disclosure Statement and Plan provides for the orderly wind-down and liquidation of the assets of the Debtor.  I understand that the assets of the Debtor will vest in the Post-Effective Date Debtor or the Liquidating Trust, as applicable, pursuant to the Combined Disclosure Statement and Plan and be liquidated, and the proceeds distributed therefrom, in accordance with the terms of the Combined Disclosure Statement and Plan.  In connection with proposing the Combined Disclosure Statement and Plan and presenting the Combined Disclosure Statement and Plan to the Bankruptcy Court for confirmation, the Plan Proponent thoroughly analyzed the

54695310.12

Debtor's ability to meet its obligations under the Combined Disclosure Statement and Plan including having sufficient funds available to meet the Debtor's obligations with respect to Allowed Administrative and Priority Claims.

77.     The Combined Disclosure Statement and Plan does not rely on future business operations or projections.  Rather, it provides for the Post-Effective Date Debtor and Liquidating Trust to liquidate the Debtor's assets in an orderly, yet expeditious manner, and for the Liquidating Trust to implement the Combined Disclosure Statement and Plan, including a process to resolve Claims pursuant to section 12 thereof, and the distribution of available assets pursuant to sections 2.1 and 10 of the Combined Disclosure Statement and Plan.  Additionally, the Post-Effective Date Debtor or the Liquidating Trust, as applicable, will have the financial wherewithal to pay Claims that accrue, become payable, or are allowed by Final Order following the Effective Date.

78.     Based on these provisions and the analyses performed by the Plan Proponent and its advisors, it is my business judgment that the Combined Disclosure Statement and Plan satisfies the "feasibility" requirement set forth in section 1129(a)(11) of the Bankruptcy Code.

79.     Accordingly, I believe that the Combined Disclosure Statement and Plan is feasible and therefore complies with section 1129(a)(11) of the Bankruptcy Code.

### L.     All U.S. Trustee Fees are Provided For (§1129(a)(12)).

80.     It is my understanding that section 1129(a)(12) of the Bankruptcy Code requires that a chapter 11 plan provide for the payment of all U.S. Trustee Fees.  Based on my review of the Combined Disclosure Statement and Plan, and my discussions with the Debtor's and the Committee's advisors, section 19.1 of the Combined Disclosure Statement and Plan provides for the payment, on or before the Effective Date, of any fees due pursuant to section 1930 of title 28 of the United States Code or other statutory requirement, and there is sufficient cash to pay these fees on the Effective Date.

54695310.12

### M.    The Debtor Does Not Have Retiree Benefits (§1129(a)(13)).

81.    It is my understanding that pursuant to section 1129(a)(13) of the Bankruptcy Code, a chapter 11 plan must provide for the continuation of payment of all retiree benefits for the duration of the period that the debtor has obligated itself to provide such benefits. I understand that the Debtor does not have any retiree benefits (as that term is defined in section 1114 of the Bankruptcy Code). Therefore, I believe that section 1129(a)(13) of the Bankruptcy Code is inapplicable.

### N.    Sections 1129(a)(14)–(16) of the Bankruptcy Code Are Inapplicable.

82.    Based on my discussions with the Debtor's and the Committee's advisors, sections 1129(a)(14)–(16) of the Bankruptcy Code are inapplicable because the Debtor is not (a) required to pay any domestic support obligations, (b) an individual, or (c) a nonprofit corporation or trust.

### O.    The Combined Disclosure Statement and Plan Satisfies the "Cramdown" Requirements (§ 1129(b)).

83.    I understand that if all impaired classes have not accepted a chapter 11 plan (thereby failing to satisfy section 1129(a)(8) of the Bankruptcy Code) such a plan may still be confirmed if that plan satisfies the requirements set forth in section 1129(b) of the Bankruptcy Code. I further understand that, pursuant to section 1129(b) of the Bankruptcy Code, if there are impaired nonconsenting classes, confirmation of a plan requires the plan proponent to show that the plan does not "discriminate unfairly" and is "fair and equitable" with respect to the impaired non-accepting class(es).

84.    Based on my discussions with the Debtor's and the Committee's advisors, it is my understanding and belief that the Combined Disclosure Statement and Plan does not discriminate unfairly, and I believe the Combined Disclosure Statement and Plan is fair and equitable with

29

respect to each Class of Claims or Interests that is Impaired under, and has not accepted or is deemed to reject, the Combined Disclosure Statement and Plan.

### i. The Combined Disclosure Statement and Plan Does Not Discriminate Unfairly

85.    I understand a plan's classification scheme discriminates unfairly in violation of section 1129(b) of the Bankruptcy Code if it provides materially different treatment for similarly situated creditors or interest holders without compelling justifications for doing so.

86.    Under the Combined Disclosure Statement and Plan, Secured Claims in Class 3 and Class 4 are treated disparately based on the legal rights of the Holders of such Claims, including their rights under applicable credit agreements, Intercreditor Agreements, and security interests against the Debtor.  Class 3 is structurally senior to Class 4 pursuant to the applicable Intercreditor Agreements.  Accordingly, I believe there are no similarly situated classes with respect to Secured Claims.  Deficiency Claims in Class 5 and Insider Unsecured Claims in Class 6 will receive a *pro rata* monetary distribution with General Unsecured Claims in Class 7.  Accordingly, I believe that no unfair discrimination can exist when Holders of Secured Claims (in Class 3 and Class 4) are receiving a distribution in accordance with their applicable legal rights under the applicable debt documents and Intercreditor Agreements, and all Holders of Unsecured Claims (in Class 5, Class 6, and Class 7) are receiving an equivalent monetary treatment,[12] under the Combined Disclosure Statement and Plan.  Moreover, there is no similarly situated class of equity holders to the Holders of Interests in Class 8.

