**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| US MAGNESIUM LLC, | ) | Case No. 25-11696 (BLS) |
| | ) | |
| Debtor. | ) | **Re: D.I. 860** |
| | ) | |
| | ) | |

**THE OFFICIAL COMMITTEE OF
UNSECURED CREDITORS' MEMORANDUM OF LAW IN SUPPORT OF
FINAL APPROVAL AND CONFIRMATION OF THE SECOND AMENDED
COMBINED DISCLOSURE STATEMENT AND PLAN OF LIQUIDATION OF
US MAGNESIUM LLC UNDER CHAPTER 11 OF THE BANKRUPTCY CODE**

**COLE SCHOTZ P.C.**

Justin R. Alberto (No. 5126)
Michael E. Fitzpatrick (No. 6797)
500 Delaware Avenue, Suite 600
Wilmington, DE 19801
Telephone: (302) 652-3131
Facsimile: (302) 652-3117
Email: jalberto@coleschotz.com
        mfitzpatrick@coleschotz.com

**EVERSHEDS SUTHERLAND (US) LLP**

Todd C. Meyers (admitted *pro hac vice*)
Danielle Barav-Johnson (admitted *pro hac vice*)
600 Peachtree Street NE, Suite 5200
Atlanta, GA  30308
Telephone: (404) 853-8000
Email: toddmeyers@eversheds-sutherland.com
        dahnibarav-johnson@eversheds-
        sutherland.com

**-** and **-**

Todd C. Meyers (admitted *pro hac vice*)
John J. Ramirez (admitted *pro hac vice*)
Sameer M. Alifarag (admitted *pro hac vice*)
1114 Avenue of the Americas, 40th Floor
New York, NY 10036
Telephone: (212) 389-5000
Email: toddmeyers@eversheds-sutherland.com
        johnramirez@eversheds-sutherland.com
        sameeralifarag@eversheds-sutherland.com

*Counsel to the Official Committee of Unsecured Creditors*

June 11, 2026

54889697.5

**Table of Contents**

**Page**

PRELIMINARY STATEMENT ...................................................................................................1

BACKGROUND .........................................................................................................................4

    I.     General Background ...............................................................................................4

          A.     The Debtor's Prepetition Capital Structure.................................................4

          B.     The Chapter 11 Case..................................................................................5

    II.    The Combined Plan and Disclosure Statement....................................................7

    III.   Solicitation and Voting Results ............................................................................8

          A.     Solicitation..................................................................................................8

          B.     Objections ...................................................................................................9

               1.     The 3018 Motions and the Committee Objection Thereto .............9

               2.     Confirmation Objections................................................................10

          C.     Voting Results.............................................................................................11

ARGUMENT.............................................................................................................................12

    I.     The Combined Disclosure Statement and Plan Should be Approved on a Final Basis Pursuant to Section 1125 of the Bankruptcy Code. ....................................12

          A.     The Plan Proponent Complied with Applicable Notice Requirements ...............................................................................................12

                1.     The Ballots Used to Solicit Votes Complied with the Solicitation Procedures Order....................................................................................13

                2.     The Solicitation Period Complied with the Solicitation Procedure Order....................................................................................13

                3.     The Solicitation Procedures Complied with the Solicitation Procedures Order....................................................................................14

                4.     The Solicitation of the Combined Disclosure Statement and Plan Complied with the Bankruptcy Code and Was in Good Faith. .........14

          B.     The Combined Disclosure Statement and Plan Contains Adequate Information. ................................................................................................15

    II.    Plan Modifications Are Not Material ....................................................................17

    III.   The Combined Disclosure Statement and Plan Satisfies The Requirements for Confirmation.........................................................................................................19

i

A.      The Combined Disclosure Statement and Plan Complies with the
        Applicable Provisions of the Bankruptcy Code (§ 1129(a)(1)). ................20

        1.      The Combined Disclosure Statement and Plan Satisfies the
        Classification Requirements of Section 1122 of the Bankruptcy
        Code.   20
        2.      The Combined Disclosure Statement and Plan Satisfies the
        Mandatory Plan Requirements of Section 1123(a) of the
        Bankruptcy Code. ....................................................................................24
        3.      The Combined Disclosure Statement and Plan
        Appropriately Contains Certain Discretionary Components
        Permitted by Section 1123(b) of the Bankruptcy Code. ...........................26
        4.      The Combined Disclosure Statement and Plan's Release,
        Injunction and Exculpation Provisions are Appropriate and Should
        be Approved. .............................................................................................28

B.      The Combined Disclosure Statement and Plan Complies with
        Applicable Provisions of the Bankruptcy Code (§ 1129(a)(2)). ................29

        1.      The Plan Proponent Complied with Section 1125 of the
        Bankruptcy Code. ......................................................................................30
        2.      The Plan Proponent Complied with Section 1126 of the
        Bankruptcy Code. ......................................................................................31

C.      The Combined Disclosure Statement and Plan Provides for
        Approval of Payments for Services or Costs and Expenses
        (§ 1129(a)(4)). ............................................................................................34

D.      The Plan Supplement Identifies the Liquidating Trustee and Wind-
        Down Officer (§ 1129(a)(5)). .....................................................................34

        1.      The Post-Effective Date Debtor.....................................................35
        2.      The Liquidating Trust ....................................................................36

E.      The Combined Disclosure Statement and Plan Does Not Require
        Governmental Regulatory Approval of Rate Changes (§
        1129(a)(6)). ................................................................................................36

F.      The Combined Disclosure Statement and Plan is in the Best
        Interests of Creditors and Interest Holders (§ 1129(a)(7)).........................36

G.      Section 1129(a)(8) of the Bankruptcy Code Does Not Preclude
        Confirmation of the Combined Disclosure Statement and Plan. ...............38

H.      The Combined Disclosure Statement and Plan Provides for
        Payment in Full of All Allowed Administrative and Priority
        Claims (§ 1129(a)(9)). ...............................................................................39

54889697.5

I.      At Least One Impaired Class of Claims That Was Entitled to Vote Has Accepted the Combined Disclosure Statement and Plan (§ 1129(a)(10)). ...............................................................................40

J.      The Combined Disclosure Statement and Plan Is Feasible (§ 1129(a)(11))....................................................................41

K.      The Combined Disclosure Statement and Plan Provides for Payment of All Fees Under 28 U.S.C. § 1930 (§ 1129(a)(12)). ................42

L.      Section 1129(a)(13) of the Bankruptcy Code is Inapplicable....................43

M.      Sections 1129(a)(14)–(16) of the Bankruptcy Code Are Not Applicable to the Combined Disclosure Statement and Plan. ..................43

N.      The Combined Disclosure Statement and Plan Meets the Requirements for Cramdown (§ 1129(b)).....................................................43

        1.      The Combined Disclosure Statement and Plan Does Not Discriminate Unfairly With Respect to Impaired Rejecting Classes (§ 1129(b)(1)).....................................................................44

        2.      The Combined Disclosure Statement and Plan Is Fair and Equitable With Respect to the Rejecting Classes (§ 1129(b)(2)). .............46

O.      Only One Plan May Be Confirmed (§ 1129(c))........................................47

P.      The Principal Purpose of the Combined Disclosure Statement and Plan Is Not Tax Avoidance (§ 1129(d))....................................................47

Q.      Waiver of Any Stay of Confirmation is Appropriate.................................47

**CONCLUSION** .............................................................................................................**48**

54889697.5

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re 222 Liberty Assocs.*,
108 B.R. 971 (Bankr. E.D. Pa. 1990) ................................................................20

*In re Abeinsa Holding, Inc.*,
562 B.R. 265 (Bankr. D. Del. 2016) .................................................................45

*In re Adelphia Commc'ns Corp.*,
368 B.R. 140 (Bankr. S.D.N.Y. 2007) ..........................................................36, 37

*In re Aleris Int'l, Inc.*,
2010 WL 3492664 (Bankr. D. Del. May 13, 2010) ..............................................29

*In re Ambanc La Mesa Ltd. P'ship*,
115 F.3d 650 (9th Cir. 1997) ..........................................................................44

*Armstrong World Indus., Inc.*,
348 B.R. 136, 159 (D. Del. 2006) ................................................................20, 44

*In re Armstrong World Indus., Inc.*,
348 B.R. 111 (D. Del. 2006) ...........................................................................19

*Bank of Am. Nat'l Tr. & Sav. Ass'n v. 203 N. LaSalle St. P'ship*,
526 U.S. 434 (1999) ..................................................................................36, 46

*In re Bashas' Inc.*,
437 B.R. 874 (Bankr. D. Ariz. 2010) ................................................................46

*In re Burns & Roe Enters., Inc.*,
No. 08-4191 (GEB), 2009 WL 438694 (D.N.J. Feb. 23, 2009) .............................17

*Century Glove, Inc. v. First Am. Bank of New York*,
860 F.2d 94 (3d Cir. 1988) .............................................................................15

*In re Coastal Broad. Sys., Inc.*,
570 F. App'x 188 (3d Cir. 2014) ......................................................................21

*Cohen v. Tic Fin. Sys. (In re Ampace Corp.)*,
279 B.R. 145 (Bankr. D. Del. 2002) .................................................................15

*In re Coram Healthcare Corp.*,
315 B.R. 321 (Bankr. D. Del. 2004) .................................................................44

*Drexel Burnham Lambert Grp.*,
  138 B.R. 714 (Bankr. S.D.N.Y. 1992) (separate classification and treatment
  was rational where members of each class "possess[ed] different legal
  rights"), *aff'd sub nom. Lambert Brussels Asocs, L.P. v. Drexel Burnham
  Lambert Grp., Inc. (In re Drexel Burnham Lambert Grp., Inc.)*, 140 B.R. 347
  (S.D.N.Y. 1992) ......................................................................................................45

*In re Drexel Burnham Lambert Grp., Inc.*,
  138 B.R. 723 (Bankr. S.D.N.Y. 1992) .................................................................34

*Fin. Sec. Assurance v. T-H New Orleans Ltd. Pshp. (In re T-H New Orleans Ltd.
  Pshp.)*,
  116 F.3d 790 (5th Cir. 1997) ...............................................................................33

*First Am. Bank of N.Y. v. Century Glove, Inc.*,
  81 B.R. 274 (D. Del. 1988) ...........................................................12, 15, 33, 36

*In re Glob. Safety Textiles Holdings LLC*,
  No. 09-12234 (KG), 2009 WL 6825278 (Bankr. D. Del. Nov. 30, 2009)................17

*Grogan v. Garner*,
  498 U.S. 279 (1991)..............................................................................................19

*In re Jersey City Med. Ctr.*,
  817 F.2d 1055 (3d Cir. 1987)..........................................................................20, 45

*In re Jersey City Med. Ctr.*,
  817 F.2d at 1060–61 .............................................................................................21

*John Hancock Mut. Life Ins. Co. v. Route 37 Bus. Park Assocs.*,
  987 F.2d 154 (3d Cir. 1993)............................................................................21, 44

*In re Johns-Manville Corp.*,
  68 B.R. 618 (Bankr. S.D.N.Y. 1986), *aff'd in part, rev'd in part on other
  grounds, In re Johns-Manville Corp.*, 78 B.R. 407 (S.D.N.Y. 1986), *aff'd sub
  nom. Kane v. Johns-Manville Corp.*, 843 F.2d 636 (2d Cir. 1988) .......................44

*In re Johnston*,
  21 F.3d 323 (9th Cir. 1994) .................................................................................23

*Kane v. Johns-Manville Corp.*,
  843 F.2d 636 (2d Cir. 1988)............................................................................41, 44

*Krystal Cadillac-Oldsmobile GMC Truck, Inc. v. Gen. Motors Corp.*,
  337 F.3d 314 (3d Cir. 2003)..................................................................................30

*In re Lapworth*,
  1998 WL 767456 (DWS) (Bankr. E.D. Pa. Nov. 2, 1998) ....................................29

*In re Lernout & Hauspie Speech Prods., N.V.*,
301 B.R. 651 (Bankr. D. Del. 2003), *aff'd*, 308 B.R. 672 (D. Del. 2004) ...............................44

*Minerals Techs., Inc. v. Novinda Corp. (In re Novinda Corp.)*,
585 B.R. 145 (10th Cir. B.A.P. 2018) ....................................................................................20

*NLRB v. Bildisco & Bildisco*,
682 F.2d 72 (3d Cir. 1982), *aff'd*, 465 U.S. 513 (1984) ........................................................26

*In re Nutritional Sourcing Corp.*,
398 B.R. 816 (Bankr. D. Del. 2008) ......................................................................................20

*Oneida Motor Freight, Inc. v. United Jersey Bank*,
848 F.2d 414 (3d Cir. 1988) ..................................................................................................15

*In re Phoenix Petroleum Co.*,
278 B.R. 385 (Bankr. E.D. Pa. 2001) .....................................................................................15

*In re Pizza of Haw., Inc.*,
761 F.2d 1374 (9th Cir. 1985) ...............................................................................................41

*In re PPI Enters. (U.S.), Inc.*,
228 B.R. 339 (Bankr. D. Del. 1998) ......................................................................................32

*In re Printing Dimensions, Inc.*,
153 B.R. 715 (Bankr. D. Md. 1993) ......................................................................................34

*In re River Village Assoc.*,
181 B.R. 795 (E.D. Pa. 1995) ................................................................................................15

*In re Robertshaw US Holding Corp.*,
662 B.R. 300 (Bankr. S.D. Tex. 2024) ..................................................................................23

*In re Rochem, Ltd.*,
58 B.R. 641 (Bankr. D.N.J. 1985) .........................................................................................21

*In re S B Bldg. Assocs. Ltd. P'ship*,
621 B.R. 330 (Bankr. D.N.J. 2020) .......................................................................................44

*Sharon Steel Corp. v. Nat'l Fuel Gas Distrib. Corp.*,
872 F.2d 36 (3d Cir. 1989)......................................................................................................26

*In re Stone & Webster, Inc.*,
286 B.R. 532 (Bankr. D. Del. 2002) ......................................................................................36

*In re Trans World Airlines, Inc.*,
261 B.R. 103 (Bankr. D. Del. 2001) ......................................................................................26

vi

*In re Tribune Co.*,
  464 B.R. 126 (Bankr. D. Del. 2011) ...............................................................................19, 41

*In re W.R. Grace & Co.*,
  475 B.R. 34 (D. Del. 2012) ....................................................................................... *passim*

*Wells Fargo Bank, N.A. v. Loop 76, LLC (In re Loop 76, LLC)*,
  465 B.R. 525 (9th Cir. B.A.P. 2012).......................................................................................23

*In re Zenith Elecs. Corp.*,
  241 B.R. 92 (Bankr. D. Del. 1999) ..................................................................................32, 44

**Statutes**

11 U.S.C. § 101(31) ......................................................................................................................41

11 U.S.C. §§ 101-1532 ...................................................................................................................1

11 U.S.C. § 365 ............................................................................................................................27

11 U.S.C. §§ 365, 1123 ...............................................................................................................26