87.    Thus, I believe the Combined Disclosure Statement and Plan does not discriminate unfairly in contravention of section 1129(b)(1) of the Bankruptcy Code and the Combined

---

[12] Subject to the Committee's or the Liquidating Trustee's right to seek equitable subordination, recharacterization, setoff, or other claims or causes of action against the Holders of Insider Unsecured Claims.

54695310.12

Disclosure Statement and Plan may be confirmed notwithstanding the rejection by Classes 3, 4, 5, and 6, and the deemed rejection by Class 8.

### ii. The Combined Disclosure Statement and Plan is Fair and Equitable

88.    It is my understanding that a plan is "fair and equitable" with respect to an impaired class of claims or interests that rejects (or is deemed to reject) the plan, if, (i) with respect to unsecured rejecting classes, it follows the "absolute priority rule", (ii) with respect to secured rejecting classes, if it provides one of three enumerated treatments contained in section 1129(b)(2)(A) of the Bankruptcy Code, or (iii) with respect to a class of interests, no holder of any interest junior to such class will receive or retain any property on account of the plan.  I understand, from discussions with counsel, that the "absolute priority rule" requires that an impaired rejecting class of unsecured claims either be paid in full or that no class junior to the impaired rejecting unsecured class receive or retain any property under a plan on account of its junior claim or interest. I understand, from discussions with counsel, that with respect to an impaired and rejecting secured class, the plan can provide for, among other treatments, the "indubitable equivalent" of such claims.

89.    The Combined Disclosure Statement is "fair and equitable" with respect to Class 3 and Class 4 because Claims in Class 3 and Class 4 will receive a full recovery of the net proceeds of the sale of the Prepetition Collateral up to the value and priority of the Prepetition Collateral supporting their Subordinated Secured Claims and in accordance with the applicable Intercreditor Agreements.  I understand that to the extent that either the Senior Secured Claims or the Subordinated Secured Claims are not paid in full, it is only because there is insufficient Prepetition Collateral supporting such Claims, and any such Claims will be treated as Deficiency Claims in

31

accordance with the Combined Disclosure Statement and Plan.[13]  Accordingly, I believe that the Combined Disclosure Statement and Plan is "fair and equitable" with respect to Class 3 and Class 4.

90.    The Combined Disclosure Statement and Plan is also "fair and equitable" with respect to Class 5, Class 6, and Class 8 because no Claims or Interests junior to such Classes will receive or retain property under the Combined Disclosure Statement and Plan on account of such junior Claims or Interests.

91.    Accordingly, I believe that the Combined Disclosure Statement and Plan is "fair and equitable" under section 1129(b)(2) with respect to Class 3, Class 4, Class 5, Class 6, and Class 8.

**P.    Only One Plan is Eligible for Confirmation (§ 1129(c)).**

92.    I understand that pursuant to section 1129(c) of the Bankruptcy Code, only one plan may be confirmed by a bankruptcy court. The Combined Disclosure Statement and Plan is the only chapter 11 plan that has been filed, and, therefore, it complies with the requirements of section 1129(c) of the Bankruptcy Code.

**Q.    The Principal Purpose of the Combined Disclosure Statement and Plan Is Not Avoidance of Taxes or the Application of Section 5 of the Securities Act of 1933 (§1129(d)).**

93.    I understand that a chapter 11 plan cannot be filed for the principal purpose of avoiding taxes or the application of section 5 of the Securities Act of 1933. I believe that the Combined Disclosure Statement and Plan has not been filed for the purpose of avoiding taxes or the application of section 5 of the Securities Act of 1933.

---

[13] I understand that the Committee Challenge is also seeking to recharacterize as equity and/or disallow all Subordinated Secured Claims, and accordingly, I believe it is likely that no Subordinated Secured Claims exist.

54695310.12

## V.    GOOD CAUSE EXISTS TO WAIVE THE STAY OF THE CONFIRMATION ORDER

94.    I am advised that, generally, Bankruptcy Rule 3020(e) imposes a 14-day stay of the effectiveness of an order confirming a chapter 11 plan, unless the bankruptcy court orders otherwise.

95.    I am further advised that, generally Bankruptcy Rule 6006(d) also imposes a 14-day stay of the effectiveness of an order assigning an executory contract or unexpired lease, unless the bankruptcy court orders otherwise.

96.    I believe that a waiver of the stay, which would permit the consummation and implementation of the Combined Disclosure Statement and Plan without delay after the entry of the Confirmation Order, is in the best interest of the Debtor's estate and creditors.  Additionally, each day the Debtor remains in chapter 11 they incur significant administrative and professional costs, which will be significantly reduced if the Debtor emerges from chapter 11 expeditiously. Accordingly, I believe that a waiver of the stay is in the best interest of the Debtor's estate and creditors because such a waiver will permit expeditious implementation of the Combined Disclosure Statement and Plan.

## VI.    CONCLUSION

97.    In conclusion, as financial advisor to the Committee, and having been involved in virtually every aspect of this Chapter 11 Case, and based on my understanding of the Combined Disclosure Statement and Plan and the requirements for confirmation under the Bankruptcy Code, I believe that final approval and confirmation of the Combined Disclosure Statement and Plan is appropriate, is in the best interests of all parties-in-interest, and should be approved by the Bankruptcy Court.

54695310.12

34

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information, and belief.


Executed on June 11, 2026                    */s/ Adam M. Rosen*
                                                              Adam M. Rosen
                                                              Province, LLC
                                                              Financial Advisor to the
                                                              Official Committee of Unsecured Creditors of
                                                              US Magnesium LLC

54695310.12