11 U.S.C. § 503(b) .......................................................................................................................39

11 U.S.C. § 506(a) ........................................................................................................................46

11 U.S.C. § 507(a) .........................................................................................24, 39, 40, 42

11 U.S.C. §§ 701-784 .......................................................................................... *passim*

11 U.S.C. §§ 1101-1195 ....................................................................................... *passim*

11 U.S.C. § 1102(a) ........................................................................................................................5

11 U.S.C. §§ 1107(a), 1108 .........................................................................................................5

11 U.S.C. § 1114.............................................................................................................................43

11 U.S.C. § 1122..............................................................................................................20, 21

11 U.S.C. § 1122, 1123............................................................................................17, 19, 20

11 U.S.C. § 1122(a) .......................................................................................20, 21, 23

11 U.S.C. § 1123(a) ..................................................................................23, 24, 25, 26

11 U.S.C. § 1123(b) .................................................................................26, 27, 28, 29

11 U.S.C. § 1125................................................................................................. *passim*

11 U.S.C. §§ 1125, 1126 ................................................................................................29

11 U.S.C. § 1125(a) ...........................................................................................14, 15, 17

11 U.S.C. § 1125(b) .................................................................................................14, 30

11 U.S.C. § 1125(e) .......................................................................................................14

11 U.S.C. § 1126 ...............................................................................................30, 31, 32

11 U.S.C. § 1126(a) ...........................................................................................12, 21, 31

11 U.S.C. § 1126(a), (f) .................................................................................................31

11 U.S.C. § 1126(c) .................................................................................................31, 38

11 U.S.C. § 1126(f) ........................................................................................................11

11 U.S.C. § 1127 ............................................................................................................18

11 U.S.C. § 1127(a) .......................................................................................................17

11 U.S.C. § 1129 ......................................................................................................12, 19

11 U.S.C. § 1129(14)-(16) .............................................................................................43

11 U.S.C. § 1129(a) ................................................................................................ *passim*

11 U.S.C. § 1129(b) ...........................................................................................43, 44, 46

11 U.S.C. § 1129(c) .......................................................................................................47

11 U.S.C. § 1129(d) .......................................................................................................47

28 U.S.C. § 193 ..............................................................................................................42

28 U.S.C. § 1930 ............................................................................................................42

Securities Act of 1933 section 5 ..............................................................................16, 47

**Other Authorities**

Bankruptcy Rule 3018 ...........................................................................................9, 21, 31

Bankruptcy Rule 3018(a)(4) .............................................................................................9

Bankruptcy Rule 3018(c) ...............................................................................................13

Bankruptcy Rule 3019 ..............................................................................................17, 18

54889697.5

Bankruptcy Rule 3020(e) ..................................................................................................47

Bankruptcy Rule 6004(h) .................................................................................................47

Bankruptcy Rule 6006(d) .................................................................................................48

Bankruptcy Rules 3017 and 3018 ....................................................................................29

Bankruptcy Rules 3020(e), 6004(h) and 6006(d) ............................................................48

Fed. R. Bankr. P. 3020(e) .................................................................................................47

Fed. R. Bankr. P. 6004(h) .................................................................................................47

Fed. R. Bankr. P. 6006(d) .................................................................................................48

H.R. Rep. No. 95-595 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5963 ....................................15, 20

H.R. Rep. No. 595, 95th Cong., 1st Sess. (1977) ............................................................29

Local Rule 3017-1 ............................................................................................................12

S. Rep. No. 95-989 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5787....................................15, 20, 29

54889697.5

The Official Committee of Unsecured Creditors (the "Committee" or the "Plan Proponent") appointed in the above-captioned chapter 11 case (the "Chapter 11 Case") of US Magnesium LLC, the debtor and debtor in possession in the Chapter 11 Case (the "Debtor") submits this (a) memorandum of law (the "Memorandum") in support of (i) final approval and (ii) confirmation of the *Official Committee of Unsecured Creditors' Second Amended Combined Disclosure Statement and Plan of Liquidation of US Magnesium LLC Under Chapter 11 of the Bankruptcy Code* (as may be amended, modified, and/or supplemented, the "Combined Disclosure Statement and Plan"), filed contemporaneously herewith, pursuant to sections 1125, 1126, and 1129 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code").[1] In support of final approval and confirmation of the Combined Disclosure Statement and Plan, the Committee respectfully states as follows.[2]

## PRELIMINARY STATEMENT

1. The Combined Disclosure Statement and Plan reflects the best potential resolution of this Chapter 11 Case. The Combined Disclosure Statement and Plan ensures an efficient, orderly, and value-maximizing wind-down process that provides a recovery to all valid creditors of the Debtor—a remarkable feat that seemed impossible only a few months ago. This remarkable result is primarily due to the tireless work of certain of the Debtor's key stakeholders, which led

---

[1] Capitalized terms used but not defined herein are defined in the Combined Disclosure Statement and Plan.

[2] The facts and circumstances supporting the approval and confirmation of the Combined Disclosure Statement and Plan are set forth in, among other things, the (a) the *Declaration of Adam M. Rosen in Support of Final Approval and Confirmation of the Official Committee of Unsecured Creditors' Second Amended Combined Disclosure Statement and Plan of Liquidation of US Magnesium LLC Under Chapter 11 of the Bankruptcy Code* (the "Rosen Declaration"), (b) the *Declaration of Shaun Martin, Independent Manager of US Magnesium LLC, in Support of Final Approval and Confirmation of the Official Committee of Unsecured Creditors' Second Amended Combined Disclosure Statement and Plan of Liquidation of US Magnesium LLC Under Chapter 11 of the Bankruptcy Code* (the "Martin Declaration"), and (c) the balloting tabulation report (the "Voting Report") prepared by Stretto, Inc. (the "Voting and Noticing Agent"), each filed contemporaneously herewith, and incorporated by reference herein.

54889697.5

to the sale of the Rowley Property to the State of Utah Division of Forestry, Fire and State Lands ("FFSL"), and eventually the hard-fought negotiations and compromises between the Committee, the Debtor, and the Debtor's many stakeholders that are embodied in the Combined Disclosure Statement and Plan.

2.      After months of good faith, arm's-length negotiations between key constituencies in this Chapter 11 Case, the Committee filed the Combined Disclosure Statement and Plan, which has received overwhelming support from Holders of Allowed General Unsecured Claims and virtually every other party with a material interest in the outcome of this Chapter 11 Case that is not an insider or in a significant business relationship with an insider.

3.      As set forth in further detail below, the Combined Disclosure Statement and Plan (a) was negotiated, filed, and solicited in good faith; (b) is the best available option to maximize creditor recoveries; and (c) satisfies the requirements of the Bankruptcy Code, the Bankruptcy Rules, and applicable law.  Accordingly, the Combined Disclosure Statement and Plan should be approved on a final basis and confirmed.

4.      If confirmed, the Combined Disclosure Statement and Plan will provide for a value-maximizing conclusion to this Chapter 11 Case.  Indeed, the Combined Disclosure Statement and Plan will, among other things, provide for the orderly liquidation of encumbered Estate assets located at the Rowley Property by the Post-Effective Date Debtor and the distribution of the net liquidation proceeds to the Prepetition Secured Lenders and the Debtor's Estate in accordance with the Cooperation Agreement, applicable Intercreditor Agreements, and the relative priorities of applicable claims under the Bankruptcy Code. The Combined Disclosure Statement and Plan will also channel the Debtor's other remaining assets to the Liquidating Trust, such that they may be monetized for the benefit of Holders of Allowed Claims and the proceeds thereof

2

54889697.5

distributed consistent with the Combined Disclosure Statement and Plan and the Bankruptcy Code's priority scheme.

5.      Contemporaneously herewith, the Plan Proponent filed The Official Committee of Unsecured Creditors' Omnibus Reply to Objections to the Official Committee of Unsecured Creditors' Second Amended Combined Disclosure Statement and Plan Under Chapter 11 of the Bankruptcy Code (the "Reply").  As detailed in the Reply,[3] the outstanding objections to confirmation of the Combined Disclosure Statement and Plan should be overruled.  Further, the Plan Proponent has negotiated with certain parties in interest to resolve informal comments to the Combined Disclosure Statement and Plan and the proposed Confirmation Order, including through certain immaterial modifications (the "Modifications") to the Combined Disclosure Statement and Plan, or through the addition of language to the proposed Confirmation Order, filed contemporaneously herewith.

6.      Therefore, the Plan Proponent submits that final approval and confirmation of the Combined Disclosure Statement and Plan is appropriate and in the best interests of the Estate, and respectfully requests that the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") enter the proposed Confirmation Order.

---

[3] The Plan Proponent has received formal objections, reservations of rights or informal comments from: The United States, on behalf of the Environmental Protection Agency and the Department of the Interior, the Utah Department of Environmental Quality, Alyssa Leanne Horne, individually and as Personal Representative of the Estate of Robert John Self, Kaitlyn Summers, and Ryan Self (collectively, the "PI Claimants"), FFSL, the PBGC, Cargill Inc., ATI Titanium LLC, and Forgen, LLC, as well as Renco and Wells Fargo.  Other than the PI Claimants, Renco and Wells Fargo, the Plan Proponent has resolved or believes it will resolve such formal objections, reservations of rights, and/or informal comments through either the Modifications or language in the proposed Confirmation Order, as detailed herein.

3

## BACKGROUND

I.   **GENERAL BACKGROUND**

A.   **The Debtor's Prepetition Capital Structure**

7.   The Debtor, as borrower, and Wells Fargo as lender, are party to the Prepetition Credit Agreement.  All obligations arising under the Prepetition Credit Agreement are secured by the Prepetition Collateral, which excludes, *inter alia*, the Debtor's owned real property, the Debtor's Cash, Claims and Causes of Action against Insiders, and Avoidance Actions. As of the Petition Date, the Debtor purportedly had approximately $67 million, including contingent letter of credit obligations of $821,588, in total funded debt obligations under the Prepetition Credit Agreement.

8.   The obligations under the Prepetition Credit Agreement consist of (a) the revolving loan and letter of credit facilities (the "Revolver Claim") in the approximate amount of $42,196,536.00, and (b) the Prepetition Term Loan C Facility (the "Term Loan C Claim" and together with the Revolver Claim, the "Senior Secured Claims") in the approximate amount of $27,175,019.08.  Wells Fargo is the lender under the Prepetition Term Loan C Facility; however, 100% of the participation interests are owned by The Renco Group pursuant to that certain prepetition Amended and Restated Term Loan C Participation Agreement, dated July 22, 2022, entered into between Wells Fargo, as Lender, and Renco, as Term Loan C participant.  Wells Fargo asserts that the Term Loan C Claim is contractually subordinate to the Revolver Claim pursuant to the Prepetition Credit Agreement.[4]  The Committee disputes the Term Loan C Claim, and seeks to recharacterize the Prepetition Term Loan C Facility as equity pursuant to the Committee Challenge.

---

[4]*See* Wells Fargo 3018 Motion ¶ 8.

4

9.       The Debtor, as borrower, and Renco Global, as lender, are parties to that certain Subordinated Loan Agreement dated as of June 26, 2023 (as amended, the "Renco Global Subordinated Loan Agreement").  The obligations arising under the Renco Global Subordinated Loan Agreement were purportedly secured by a junior security interest in the Prepetition Collateral.  The Debtor scheduled the claim arising from the Renco Global Subordinated Loan Agreement in the amount of $45,879,207.56 (the "Renco Global Subordinated Loan Claim").

10.      On August 27, 2025, the Debtor, as borrower, and Renco Group, as lender, entered into that certain Intercreditor and Subordination Agreement (as amended, the "Subordinated Bridge Loan Agreement").  Pursuant to the Subordinated Bridge Loan Agreement, The Renco Group provided bridge funding to the Debtor in the maximum amount of $2.5 million. The obligations arising under the Subordinated Bridge Loan Agreement were purportedly secured by a junior security interest in the Prepetition Collateral. The Debtor scheduled the claim arising from the Subordinated Bridge Loan Agreement in the amount of $1,066,925.89 (the "Bridge Loan Claim", and together with the Renco Global Subordinated Loan Claim, the "Subordinated Secured Claims").  The Committee disputes the purported Subordinated Secured Claims, and seeks to recharacterize the loans made pursuant to the Renco Global Subordinated Loan Agreement and the Subordinated Bridge Loan Agreement as equity pursuant to the Committee Challenge.

B.       **The Chapter 11 Case**

11.      On September 10, 2025 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in the Bankruptcy Court.  The Debtor continues to operate its businesses as a debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No trustee or examiner has been appointed in this Chapter 11 Case.

12.      On September 23, 2025, the United States Trustee for Region 3 appointed a seven-member official committee of unsecured creditors pursuant to section 1102(a)(1) of the

5

54889697.5

Bankruptcy Code, as described in its *Notice of Appointment of Committee of Unsecured Creditors* [Docket No. 70].

13.    The factual background relating to the Debtor's commencement of this chapter 11 case is set forth in the *Declaration of Ron Thayer in Support of First Day Motions* [Docket No. 4], which is incorporated herein by reference.

14.    On December 30, 2025, the Debtor filed the First Exclusivity Motion [Docket No. 426].  On January 21, 2026, the Bankruptcy Court entered the *Order (I) Extending the Exclusive Periods to File and Solicit Acceptances of a Chapter 11 Plan and (II) Granting Related Relief* [Docket No. 500] (the "Exclusivity Order").

15.    Pursuant to the Exclusivity Order, the Debtor's exclusive period to file a chapter 11 plan was extended through and including March 9, 2026, and the Debtor's exclusive period to solicit acceptances of a chapter 11 plan was extended through and including May 8, 2026. Paragraph 5 of the Exclusivity Order provided that with respect to the Committee, the extension of the exclusivity periods for which the Debtor was solely permitted to file and/or solicit a chapter 11 plan was only thirty (30) days, or through February 8, 2026.

16.    On March 4, 2026, the Debtor filed the Second Exclusivity Motion [Docket No. 675], pursuant to which the Debtor sought an extension through May 8, 2026 of the exclusive rights of the Debtor and the Committee to file a chapter 11 plan and an extension through July 7, 2026 of the exclusive rights of the Debtor and the Committee to solicit acceptances of such chapter 11 plan.  On March 17, 2026, the Bankruptcy Court entered the Order approving the Second Exclusivity Motion. [Docket No. 705].

17.    On May 4, 2026, the Debtor filed the Third Exclusivity Motion [Docket No. 846], pursuant to which the Debtor sought an extension through July 7, 2026 of the exclusive rights of

6

the Debtor and the Committee to file a chapter 11 plan and an extension through September 7, 2026 of the exclusive rights of the Debtor and the Committee to solicit acceptances of such chapter 11 plan.   On May 20, 2026, the Bankruptcy Court entered the Order approving the Third Exclusivity Motion [Docket No. 896].

## II.     THE COMBINED DISCLOSURE STATEMENT AND PLAN

18.     On April 6, 2026, the Committee filed the initial version of the Combined Disclosure Statement and Plan [Docket No. 776] and the *Official Committee of Unsecured Creditors' Motion for Entry of an Order (I) Approving the Combined Disclosure Statement and Plan on an Interim Basis for Solicitation Purposes Only; (II) Establishing Solicitation and Tabulation Procedures; (III) Approving the Form of Ballot and Solicitation Packages; (IV) Establishing the Voting Record Date; (V) Scheduling a Combined Hearing for Final Approval of the Adequacy of Disclosures in, and Confirmation of, the Combined Disclosure Statement and Plan; (VI) Approving the Forms of Notice, and (VII) Granting Related Relief* [Docket No. 777] (the "Solicitation Motion").

19.     On May 8, 2026, the Bankruptcy Court entered the Solicitation Procedures Order [Docket No. 874], granting the Solicitation Motion.  On May 11, 2026, the Committee filed the Combined Hearing Notice [Docket No.875].   On May 13, 2026, the Committee commenced solicitation of the Combined Disclosure Statement and Plan.[5]

20.     On May 27, 2026, the Committee filed a plan supplement [Docket No. 908], and contemporaneously herewith, the Committee filed an amended plan supplement (including all exhibits thereto and as may be further amended, modified and/or supplemented from time to time, the "Plan Supplement"), which included, among other things, the Liquidating Trust Agreement,

---

[5]*See Affidavit of Service* [Docket No. 892] (the "Solicitation Affidavit").

54889697.5

Identities of the Liquidating Trustee, the members of the Liquidating Trust Oversight Committee, and the Wind-Down Officer, the Assumed Executory Contracts and Unexpired Leases Schedule, and the Schedule of Retained Causes of Action.

21.    The overall purpose of the Combined Disclosure Statement and Plan is to provide for the orderly liquidation of the Estate's encumbered and unencumbered assets in a manner designed to maximize the Estate's value, provide for the equitable distribution of that value to stakeholders by, among other things, satisfying all Claims necessary to confirm the Combined Disclosure Statement and Plan and the distribution priorities of the Bankruptcy Code, and authorize the orderly wind-down of the Debtor.

## III.    SOLICITATION AND VOTING RESULTS

### A.    Solicitation

22.    On or about May 13, 2026, the Committee began soliciting votes on the Combined Disclosure Statement and Plan by distributing the Combined Disclosure Statement and Plan, the applicable Ballot, and related materials to Holders of Claims in Class 3 (Senior Secured Claims), Class 4 (Subordinated Secured Claims), Class 5 (Deficiency Claims), Class 6 (Insider Unsecured Claims), and Class 7 (General Unsecured Claims) (collectively, the "Voting Classes") that were entitled to vote to accept or reject the Combined Disclosure Statement and Plan, as required by the Solicitation Procedures Order.  Specifically, the Committee directed the following materials to be served on all known Holders of Claims in the Voting Classes: (a) the Combined Hearing Notice; (b) the Combined Disclosure Statement and Plan (to be accessed by QR Code); (c) a copy of the Solicitation Procedures Order and Tabulation Procedures (without the other exhibits); and (d) a customized Ballot (collectively, the "Solicitation Package").

23.    The Committee caused the Notice of Non-Voting Status, attached to the Solicitation Procedures Order as Exhibit 4, and the Combined Hearing Notice (together, the "Non-Voting

8

Notice Package") to be served on Holders of Claims in Class 1 (Priority Non-Tax Claims), Class 2 (Other Secured Claims) and Class 8 (Interests) and on other parties in interest not entitled to vote on the Combined Disclosure Statement and Plan in accordance with the Solicitation Procedures Order.  The Committee also directed service of the Combined Hearing Notice to be served on certain other parties entitled to receive such notice pursuant to the Solicitation Procedures Order.

24.     Pursuant to the Solicitation Procedures Order, the Bankruptcy Court set June 5, 2026, at 4:00 p.m. (ET) as the deadline for Holders of Claims in the Voting Classes to vote to accept or reject the Combined Disclosure Statement and Plan.  The Solicitation Procedures Order also set the deadline to object to the Combined Disclosure Statement and Plan for June 5, 2026, at 4:00 p.m. (ET).

**B.     Objections**

1.     The 3018 Motions and the Committee Objection Thereto

25.     Renco and Wells Fargo each filed a motion under Bankruptcy Rule 3018(a)(4) seeking temporary allowance of their purported Claims and requesting reclassification of their purported Claims into the General Unsecured Claims Class.

26.     On May 21, 2026, Renco filed the *Motion of the Renco Group, Inc. and Renco Global Capital*, LLC for Temporary Allowance of their Claims Solely for Voting Purposes Pursuant to Bankruptcy Rule 3018 [Docket No. 902] (the "Renco 3018 Motion").

27.     On May 28, 2026, Wells Fargo filed the *Motion of Wells Fargo Bank, National Association for Entry of an Order Determining Classification and Allowance of Claims for Voting Purposes Pursuant to Bankruptcy Rule 3018* [Docket No. 912] ("Wells Fargo 3018 Motion" and together with the Renco 3018 Motion, the "3018 Motions").

54889697.5

28.     Finally, on June 6, 2026, the Committee filed an omnibus objection to the 3018 Motions (the "Committee 3018 Objection").  Additional detail regarding the 3018 Motions and the Committee 3018 Objection is included in the Reply.

2.     Confirmation Objections

a.     **The Wells Fargo Confirmation Objection**

29.     On June 5, 2026, Wells Fargo filed the Objection of Wells Fargo Bank, National Association to Confirmation of the Official Committee of Unsecured Creditors' Second Amended Combined Disclosure Statement and Plan of Liquidation of US Magnesium LLC [Docket No. 940] (the "Wells Fargo Objection").  The Wells Fargo Objection opposes confirmation of the Combined Disclosure Statement and Plan primarily because it allegedly misclassifies the Term Loan C Claim as a Senior Secured Claim.

30.     As shown herein and in the Reply, and will be shown at the Combined Hearing, the Wells Fargo Objection is meritless.  Accordingly, the Wells Fargo Objection should be overruled.

b.     **The Renco Confirmation Objection**

31.     Also on June 5, 2026, Renco filed the *Objection of the Renco Group, Inc. and Renco Global Capital, LLC to Confirmation of the Combined Disclosure Statement and Plan* [Docket No. 941] (the "Renco Objection").  The Renco Objection misleadingly argues that the Combined Disclosure Statement and Plan was intentionally designed solely for the purpose of manipulating the voting process, and therefore the Combined Disclosure Statement and Plan was not proposed in good faith.  Renco also argues that the Liquidation Analysis filed by the Committee in support of the Combined Disclosure Statement and Plan was dependent on flawed assumptions regarding projected recoveries when comparing the Combined Disclosure Statement and Plan to a hypothetical chapter 7 liquidation.

54889697.5

32.     As shown herein and in the Reply, and as will be shown at the Combined Hearing, the Combined Disclosure Statement and Plan did not classify unsecured votes for the purpose of manufacturing an impaired accepting class, and the Liquidation Analysis was based on reasonable assumptions that illustrate that all creditors would do as well or better under the Combined Disclosure Statement and Plan as they would under a hypothetical chapter 7 liquidation.

33.     Accordingly, the Renco Objection should be overruled.

### c.     Limited Objections and Reservations of Rights

34.     There were certain other limited objections or Reservations of Rights with respect to confirmation of the Combined Disclosure Statement and Plan, including from ATI Titanium LLC [Docket No. 925], certain personal injury claimants [Docket No. 936], The United States, on behalf of the Environmental Protection Agency and the Department of the Interior [Docket No. 939], and the Utah Department of Environmental Quality [Docket No. 944].

35.     The Committee has resolved or believes it will resolve each of these limited objections or reservations of rights in advance of the Combined Hearing.

### C.     Voting Results

36.     As set forth in the Voting Report, the Plan Proponent received acceptance of the Combined Disclosure Statement and Plan from Class 7 (General Unsecured Claims) with $87,744,784 (52 in number) voting to accept the Combined Disclosure Statement and Plan and $3.00 (3 in number) voting to reject it.  Under the Combined Disclosure Statement and Plan, Class 1 (Other Priority Claims) and Class 2 (Other Secured Claims) are Unimpaired and deemed to have accepted the Combined Disclosure Statement and Plan, and thus were not entitled to vote to accept or reject the Combined Disclosure Statement and Plan.[6]  Class 8 (Interests) is deemed to have

---

[6] *See* 11 U.S.C. § 1126(f).

11

54889697.5

rejected the Combined Disclosure Statement and Plan; therefore, such Holders were not entitled to vote to accept or reject the Combined Disclosure Statement and Plan.[7] Only Holders of Claims in Class 3, Class 4,[8] Class 5, and Class 6 voted to reject the Combined Disclosure Statement and Plan.[9]

## ARGUMENT

37.     This Memorandum is organized as follows:  *First*, the Plan Proponent present its case for approval of the Combined Disclosure Statement and Plan on a final basis pursuant to section 1125 of the Bankruptcy Code.  *Second*, the Plan Proponent presents its case that the Combined Disclosure Statement and Plan satisfies the applicable requirements of section 1129 of the Bankruptcy Code by a preponderance of the evidence and should therefore be confirmed.

**I.     THE COMBINED DISCLOSURE STATEMENT AND PLAN SHOULD BE APPROVED ON A FINAL BASIS PURSUANT TO SECTION 1125 OF THE BANKRUPTCY CODE.**

### A.     The Plan Proponent Complied with Applicable Notice Requirements

38.     The Plan Proponent satisfied the notice requirements set forth in the Solicitation Procedures Order, Bankruptcy Rule 3017, and Local Rule 3017-1.  *First*, on or about May 13, 2026, the Plan Proponent caused the Voting and Noticing Agent to distribute the Solicitation Packages to Holders of Claims in the Voting Classes.[10]  *Second*, on May 13, 2026, the Plan

---

[7] *See id*. § 1126(g).

[8] Pursuant to the Solicitation Procedures Order and section 1126(a) of the Bankruptcy Code, Claims which are Disputed were not permitted to vote on the Combined Disclosure Statement and Plan. Due to the Committee Challenge, Class 4 was empty as of the Voting Record Date.  However, given that all Disputed Claims in Class 4 were provided Ballots and voted to reject the Combined Disclosure Statement and Plan, the Plan Proponent treats such Class as having rejected the Combined Disclosure Statement and Plan herein.  The Committee does not concede that any Claims in Class 4 should be Allowed for voting purposes (or for any other purpose).

[9] *See* Voting Report, Ex. A.  As mentioned herein, the purported Claims in Class 4 are entirely held by Renco, and the substantial majority of purported Claims in Class 6 are also held by Renco.

[10] *See* Solicitation Affidavit.

54889697.5

Proponent caused the Publication Notice to be published in the Wall Street Journal.[11] **Third**, the Combined Hearing Notice included instructions on how to obtain the Combined Disclosure Statement and Plan without a fee through the Voting and Noticing Agent's website.

1. The Ballots Used to Solicit Votes Complied with the Solicitation Procedures Order.

39.    The forms of Ballots used by the Plan Proponent conform to Official Form 314, comply with the Bankruptcy Rules and were conditionally approved by the Bankruptcy Court pursuant to the Solicitation Procedures Order.[12] Moreover, no party has objected to the sufficiency of the Ballots. Based on the foregoing, the Plan Proponent submits that the Ballots complied with the Solicitation Procedures Order and satisfied the requirements of Bankruptcy Rule 3018(c).

2. The Solicitation Period Complied with the Solicitation Procedures Order.

40.    The solicitation period complied with the Solicitation Procedures Order, the Bankruptcy Code, Bankruptcy Rules, and Local Rules.  **First**, the Solicitation Packages, including instructions for accessing electronic or hard-copy versions of the Combined Disclosure Statement and Plan, were transmitted to all Holders of Claims in the Voting Classes.  **Second**, the solicitation period, which lasted from on or about May 12, 2026, through and including June 5, 2026, complied with the Solicitation Procedures Order and was adequate under the particular facts and circumstances of this Chapter 11 Case.[13]   Accordingly, the Plan Proponent submits that the solicitation period complied with the Solicitation Procedures Order.

---

[11]See *Affidavit of Publication of the Combined Disclosure Statement and Plan of Liquidation in The Wall Street Journal* [Docket No. 913].

[12]*See* Solicitation Procedures Order, ¶ 6.

[13]*See id.* ¶¶ 8, 11.

54889697.5

3.    The Solicitation Procedures Complied with the Solicitation Procedures Order.

41.    The Plan Proponent requests that the Bankruptcy Court find that the tabulation of votes complied with the Solicitation Procedures Order. The Voting and Noticing Agent reviewed all Ballots received in accordance with the Tabulation Procedures, attached as Exhibit 1 and approved pursuant to the Solicitation Procedures Order.[14] Accordingly, the Plan Proponent respectfully submits that the Bankruptcy Court should approve the tabulation of votes, confirming that the requisite Claims voted to accept the Combined Disclosure Statement and Plan.

4.    The Solicitation of the Combined Disclosure Statement and Plan Complied with the Bankruptcy Code and Was in Good Faith.

42.    Section 1125(e) of the Bankruptcy Code provides that "[a] person that solicits acceptance or rejection of a plan, in good faith and in compliance with the applicable provisions of this title . . . is not liable, on account of such solicitation for violation of any applicable law, rule, or regulation governing solicitation of acceptance or rejection of a plan."[15] As demonstrated by the Plan Proponent's compliance with the Solicitation Procedures Order, the Plan Proponent at all times acted in good-faith in connection with the solicitation of the Combined Disclosure Statement and Plan in compliance with section 1125 of the Bankruptcy Code.

43.    Therefore, the Plan Proponent respectfully requests that the Bankruptcy Court grant the Plan Proponent the protections provided under section 1125(e) of the Bankruptcy Code.

---

[14]*See id.* ¶ 4; Voting Report ¶ 13.
[15]11 U.S.C. § 1125(e).

14

B.      **The Combined Disclosure Statement and Plan Contains Adequate Information.**

44.     Section 1125(b) of the Bankruptcy Code requires that, before soliciting votes on a plan, the plan proponent must provide a disclosure statement that contains adequate information regarding the proposed plan.  Section 1125(a) defines "adequate information" as:

> information of the kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the condition of the debtor's books and records. . . that would enable such a hypothetical investor of the relevant class to make an informed judgment about the plan, but adequate information need not include such information about any other possible or proposed plan and in determining whether a disclosure statement provides adequate information, the court shall consider the complexity of the case, the benefit of additional information to creditors and other parties in interest, and the cost of providing additional information[.][16]

45.     The amount and type of information required to satisfy section 1125(a) must be determined on a case by case basis.[17]  The legislative history of section 1125 indicates that the threshold of what constitutes "adequate information" is flexible and based on the circumstances of each case.[18]  Courts also have broad discretion to determine what constitutes adequate information necessary to satisfy the requirements of section 1125(a).[19]  A disclosure statement must provide creditors entitled to vote on the plan with information that is "reasonably practicable" to permit an

---

[16]*Id.* § 1125(a)(1).

[17]*See Oneida Motor Freight, Inc. v. United Jersey Bank*, 848 F.2d 414, 417 (3d Cir. 1988) (noting that "adequate information" varies on a case-by-case basis).

[18]H.R. Rep. No. 95-595, at 409 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5963, 6364; *see also Oneida Motor Freight, Inc.*, 848 F.2d at 417 ("From the legislative history of § 1125 we discern that adequate information will be determined by the facts and circumstances of each case."); *First Am. Bank of N.Y. v. Century Glove, Inc.*, 81 B.R. 274, 279 (D. Del. 1988) (noting that adequacy of disclosure for a particular debtor will be determined based on how much information is available from outside sources); S. Rep. No. 95-989, at 121 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5787, 5907 (stating that "the information required will necessarily be governed by the circumstances of the case").

[19]*See In re Phoenix Petroleum Co.*, 278 B.R. 385, 393 (Bankr. E.D. Pa. 2001) ("The general language of the statute and its surrounding legislative history make clear that [t]he determination of what is adequate information is subjective and made on a case by case basis.  The determination is largely within the discretion of the bankruptcy court.") (internal quotation marks omitted); *In re River Village Assoc.*, 181 B.R. 795, 804 (E.D. Pa. 1995) ("[T]he Bankruptcy Court is thus given substantial discretion in considering the adequacy of a disclosure statement."); *Oneida Motor Freight, Inc.*, 848 F.2d at 417 (noting that "adequate information" varies on a case-by-case basis).

54889697.5

"informed judgment."[20]  The general purpose of the disclosure statement is to set forth sufficient

facts to permit a creditor to make an informed evaluation of the merits of the plan.[21]

46.     The Combined Disclosure Statement and Plan contains a number of categories of

information that courts consider "adequate information," including, without limitation:

- ***The Debtor's Corporate History, Structure, and Business Overview***.  An overview of the Debtor's corporate history, business operations, and capital structure, which are described in Section 4 of the Combined Disclosure Statement and Plan;

- ***Events Leading to the Chapter 11 Filing***.  An overview of the events leading to the commencement of the Chapter 11 Case, which are described in Section 4.4 of the Combined Disclosure Statement and Plan;

- ***Events That Occurred During the Chapter 11 Case***.  An overview of certain significant events which occurred during the Chapter 11 Case, including *inter alia*, the FFSL Sale, the Committee Challenge, and the Committee Settlement (each as defined in the Combined Disclosure Statement and Plan), which are described in Section 5 of the Combined Disclosure Statement and Plan;

- ***Financial Information***. Certain projected financial information concerning outstanding claims, which are described in Section 2.1 of the Combined Disclosure Statement and Plan;

- ***Classification, Treatment, and Distribution Information***. A summary of the classification and treatment of all classes of creditors and equity interests, as well as provisions governing distributions under the Combined Disclosure Statement and Plan, which are described in Sections 2.1, 9, and 10 of the Combined Disclosure Statement and Plan;

- ***Risk Factors***.  Certain risks associated with the forward-looking statements and an overall disclaimer as to the information provided by and set forth in the Combined Disclosure Statement and Plan, which are described in Section 7 of the Combined Disclosure Statement and Plan;

- ***Solicitation and Voting Procedures***.  A description of the procedures for soliciting votes to accept or reject the Combined Disclosure Statement and Plan, which are described in Section 6 of the Combined Disclosure Statement and Plan;

- ***Confirmation of the Combined Disclosure Statement and Plan***.  Procedures and statutory requirements for Confirmation and Consummation of the Combined

---

[20] *Cohen v. Tic Fin. Sys. (In re Ampace Corp.)*, 279 B.R. 145, 158 n.26 (Bankr. D. Del. 2002).

[21] See *Century Glove, Inc. v. First Am. Bank of New York*, 860 F.2d 94, 100 (3d Cir. 1988); *Phoenix Petroleum*, 278 B.R. at 392.

54889697.5

Disclosure Statement and Plan, which are described in Section 6 of the Combined Disclosure Statement and Plan;

- *Certain United States Federal Income Tax Consequences of the Combined Disclosure Statement and Plan*. A description and disclaimer regarding U.S. Federal income tax law consequences of the Combined Disclosure Statement and Plan, which are described in Sections 7.9 – 7.11 of the Combined Disclosure Statement and Plan;

- *Liquidation Analysis*. A comparison to a hypothetical liquidation under chapter 7 of the Bankruptcy Code and a best interests analysis, which are described in Section 6.7 of the Combined Disclosure Statement and Plan; and

- *Releases*. Certain releases and exculpation by the Debtor and its estate, which are described in section 16 of the Combined Disclosure Statement and Plan.

47.     In addition, prior to solicitation, the Combined Disclosure Statement and Plan was subject to review and comment by various parties, including the Debtor, the U.S. Trustee, the EPA, Forgen, the PBGC, and Wells Fargo.[22] The Combined Disclosure Statement and Plan was approved by the Bankruptcy Court on an interim basis as containing adequate information for solicitation purposes only.[23] For the foregoing reasons, the Combined Disclosure Statement and Plan contains adequate information to permit Holders of Claims entitled to vote on the Combined Disclosure Statement and Plan to make an informed judgment on whether to accept or reject the Combined Disclosure Statement and Plan.

48.     Accordingly, the Plan Proponent submits that the Combined Disclosure Statement and Plan contains adequate information within the meaning of sections 1125(a) of the Bankruptcy Code, in satisfaction of 1126(b) of the Bankruptcy Code, and therefore should be approved.

## II.    PLAN MODIFICATIONS ARE NOT MATERIAL

49.     Section 1127(a) of the Bankruptcy Code provides that a plan proponent may modify its plan at any time before confirmation as long as such modified plan meets the requirements of

---

[22]*See* Rosen Decl. ¶ 13.

[23] *See* Solicitation Procedures Order ¶ 2.

54889697.5

sections 1122 and 1123 of the Bankruptcy Code.  When the proponent of a plan files the plan with modifications with the court, the plan as modified becomes the plan. Interpreting Bankruptcy Rule 3019, courts consistently have held that a proposed modification to a previously accepted plan will be deemed accepted where the proposed modification is not material or does not adversely affect the way creditors and stakeholders are treated.[24]

50.     Contemporaneously herewith, the Plan Proponent filed a modified version of the Combined Disclosure Statement and Plan which contains the Modifications.  As set forth herein, the Modifications are immaterial and do not adversely affect the way creditors and stakeholders who have previously accepted the Combined Disclosure Statement and Plan are treated and thus comply with section 1127 of the Bankruptcy Code, and Bankruptcy Rule 3019.

51.     A summary of the Modifications is as follows:

- **The Treatment of Class 6 (Insider Unsecured Claims)**: The treatment of Insider Unsecured Claims was modified to make clear that the Combined Disclosure Statement and Plan did not waive any claims or defenses against the Insiders.  All claims and causes of action against Insiders were previously retained pursuant to the Schedule of Retained Causes of Action included in the Plan Supplement [Docket No. 908], and accordingly, this change is merely clarifying and in any event is not material.  Moreover, because all Insider Unsecured Claims voted to reject the Combined Disclosure Statement and Plan, according to section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019, this Modification does not adversely affect the way a purported creditor who has previously accepted the Combined Disclosure Statement and Plan would vote.

- **Technical Modifications to Definitions for Clarity**: The Plan Proponent made certain technical modifications to the definitions of "Insider Unsecured Claims," "Thayer Claims," and "Liquidating Trust Assets" to improve clarity and accuracy.

- **Post-Effective Date Modifications**: The Plan Proponent made certain technical changes to (i) ensure that the Claims Register was regularly updated between the Post-Effective Date Debtor and the Liquidating Trust, (ii) permit the Liquidating

---

[24]*See, e.g.*, *In re Glob. Safety Textiles Holdings LLC*, No. 09-12234 (KG), 2009 WL 6825278, at *4 (Bankr. D. Del. Nov. 30, 2009) (finding that nonmaterial modifications to plan do not require additional disclosure or resolicitation); *In re Burns & Roe Enters., Inc.*, No. 08-4191 (GEB), 2009 WL 438694, at *23 (D.N.J. Feb. 23, 2009) (confirming plan as modified without additional solicitation or disclosure because modifications did "not adversely affect creditors").

18

54889697.5

Trust to assume executory contracts after the Effective Date, if beneficial, (iii) clarify the role of the Wind-Down Officer; (iv) reflect negotiations with the EPA with respect to potential Post-Effective Date environmental liability, and (v) clarify that Liquidating Trust Assets that were Prepetition Collateral could not be sold without the consent of the Prepetition Secured Lenders or Court order.

- **Other Technical Modifications**: There were certain other minor technical modifications made to fix technical errors or omissions.

52.     Accordingly, the Plan Proponent submits that no additional solicitation or disclosure is required due to the Modifications, and that the Modifications should be deemed accepted by all creditors who previously accepted the Combined Disclosure Statement and Plan.

## III.     THE COMBINED DISCLOSURE STATEMENT AND PLAN SATISFIES THE REQUIREMENTS FOR CONFIRMATION.

53.     To confirm the Combined Disclosure Statement and Plan, the Bankruptcy Court must find that the provisions of section 1129 of the Bankruptcy Code have been satisfied (or are inapplicable) by a preponderance of the evidence.[25]  The Committee submits that based on the record of this Chapter 11 Case, the Rosen Declaration, the Martin Declaration, the Voting Report, and the Committee's arguments set forth herein and in the Reply, and as will be set forth at the Combined Hearing, the applicable burden is satisfied and the Combined Disclosure Statement and Plan complies with all relevant sections of the Bankruptcy Code—including sections 1122, 1123, 1125, 1126, and 1129—as well as the Bankruptcy Rules, and applicable non-bankruptcy law.  Each requirement is addressed below.

---

[25] *See In re Armstrong World Indus., Inc.*, 348 B.R. 111, 120 (D. Del. 2006) ("Armstrong I"); *In re Tribune Co.*, 464 B.R. 126, 151–52 (Bankr. D. Del. 2011) ("Tribune I"), *on reconsideration*, 464 B.R. 208 (Bankr. D. Del. 2011). Preponderance of the evidence has been described as just enough evidence to make it more likely than not that the fact the claimant seeks to prove is true. *See Grogan v. Garner*, 498 U.S. 279, 286 (1991) ("[T]he preponderance-of-the-evidence standard results in a roughly equal allocation of the risk of error between litigants. . . .") (citations omitted).

54889697.5

A.     **The Combined Disclosure Statement and Plan Complies with the Applicable Provisions of the Bankruptcy Code (§ 1129(a)(1)).**

54.     Section 1129(a)(1) of the Bankruptcy Code requires that a plan comply with the applicable provisions of the Bankruptcy Code.  The principal objective of section 1129(a)(1) is to ensure compliance with sections 1122 and 1123 of the Bankruptcy Code, which govern the classification of claims and interests and the contents of a plan, respectively.[26]  As explained below, the Combined Disclosure Statement and Plan complies with sections 1122 and 1123 in all respects.

1.     The Combined Disclosure Statement and Plan Satisfies the Classification Requirements of Section 1122 of the Bankruptcy Code.

55.     Section 1122(a) of the Bankruptcy Code provides, in its pertinent part, that "a plan may place a claim or an interest in a particular class only if such claim or interest is substantially similar to the other claims or interests of such class."[27]

56.     For a classification structure to satisfy section 1122 of the Bankruptcy Code, not all substantially similar claims or interests need to be grouped in the same class; instead, claims or interests designated to a particular class must be substantially similar to the other claims or interests in that particular class.[28]  Courts in this jurisdiction and others have recognized that plan proponents have significant flexibility in placing similar claims into different classes, as long as

---

[26] The legislative history of section 1129(a)(1) explains that this provision is intended to draw in the requirements of sections 1122 and 1123 of the Bankruptcy Code, which govern the classification of claims and the contents of a plan, respectively. S. Rep. No. 95-989, at 126 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5787, 5912; H.R. Rep. No. 95-595, at 412 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5963, 6368; *In re Nutritional Sourcing Corp.*, 398 B.R. 816, 824 (Bankr. D. Del. 2008) ("As confirmed by legislative history, 11 U.S.C. § 1129(a)(1) . . . 'requires that the plan comply with the applicable provisions of Chapter 11, such as Section 1122 and 1123, governing classification and contents of [sic] plan.'") (quoting *In re S & W Enter.*, 37 B.R. 153, 158 (Bankr. N.D. Ill. 1984)).

[27] 11 U.S.C. § 1122(a).

[28] *See, e.g.*, *Armstrong World Indus., Inc.*, 348 B.R. 136, 159 (D. Del. 2006) ("The Bankruptcy Code does not require that all claims with equal priority be classified in the same class."); *In re 222 Liberty Assocs.*, 108 B.R. 971, 989 (Bankr. E.D. Pa. 1990) ("The [Bankruptcy] Code therefore does not require that all similarly-situated claims be classified together but, rather, that any claims that are classified together be substantially similar.").

20

those classifications are reasonable and the plan proponent has a rational basis to do so.[29]   The classifications cannot be "arbitrarily designed" to secure the approval of an impaired class when "the overwhelming sentiment of the impaired creditors [is] that the proposed reorganization of the debtor would not serve any legitimate purpose."[30]   Accordingly, the Third Circuit has held that the only requirement for classification is that it be "reasonable."[31]

57.    Separate classes of similar claims are reasonable when each class represents "a voting interest that is sufficiently distinct and weighty to merit a separate voice in the decision whether the proposed reorganization should proceed."[32]   Courts have recognized that this gives both the plan proponent and the bankruptcy court considerable discretion in determining whether similar claims may be separately classified.[33]

58.    The Combined Disclosure Statement and Plan's classification of Claims and Interests satisfies section 1122(a) of the Bankruptcy Code.  The Combined Disclosure Statement and Plan places Claims and Interests into eight (8) separate Classes, with Claims and Interests in each Class differing from the Claims and Interests in each other Class in a legal or factual way or

---

[29] Courts have identified grounds justifying separate classification, including where members of a class possess different legal rights, where there are good business reasons for separate classification, where claimants would vote for ulterior motives, or where claims may be subordinated. *See In re Jersey City Med. Ctr.*, 817 F.2d 1055, 1061–62 (3d Cir. 1987) (recognizing that separate classes of claims must be reasonable and allowing a plan proponent to group similar claims in different classes); *Minerals Techs., Inc. v. Novinda Corp. (In re Novinda Corp.)*, 585 B.R. 145, 156–57 (10th Cir. B.A.P. 2018) (holding that classification of the unsecured claims of insider equity holders separately from other unsecured claims was proper where the insiders were litigation targets and would likely vote based on "ulterior motives").

[30] *John Hancock Mut. Life Ins. Co. v. Route 37 Bus. Park Assocs.*, 987 F.2d 154, 158 (3d Cir. 1993).

[31] *In re Coastal Broad. Sys., Inc.*, 570 F. App'x 188, 193 (3d Cir. 2014) ("Although not explicit in § 1122, a corollary to that rule is that the 'grouping of similar claims in different classes' is *permitted* so long as the classification is 'reasonable.'") (citing *In re Jersey City Med. Ctr.*, 817 F.2d at 1061).

[32] *John Hancock Mut. Life Ins. Co.*, 987 F.2d. at 159.

[33] *See In re W.R. Grace & Co.*, 475 B.R. 34, 110 (D. Del. 2012) (collecting cases); *In re Jersey City Med. Ctr.*, 817 F.2d at 1060–61 ("[I]t remains clear that Congress intended to afford bankruptcy judges broad discretion to decide the propriety of plans in light of the facts of each case.") (citation omitted)); *In re Rochem, Ltd.*, 58 B.R. 641, 642 (Bankr. D.N.J. 1985) ("Although Section 1122(a) of the Code requires that claims be substantially similar within a particular class, there is no requirement within Section 1122 or elsewhere in the Code that all substantially similar claims be included within a particular class.").

21

based on other relevant criteria.[34]  Specifically, the Combined Disclosure Statement and Plan

provides for the separate classification of Claims and Interests into the following Classes:

| Class | Designation | Impairment | Voting Rights[35] |
|---|---|---|---|
| 1 | Priority Non-Tax Claims | Unimpaired | No (presumed to accept) |
| 2 | Other Secured Claims | Unimpaired | No (presumed to accept) |
| 3 | Senior Secured Claims | Impaired | Yes |
| 4 | Subordinated Secured Claims | Impaired | Yes |
| 5 | Deficiency Claims | Impaired | Yes |
| 6 | Insider Unsecured Claims | Impaired | Yes |
| 7 | General Unsecured Claims | Impaired | Yes |
| 8 | Interests | Impaired | No (presumed to reject) |

59.     Each of the Claims and Interests in each particular Class is substantially similar to

the other Claims and Interests in such Class.[36]  The Combined Disclosure Statement and Plan's

classification scheme follows the Debtor's capital structure—taking the relative priority among

Claims and Interests into account, including the relative priority among and/or between Secured

Claims and Unsecured Claims, respectively, and with Claims against and Interests in the Debtor

classified separately.[37]

60.     Each Class contains only Claims or Interests that are substantially similar to each

other. For instance, secured Claims against the Debtor are classified into three (3) separate Classes

based on (a) their separate legal statuses, including the subordination of all Class 4 Subordinated

Secured Claims to all Class 3 Senior Secured Claims pursuant to the applicable Intercreditor

Agreements, and (b) the factual differences underlying the Senior Secured Claims and the

Subordinated Secured Claims in Classes 3 and 4, respectively, on the one hand, which arise from

---

[34]*See* Combined Disclosure Statement and Plan §§ 2.1, 10.

[35]Pursuant to section 1126(a) of the Bankruptcy Code and the Solicitation Procedures Order, any Claim that was Disputed, including those that are the subject of the Committee Challenge, were only be entitled to vote in the Class and Claim amount not Disputed, subject to the applicable Claimholder's rights to file a Rule 3018 Motion.

[36]*See* Rosen Decl. ¶ 27.

[37]*See id.*

54889697.5

the Debtor's prepetition loans and were secured by the same collateral package, as compared to the Class 2 Other Secured Claims, on the other hand, which arise from various other sources and do not share the same collateral package as the Claims in Classes 3 and 4.[38]

61.     As described in additional detail in the Reply, Unsecured Claims against the Debtor are classified into three (3) separate Classes based on different characteristics of the Unsecured Claims.[39] Deficiency Claims arising from purported Holders of Secured Claims against the Debtor were classified separately from other Unsecured Claims, recognizing the contingent nature, right to certain collateral, and different legal status of such Claims.[40] Moreover, Insider Unsecured Claims are separately classified from General Unsecured Claims based on a variety of factors including that such Holders are likely to vote for ulterior motives—*i.e.* not based on its recovery as a creditor, and that Holders of Insider Unsecured Claims had superior information with respect to the financial condition when making the purported loans to (or equity contributions in) the Debtor, as compared to ordinary trade claims or litigation claimants. Though Secured Claims and Unsecured Claims were each classified across multiple classes, the classification of such Claims was based on proper legal, factual, or business reasons.

62.     Accordingly, and for the reasons discussed in greater detail in the Reply, the Bankruptcy Court should approve the classification of Claims as set forth in the Combined Disclosure Statement and Plan, which is consistent with section 1122(a) of the Bankruptcy Code.

---

[38] *See id.* ¶ 28.

[39] *See id.* ¶ 30.

[40] *See id.* Courts in multiple jurisdictions have permitted separate classification of deficiency claims from general unsecured claims with a business or economic justification. *See In re Johnston*, 21 F.3d 323, 327 (9th Cir. 1994); *see also Wells Fargo Bank, N.A. v. Loop 76, LLC (In re Loop 76, LLC)*, 465 B.R. 525, 537 (9th Cir. B.A.P. 2012) (permitting Wells Fargo's deficiency claim to be classified separately from other unsecured claims when it had a separate source of recovery); *In re Robertshaw US Holding Corp.*, 662 B.R. 300, 319 (Bankr. S.D. Tex. 2024) (permitting funded debt deficiency claims to be separately classified from general unsecured claims after a showing of valid business reasons).

54889697.5

2.      The Combined Disclosure Statement and Plan Satisfies the Mandatory Plan
Requirements of Section 1123(a) of the Bankruptcy Code.

63.      The Combined Disclosure Statement and Plan satisfies the seven mandatory

requirements of section 1123(a) of the Bankruptcy Code, as set forth below.

64.      Sections 1123(a)(1)–(4).   Sections 2.1, 9, and/or 10 of the Combined Disclosure

Statement and Plan satisfy the first four requirements of section 1123(a) of the Bankruptcy Code

by: designating eight Classes of Claims and Interests, not including Claims of the kinds specified

in sections 507(a)(2), (a)(3) and (a)(8) of the Bankruptcy Code in accordance with 1123(a)(1);

identifying each Class of Claims and Interests that is Unimpaired in accordance with 1123(a)(2);

setting forth the treatment of each Class of Claims and Interests that is Impaired in accordance

with 1123(a)(3); and providing equal treatment for each Claim or Interest within a particular Class,

unless otherwise agreed by the Holder of a particular Claim, in accordance with 1123(a)(4).[41]

65.      Section 1123(a)(5).   Section 1123(a)(5) of the Bankruptcy Code requires that a plan

"provide adequate means for the plan's implementation," and gives several examples of what may

constitute "adequate means" for implementation.[42] The Combined Disclosure Statement and Plan,

together with the documents and forms of agreement included in the Plan Supplement, provides a

detailed blueprint for the Debtor's liquidation.

66.      In particular, sections 14 and 15 of the Combined Disclosure Statement and Plan

and the Plan Supplement set forth adequate means for implementation in accordance with section

1123(a)(5) of the Bankruptcy Code, which include, *inter alia*:

- The description of the Post-Effective Date Debtor, and the description of the Wind-Down Officer, the Collateral Liquidation Manager, and the Wind-Down Tasks;

---

[41]*See* Rosen Decl. ¶¶ 36-37; Combined Disclosure Statement and Plan §§ 2.1, 9, 10.
[42]11 U.S.C. § 1123(a)(5).

24

54889697.5

- The establishment of the Liquidating Trust, identification of the Liquidating Trustee, and description of the rights and powers of the Liquidating Trustee;

- The vesting of certain property of the Debtor in the Post-Effective Date Debtor or the Liquidating Trust, as applicable;

- The sources of consideration for distributions under the Combined Disclosure Statement and Plan.[43]

67.    Consistent with section 1123(a)(5) of the Bankruptcy Code, the Combined Disclosure Statement and Plan sets forth adequate means for implementation.  Accordingly, the Combined Disclosure Statement and Plan satisfies the requirements of section 1123(a)(5) of the Bankruptcy Code.

68.    Section 1123(a)(6). Section 1123(a)(6) of the Bankruptcy Code requires that a debtor's corporate documents prohibit the issuance of nonvoting equity securities.[44]  Section 1123(a)(6) of the Bankruptcy Code is inapplicable because no new equity securities are being issued; instead the Debtor's legal entity will be wound down (and ultimately dissolved) as expeditiously as possible after the Effective Date.[45]

69.    Section 1123(a)(7). Section 1123(a)(7) of the Bankruptcy Code requires that a plan's provisions with respect to the manner of selection of any director, officer or trustee, or any other successor thereto, be "consistent with the interests of creditors and equity security holders and with public policy."[46]  Pursuant to section 14.10 of the Combined Disclosure Statement and Plan, on the Effective Date, each of the Debtor's officers, managers, and directors shall be discharged from their duties and deemed to resign, and, unless subject to a separate agreement with the Post-Effective Date Debtor, such officers shall have no continuing or further obligations

---

[43]See Combined Disclosure Statement and Plan §§ 14.10, 14.1, 14.3, 14.4.

[44]11 U.S.C. § 1123(a)(6).

[45]However, to the extent applicable, section 19.16 of the Combined Disclosure Statement and Plan contains a prohibition in issuing nonvoting securities, thereby also satisfying section 1123(a)(6) of the Bankruptcy Code.

[46]11 U.S.C. § 1123(a)(7).

54889697.5

to the Debtor. The Plan Proponent consulted with Wells Fargo and the Debtor in naming the Collateral Liquidation Manager and the Wind-Down Officer, and disclosed the identity of the Wind-Down Officer in the Plan Supplement.[47] In addition, the Plan Proponent consulted with the Debtor in naming the Liquidating Trustee, who will act on behalf of the Liquidating Trust, and disclosed the identity of the Liquidating Trustee in the Plan Supplement.[48] These appointments are consistent with the interests of creditors and with public policy.

70.    Accordingly, the Combined Disclosure Statement and Plan satisfies section 1123(a)(7) of the Bankruptcy Code.

> 3.    The Combined Disclosure Statement and Plan Appropriately Contains Certain Discretionary Components Permitted by Section 1123(b) of the Bankruptcy Code.

71.    Section 1123(b) of the Bankruptcy Code sets forth certain discretionary provisions that may be included in a chapter 11 plan.

72.    Section 1123(b)(1). Sections 2.1, 9, and 10 of the Combined Disclosure Statement and Plan provide that each particular Class of Claims or Interests is Impaired or Unimpaired, as the case may be, in satisfaction of section 1123(b)(1) of the Bankruptcy Code.

73.    Section 1123(b)(2). Bankruptcy courts generally approve the decision to assume, assume and assign, or reject executory contracts or unexpired leases where such decision is made in the exercise of sound business judgment and benefits the debtor's estate.[49] The business judgment standard requires that the court approve the business decision unless that judgment is the product of bad faith, whim or caprice.[50]

---

[47] *See* Plan Supplement, Ex. C; Rosen Decl. ¶ 40.

[48] *See* Plan Supplement, Ex. B; Rosen Decl. ¶ 40.

[49] *See, e.g.*, *Sharon Steel Corp. v. Nat'l Fuel Gas Distrib. Corp.*, 872 F.2d 36, 39–40 (3d Cir. 1989); *NLRB v. Bildisco & Bildisco*, 682 F.2d 72, 79 (3d Cir. 1982), *aff'd*, 465 U.S. 513 (1984).

[50] *See In re Trans World Airlines, Inc.*, 261 B.R. 103, 121 (Bankr. D. Del. 2001).

54889697.5

74.     Section 13.1 of the Combined Disclosure Statement and Plan provides that each Executory Contract and Unexpired Lease shall be deemed automatically rejected pursuant to sections 365 and 1123 of the Bankruptcy Code, unless such Executory Contract or Unexpired Lease: (a) was previously assumed or rejected by Court order, (b) is specifically described in the Combined Disclosure Statement and Plan as to be assumed, is specifically scheduled to be assumed or assumed and assigned pursuant to the Combined Disclosure Statement and Plan or the Plan Supplement, or otherwise is specifically described in the Combined Disclosure Statement and Plan to not be rejected, or (c) is the subject of a pending motion to assume, pursuant to section 365 of the Bankruptcy Code. Absent rejection, such Executory Contracts and Unexpired Leases would cause the Post-Effective Date Debtor to incur unnecessary expenses.[51]   Section 13.2 of the Combined Disclosure Statement and Plan provides that parties with Claims arising from the rejection of executory contracts or unexpired leases pursuant to the Combined Disclosure Statement and Plan will have thirty (30) days after the notice of occurrence of the Effective Date to file a proof of claim relating to rejection damages.[52]   Therefore, the Combined Disclosure Statement and Plan complies with section 1123(b)(2) of the Bankruptcy Code.

75.     Section 1123(b)(3). A chapter 11 plan may provide for the settlement of any claim or interest belonging to the debtor and the retention and enforcement by the debtor's successor of any such claim or interest.  As further detailed in section III.A.4 herein, the Combined Disclosure Statement and Plan satisfies section 1123(b)(3) of the Bankruptcy Code.

---

[51]*See* Rosen Decl. ¶ 43.

[52]Executory Contracts or Unexpired Leases which are rejected after the Effective Date pursuant to section 13.1 of the Combined Disclosure Statement and Plan shall have thirty (30) days after the later of: the notice of or the effective date of any such rejection to file any rejection damage claims, pursuant to section 13.2 of the Combined Disclosure Statement and Plan.

54889697.5

76.     Section 1123(b)(4). A chapter 11 plan may provide for the sale of all or substantially all of the property of the estate. Sections 15.3 and 15.4 of the Combined Disclosure Statement and Plan provide for the vesting of all of the Debtor's property in the Liquidating Trust or the Post-Effective Date Debtor for the purpose of selling or liquidating such property, and the distribution of the proceeds of such sales to Holders of Claims in accordance with the terms of the Combined Disclosure Statement and Plan.

77.     Section 1123(b)(5). A chapter 11 plan may modify or leave unaffected the rights of holders of secured and unsecured claims. In accordance with section 1123(b)(5) of the Bankruptcy Code, sections 2.1, 9, and 10 of the Combined Disclosure Statement and Plan modifies or leaves unaffected, as the case may be, the rights of holders of Claims in each Class.

78.     Section 1123(b)(6). A chapter 11 plan may include any other provision not inconsistent with an applicable provision of the Bankruptcy Code. The Combined Disclosure Statement and Plan includes only additional appropriate provisions that are not inconsistent with applicable provisions of the Bankruptcy Code.[53]

4.     The Combined Disclosure Statement and Plan's Release, Injunction and Exculpation Provisions are Appropriate and Should be Approved.

79.     Section 16 of the Combined Disclosure Statement and Plan provides for: (a) releases by the Debtor of the Released Parties (the "Debtor/Estate Release Provision");[54] (b) an injunction precluding Holders of Claims against or Interests in the Debtor or its estate from bringing any action against the Debtor or its estate or otherwise taking any action inconsistent with the Combined Disclosure Statement and Plan (the "Injunction Provision"); and (c) an exculpation

---

[53]*See* Rosen Decl. ¶ 47.

[54]"Released Party," as defined in section 3.140 of the Combined Disclosure Statement and Plan, means "collectively, (a) the Debtor's Retained Professionals, in their respective capacities as such; and (b) the Committee, its Retained Professionals, and the individual members thereof in their capacity as such.  For the avoidance of doubt, Renco shall not be considered a Released Party under the Plan."

28

54889697.5

for the Exculpated Parties[55] related to this Chapter 11 Case (the "Exculpation Provision"). These provisions comply with the Bankruptcy Code and applicable non-bankruptcy law and are necessary and integral components of the Combined Disclosure Statement and Plan. These provisions are proper because, among other things, they are reasonable, in the best interests of the Debtor's estate, the product of good faith, arm's-length negotiations, and are critical to obtaining the support of various constituencies for the Combined Disclosure Statement and Plan.[56]

80.    These provisions are (a) an essential component of the Combined Disclosure Statement and Plan, (b) limited in scope, (c) a valid exercise of the Plan Proponent's business judgment. Moreover, no party in interest objected to these provisions.

81.    For the foregoing reasons, and as set forth in the Rosen Declaration and the Martin Declaration, the Plan Proponent submits that the Debtor/Estate Release Provision, the Injunction Provision, and the Exculpation Provision are fair, reasonable, and in the best interests of the Debtor's Estate.

82.    Accordingly, the various discretionary provisions incorporated into the Combined Disclosure Statement and Plan comply with section 1123(b) of the Bankruptcy Code.

**B.    The Combined Disclosure Statement and Plan Complies with Applicable Provisions of the Bankruptcy Code (§ 1129(a)(2)).**

83.    The Plan Proponent has complied with the applicable provisions of the Bankruptcy Code in accordance with section 1129(a)(2) of the Bankruptcy Code, which requires that plan proponents have complied with the disclosure and solicitation requirements set forth in sections

---

[55]"Exculpated Parties" as defined in section 16.1 of the Combined Disclosure Statement and Plan, means "[t]he Debtor, the Debtor's current and former directors, managers, and officers, the Debtor's Retained Professionals, the Committee and its Retained Professionals and the members of the Committee, each solely in their capacities as such who served during the Chapter 11 Case."

[56]See Rosen Decl. ¶ 47.

54889697.5

1125 and 1126 of the Bankruptcy Code.[57]  As discussed herein and above, the Committee has complied with all notice, solicitation, and disclosure requirements set forth in the Solicitation Procedures Order, sections 1125 and 1126 of the Bankruptcy Code, Bankruptcy Rules 3017 and 3018, and the Local Rules, by soliciting votes on the Combined Disclosure Statement and Plan in accordance with the Solicitation Procedures Order.

     1.  <u>The Plan Proponent Complied with Section 1125 of the Bankruptcy Code.</u>

  84.  Section 1125(b) of the Bankruptcy Code prohibits postpetition solicitation of acceptances or rejections of a chapter 11 plan, "unless, at the time of or before such solicitation, there is transmitted to such holder the plan or a summary of the plan, and a written disclosure statement approved, after notice and a hearing, by the court as containing adequate information."[58] Section 1125 of the Bankruptcy Code ensures that parties in interest are informed such that they may make an informed decision whether to approve or reject the proposed plan.[59]

  85.  Section 1125(b) is satisfied here—before the Plan Proponent began solicitation of the Combined Disclosure Statement and Plan, the Bankruptcy Court approved the Combined Disclosure Statement and Plan on an interim basis for solicitation purposes in accordance with section 1125(a)(1).[60]  By entering the Solicitation Procedures Order, the Bankruptcy Court also approved the contents of the Solicitation Packages to be provided to Holders of Claims in the

---

[57]*See In re Lapworth*, 1998 WL 767456, at *3 (DWS) (Bankr. E.D. Pa. Nov. 2, 1998) ("The legislative history of § 1129(a)(2) specifically identifies compliance with the disclosure requirements of § 1125 as a requirement of § 1129(a)(2)."); *In re Aleris Int'l, Inc.*, 2010 WL 3492664, at *20 (Bankr. D. Del. May 13, 2010) ("[S]ection 1129(a)(2) of the Bankruptcy Code reflects that this provision is intended to encompass the solicitation and disclosure requirements under sections 1125 and 1126 of the Bankruptcy Code."); S. Rep. No. 989, 95th Cong., 2d Sess., at 126 (1978); H.R. Rep. No. 595, 95th Cong., 1st Sess., at 412 (1977).

[58]11 U.S.C. § 1125(b).

[59]*See Krystal Cadillac-Oldsmobile GMC Truck, Inc. v. Gen. Motors Corp.,* 337 F.3d 314, 321 (3d Cir. 2003) (finding that section 1125 of the Bankruptcy Code obliges a debtor to engage in full and fair disclosure that would enable a hypothetical reasonable investor to make an informed judgment about the plan).

[60]*See generally* Solicitation Procedures Order.

54889697.5

Voting Classes, the Non-Voting Notice Package provided to parties in interest not entitled to vote on the Combined Disclosure Statement and Plan, and the relevant deadlines related thereto.[61]

86.    Based on the foregoing, the Plan Proponent submits that it has complied in all respects with the solicitation requirements contained in section 1125 of the Bankruptcy Code, as well as the Solicitation Procedures Order.

### 2.    The Plan Proponent Complied with Section 1126 of the Bankruptcy Code.

87.    Section 1126 of the Bankruptcy Code specifies the requirements for acceptance of a chapter 11 plan.  Specifically, under section 1126(a) of the Bankruptcy Code, only holders of allowed claims and equity interests in impaired classes of claims or interests that will receive or retain property under a plan on account of such claims or interests may vote to accept or reject a chapter 11 plan. Section 1126 of the Bankruptcy Code provides, in pertinent part, that:

(a)    The holder of a claim or interest allowed under section 502 of [the Bankruptcy Code] may accept or reject a plan . . .

(f)    Notwithstanding any other provision of this section, a class that is not impaired under a plan, and each holder of a claim or interest of such class, are conclusively presumed to have accepted the plan, and solicitation of acceptances with respect to such class . . . is not required.[62]

88.    As set forth above, in accordance with section 1125 of the Bankruptcy Code, the Plan Proponent only solicited acceptances or rejections of the Combined Disclosure Statement and Plan from the Holders of Allowed Claims in the Voting Classes.  Although the Plan Proponent provided ballots to Holders of Disputed Claims in the Voting Classes, pursuant to the Solicitation Procedures Order, the Voting and Noticing Agent only tabulated the non-Disputed portion of such

---

[61]*Id.*
[62]11 U.S.C. § 1126(a), (f).

31

54889697.5

Claims (if any), unless and until an order was entered pursuant to Bankruptcy Rule 3018 with respect to such Disputed Claims.[63]  The 3018 Motions will be heard during the Combined Hearing.

89.     Section 1126(c) of the Bankruptcy Code provides that a class of Claims accepts a plan where holders of claims holding at least two-thirds ($\frac{2}{3}$) in amount and more than one-half ($\frac{1}{2}$) by number of allowed claims in such class vote to accept such plan.[64]

| Total Ballots Received | | | | | | |
|---|---|---|---|---|---|---|
| Voting Class | Voting Class Description | Accepting | | Rejecting | | Class Voting Result |
| | | Number | Amount | Number | Amount | |
| Class 3 | Senior Secured Claims | 0.0% | 0.0% | 100.0% | 100.0% | Rejects |
| Class 4 | Subordinated Secured Claims | 0.0% | 0.0% | 0.0% | 0.0% | No Votes Cast |
| Class 5 | Deficiency Claims | 0.0% | 0.0% | 100.0% | 100.0% | Rejects |
| Class 6 | Insider Unsecured Claims | 0.0% | 0.0% | 100.0% | 100.0% | Rejects |
| Class 7 | General Unsecured Claims | 94.5% | 100.0% | 5.5% | 0.0% | Accepts |

90.     The Voting Report, summarized above, reflects the results of the solicitation and voting process in accordance with section 1126 of the Bankruptcy Code.  As set forth in the Voting Report, Holders of Allowed Claims in Class 7 overwhelmingly voted in favor of confirmation of the Combined Disclosure Statement and Plan, while Holders of Claims in Class 3, Class 4, Class 5, and Class 6 voted to reject the Combined Disclosure Statement and Plan.[65]

91.     Based on the foregoing, the Plan Proponent submits that it has satisfied the requirements of section 1129(a)(2) of the Bankruptcy Code.

---

[63]*See* Solicitation Procedures Order ¶ 15 ("Any Ballot submitted by a Claimholder that files a Rule 3018 Motion shall be counted solely in accordance with the Tabulation Procedures . . . unless and until the underlying Claim or Interest is temporarily allowed by the Bankruptcy Court for voting purposes in a different amount . . ."); *see also* Solicitation Procedures § 3.c ("[A] Claim that is Disputed, including those that are the subject of a pending adversary proceeding (including the Committee Challenge) or pending claim objection shall only be entitled to vote in the Class and Claim amount that is not Disputed, subject to the Claimholder's rights to file a Rule 3018 Motion. . .").

[64]11 U.S.C. § 1126(c).

[65]*See* Voting Report, Ex. A.

54889697.5

**The Combined Disclosure Statement and Plan Has Been Proposed in Good Faith and Not by Any Means Forbidden by Law (§ 1129(a)(3)).**

92.     Section 1129(a)(3) of the Bankruptcy Code requires that "[t]he plan has been proposed in good faith and not by any means forbidden by law."[66]   In the Third Circuit, "good faith" requires that a "plan be 'proposed with honesty, good intentions and a basis for expecting that a reorganization can be effected with results consistent with the objectives and the purposes of the Bankruptcy Code.'"[67] To determine whether a plan seeks relief consistent with the Bankruptcy Code, courts consider the totality of the circumstances surrounding the development of the plan.[68]

93.     Here, the Plan Proponent negotiated, developed, and proposed the Combined Disclosure Statement in good faith and submits that the Combined Disclosure Statement and Plan satisfies section 1129(a)(3) of the Bankruptcy Code.  The Combined Disclosure Statement and Plan—like the Committee's mandate and its tireless efforts during this Chapter 11 Case—is designed to maximize recoveries to the Debtor's many stakeholders.[69]  The Combined Disclosure Statement and Plan and the process leading up to its formulation are the result of extensive arm's-length negotiations among the Committee, the Debtor, Wells Fargo, the EPA, PBGC, Forgen, ATI Titanium, FFSL, the PI Claimants, the U.S. Trustee, and other parties in interest.[70]

---

[66]11 U.S.C. § 1129(a)(3).

[67]*In re Zenith Elecs. Corp.,* 241 B.R. 92, 107 (Bankr. D. Del. 1999) (quoting *In re Sound Radio, Inc.*, 93 B.R. 849, 853 (Bankr. D.N.J. 1988)); *see also In re PPI Enters. (U.S.), Inc.*, 228 B.R. 339, 347 (Bankr. D. Del. 1998) ("[C]ourts have held a plan is to be considered in good faith 'if there is a reasonable likelihood that the plan will achieve a result consistent with the standards prescribed under the Code.'") (internal citation omitted).

[68]*See e.g., Fin. Sec. Assurance v. T-H New Orleans Ltd. Pshp. (In re T-H New Orleans Ltd. Pshp.)*, 116 F.3d 790, 802 (5th Cir. 1997) (quoting *In re Sun Country Dev., Inc.*, 764 F.2d 406, 408 (5th Cir. 1985)); *W.R. Grace & Co.*, 475 B.R. at 87; *Century Glove*, 1993 WL 239489, at *4.

[69]*See* Rosen Decl. ¶ 52.

[70]*See id.* ¶ 53.

54889697.5

Moreover, the Committee has upheld its fiduciary duty and proposed a fair and equitable plan that complies with all requirements of the Bankruptcy Code.[71]

94.     For these reasons, the Plan Proponent submits that the Combined Disclosure Statement and Plan and the Committee's conduct related thereto satisfies the requirements of section 1129(a)(3) of the Bankruptcy Code.

**C.      The Combined Disclosure Statement and Plan Provides for Approval of Payments for Services or Costs and Expenses (§ 1129(a)(4)).**

95.     Section 1129(a)(4) of the Bankruptcy Code has been construed to require that all payments of professional fees that are made from estate assets be subject to review and approval by the court as reasonable.[72]

96.     The Combined Disclosure Statement and Plan satisfies section 1129(a)(4) of the Bankruptcy Code.   Section 8.2 of the Combined Disclosure Statement and Plan contains procedures for filing applications for final allowance of Professional Fee Claims and procedures for the payment of such Professional Fee Claims upon approval by the Bankruptcy Court.[73]

97.     Therefore, the Combined Disclosure Statement and Plan complies with section 1129(a)(4) of the Bankruptcy Code.

**D.      The Plan Supplement Identifies the Liquidating Trustee and Wind-Down Officer (§ 1129(a)(5)).**

98.     Section 1129(a)(5)(A) of the Bankruptcy Code requires that the plan proponent disclose the "identity and affiliations of any individual proposed to serve, after confirmation of the plan, as a director, officer, or voting trustee of the debtor . . . or a successor to the debtor under the plan," and requires a finding that "the appointment to, or continuance in, such office of such

---

[71]*See id.* ¶¶ 52-53.

[72]*In re Drexel Burnham Lambert Grp., Inc.*, 138 B.R. 723, 760 (Bankr. S.D.N.Y. 1992); *In re Printing Dimensions, Inc.*, 153 B.R. 715, 719 (Bankr. D. Md. 1993).

[73]*See* Combined Disclosure Statement and Plan, § 8.2; *see also* Rosen Decl. ¶ 54.

54889697.5

individual, is consistent with the interests of creditors and equity security holders and with public policy."[74]

99.    Section 1129(a)(5)(B) of the Bankruptcy Code further requires a plan proponent to disclose the "identity of any insider that will be employed or retained by the reorganized debtor, and the nature of any compensation for such insider."[75]  The Plan Proponent understands that the Collateral Liquidation Manager intends to continue to utilize the services of former officers Paula Chu and Ron Thayer as employees in connection with its liquidation efforts.  Accordingly, the Plan Proponent has satisfied section 1129(a)(5) of the Bankruptcy Code.

### 1.    The Post-Effective Date Debtor

100.    Section 3.33 of the Combined Disclosure Statement and Plan identified the Collateral Liquidation Manager who will serve as an authorized representative of the Post-Effective Date Debtor with respect to the Collateral Liquidation Wind-Down Tasks. Moreover, the Plan Supplement identified the Wind-Down Officer, who will act as the managing member of the Post-Effective Date Debtor.[76]  In turn, section 14.10 of the Combined Disclosure Statement and Plan also provides that on the Effective Date, the Debtor's existing managers and officers shall be discharged from their duties and deemed to have resigned.[77] The Plan Proponent consulted with the Debtor and Wells Fargo in naming the Wind-Down Officer and the Collateral Liquidation Manager, and believes that such appointments are agreeable to such parties.[78]

---

[74]11 U.S.C. § 1129(a)(5)(A)(i)–(ii).

[75]*Id.* § 1129(a)(5)(B).

[76]Plan Supplement, Ex. B; Combined Disclosure Statement and Plan, § 14.10.

[77]Combined Disclosure Statement and Plan, § 14.10.

[78]*See* Rosen Decl. ¶ 55.

54889697.5

2.      The Liquidating Trust

101.    The Plan Supplement identifies the Liquidating Trustee, who will act as the Estate's

representative with respect to the Liquidating Trust Assets.[79]  The Plan Proponent disclosed the

identity of the Liquidating Trustee to the Debtor and Wells Fargo, and believes that the

appointment of such is agreeable to such parties.[80]Accordingly, the Plan Proponent submits that

the Combined Disclosure Statement and Plan satisfies the requirements of section 1129(a)(5) of

the Bankruptcy Code.

**E.      The Combined Disclosure Statement and Plan Does Not Require Governmental Regulatory Approval of Rate Changes (§ 1129(a)(6)).**

102.    Section 1129(a)(6) of the Bankruptcy Code permits confirmation only if any

regulatory commission that has or will have jurisdiction over a debtor after confirmation has

approved any rate change provided for in the plan.  Section 1129(a)(6) of the Bankruptcy Code is

not applicable to the Combined Disclosure Statement and Plan.[81]

**F.      The Combined Disclosure Statement and Plan is in the Best Interests of Creditors and Interest Holders (§ 1129(a)(7)).**

103.    Section 1129(a)(7)(A) of the Bankruptcy Code requires that a plan be in the best

interests of creditors and equity security holders of the debtor.  This "best interests" test focuses

on potential individual dissenting creditors, requires that each holder of an Allowed Claim or

Interest either accept the plan or receive or retain property under the plan that is not less than the

amount such holder would receive or retain in a chapter 7 liquidation.[82]

---

[79]Plan Supplement, Ex. C.

[80]*See* Rosen Decl. ¶ 55.

[81]*See id.* ¶ 58.

[82]*See Bank of Am. Nat'l Tr. & Sav. Ass'n v. 203 N. LaSalle St. P'ship*, 526 U.S. 434, 441 n.13 (1999) (noting that "the 'best interests' test applies to individual creditors holding impaired claims, even if the class as a whole votes to accept the plan"); *Century Glove*, 1993 WL 239489, at *7; *In re Adelphia Commc'ns Corp.*, 368 B.R. 140, 251 (Bankr. S.D.N.Y. 2007) (stating that section 1129(a)(7) is satisfied when an impaired holder of claims would receive "no less than such holder would receive in a hypothetical chapter 7 liquidation").

36

104.    Under the best interest analysis, "the court must measure what is to be received by rejecting creditors . . . under the plan against what would be received by them in the event of liquidation under chapter 7."[83]    Accordingly, the Bankruptcy Court is required to "take into consideration the applicable rules of distribution of the estate under chapter 7, as well as the probable costs incident to such liquidation."[84]

105.    As set forth in the Rosen Declaration, the Martin Declaration, and the Reply, the Liquidation Analysis annexed as Exhibit A to the Combined Disclosure Statement and Plan satisfies the requirements of section 1129(a)(7) of the Bankruptcy Code and demonstrates that under a chapter 7 liquidation, Holders of Claims and Interests would receive less than they are projected to receive under the Combined Disclosure Statement and Plan.[85] The Liquidation Analysis is sound, reasonable, and incorporates justified assumptions and estimates regarding the Debtor's assets and claims.[86]  In a chapter 7, the estate would incur additional costs and expenses related to a chapter 7 trustee's fees and the retention of new professionals.  The estimates regarding the Debtor's assets and liabilities that are incorporated into the Liquidation Analysis are based upon the knowledge and familiarity of the Committee's advisors with the Debtor's business and relevant experience in chapter 11 proceedings.[87]  As such, the Liquidation Analysis should be afforded deference.[88]

---

[83]See In re Stone & Webster, Inc., 286 B.R. 532, 544–45 (Bankr. D. Del. 2002) ("The application of the best interest test involves a hypothetical application of chapter 7 to a chapter 11 plan. A liquidation and distribution analysis is performed to see whether each holder of a claim or interest in each impaired class, as such classes are defined in the subject plan, receive not less than the holders would receive in a 'hypothetical Chapter 7 distribution' to those classes.") (citation omitted).

[84]See In re Adelphia Commc'ns Corp., 368 B.R. at 252.

[85]See Rosen Decl. ¶ 62; see also Liquidation Analysis [Docket No. 854]

[86]See Rosen Decl. ¶ 61.

[87]See id. ¶ 60.

[88]See In re W.R. Grace & Co., 475 B.R. at 143 (court finding plan was in the best interests of creditors "based upon the well-reasoned estimates presented at the Confirmation Hearing" and in the "absence of [] contrary evidence").

54889697.5

106.    Simply put, all Holders of Impaired Claims or Interests will receive or retain property of a value, as of the Effective Date, in an amount that is at least equal to the value of what they would receive if the Debtor were liquidated under chapter 7 of the Bankruptcy Code.  A conversion to chapter 7 at this juncture would reduce expected recoveries from the liquidation of Prepetition Collateral, increase delay and expenses due to the costs of converting and administering the case in chapter 7, and trigger the cessation of DIP financing.  Accordingly, the Combined Disclosure Statement and Plan satisfies the requirements of section 1129(a)(7) of the Bankruptcy Code.[89]

**G.    Section 1129(a)(8) of the Bankruptcy Code Does Not Preclude Confirmation of the Combined Disclosure Statement and Plan.**

107.    Section 1129(a)(8) of the Bankruptcy Code requires that each class of claims or interests either has accepted the plan or is not impaired by the plan.  A class of claims accepts a plan if the holders of at least two-thirds ($\frac{2}{3}$) in dollar amount and more than one-half ($\frac{1}{2}$) in number of claims in the class vote to accept the plan, counting only those claims whose holders actually vote to accept or reject the plan.[90]

108.    As set forth in the Voting Report, in accordance with the Tabulation Procedures attached as Exhibit 1 to the Solicitation Procedures Order, Class 7 (General Unsecured Claims) overwhelmingly voted to accept the Combined Disclosure Statement and Plan within the meaning of section 1126(c) of the Bankruptcy Code.  Accordingly, the Combined Disclosure Statement and Plan satisfies section 1129(a)(8) of the Bankruptcy Code with respect to Class 7.

109.    According to the Voting Report, Class 3 (Senior Secured Claims), Class 4 (Subordinated Secured Claims), Class 5 (Deficiency Claims), and Class 6 (Insider Unsecured

---

[89]See *id.*

[90]*See* 11 U.S.C. § 1126(c).

54889697.5

Claims) have rejected the Combined Disclosure Statement and Plan,[91] and Class 8 (Interests) is deemed to have rejected the Combined Disclosure Statement and Plan.

110.    As set forth below, the Plan Proponent submits that the Combined Disclosure Statement and Plan is nonetheless confirmable because it satisfies sections 1129(a)(10) and 1129(b) of the Bankruptcy Code and will be able to "cram down" the Combined Disclosure Statement and Plan on these rejecting classes.

**H.    The Combined Disclosure Statement and Plan Provides for Payment in Full of All Allowed Administrative and Priority Claims (§ 1129(a)(9)).**

111.    Section 1129(a)(9) of the Bankruptcy Code requires that certain priority claims be paid in full on the effective date of a chapter 11 plan and that the holders of certain other priority claims receive deferred cash payments, unless the holder of such claims has agreed to a different treatment under the plan.[92]

112.    In particular, pursuant to section 1129(a)(9)(A) of the Bankruptcy Code, holders of claims of a kind specified in section 507(a)(2) or (a)(3) of the Bankruptcy Code—administrative claims allowed under section 503(b) of the Bankruptcy Code—must receive on the effective date cash equal to the allowed amount of such claims.  Section 8.2 of the Combined Disclosure Statement and Plan provides for payment in full of Allowed Administrative Claims (including U.S. Trustee Fees), including those claims arising under section 503(b) of the Bankruptcy Code.

113.    Section 1129(a)(9)(B) of the Bankruptcy Code requires that each holder of a claim of a kind specified in section 507(a)(1) or (a)(4) through (a)(7) of the Bankruptcy Code must receive deferred cash payments of a value, as of the Effective Date of the plan, equal to the allowed amount of such claim (if such class has accepted the plan), or cash of a value equal to the allowed

---

[91] *See* Voting Report, Ex. A.
[92] 11 U.S.C. § 1129(a)(9).

54889697.5

amount of such claim on the effective date of the plan (if such class has not accepted the plan). The Combined Disclosure Statement and Plan classifies such claims as Class 1 (Priority Non-Tax Claims), which provides for the payment in full in Cash of the Allowed amount of each Priority Non-Tax Claim upon the later of: "(a) the Effective Date and (b) the date such Priority Non-Tax Claim becomes an Allowed Claim (or as otherwise permitted by law)."[93]

114.    Section 1129(a)(9)(C) of the Bankruptcy Code provides that the holder of a claim of a kind specified in section 507(a)(8) of the Bankruptcy Code must receive cash payments over a period not to exceed five years from the petition date, the present value of which equals the allowed amount of the claim.  Pursuant to section 2.1 of the Combined Disclosure Statement and Plan, Priority Tax Claims are unclassified, and under the Combined Disclosure Statement and Plan, each Holder of an Allowed Priority Tax Claim shall receive "the full unpaid amount of such Allowed Priority Tax Claim on or as soon as practicable after the Effective Date or, if later, the date such Allowed Priority Tax Claim becomes an Allowed Claim; *provided that*, after becoming an Allowed Claim, such Allowed Priority Tax Claim may be paid at a later date pursuant to applicable non-bankruptcy law."[94]

115.    Therefore, the Combined Disclosure Statement and Plan complies with section 1129(a)(9) of the Bankruptcy Code.

## I.    At Least One Impaired Class of Claims That Was Entitled to Vote Has Accepted the Combined Disclosure Statement and Plan (§ 1129(a)(10)).

116.    Section 1129(a)(10) of the Bankruptcy Code provides that, to the extent there is an impaired class of claims under a plan, at least one impaired class of claims must accept the plan,

---

[93]*See* Combined Disclosure Statement and Plan § 10.1(b).
[94]*Id.* § 8.2(c).

"without including any acceptance of the plan by any insider."[95]  Class 7 (General Unsecured

Claims) is impaired, and, as evidenced by the Voting Report, Class 7 voted to accept the Combined

Disclosure Statement and Plan, without including the votes of any Insider (as such term is defined

in section 101(31) of the Bankruptcy Code).[96]  Therefore, the Combined Disclosure Statement and

Plan satisfies section 1129(a)(10) of the Bankruptcy Code.

### J.        The Combined Disclosure Statement and Plan Is Feasible (§ 1129(a)(11)).

117.    Section 1129(a)(11) of the Bankruptcy Code requires that the Bankruptcy Court

find that "confirmation of the plan is not likely to be followed by the liquidation, or the need for

further financial reorganization, of the debtor or any successor to the debtor under the plan, unless

such liquidation or reorganization is proposed in the plan."[97]  Finding "feasibility" of a chapter 11

plan does not require a guarantee of success;[98] rather a plan proponent must demonstrate only a

reasonable assurance of success.[99]  There is a relatively low threshold of proof necessary to satisfy

the feasibility requirement.[100]

118.    As set forth in the Rosen Declaration, the Combined Disclosure Statement and Plan

provides for the orderly liquidation of the Debtor's assets through the Post-Effective Date Debtor

and the Liquidating Trust, as applicable.[101] The Plan Proponent and its advisors have thoroughly

---

[95]11 U.S.C. § 1129(a)(10).

[96]*See* Voting Report, Ex. A.

[97]11 U.S.C. § 1129(a)(11).

[98]*See Kane v. Johns-Manville Corp.*, 843 F.2d 636, 649 (2d Cir. 1988); *Flintkote Co.*, 486 B.R. 99, 139 (Bankr. D. Del. 2012); *W.R. Grace & Co.*, 475 B.R. at 115; *see also In re Pizza of Haw., Inc.*, 761 F.2d 1374, 1382 (9th Cir. 1985) (holding that "[t]he purpose of section 1129(a)(11) is to prevent confirmation of visionary schemes which promise creditors and equity security holders more under a proposed plan than the debtor can possibly attain after confirmation") (citations omitted).

[99]*Tribune I,* 464 B.R. at 185 (citing *In re Wash Mut., Inc.*, 461 B.R. 200, 252 (Bankr. D. Del. 2011) (quoting *In re Orlando Invs. LP,* 103 B.R. 593, 600 (Bankr. E.D. Pa. 1989))); *see also Flintkote Co.*, 486 B.R. 99, 139; *W.R. Grace & Co.*, 475 B.R. at 115 ("[T]he bankruptcy court need not require a guarantee of success, but rather only must find that 'the plan present[s] a workable scheme of organization and operation from which there may be [a] reasonable expectation of success.'") (citations omitted).

[100]*Tribune I,* 464 B.R. at 185 (quoting *In re Briscoe Enters, Ltd.*, 994 F.2d 1160, 1166 (5th Cir. 1993)).

[101]*See* Rosen Decl. ¶ 77.

analyzed the Debtor's ability to meet its obligations under the Combined Disclosure Statement and Plan and have determined that the Debtor will have sufficient liquidity available as of the Effective Date to fund distributions and other financial obligations under the Combined Disclosure Statement and Plan.[102]  Holders of Allowed Administrative Claims, Other Priority Claims, and Other Secured Claims will receive the distributions required under the Combined Disclosure Statement and Plan and the Post-Effective Date Debtor or Liquidating Trust, as applicable, will otherwise satisfy its financial obligations under the Combined Disclosure Statement and Plan.[103] In addition, the Plan Proponent estimates that the Post-Effective Date Debtor will have sufficient funding to meet its obligations under the Combined Disclosure Statement and Plan to administer the Post-Effective Date Debtor through the sales of the property of the Post-Effective Date Debtor in accordance with the terms of the Combined Disclosure Statement and Plan.

119.    Therefore, the Combined Disclosure Statement and Plan is feasible and satisfies the requirements of section 1129(a)(11) of the Bankruptcy Code.

**K.    The Combined Disclosure Statement and Plan Provides for Payment of All Fees Under 28 U.S.C. § 1930 (§ 1129(a)(12)).**

120.    Section 1129(a)(12) of the Bankruptcy Code requires that certain fees listed in 28 U.S.C. § 1930, determined by the court at the hearing on confirmation of a plan, be paid or that provisions be made for their payment.[104]  Section 507(a)(2) of the Bankruptcy Code provides that "any fees and charges assessed against the estate under [section 1930 of] chapter 123 of title 28" are afforded priority as administrative expenses.

---

[102] *See id.* ¶ 76.

[103] *See id.* ¶ 77.

[104] 11 U.S.C. § 1129(a)(12).

42

54889697.5

121.     Section 19.1 of the Combined Disclosure Statement and Plan provides that all fees payable pursuant to section 1930 of Title 28 of the United States Code on account of the period before the Effective Date shall be paid by the Debtor on the Effective Date.  Further, after the Effective Date the Liquidating Trust shall pay the U.S. Trustee fees from the assets of the Post-Effective Date Debtor or the Liquidating Trust Assets, as applicable.[105]  Thus, the Combined Disclosure Statement and Plan satisfies the requirements of section 1129(a)(12).

**L.     Section 1129(a)(13) of the Bankruptcy Code is Inapplicable.**

122.     Section 1129(a)(13) of the Bankruptcy Code requires that all retiree benefits continue post-confirmation at any levels established in accordance with section 1114 of the Bankruptcy Code.[106] The Debtor does not currently have any obligations to provide retiree benefits (as such term is used in section 1114 of the Bankruptcy Code)[107] and, accordingly, section 1129(a)(13) of the Bankruptcy Code is inapplicable.

**M.     Sections 1129(a)(14)–(16) of the Bankruptcy Code Are Not Applicable to the Combined Disclosure Statement and Plan.**

123.     The Debtor (a) is not required to pay any domestic support obligations; (b) is not an individual; and (c) is not a nonprofit corporation or trust.[108]    Accordingly, sections 1129(14)-(16) of the Bankruptcy Code are inapplicable.

**N.     The Combined Disclosure Statement and Plan Meets the Requirements for Cramdown (§ 1129(b)).**

124.     Section 1129(b) of the Bankruptcy Code provides that when all applicable requirements of section 1129(a) of the Bankruptcy Code are met other than section 1129(a)(8), a

---

[105]*See* Rosen Decl. ¶ 80.

[106]11 U.S.C. § 1129(a)(13).

[107]The Debtor listed a Collective Bargaining Agreement (the "CBA") in its schedules that applied to hourly employees represented by the United Steelworkers International; upon inquiry to the Debtor, the Committee was informed that it was terminated prepetition and that the Debtor has no ongoing obligations arising under the CBA.

[108]11 U.S.C. § 1129(a)(14)-(16).

54889697.5

plan may be confirmed so long as the requirements set forth in section 1129(b) of the Bankruptcy Code are satisfied.[109]  To confirm a plan that has not been accepted by all impaired classes (thereby failing to satisfy section 1129(a)(8) of the Bankruptcy Code), the plan proponent must show that the plan: (a) has been accepted by at least one impaired class, without counting the acceptances of Insiders, (b) does not "discriminate unfairly" and (c) is "fair and equitable" with respect to the non-accepting impaired classes.[110]  Here, at least one of the Voting Classes has voted in favor of the Combined Disclosure Statement and Plan.[111]  Despite the rejection of certain Classes, as set forth herein, the Combined Disclosure Statement and Plan satisfies the "cram down" requirements under section 1129(b) of the Bankruptcy Code, and may be confirmed by the Bankruptcy Court.

      1.    <u>The Combined Disclosure Statement and Plan Does Not Discriminate Unfairly With Respect to Impaired Rejecting Classes (§ 1129(b)(1)).</u>

125.    The unfair discrimination standard of section 1129(b)(1) of the Bankruptcy Code ensures that a plan does not unfairly discriminate against a dissenting class with respect to the value it will receive under a plan when compared to the value given to all other similarly situated classes.[112]  Accordingly, as between two classes of claims or two classes of interests, there is no

---

[109] *See* 11 U.S.C. § 1129(b).

[110] *See id.* § 1129(b)(1); *accord John Hancock Mut. Life Ins. Co.*, 987 F.2d at 157 n.5; *In re S B Bldg. Assocs. Ltd. P'ship*, 621 B.R. 330, 375 (Bankr. D.N.J. 2020) (holding that a plan must be "fair and equitable" and may not "unfair[ly] discriminat[e]" under the requirements of section 1129(b)); *Zenith*, 241 B.R. at 105 ("Where a class of creditors or shareholders has not accepted a [chapter 11 plan], the court shall nonetheless confirm the plan if it 'does not discriminate unfairly and is fair and equitable.'"); *Johns-Manville Corp.*, 843 F.2d at 650.

[111] *See* Voting Report, Ex. A.

[112] *See Armstrong I*, 348 B.R. at 121 (noting that the "hallmarks of the various tests have been whether there is a reasonable basis for the discrimination, and whether the debtor can confirm and consummate a plan without the proposed discrimination.") (citation omitted); *In re Coram Healthcare Corp.*, 315 B.R. 321, 349 (Bankr. D. Del. 2004) (citing cases and noting that separate classification and treatment of claims is acceptable if the separate classification is justified because such claims are essential to a reorganized debtor's ongoing business); *In re Lernout & Hauspie Speech Prods., N.V.*, 301 B.R. 651, 661 (Bankr. D. Del. 2003), *aff'd*, 308 B.R. 672 (D. Del. 2004) (permitting different treatment of two classes of similarly situated creditors upon a determination that the debtors showed a legitimate basis for such discrimination)*; In re Ambanc La Mesa Ltd. P'ship*, 115 F.3d 650, 656 (9th Cir. 1997) (same).

44

unfair discrimination if (a) the classes are comprised of dissimilar claims or interests,[113] or (b) taking into account the particular facts and circumstances of the case, there is a reasonable basis for such disparate treatment.[114]

126.    Here, the Combined Disclosure Statement and Plan does not discriminate unfairly against the impaired Classes that have, or are deemed to have, rejected the Combined Disclosure Statement and Plan (*i.e.*, Classes 3, 4, 5, 6, and 8) (collectively, the "Rejecting Classes").  As to each of Class 3 and Class 4, simply put, there is no similarly situated Class.  Class 3 is structurally senior to Class 4 pursuant to the applicable Intercreditor Agreements.[115]  No classes are similarly situated with respect to either Class 3 or Class 4.

127.    With respect to Class 5 and Class 6, the Combined Disclosure Statement and Plan also does not discriminate unfairly.  General Unsecured Claims (Class 7) of equal rank and priority are receiving identical monetary treatment under the Combined Disclosure Statement and Plan as Claims in Class 5 and Class 6.[116]  Finally, Interests in Class 8 are also not similarly situated as to any other Class.[117]Accordingly, the Combined Disclosure Statement and Plan does not discriminate, much less "discriminate unfairly," as to the Rejecting Classes.

---

[113]*See, e.g., In re Johns-Manville Corp.*, 68 B.R. 618, 636 (Bankr. S.D.N.Y. 1986), *aff'd in part, rev'd in part on other grounds, In re Johns-Manville Corp.*, 78 B.R. 407 (S.D.N.Y. 1986), *aff'd sub nom. Kane v. Johns-Manville Corp.*, 843 F.2d 636 (2d Cir. 1988) (stating that interests of objecting class were not similar or comparable to those of any other class and thus there was no unfair discrimination).

[114]*See, e.g., Drexel Burnham Lambert Grp.,*138 B.R. 714, 715 (Bankr. S.D.N.Y. 1992) (separate classification and treatment was rational where members of each class "possess[ed] different legal rights"), *aff'd sub nom. Lambert Brussels Asocs, L.P. v. Drexel Burnham Lambert Grp., Inc. (In re Drexel Burnham Lambert Grp., Inc.)*, 140 B.R. 347 (S.D.N.Y. 1992); *In re Jersey City Med. Ctr.*, 817 F.2d at 1061 (approving classification of general unsecured creditors into different classes with different legal bases); s*ee also In re Abeinsa Holding, Inc.*, 562 B.R. 265, 274–75 (Bankr. D. Del. 2016) (rejecting challenge to separate classification in part on the basis that, even without the challenged classification, the voting results would not change).

[115]*See* Rosen Decl. ¶ 103.

[116]*See id.* ¶ 86.

[117]*See id.* ¶ 86.

45

2.     The Combined Disclosure Statement and Plan Is Fair and Equitable With Respect to the Rejecting Classes (§ 1129(b)(2)).

128.     For a plan to be "fair and equitable" with respect to an impaired class of unsecured claims or interests that rejects a plan (or is deemed to reject a plan), the plan must follow the "absolute priority rule."[118]  Generally, this requires that the impaired rejecting class of unsecured claims or interests either be paid in full or that any class junior to the impaired rejecting class not receive any distribution under a plan on account of its junior claim or interest.[119]  For a plan to be "fair and equitable" with respect to an impaired class of secured claims that rejects a plan, the plan must either (i) permit the holders to retain the liens securing such claims and receive deferred cash payments totaling the allowed amount of such claims as of the effective date of the plan; (ii) provide for the sale of the assets securing such claims, with the liens attaching to the proceeds of such sale; or (iii) for such holders to realize the indubitable equivalent of such claims.[120]

129.     The Combined Disclosure Statement and Plan is "fair and equitable" with respect to Class 5, Class 6, and Class 8.  With respect to Class 3 and Class 4, the absolute priority rule set forth in section 1129(b)(2)(B) of the Bankruptcy Code does not apply.[121]  Instead, Holders of Claims in Class 3 and Class 4 will receive the net proceeds of the sale of the Prepetition Collateral, up to the value of the collateral supporting their Senior Secured Claims or Subordinated Secured Claims, in accordance with the applicable Intercreditor Agreements.[122]

---

[118]*See* 11 U.S.C. §§ 1129(b)(2)(B)(ii), (b)(2)(C)(ii); *see also Bank of Am. Nat'l Tr. & Sav. Ass'n*, 526 U.S. at 441–42.

[119]*Bank of Am.*, 526 U.S. at 441–42 ("As to a dissenting class of impaired unsecured creditors, such a plan may be found to be 'fair and equitable' only if the allowed value of the claim is to be paid in full, § 1129(b)(2)(B)(i), or, in the alternative, if 'the holder of any claim or interest that is junior to the claims of such [impaired unsecured] class will not receive or retain under the plan on account of such junior claim or interest any property,' § 1129(b)(2)(B)(ii). That latter condition is the core of what is known as the 'absolute priority rule.'").

[120]11 U.S.C. § 1129(b)(2)(A).

[121]*In re Bashas' Inc.*, 437 B.R. 874, 928 (Bankr. D. Ariz. 2010).

[122]To the extent that Claims in Class 3 or Class 4 are not paid in full, it is only because such Claims are undersecured pursuant to section 506(a) of the Bankruptcy Code, any such claims which are undersecured will be treated as Deficiency Claims in accordance with the Combined Disclosure Statement and Plan; *see* Combined Disclosure Statement and Plan, § 3.55; *see also* Rosen Decl. ¶ 89.

54889697.5

130.    With respect to Class 5 and Class 6, no Claim or Interest junior (*i.e.* Class 8) to such Class will receive or retain any property under the Combined Disclosure Statement and Plan.  With respect to Class 8, which is deemed to have rejected the Combined Disclosure Statement and Plan, no Class junior to such Class exists.

131.    Accordingly, the Combined Disclosure Statement and Plan is "fair and equitable" with respect to each of the Rejecting Classes.[123]

### O.    Only One Plan May Be Confirmed (§ 1129(c)).

132.    Section 1129(c) of the Bankruptcy Code provides that the bankruptcy court may confirm only one plan.[124]  The Combined Disclosure Statement and Plan is the only plan before the Bankruptcy Court. Accordingly, section 1129(c) of the Bankruptcy Code is satisfied.

### P.    The Principal Purpose of the Combined Disclosure Statement and Plan Is Not Tax Avoidance (§ 1129(d)).

133.    Section 1129(d) of the Bankruptcy Code provides that a court may not confirm a plan if the principal purpose of the plan is to avoid taxes or the application of section 5 of the Securities Act of 1933.   The Combined Disclosure Statement and Plan satisfies these requirements.[125]  All Tax Claims will be paid in full pursuant to the Combined Disclosure Statement and Plan.  The Plan Proponent therefore submits that the Combined Disclosure Statement and Plan satisfies the requirements of section 1129(d) of the Bankruptcy Code.

### Q.    Waiver of Any Stay of Confirmation is Appropriate

134.    Bankruptcy Rule 3020(e) provides that "[u]nless the court orders otherwise, a confirmation order is stayed for 14 days after its entry."[126]  Similarly, Bankruptcy Rule 6004(h)

---

[123]Rosen Decl. ¶ 91.

[124]*See* 11 U.S.C. § 1129(c).

[125]*See* Rosen Decl. ¶ 93.

[126]Fed. R. Bankr. P. 3020(e).

54889697.5

provides that an "order authorizing the use, sale, or lease of property . . . is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise."[127]  Further, Bankruptcy Rule 6006(d) imposes a 14 day stay on any order assigning an executory contract or unexpired lease, unless the Court orders otherwise.[128]

135.    The Plan Proponent submits that good cause exists for waiving and eliminating any stay of the Confirmation Order provided for under these Bankruptcy Rules, so that the Confirmation Order will be effective immediately upon its entry.

136.    The Plan Proponent has undertaken great efforts to facilitate the Debtor's confirmation and liquidation to exit chapter 11 as soon as practicable.  Additionally, each day the Debtor remains in chapter 11 causes the Debtor to incur significant administrative and professional costs.

137.    Accordingly, the Plan Proponent requests that the Confirmation Order be effective immediately upon entry of such order and that the fourteen-day stay under Bankruptcy Rules 3020(e), 6004(h) and 6006(d) be waived.

## CONCLUSION

For all the foregoing reasons, the Plan Proponent respectfully requests that the Bankruptcy Court overrule all unresolved objections to the Combined Disclosure Statement and Plan, and enter the proposed Confirmation Order (a) approving the Combined Disclosure Statement and Plan on a final basis, and (b) confirming the Combined Disclosure Statement and Plan.

---

[127]Fed. R. Bankr. P. 6004(h).
[128]Fed. R. Bankr. P. 6006(d).

48

Dated: June 11, 2026
     Wilmington, Delaware

**COLE SCHOTZ P.C.**

*/s/ Justin R. Alberto*
Justin R. Alberto (No. 5126)
Michael E. Fitzpatrick (No. 6797)
500 Delaware Avenue, Suite 600
Wilmington, DE 19801
Telephone: (302) 652-3131
Facsimile: (302) 652-3117
Email: jalberto@coleschotz.com
       mfitzpatrick@coleschotz.com

- and -

**EVERSHEDS SUTHERLAND (US) LLP**
Todd C. Meyers (admitted *pro hac vice*)
Danielle Barav-Johnson (admitted *pro hac vice*)
600 Peachtree Street NE, Suite 5200
Atlanta, GA 30308
Telephone: (404) 853-8000
Email: toddmeyers@eversheds-sutherland.com
       dahnibarav-johnson@eversheds-sutherland.com

-and-

Todd C. Meyers (admitted *pro hac vice*)
John J. Ramirez (admitted *pro hac vice*)
Sameer M. Alifarag (admitted *pro hac vice*)
1114 Avenue of the Americas, 40th Floor
New York, NY 10036
Telephone: (212) 389-5000
Email: toddmeyers@eversheds-sutherland.com
       johnramirez@eversheds-sutherland.com
       sameeralifarag@eversheds-sutherland.com

*Counsel to the Official Committee of*
*Unsecured Creditors*

49